1  PATRICK J. D'ARCY, State Bar No. 250174
2  In Amicus Curiae
   1 Park Plaza, Suite 380
3  Irvine, California 92614
   Telephone:   (949) 988-7640
4  Facsimile:   (949) 988-7641
5  Email: pat@patricklaw.net

6              **UNITED STATES DISTRICT COURT**

7            **NORTHERN DISTRICT OF CALIFORNIA**

8                    **SAN JOSE DIVISION**

9  CHRISTOPHER J. CORDOVA,                  | **CASE NO.: 5:25-cv-04685-VKD**

10                                          | **ASSIGNED FOR ALL PURPOSES TO:**
11                     Plaintiff,           | **HON. VIRGINIA K. DEMARCHI**

12  v.                                      | **NOTICE OF MOTION AND MOTION**
                                            | **FOR LEAVE TO GRANT THE**
13  JONATHAN HUNEAULT                       | **[PROPOSED] AMICUS CURIAE BRIEF**
                                            | **FOR ORDERS TO:**
14                                          | **1) ENJOIN FURTHER PRETRIAL**
15                                          | **PUBLICITY, INCLUDING PUBLIC**
                                            | **COMMENTS AND UPLOADING OF**
16                     Defendant            | **NEW VIDEOS, AND THE TAKING**
                                            | **DOWN OF EXISTING VIDEOS**
17                                          | **CONCERNING THIS LITIGATION;**
                                            | **2) TO REQUIRE ATTORNEY RANDALL**
18                                          | **S. NEWMAN TO ANSWER FOR**
19                                          | **ALLEGED UNPROFESSIONAL**
                                            | **CONDUCT AS COUNSEL OF RECORD;**
20
21                                          | **MEMORANDUM OF POINTS AND**
                                            | **AUTHORITIES; DECLARATION BY**
22                                          | **PATRICK J. D'ARCY IN SUPPORT;**
                                            | **[PROPOSED] ORDER**
23
24                                          | Hearing Date: September 23, 2025
25                                          | Time: 10:00 am.
26                                          | Courtroom 2, 5th Floor

27                            -1-
28

                                    **MOTION FOR LEAVE RE: PROPOSED**
                                         **AMICUS CURIAE BRIEF**

PLEASE TAKE NOTICE that on September 23, 2025 at 10:00 a.m., before the Honorable Virginia K. DeMarchi, in Courtroom 2, at the Northern District Court, located at 280 South 1st Street, San Jose, CA 95113, attorney Patrick J. D'Arcy ("Amicus Curiae") will seek an order from this Court granting this motion for leave to submit this amicus brief, and interim orders for the alleged actions taken by Randall S. Newman ("Newman") counsel of record for Christopher Cordova ("Plaintiff").  Amicus Curiae requests that the Court grant leave and to enter INTERIM ORDERS (1) - (5), inclusive, and an order for Newman to respond to item (6):

(1) That the Court grant this motion and adopt a briefing schedule, and whether Amicus Curiae is to file a reply brief;

(2) Absent this Court's prior approval, or until further notice, that Newman and Plaintiff immediately stop making any public comments or statements about Jonathan Huneault ("Defendant") and this litigation (the "Litigation");

(3) Absent this Court's prior approval, or until further notice, that Newman and Plaintiff immediately cease uploading, distributing, disseminating, publishing and displaying videos or graphical images about the Defendant and this Litigation on YouTube, social media or to the internet generally;

(4) Absent this Court's prior approval, that Newman and Plaintiff immediately cease any disseminating, publishing and furnishing of videos, pictures, and graphical or other information, including those stored in both electronic and non-electronic format, of the Defendant and this Litigation, to any persons and entities, including news sources and media outlets, but excepting those persons and entities with a functional connection to the Litigation, including by way of example, counsel, professional advisors, experts, witnesses, court reporters and other persons reasonably related to the purposes of this Litigation.

(5) Absent this Court's prior approval, or until further notice, that Newman and Plaintiff take down and remove all existing videos on YouTube, social media or the internet generally about the Defendant and this Litigation (the "Prohibited Videos") and serve copies of the order on other persons and entities for removal on third party channels, websites and the internet generally, or other mediums;

[PROPOSED] AMICUS CURIAE BRIEF

6) That Newman respond to the following allegations of his alleged unprofessional conduct (the "Conduct"), including alleged violations of Fed. R. Civ. Pr. 11(b)(1), and Local Rules 11-4 and 11-6:

a) That Newman provide justification as a Court Officer for publicly depicting, describing and commenting on Defendant in an alleged derogatory and demeaning fashion, such as is shown in Exhibit 4-001, and related videos posted or discussed on his and Cordova's YouTube channel;

b) That Newman provide justification as a Court Officer for depicting "Frauditor Mania," a potential witness to this litigation, in an alleged racially offensive manner, in alleged violation of anti-discrimination laws based upon race, and the alleged misogynistic videos postings about his spouse, such as is shown in Exhibit 6, and related videos posted or discussed on his and Cordova's YouTube channel;

c) That Newman provide justification as a Court Officer for depicting BlackHartKnight ("BHK"), a teacher, and potential witness to this litigation, in an alleged derogatory and demeaning fashion, such as is shown in Exhibit 4-002, and related videos posted on his and Cordova's YouTube channel;

d) That Newman provide justification for his alleged anti-Semitic comment [Ex. 11-003], as not violative of his oath to the state and federal constitution, the laws of California, the Rules of this Court, and the Rules of Professional Conduct of the State Bar of California as prohibited religious discrimination such as shown on Exhibit 11;

e) That Newman provide justification for his videos concerning Amicus Curiae, as not violative of the state and federal Constitution, the laws of California, the Rules of this Court, and the Rules of Professional Conduct of the State Bar of California as prohibited religious discrimination and civil harassment such as shown on Exhibit 1;

