Page 1 of 4
Case 1:15-cv-07685 Document 24 Filed 11/03/14 Page 1 of 4 PageID #:170
Case 1:10-cv-07811 Document 16-1 Filed 08/25/14 Page 1 of 5 PageID #:100

**10CV7811**



Lisa ▇▇▇ and Randy Newman facebook
Lisa ▇▇▇ e
to:
DAN_▇▇▇
10/22/2014 02:32 PM
Hide Details
From: Lisa ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ >

To: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇



FILED
11/3/2014
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Security:

To ensure privacy, images from remote sites were prevented from downloading. Show Images

History: This message has been replied to and forwarded.

Dan, here is a copy of the facebook conversation with Randy Newman, who was Jill Maremont's attorney. You will see the dropbox link in the message from .10/15, 6:13pm
.

- Conversation started October 11
  
- .10/11, 12:07pm
  **Randy Newman**

Lisa, as you might know, I'm one of the lawyers who represented Jill Maremont in the trial this week. I have been Jill's real attorney in this case since it was filed in 2010. I took the case on contingency, meaning I wasn't going to get paid unless I won. Obviously, I wouldn't accept a case on contingency unless I thought it was a really good case, which I have always believed Jill's case to be. In any event, I live in New York (originally from Cleveland), and I needed a Chicago lawyer to essentially sponsor me to allow me to appear in federal court in Chicago. I did 99.9% of the work in this case from 2010 up until about 2 months before trial when Mr. Rifkin, who has a Chicago office and is a trial lawyer, replaced the original Chicago firm that sponsored me. Although I'm a lawyer who files cases (usually to help consumers or to expose wrongdoing), I've

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JILL E. MAREMONT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 10 C 7811 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| SUSAN FREDMAN DESIGN GROUP, LTD. ) | |
| and SUSAN FREDMAN, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiff Jill Maremont sued Defendants Susan Fredman Design Group, Ltd. ("SFDG") and Susan Fredman over Defendants' alleged use of Maremont's Twitter and Facebook accounts without her permission. The Court granted summary judgment for Defendants on Maremont's Lanham Act, Illinois Right of Publicity Act, and common law right to privacy claims. Docs. 58, 164. Her claims for violation of the Stored Communications Act (the "SCA"), 18 U.S.C. § 2701 *et seq.*, proceeded to trial in October 2014, with the jury returning a verdict in favor of Defendants. Maremont has moved for a new trial pursuant to Federal Rule of Civil Procedure 59, arguing that the jury instruction on the elements of her SCA claim was misleading and prejudicial. Because Maremont's argument is without merit, her motion for new trial [248] is denied.

## LEGAL STANDARD

The decision to grant a new trial is committed to the Court's discretion. *Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 730 (7th Cir. 2013). In deciding whether to grant a new trial, the Court considers "if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving

**EXHIBIT 10-005**

**075**

party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014). Maremont may obtain a new trial based on incorrect jury instructions if she establishes that "(1) the instructions did not accurately state the law, and (2) the error prejudiced her because the jury was likely to be misled or confused." *Johnson*, 733 F.3d at 733. In considering whether Maremont was prejudiced, "the Court must consider the instructions as a whole, along with all the evidence and arguments in the case, and then decide whether the jury was misinformed about the applicable law." *Warfield v. City of Chicago*, 679 F. Supp. 2d 876, 884 (N.D. Ill. 2010).

## ANALYSIS

Maremont contends that she is entitled to a new trial because the Court erred in instructing the jury on the elements of her SCA claim. After reviewing the parties' proposed instructions, the relevant statute, and instructions used in other SCA cases, the Court drafted its own proposed instruction, which was then circulated to the parties for discussion. The instruction, as read and provided to the jury, was as follows:

> Plaintiff claims that Defendants SFDG and Susan Fredman violated the Stored Communications Act by accessing Jill ▓▓▓▓▓▓▓ personal Facebook account and the ▓▓▓▓▓▓ Twitter account between September 21 and December 11, 2009. Plaintiff has the burden of proving her Stored Communications Act claim by a preponderance of the evidence.
>
> In order to establish that SFDG or Susan Fredman is liable under the Stored Communications Act, Plaintiff must prove that the Defendant knowingly or intentionally:
>
> (1) accessed Jill Maremont's personal Facebook account or the ▓▓▓▓▓▓▓ Twitter account;
>
> (2) did so without authorization or in excess of its or her authorization; and
>
> (3) in doing so obtained, altered, or prevented Plaintiff's authorized access to a wire or electronic communication while it was in electronic storage in such system.