**[PROPOSED] AMICUS CURIAE BRIEF**

f) That Newman provide justification how he and Cordova's Prohibited Videos and public comments about the Litigation, the Defendant, and potential witnesses, such as Frauditor Mania, his spouse, Dr. Dave, and BHK, will not prevent the litigants from receiving a fair trial tried to an impartial jury;

g) That Newman and Cordova's actions of making Prohibited Videos and public statements about Amicus Curiae, and potential witnesses, such as Frauditor Mania, his spouse, Dr. Dave, and BHK, could not be deemed witness intimidation; and

h) Whether this case should be transferred to a different District Court within California, given the proximity of prominent Auditor channels near the Court, and the pretrial publicity attributed to Newman and Plaintiff.

**ANY OPPOSITION TO THIS MOTION SHALL BE DUE 14 DAYS AFTER THE FILING DATE OF THIS MOTION, OR BY SEPTEMBER 2, 2025, SINCE SEPTEMBER 1, 2025 IS A COURT HOLIDAY.**

This Motion is based upon this Notice of Motion and Motion, the proposed amicus curiae brief, the Memorandum of Points and Authorities in support thereof, the attached exhibits, the declaration by Patrick J. D'Arcy, all documents and records on file herein, any further evidence or arguments that may be presented at or before the hearing on this matter, and any and all matters from which the Court may take judicial notice.

Dated: August 17, 2025

By: _____

PATRICK J. D'ARCY,

Amicus Curiae

4

**[PROPOSED] AMICUS CURIAE BRIEF**

1

# **TABLE OF CONTENTS**

2  MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 7

3  1.    GOVERNING RULES ................................................................................................ 7

4  2.    THE "AUDITORS" VS. THE "ANTI-AUDITORS. ................................................... 7

5  3.    INTERESTS OF THE AMICUS CURIAE ................................................................ 8

6        A.    Movant's Educational Background And Commitment To Public
          Service. ................................................................................................ 8

7        B.    Significant Victories ........................................................................... 9

8        C.    Relationship To The Litigants. ........................................................... 9

9        D.    I favor The Defendant ........................................................................ 10

10       E.    Why This Brief Is Helpful.. ............................................................... 10

11            i.    Newman's Racist Animated Drawings And Depictions Of
12               Frauditor Mania And Misogynistic Actions Against His Wife. ...... 11

13            ii.    Newman's Recent Anti-Semitic Comment ...................................... 11

14            iii.    Newman's Constant Videos, Livestreams And Pre-Trial
              Publicity Imbues Bias Into The Jury Pool. ...................................... 11

15            iv.    The Court Should Consider Whether To Transfer The Case To
16               A Different District Court. ................................................................ 13

17            v.    Newman Takes Pleasure In Alarming The Anti-Auditors ................ 13

18            vi.    Newman's Video Encourages Doxxing. ........................................... 13

19            vii.    Newman Attacks D'Arcy's Faith, Competency & Intelligence, ....... 14

20            viii.    Newman's Actions Will Intimidate Witnesses. ............................... 15

21 4.    NEWMAN'S UNPROFESSIONAL CONDUCT .................................................... 15

22       A.    Newman Directly Solicited Clients In Violation Of Rule 7.3(a) ................ 16

23            i.    Newman's Public Profile Is False Regarding *Office Space*. ............. 16

24            ii.    Newman's Falsely Denies Any Improper Client Solicitation. ........... 17

25 5.    DISTRICT JUDGE SARA L. ELLIS ADMONISHES NEWMAN'S
      "IMPROPER CONDUCT" WITH A PRESIDING JUROR. ................................. 18

26       A.    Ninth Circuit Authority Treats Newman's Actions As Both "Improper
27           And Unethical." ................................................................................ 19

28 6.    CONCLUSION ......................................................................................................... 19

**[PROPOSED] AMICUS CURIAE BRIEF**

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>Cases</u>

3

*Id.*, at 1141-1142 ................................................................................................. 14

*Id.*, at 1146 ........................................................................................................... 13

*In Re Silverton*, 36 Cal.4th 81, 91-92 (2005) ...................................................... 20

*In the Matter of Mitchell* 1 Cal. State Bar Ct. Rptr. 332 (Review Dept. 1991) ................. 20

*In The Matter of Peter Adrian Acuna,* Calif. Op. LEXIS 1, 8 (1996) ................................. 20

*In the Matter of Venie* 1 Cal. State Bar Ct. Rptr. 332), 2010 Calif. Op. LEXIS 10 (Review Dept. 2010) ......................................................................................... 20

*Lasalle v. Vogel* 36 Cal.App.5th 127, 133 (2019). ............................................. 14

*People of Territory of Guam v. Marquez*, 963 F.2d 1311, 1315 (9th Cir. 1992) ............... 22

*Rothman v. Jackson* 49 Cal.App.4th 1134 (1996) ............................................... 13

*Yorty v. Chandler*, 13 Cal.App.3d 467 (1970) .................................................... 17

4

5

6

7

8

9

10

11

12

13

### <u>Statutes</u>

14

section 6106 ........................................................................................................ 17

15

### <u>Other Authorities</u>

16

Rule 17a ............................................................................................................... 24

17

### <u>Rules</u>

18

Fed. R. Civ. P. 11(b)(1) ...................................................................................... 24

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] AMICUS CURIAE BRIEF**

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.  GOVERNING RULES

Amicus briefs to the District Court follow the Federal Rules of Appellate Procedure.  The Court did not solicit this proposed amicus brief, nor was it obtained by stipulation, as the Defendant has not appeared in this action, and the case is not yet "at issue."  This proposed brief requires: 1) a motion for leave of Court; 2) a basis for why this proposed amicus brief is desirable and how it addresses relevant issues; 3) the identity of the Amicus Curiae, his interest in the case, customary authorities, and the source of the Amicus Curiae's authority to file; 4) that the Amicus Curiae authored this brief and the source of funding for its submission. Fed. R. App. P. §§ 29(a)(2) – (a)(5).