EXHIBIT 10-006

076

> The terms "knowingly" and "intentionally" mean that the Defendant realized what it or she was doing and was aware of the nature of its or her conduct, and did not act through ignorance, mistake, or accident. Knowledge or intent may be proved by the Defendant's conduct, and by all the facts and circumstances surrounding the case.

Doc. 237 at 16; Trial Tr. 444:3–23. Maremont challenges what she terms "paragraph 3" of the instruction, that she had to prove that a Defendant knowingly or intentionally "(3) in doing so obtained, altered, or prevented Plaintiff's authorized access to a wire or electronic communication while it was in electronic storage in such system."

The only issue Maremont raised before this instruction was read to the jury was that there was no need to include the option in paragraph 3 that Defendants "altered or prevented Plaintiff's authorized access." Maremont contended that the inclusion of these options for SCA liability could be "confusing" because she was not "mak[ing] any claim that they altered or prevented plaintiff's authorized access" but rather that "in so doing they obtained access to a wire or electronic communication." Trial Tr. 432:9–13. Because the SCA provides that a violation occurs if a defendant "obtains, alters, or prevents authorized access to a wire or electronic communication," 18 U.S.C. § 2701(a), and thus the instruction did not misstate the law, the Court overruled Maremont's objection.

Now, Maremont again challenges paragraph 3 of the Court's jury instruction, contending that it used the SCA's "misleading" language and also that it incorrectly included the word "Plaintiff." The Court can easily dispose of Maremont's second challenge, as Maremont never objected to the modification of the statutory language to include "Plaintiff's" before "authorized access" in that paragraph. To preserve this objection, Maremont was required to "state the same grounds when objecting to the jury instruction as [she] does in [her] motion for a new trial." *Schobert v. Ill. Dep't of Transp.*, 304 F.3d 725, 730 (7th Cir. 2002). This requirement exists so

3

EXHIBIT 10-007

077

that, if there is an error, the Court "can fix the problem before the case goes to the jury." *Id.* Although Maremont objected to the inclusion of the language "altered or prevented Plaintiff's authorized access," the objection was not based on the Court adding "Plaintiff's" before "authorized access" but rather on Maremont's argument that listing the three statutory liability options could be "confusing." Trial Tr. 432:5–13. This objection did not sufficiently preserve the argument that modifying "authorized access" was misleading and prejudicial. *See Chestnut v. Hall*, 284 F.3d 816, 820 (7th Cir. 2002) ("A party's failure to object to even that portion of a jury instruction questioned on appeal results in a waiver under Rule 51.").

Where an objection is not preserved, the Court may nonetheless correct an error in a jury instruction if the error is plain and it affects the party's substantial rights. Fed. R. Civ. P. 51(d)(2). *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 434 (7th Cir. 2009). "A party's substantial rights are affected so as to warrant reversal if the error is of such great magnitude that it probably changed the outcome of the trial." *Id.* (internal quotation marks omitted) (citation omitted). Under plain error review or even considering the objection not to have been waived, Maremont is not entitled to a new trial because paragraph 3 used the phrase "Plaintiff's authorized access." Maremont provides no argument as to why inclusion of this one extra word was error or how its inclusion caused the instruction to misstate the law. Nor does Maremont explain how the jury was misled by its use. Indeed, Maremont's focus here is too narrow, as the Court is to consider the jury instructions "as a whole, in a common sense manner, avoiding nitpicking." *Id.* at 433. But that is exactly what Maremont is doing—engaging in nitpicking in a belated attempt to find reversible error. And while the Court fails to see any error in its inclusion of "Plaintiff's" in the statutory text, even if it were problematic, "[i]t stretches the imagination to

4

**EXHIBIT 10-008**  078

suggest that the mistaken inclusion of one word in this set of jury instructions . . . made any difference in the outcome of the trial." *Id.* at 435.