Amicus Curiae requests that the Court grant the motion and set the matter for a formal briefing schedule, and enter the five interim orders shown on the proposed order.  Eleven exhibits accompany this motion.  This proposed brief does not argue the merits of the Litigation, and instead focuses on the actions of Randall S. Newman ("Newman") and his client, and why, in the interests of justice, the motion should be granted to protect the rights of the Defendant to a fair trial.

### 2.  THE "AUDITORS" VS. THE "ANTI-AUDITORS.

Newman filed a copyright lawsuit on behalf of Christopher Cordova ("Cordova"), who operates a YouTube channel called "Denver Metro Audits," or "DMA," and has 235,000 subscribers.  Newman recently created his own YouTube channel, called "@TheDMCALawyer."  Newman promises to bring many infringement cases on behalf of DMA and other "First Amendment Auditors" (or "Auditors").

Two very large Auditor channels, are mentioned in the complaint and within range of this and the Los Angeles District Court: "Bay Area Transparency," with over 337K subscribers, and Jose "Chille" De Castro, based in Santa Monica, California, with over 661K subscribers.  Auditors and Anti-Auditors represent the

**[PROPOSED] AMICUS CURIAE BRIEF**

digital versions of a "Hatfield-McCoy dispute.

The Anti-Auditors call the Auditors "*frauditors*," because their audits with a camera are considered a "fraud."   Anti-Auditors, such as "Frauditor Troll," are accused of unfairly profiting from "reaction" style YouTube videos to the Auditors' content.  The Auditors claim to protect the First Amendment, while the anti-Auditors claim that these audits are driven by provocation for "clicks and views."

### 3.  <u>INTERESTS OF THE AMICUS CURIAE</u>

Patrick J. D'Arcy ("D'Arcy"), individually, and not on behalf of his law corporation, is the Amicus Curiae.  By way of disclosure, Patrick J. D'Arcy is the sole owner of Patrick J. D'Arcy APLC, a State-Bar approved entity, and in existence for 15 years.  Consistent with full disclosure, the approximately $24,000 in attorney-time necessary to draft this motion and proposed brief came solely from D'Arcy, and no other sources.

### A. Educational BackgroundCommitment To Public Service.

I was admitted to this Court on July 20, 2007, after graduating from Georgetown University Law Center.  I handle business litigation, real estate and defamation.  *Super Lawyers* selected me for honors in "Business Litigation" for the years 2020-2024.  *Martindale Hubbell* recently awarded me with their highest rating of "AV."

I was the past president of the Orange County Quasi-Indigent Defense Panel, the largest organization of its kind, with 20 independent lawyers and a 35-year history of advocating for Orange County's poor.  The State Bar presented me with the *Wiley W. Manuel* award for my contributions to public service.  The Public Law Center of Orange County profiled my pro bono efforts for two consecutive years at their annual fundraisers.  I devoted about $100,000 in unbilled time to stop the financial and emotional torment of an elderly woman by professional tenants,

**[PROPOSED] AMICUS CURIAE BRIEF**

1  who refused to pay rent, and who drummed up many fictitious housing complaints.

2  With foreclosure approaching, she became suicidal and lived on a couch.  I evicted

3  the tenants with a 12-0 jury trial at the Santa Monica Courthouse, and excluded the

4  housing complaints through pretrial motions.

**B. Amicus Curiae's Significant Victories**

I obtained a published decision regarding the interpretation and governance of
commercial real estate leases in *Rex Investment Company, LTD v. S.M.E., Inc.,* 2016
U.S. Dist. LEXIS 116828, *1, 3:15-cv-2607, which involved a landlord suing my
client, a Burger King franchisee.  I obtained dismissal through Rule 12(b)(6)
motions and a "reverse Rule 56" opposition to summary judgment.

After a two-week jury trial in stock-fraud case in downtown Los Angeles, I
obtained a $3.7M jury award, and did the questioning of all 28 parties and
witnesses.

At Complex Court, my-counsel and I successfully reversed a 26-page
statement of decision with estimated liability of $10-$14M.  In cross-examining the
main witness, I needed to master more than 4,000 exhibits dating back 16 years.

**C. Amicus Curiae's Relationship To The Litigants.**

I have never spoken with (or met) Cordova or Newman.  As for Newman, I
have received some comments and electronic notifications when he makes videos
about me.  I did two videos about him – one analyzing his lawsuit, and a follow-up
video to prove he lacked trial experience, was not forthcoming, and was stating
false things about me to damage my reputation.  At last count, he has done (at least)
eight videos about me.  His first responding video about my review of the case was
perfectly acceptable.  The next seven were part of a smear campaign, as Newman
mentioned in a video his shock at the number of persons that watched my video.
Among the Anti-Auditors, "Dr. Dave," "Andrey Sloan," "BlackHartKnight"
("BHK"), "Frauditor Mania," "Frauditor Roundup," "Troll Media Group" and

**[PROPOSED] AMICUS CURIAE BRIEF**

"Frauditor Troll" reached out to me in response to Newman's threats to sue them. Without waiving attorney-client privilege, the attorney work-product doctrine or any other privileges, I generally informed them to obtain local copyright counsel to respond to the lawsuit, while my communications with the Defendant were much more extensive. I never met the Defendant, and instructed him to find local copyright counsel. My authority to file is based on Rule 29(a)(1) requiring leave of his Court, in addition to being a Court Officer who is observing violations of the rules that govern our profession, including the oaths taken by Court Officers.