As for Maremont's broader objection to the Court's use of paragraph 3, Maremont appears to contend that the Court should not have included paragraph 3 at all or at least should have modified the language to instead require only that the jury find that Maremont had private messages stored on her Facebook and Twitter accounts at the time Defendants accessed those accounts, as set forth in Maremont's new proposed instruction, Doc. 249-7. Maremont argues that the SCA is "a poorly written, ambiguous, and misleading statute." *See, e.g.*, Doc. 248 at 3.[1] But she cannot argue that paragraph 3 was a misstatement of the law and thus the Court's analysis could end there. *See* 18 U.S.C. § 2701(a) (setting forth the elements of the SCA statutory violation); *Hicks v. Forest Pres. Dist. of Cook County, Ill.*, 677 F.3d 781, 791 (7th Cir. 2012) ("A district court enjoys wide latitude in crafting jury instructions, and as long as those instructions do not misstate the law or fail to convey the relevant legal principles in full, they will stand.").

Going further, the Court respectfully disagrees with Maremont's argument that paragraph 3 was confusing because it did not adequately convey that the jury only had to find that at the time Defendants accessed her Facebook or Twitter accounts, Maremont had private messages stored on those accounts. Neither the statutory language nor the jury instruction based on that language is unclear or confusing. Rather, the jury instruction clearly provided three ways in which the jury could find that paragraph 3 was met: (1) Defendants obtained access to a wire or electronic communication, (2) Defendants altered access to a wire or electronic communication,

---

[1] Defendants take Maremont's argument that the statute is ambiguous and misleading to the extreme by arguing that, in that case, it should be deemed void for vagueness and unenforceable. But the Court need not even discuss this proposal, for as Maremont acknowledges in reply, she does not argue that the statute is void for vagueness.

5

EXHIBIT 10-009

079

or (3) Defendants prevented access to a wire or electronic communication. Because the instruction was phrased in the alternative, it was clear that the jury only had to find one of the three options and thus it was in the Court's discretion not to remove the statutory language in the face of Maremont's objection. The Court's decision to leave all three alternatives in the instruction thus cannot be said to have been prejudicial.

Post-trial, though, Maremont's objection to paragraph 3 has become broader, as she now contends that the Court should have used completely different wording and in fact submits a newly proposed instruction. That new wording focuses on whether there were private messages stored on her Facebook and Twitter accounts. *See* Doc. 249-7. But as discussed above, in order to preserve an objection, Maremont must have clearly specified the grounds for that objection before the jury was instructed. *Chestnut*, 284 F.3d at 819 ("Rule 51 requires not only that objections to jury instructions be made in a timely fashion and on the record, but also with sufficient specificity to apprise the district court of the legal and factual bases for any perceived defect."). Maremont never brought this issue to the Court's attention during any discussion of the jury instructions and instead acquiesced in the Court's decision to pattern the instruction on the SCA statute at issue. Maremont cannot now, in light of the verdict, propose changes to the jury instructions because with hindsight she can argue that one paragraph was confusing. Maremont had ample opportunity to request revisions of the jury instructions before the jury was charged, and any potential confusion that she now imagines occurred should have been addressed then. Because she did not, her challenge is waived. *See Schobert*, 304 F.3d at 730.

But even if Maremont's objection to paragraph 3 as a whole was not waived—or if it is considered under the plain error standard of review—the Court cannot find that a new trial is warranted. As already discussed, paragraph 3's language was clear in providing the jury with a

6

EXHIBIT 10-010

080

roadmap of what it needed to find. This same roadmap was used with no similar challenge in at least two other SCA cases. *See Cheng v. Romo*, No. 11-cv-10007-DJC, Doc. 129 at 15 (D. Mass. Mar. 7, 2014) (jury instructed that it had to find that defendant intentionally "obtained access to an electronic communication while it was in electronic storage in that system"); *Tech. Sys., Inc. v. Pyles*, No. 12-cv-00374-GBL-JFA, Doc. 132-1 at 27 (E.D. Va. Dec. 14, 2012) (jury instructed that it had to find that defendant "obtained, altered, or prevented authorized access to a wire or electronic communication while in electronic storage"). Maremont argues the use of the word "access" in both paragraphs 1 and 3 is misleading because it purportedly requires the jury to find that Defendants accessed more than just her Facebook or Twitter account. But the phrasing of paragraph 3, with its preliminary "in doing so," makes clear that its reference to the "accessing" of an electronic communication occurred via the paragraph 1 access to the Facebook or Twitter account. *See Cheng*, Doc. 129 at 15 (using "access" for more than one element of the claim as was used in jury instruction here); *Tech. Sys., Inc.*, Doc. 132-1 at 27 (same). A plain reading of the instruction and these other examples demonstrate that the Court's wording was appropriate.