### D. Amicus Curiae Favors The Defendant.

I favor the Defendant. I express no opinion on the merits of the other cases, given a lack of information, but, in general, I favor them due to fears of being "outed" by those who seek to harm or harass them and Newman's abusive tactics, including humiliation through cartoonish videos.

### E. Why This Brief Is Helpful.

The brief focuses on Newman's pretrial publicity and sharp practices, including his insistence on being called "the most unprofessional" lawyer. [Ex. 4-005] Newman publicly displays on YouTube his racist rants, misogyny, anti-Christian bigotry and anti-Semitic statements. Newman relishes in the firestorm of criticism. He is tainting the jury pool against the Defendant in repeatedly discussing this lawsuit - from his perspective - which is then shared to large platforms.

Newman amplifies his misconduct through uploading more videos – including eight about D'Arcy alone - portraying him as foolish, incompetent, and mentally impaired. Newman and Cordova's livestreams and video uploads vilify the Defendant in the court of public opinion. Newman ignores the highly prejudicial impact of his actions, and his background suggests very little in the way of knowledge about California law. The Court should grant a "gag" order and stop the uploading of videos for public dissemination and public assertions of the Defendant as a "loser," and the continued humiliation of potential witnesses, and

**[PROPOSED] AMICUS CURIAE BRIEF**

require that he and Cordova take down the videos about the lawsuit.

### i. Newman's Racist Animated Drawings And Depictions Of Frauditor Mania And Misogynistic Videos About His Wife.

Frauditor Mania is African-American, a paralegal, a potential witness, and wants to become a lawyer.  Despite pleas to stop, Newman continues to call Frauditor Mania a "*Mailroom Boy*."  Newman created a racist picture of him being on a mountain of "dumb" people that refused to settle.  [Exhibit 6-001.]  Exhibit 6-002 depicts Frauditor Mania urinating on himself while surrendering.  Learning about Frauditor Mania's recent marriage, Newman attacked Frauditor Mania's *wife*, even though she has nothing to do with anything.  Newman described her as "Plus-Sized," while she watched a rat eat a pizza, and included pictures of pig faces.  [Ex. 6-003.] Newman called Frauditor Mania "the dumbest 'paralegal'" and that he married a "buffet destroying bride."  [Ex. 6-004.]  To make the attack complete, Newman includes channel tags and "#" phrases to amplify the harassment.

### ii. Newman's Recent Anti-Semitic Comment.

Newman replied to Paul Cohen: "Hey, it's Mort Goldman.  Could you sound any more Jewry bro? [with a picture of the Israeli flag]  Cohen responded: "Why are you obsessed with anyone being Jewish?....Oh it must be that you are Jew hater."  Mr. Cohen's angry response (including calling Newman "obsessed") means that Newman has attacked Cohen previously for similar reasons.  An unapologetic Newman provides the necessary context.  [Ex. 11-002.]

### iii. Newman And Cordova's Constant Videos Pre-Trial Publicity Imbues Bias Into The Jury Pool.

Exhibit 3 contains many acts of rampant pretrial publicity by Newman and Cordova, including YouTube videos about the ex parte application and livestream [3-001 and 002], an email to Frauditor Troll to waive the summons [3-003], and a video taunting Frauditor Troll to "Come Get Your Lawsuit."  [Ex. 3-007.] Newman and Cordova's videos are trying the case in the court of public

**[PROPOSED] AMICUS CURIAE BRIEF**

1  opinion through constant vilification and juror conditioning.  Both he and Cordova

2  regularly accuse Frauditor Troll and others of "stealing," while publicly trumpeting

3  their version of what happened.  The videos on these channels are played thousands

4  of times, and shared to other large channels.

5      Newman almost seems to take pride in being racist, sexist and – in his words

6  – the "most unprofessional" lawyer.  [Ex. 4-005.]  Selecting an impartial jury is in

7  peril due to Newman and Cordova's frequent "litigation updates" about the case,

8  and the persistent demonization of Frauditor Troll and potential witnesses.  What

9  Newman and Cordova are doing – and D'Arcy has warned about this – is opening

10  themselves up to defamation lawsuits.  *Rothman v. Jackson* 49 Cal.App.4th 1134

11  (1996) does not insulate their statements from liability simply because they concern

12  the subject matter of the lawsuit.  *Id.*, at 1146.  "Republications [of 'injurious

13  publications during litigation'] are generally not privileged under section [47(b)],"

14  and "public mudslinging" is entirely unprotected.  *Id.  Rothman* rejected the notion

15  that the litigation privilege extends to persons who "trumpe[t] one party's version of

16  a legal dispute."  *Id.*, at 1141-1142.  We could see defamation counterclaims.

17      A "gag order" is suggested within the proposed order to stop the continued

18  publicity of this case.  Exhibit 4 contains more of Newman's antics, including a

19  picture of Frauditor Troll's face as a "Loser" [Ex. 4-001]; depicting BHK – a teacher

20  - as a drooling special needs person riding the "short bus" [Ex. 4-002]; a middle

21  finger to his critics [Ex. 4-003]; an admission to Dr. Dave that Newman will sue him

22  "for fun"[2] [Ex. 4-004]; and Newman's insistence of being called "the most

23  unprofessional" lawyer."  [Ex. 4-005.]   Authentication is easy - it's all from

24  Newman.

25      None of this aligns with Rule 17a of the Court's Civility Rules: "The legal

26

27  _____

    [2] Fed. R. Civ. P. 11(b)(1) prohibits bringing a lawsuit for "any improper purpose,"
    including suing someone "for fun."