Maremont also complains that the jury must have been confused by paragraph 3 of the SCA instruction because Defendants' counsel misunderstood the statute's elements. But the one does not equal the other, particularly where the Court made sure its instructions to the jury were clear and accurate statements of the law. Any confusion that arose because of Defendants' counsel's misreading of the statute prior to trial was corrected by the Court's explanation to counsel of the statute's elements at the pretrial conference. And although Defendants' counsel misrepresented what Maremont had to prove to establish an SCA violation during his closing argument by stating that Maremont had not shown that Defendants obtained a wire or electronic communication, Trial Tr. 469:24–470:2, Maremont did not object to that misstatement or request

EXHIBIT 10-011

081

a curative instruction. Instead, in his rebuttal argument, Maremont's counsel effectively and clearly argued that all that was required was that Defendants have accessed an electronic communication, not that they have read any private communication, and that the jury was to follow the instructions provided by the Court. Trial Tr. 471:15–472:5.

Additionally, Maremont argues that the jury's question asking for a definition of "electronic communication" demonstrates that paragraph 3 was misleading. But Maremont is merely speculating about the purpose of and reasoning behind the jury's question. After the trial, Maremont's counsel improperly attempted to obtain information about the jury's deliberations by contacting the presiding juror via Facebook, even though counsel acknowledged that Federal Rule of Evidence 606(b)(1) prevents jurors from testifying about the jury's deliberations. *See* Doc. 247 (communications between Maremont's counsel and the presiding juror). And although counsel would prefer that Rule 606(b)(1) "did not exist" so that "the mystery regarding whether the jury was mislead [*sic*] could have been easily and quickly resolved without the Parties having to incur the cost of this post-trial motion and possible appeal to the 7th Circuit," Doc. 248 at 6 n.3, the Supreme Court recently reaffirmed this rule, noting it was enacted to address "concerns that the use of deliberations evidence to challenge verdicts would represent a threat to both jurors and finality in those circumstances not covered by the Rule's express exceptions." *Warger v. Shauers*, --- U.S. ----, 135 S. Ct. 521, 528 (2014). There are numerous reasons why the jury could have asked for the definition of "electronic communication," and Maremont's speculation that it meant the jury had found for her on all but the third element is just one of many. But more importantly, the jury's question does not suggest that paragraph 3 did not accurately convey that Defendants had to obtain access to an electronic communication in order to violate the SCA. If anything, it only points to a failure of proof by Maremont due to an inadequate presentation of

8

the Facebook and Twitter private messages that would qualify as electronic communications under the SCA.[2]

Finally, Maremont argues that the use of a general verdict form compounds the jury instruction error because it is impossible to know what element the jury found Maremont did not prove and thus to determine whether the jury was misled by paragraph 3 of the SCA liability instruction. But the use of a general verdict form would only warrant a new trial if a prejudicial error was found.[3] When viewed against the entirety of the jury instructions, the evidence, and the arguments made by both sides during the trial, the Court is confident that the jury was not misled or confused by the wording used in paragraph 3 of the SCA instruction.

Although Maremont may now prefer a different SCA liability instruction, she cannot play "Monday morning quarterback" with the benefit of hindsight, propose a new paragraph 3 that never was raised with the Court, and contend that she was prejudiced because that instruction was not given. Having fully considered Maremont's arguments, the Court cannot discern any basis for granting her a new trial and thus her motion must be denied.

## CONCLUSION

For the foregoing reasons, Maremont's motion for a new trial [248] is denied.

Dated: February 13, 2015

SARA L. ELLIS
United States District Judge

---

[2] Indeed, in their response to Maremont's motion for new trial, Defendants suggest that Maremont did not introduce any evidence that there were stored communications on her Facebook or Twitter accounts and therefore they are entitled to judgment as a matter of law. Although the Court does not agree with Maremont that Defendants conceded the issue at trial, the Court does find that sufficient evidence of stored communications was introduced to allow the issue to be submitted to the jury.

[3] Even though both parties initially submitted special verdict forms, neither side objected to the Court's decision to use a general verdict form, acquiescing in its use.

9

EXHIBIT 10-013    083