28

**[PROPOSED] AMICUS CURIAE BRIEF**

profession must strive for the highest standards of attorney behavior to elevate and enhance the service to justice."

### iv.    The Court Should Consider Whether To Transfer The Case To A Different District Court.

The complaint mentions very large Auditor channels, including "Bay Area Transparency" with 337K subscribers, and "DeleteLawz," owned by Jose "Chille" De Castro, with 661K subscribers.  De Castro is based in Los Angeles.  His recent livestreams in Los Angeles and Riverside were viewed 481K and 331k times, respectively.

Problems with jury selection and impartiality arise from the sheer size of these channels and their proximities to the Courthouses.  If a transfer is being considered, the only federal courthouses that may be neutral are those in Fresno, Santa Ana and San Diego.

### v.    Newman Takes Pleasure In Alarming The Anti-Auditors.

Newman abuses his power as a Court Officer.  In Exhibit 3-012, Newman tags a group of Anti-Auditors for the purposes of alarming them that *someone* on the list is about to be sued, simply to create sustained fear, as fear drives settlements. Some of these persons are elderly or semi-retired.

### vi.    Newman's Video Encourages Doxxing.

In what is roughly akin to giving an arsonist a fresh supply of matches, Newman created a video that instructs the Auditors how to unmask the Anti-Auditors.  [Exhibit 9-002.]  The video is entitled: "Nice Anonymous Channel.  Be a Shame If Someone Filed a 512(h) Subpoena."  Newman instructs his target audience of Auditors how to "unmask anonymous You Tube [sic] users who steal content. No lawsuit required, just a $52 filing fee.  No more hiding."  His warning about not using the subpoena to doxx persons is meaningless.[3]  D'Arcy's declaration provides

---

[3] https://www.youtube.com/watch?v=LA7CIo5zwq4.

**[PROPOSED] AMICUS CURIAE BRIEF**

some examples of Auditors trying to unmask the Anti-Auditors, and some Auditors encourage their viewers to harass and stalk people. This video should be taken down.  Craig Hendry, an Auditor doing time for a felony stalking charge, was convicted for having subscribers harass city employees.[4]  Cordova, while on probation, is doxxing the police, by providing their names, badge numbers, email addresses and even cell phone numbers, all of which qualifies as personally identifiable information.  [Ex. 9-001; D'Arcy Decl., ¶12.]  Newman's video is reckless, and serves to intensify the infighting, including motions to quash and more litigation – all of which serves his interests.  His warnings not to doxx people are borne of pure sophistry.

### vii.    Newman Attacks D'Arcy's Faith, Competency & Intelligence.

Newman makes the most videos about D'Arcy.  If Newman can get persons not to listen to D'Arcy through reputational smearing, then Newman's efforts to scare persons into settling greatly increases.  The videos – all eight of them by last count – attack D'Arcy as unintelligent, incompetent and in need of a mental health evaluation because he is a lunatic that saw Christ.[5]  For most of his life, D'Arcy was a disbeliever, but things changed when, at age 62, he participated in the Catholic sacrament of Confirmation.  [Ex. 1.]  At night, and in an act of full repentance, an image of the right of side Christ's face appeared – expressionless.  Fearing ridicule, the matter remained secret.

D'Arcy's priest confirmed that another person saw the same image.  There is more proof, to be sure, but I refuse to discuss it as it will unlock a secret that deceivers and liars will use to "legitimatize" their fakery.  Newman unwittingly fell into my trap.  Knowing my enemies will use this to discredit me, it unlocks the Lord's blessings, and more importantly, it gets Newman to discuss the Gospel,

---

[4] Not all Auditors engage in this behavior, as others condemn the practice.

[5] When Newman learns that a person values something, he makes videos about it, which explains why he went after Frauditor Mania's wife.

**[PROPOSED] AMICUS CURIAE BRIEF**

which could save even one soul.  "Blessed are you when people revile you…and utter all kinds of evil against you falsely on my account.  Rejoice and be glad, for your reward is great in heaven." [Mat. 5:11-12.]  In response to biting criticism, Newman replied: "Awww, cry harder" with two laughing faces.  [Ex. 1-002.] Where does any of this fit into Newman's role as a Court Officer?  This is the first time I ever mentioned my faith in a pleading, even after 35 trials, more than one hundred depositions and hundreds of motions.

Newman equates D'Arcy's undeserved miracle with a mental illness, which is defamation per se.  *Yorty v. Chandler*, 13 Cal.App.3d 467 (1970).  Only Newman sought the video for ridicule.  Persons of faith and marginalized communities sit on juries.  At trial, the lawyer is the face of the client. And Newman, with this self-inflicted baggage, is obtuse about jurors and his open invitation to backlash should the videos become known.

In another video where Newman tried to falsely tarnish D'Arcy's name, Newman stated: "Hey Pat, uh, here's [sic] a subpoena looks like." [Ex. 9-004.] When D'Arcy proved that he's served Google with subpoenas even as far back as eight years ago, Newman deflected with "I don't recall saying it," or "it was a joke." [Ex. 9-007.]

### viii.    Newman's Actions Will Intimidate Witnesses.

Those standing up to Newman are quick to receive a publicly aired video to humiliate them and to smear their name.  People are intimidated, and evidence of this is everywhere.  Potential witnesses must weigh between getting involved and having videos made about them, or keeping their heads down and remaining silent.

### 4.  <u>NEWMAN'S UNPROFESSIONAL CONDUCT.</u>

Although the California Rules of Professional Conduct (the "Rules") are enforced by the State Bar, Newman flouts one of several ethical Rules – the prohibition against direct electronic solicitation.  Newman realized that just one channel operator could have 1,000 videos to select for litigation.  Seeing an

15

**[PROPOSED] AMICUS CURIAE BRIEF**

untapped market, Newman erased ethical boundaries to capture this business before other copyright lawyers moved against him.

**A. Newman Directly Solicited Clients In Violation Of Rule 7.3(a).**

Exhibit 2 contains various screen-shots of Newman's actions, including the direct electronic solicitation of Auditors.  Rule 7.3(a) states that:

> "A lawyer shall not by in-person, live telephone **or real-time electronic contact** solicit professional employment when a significant motive for doing so is the lawyer's pecuniary gain…."  Rule 7.3(e) defines "solicit" or "solicitation," as "an oral or written* ***targeted communication initiated by or on behalf of the lawyer*** that is directed to a specific person* and that offers to provide, or can reasonably* be understood as offering to provide, legal services."  ("*" retained; emphasis added)

At the bottom of Exhibit 2-001 (and highlighted in green), Newman violated Rule 7.3(a) through "real-time electronic contact" with four Auditors by tagging their channel names, and with instructions to "Email Me": "@FirstAmendmentProtectionAgency (Email me), @siberiantiger1925 (Email me), @jcnewsnow5601 (Email me), @AuditingAmerica (Email me)."  When tagged, YouTube directly notifies the channel's owner, and provides a thumbnail link to the video.  Far from actual "junk mail," this type of tagging provides a direct point of electronic contact to the channel owner.  [D'Arcy Decl., par. 3.]

In Exhibit 2-002, Auditor "@EyesOnThe State," Newman instructs him to "Email me if you want in on the action."  In Exhibit 2-003 Newman writes to "@AuditThem" that "I need to speak with you."  Newman takes the position that directly including YouTube "tags" for Auditors to "email [him]" is not a direct solicitation, when that's precisely what he is doing.

**i.    Newman's Public Profile Is False Regarding *Office Space*.**

The Rules prohibit false or misleading statements regarding professional accomplishments.  D'Arcy quickly discovered that Newman has no jury experience

16
**[PROPOSED] AMICUS CURIAE BRIEF**

at all, which Newman was forced to sheepishly admit. Newman's LinkedIn[6]

falsely states he is a "Civil Litigator."  Newman lists the *Office Space* case which

he did handle, while omitting the Rule 12(b)(6) dismissal, and that it resulted in

only a"nuisance" payment of $10K to dismiss the appeal:

> "Advocated for high-profile clients, including actors from *A Christmas
> Story* and *Office Space*, in right of publicity disputes, *achieving
> favorable outcomes.*"  [Exhibit 8-002, highlighted; italics added.]

Rule 7.1(a) prohibits lawyers from making "a false or misleading

communication about the lawyer or the lawyer's services."  Rule 4.1(a) prohibits

false or misleading statements.  In adopting ABA Model Rule 4.1, the State Bar

sought its "critical public protection."

The District Judge stated that that the one-page contract that Newman sued

upon in *Office Space* was "unambiguous."  Newman does not disclose that his

client netted maybe $3K, after deducting costs, splits and taxes, which is at the

bottom range for California's Small Claims Division.

State Bar opinions, while not binding, are given "great weight."  *In Re

Silverton*, 36 Cal.4th 81, 91-92 (2005).

> "[W]e deem very serious an attorney's deliberate use of dishonesty to
> further attempts to gain employment, particularly as a lawyer. An
> attorney is not just another job-holder or job-seeker. For years, our
> Supreme Court has recognized the high duties of honesty and
> professional responsibility with which attorneys in this state are
> charged." [Citations.]" is instructive.  *Id.* at 20.

> *In the Matter of Venie*, 1 Cal. State Bar Ct. Rptr. 332), 2010 Calif. Op. LEXIS
> 10, 20 (Review Dept. 2010).

### ii.    Newman's Falsely Denies Any Improper Client Solicitation.

---

[6] https://www.linkedin.com/in/randall-s-newman/.   For brevity, we removed the
irrelevant pages.  Only a small part of Newman's LinkedIn was explored.

**[PROPOSED] AMICUS CURIAE BRIEF**

Commenters directly asked Newman if he engaged in improper client solicitation. [Exhibit 2-005.] [green highlighting]  In response, Newman stated that he obtained these new clients through "word of mouth," and made no reference to reaching out to Auditors as shown in Exhibit 2.  Lawyers are prohibited from engaging in deception toward *non-clients,* which includes the seeking of professional employment.  *In the Matter of Mitchell* 1 Cal. State Bar Ct. Rptr. 332 (Review Dept. 1991).  Raising suspicions, Newman deleted his comments, which we recovered.   [Ex. 2-006.]  (green highlighting).

> EvelynG-b1v: "I'm curious.  Did that ambulance chaser [Newman ] hunt down these clients?
> Newman: "He sure did but I wouldn't say "hunt down."  ***They came to be from word of mouth."***
> NYYankeesFan9865: "*I saw a comment of his asking for certain 'auditors' to contact him*."
> DrDaveFrauditorTerminator: "**But did you contact them first, especially DMA**?"
> Newman: "Why you [sic] ask?  *Is it relevant to something?*  Why do you keep saying that in videos?  Silly Dave.  *You want to come on live with DMA and I on Sunday?  The last one was fun*."
> EvelynG-b1v: "Yes it's relevant. Did you cross over any ethical or legal rules in contacting them?  Inquiring minds need to know."
> Andreichuckanov4180: "There seems to be lots of stuff you refute and yet can't tell us the truth.  I think that's exactly what happened."  [emphasis added]

Newman's acts of deleting his comments shows his concern about being proven wrong, and he tried to curry favor with Dr. Dave.

## 5. DISTRICT JUDGE SARA L. ELLIS ADMONISHES NEWMAN'S "IMPROPER CONDUCT" WITH A PRESIDING JUROR.

As a "Civil Litigator" that does not try cases, Newman hired a trial lawyer for his own lawsuit, and lost the case. [Ex. 10-001 to 002.]  Agitated about the loss, Newman tracked down the presiding juror on Facebook, and wanted to meet with her.  [Ex. 10-002 to 004.]  Newman wanted her to see the *excluded*

**[PROPOSED] AMICUS CURIAE BRIEF**

evidence.  "Uncomfortable" about his suggestion, she replied: "It is best we do not meet."  [Ex. 10-002.]  Undeterred, Newman contacted her seven more times because he wanted to know "what happened" during deliberations, and "if I have grounds to appeal," while falsely assuring her that "it is proper to discuss case [sic] with me." [Ex. 10-002 to 003.]

> District Judge Sara L. Ellis admonished Newman for:
>
> "improperly attempt[ing] to obtain information about the jury's deliberations by contacting the presiding juror via Facebook, even though counsel acknowledged that Federal Rule of Evidence 606(b)(1) prevents jurors from testifying about the jury's deliberations.  See Doc. 247 (communications between Maremont's counsel and the presiding juror)."  [Ex. 10-012.] (green highlighting)

### A. Ninth Circuit Authority Treats Newman's Actions As Both "Improper And Unethical."

Verdict deliberations are generally secret, absent a few exceptions.

The Ninth Circuit prohibits what Newman did: "It is improper **and unethical** for lawyers to interview jurors to discover what was the course of deliberation of a trial jury." *People of Territory of Guam v. Marquez*, 963 F.2d 1311, 1315 (9th Cir. 1992).(emphasis added)  The presiding juror – who is not a lawyer – knew to cut off contact.  Not only did Newman try to gain inside information for his appeal, but falsely assured the juror the propriety of providing him with this information. When Newman took these actions, he was already a member of the Bar for seventeen years. His pattern of conduct to "win at all costs" is present today, through the use of pretrial videos, and it undermines our system of justice.

### 6. <u>CONCLUSION</u>

For the reasons stated, the Court is requested to grant the motion.  Some of Newman's actions would never be allowed in a courtroom.  Our oaths as Court Officers must mean something.  Newman's action of notifying a group of Anti-Auditors that someone among them is next to be sued is outrageous.  This proves that his tagging by channel name *is* a direct point of electronic communication.

**[PROPOSED] AMICUS CURIAE BRIEF**

Defendant's videos inflict *pain,* such as targeting Frauditor Mani's wife, who is still a bride, and who never did a thing to Newman. In his zeal to capitalize on an untapped market, and to be the Auditor's lawyer of choice, Newman transformed himself into a lawyer that threatens the system – a system that is largely self-regulated.

Before this Court is a well-documented pattern of intentional rule breaking sourced directly to Newman. Untreated problems usually grow worse, not better. The proposed interim orders will stop the pretrial publicity, protect the Defendant's rights, and free persons from Newman's humiliation.  These interim orders will deter Newman from engaging in similar conduct for the other lawsuits he intends to file.

In closing, this motion is not about "retribution " or "punishment" against Newman, but preventing abuse that professional trial lawyers do not engage in.  We protect the room.  For my part, and with considerable hardship to myself, I have made the voices heard of those without a voice. I leave this now in the hands of the decision makers.


Dated: August 18, 2025    By:


_____

PATRICK J. D'ARCY,
In Amicus Curiae

**[PROPOSED] AMICUS CURIAE BRIEF**

# DECLARATION BY PATRICK J. D'ARCY

I, Patrick J. D'Arcy, declare as follows:

I am an attorney licensed to practice law before this Court, and was admitted on July 20, 2007.  I have personal knowledge of the matters stated herein, and if called as a witness I could and would testify competently thereto.

1.      This declaration is submitted in support of my notice motion for leave to file an amicus brief.  The exhibit highlighting was done by me, and in some instances, pages were removed due to a lack of relevance and for brevity.

2.      Exhibit 1 includes true and correct screenshots of videos made by Randall Newman, through his YouTube channel called "@TheDMCALawyer."  I have also seen him comment under the name of "UnhingedLawyer."  The Court will note the "#" markers for YouTube indexing, including "#DivineDelusion," and "#ElectronicJesus."  Exhibit 1-004 was a picture I took with my cellphone of a comment made by Newman in response to "@paulcohen2007."

3.      Exhibit 2 contains true and correct screenshots which shows that Newman is using channel tags to notify a channel of a message.  I know this because I too have a YouTube channel "@hoyaloya," and I receive such "tagged" notifications.  The notifications are comprehensive – it gives a thumbnail of the video, a link and its description.  Unlike "junk" mail, they remain visible with a historical list.  Exhibit 2-006 are arrows I drew on the page to show the comments that Newman had deleted regarding client solicitation.

4.      Exhibit 3 contains true and correct screenshots of Newman's pretrial publicity of this case, other cases, and planned lawsuits.  In Exhibit 3-003, Newman and Cordova did a livestream which discussed service upon Frauditor Troll, and which disclosed his email address.  Exhibit 3-012 is an example of Newman tagging Anti-Auditor channels (all highlighted), and where he states that someone within that list will be sued.

**MOTION FOR LEAVE RE:
PROPOSED AMICUS
CURIAE BRIEF**

5.      Exhibit 4-001 contains a true and correct screenshot of Mr. Huneault (as a "loser"), exhibit 4-002 depicts BlackHartKnight as "special needs" while drooling, and exhibit 4-004 is a picture I took with closed captioning "on," to show that Newman is saying to Dr. Dave (who did this video showing Newman with lipstick and eyeshadow), "I will sue you for fun."

6.      Exhibit 5 contains a true and correct screenshot of Cordova's video where he lists personally identifiable information about the police, including their names, badge numbers and cell phone numbers.

7.      Exhibit 6 contains pictures and videos that speak for themselves.  I obtained them from Frauditor Mania.  He emailed informed me that he asked Newman to stop calling him "Mailroom Boy," but Newman continues to upload videos with that term in it.  I highlighted in green what was obtained from Newman's channel.

8.      Exhibit 7 is really for information only.  I contributed $5 to it, but Newman refunded the money the following day.

9.      Exhibit 8 are true and correct excerpts from Newman's LinkedIn profile.  I pulled the *Office Space* docket, and did a video about how it was dismissed on Rule 12(b)(6) grounds, and that Newman was, according to him, paid $10K to jointly dismiss the appeal.  I could not equate this to a "favorable outcome," after deducting splits, taxes and costs.

10.      Exhibit 9 contains what I obtained from Newman's YouTube channel.  Exhibit 9-002 to 9-006 is a "loose" YouTube transcript, but it contains errors.  Of importance to me was page 9-004 (highlighted), where Newman says on the video, "Hey Pat, uh, here's [sic] subpoena looks like."  I interpreted that as yet another defamatory comment about me to his subscriber base, consistent with the other videos that question my intelligence and abilities as a lawyer.  I put up a video that showed that Google responded to my subpoenas and produced documents from eight years ago.  I not only proved that I knew what subpoenas were, but called out Newman for the false assertion about my abilities.

22

**[PROPOSED] AMICUS CURIAE BRIEF**

11.    Exhibit 10 are true and correct copies of documents I pulled from a federal lawsuit that Newman lost, including a docket entry containing a Facebook conversation between him and the presiding juror after the case concluded.  I highlighted the part where Newman admits to never previously trying any cases to a jury - even though he was admitted to the Bar 17 years earlier. The issue to me is his interactions with the juror, and his admitted lack of jury trial experience while his LinkedIn profile says he is a "Litigation Attorney," a "Leader in High-Stakes Complex Cases," and that he handles "Civil Litigation."  [Ex. 8-001.]  If he tried cases since that time, I did not uncover it, but I stopped looking after 20 cases.

12.    My contact with Frauditor Mania was by email only, and very brief.  I only had a few brief calls with Andrey Sloan, who as a retired police officer, is worried about being doxed.  BHK informed me that two auditors were actively trying to get him fired from his job, one of which call-flooded his employer, and another sent false information about him to both the Canadian and United States authorities in an effort to have them arrested.  My interactions with Dr. Dave and Troll Media Group, BHK and Sloan were to get local counsel, as I could not represent them.  I had significantly more contact with Frauditor Troll, but I informed him that I could not represent him as counsel of record at this time, and to obtain a lawyer experienced in copyright law.

I declare under penalty of perjury that the foregoing is true and correct under the laws of the United States of America.  Executed on August 18, 2025, at Irvine, California.

_____

Patrick J. D'Arcy

[PROPOSED] AMICUS CURIAE BRIEF

**CERTIFICATE OF WORD COUNT**

Pursuant to Rules 29(a)(4)(G) and 32(g)(1), I certify that the accompanying "Patrick J. D'Arcy's [Proposed] Amicus Curiae brief, which was prepared using Times New Roman 14-point typeface, contains 5,609 words.  The Ninth Circuit, through local rule, accepts the 14,000 rather than the 13,000-word limit.  Under any standard, the brief is less than 6,500 words, which is less than the maximum for amicus briefs under Rule 33.1(d).  Word counts exclude, among other things, the cover, proof of service and tables.  Fed. R. App. P. 32(a)(5), (f).

This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: August 18, 2025

_____

Patrick J. D'Arcy

1 Park Plaza
Suite 380
Irvine, CA 92614
pat@patricklaw.net
(949) 988-7640

**[PROPOSED] AMICUS CURIAE BRIEF**

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange; I am over the age of eighteen years and not a party to the within entitled action; my business address is 1 Park Plaza, Suite 380, Irvine, CA 92614.

On the date below, I served the following document(s) described as **"AMICUS CURIAE'S NOTICE OF MOTION AND MOTION FOR LEAVE TO GRANT THE [PROPOSED] AMICUS CURIAE BRIEF FOR ORDERS TO: 1) ENJOIN FURTHER PRETRIAL PUBLICITY, INCLUDING PUBLIC COMMENTS AND UPLOADING OF NEW VIDEOS, AND THE TAKING DOWN OF EXISTING VIDEOS CONCERNING THIS LITIGATION; 2) TO REQUIRE ATTORNEY RANDALL S. NEWMAN TO ANSWER FOR ALLEGED UNPROFESSIONAL CONDUCT AS COUNSEL OF RECORD; and [PROPOSED] ORDER** on the interested party(ies) in this action by placing true copies thereof enclosed in sealed envelopes and/or packages addressed as follows:

Randall S. Newman, Esq.,
99 Wall Street, Post Office Box 3727
New York, New York, 10005
(212) 797-3735
rsn@randallnewman.net

☐ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **BY CM/ECF** I electronically served all persons noticed on the Court's CM/ECF system when filing the above papers.

☐ **STATE:** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ **FEDERAL:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 18, 2025, at Irvine, California.

_____
Patrick J. D'Arcy

**[PROPOSED] AMICUS CURIAE BRIEF**