PATRICK J. D'ARCY, State Bar No. 250174
In Amicus Curiea
1 Park Plaza, Suite 380
Irvine, California 92614
Telephone:  (949) 988-7640
Facsimile:   (949) 988-7641
Email: pat@patricklaw.net

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CHRISTOPHER J. CORDOVA,<br><br>　　　　　Plaintiff,<br>v.<br><br>JONATHAN HUNEAULT A/K/A "FRAUDITOR TROLL"<br><br>　　　　　Defendants. | CASE NO.: 5:25-cv-04685-VKD<br><br>**ASSIGNED FOR ALL PURPOSES TO: HON. VIRGINIA K. DEMARCHI**<br><br>**OPPOSITION TO EX PARTE APPLICATION "TO STRIKE NON-PARTY FILING OR FOR EXTENSION TO RESPOND TO PATRICK J. D'ARCY'S MOTION FOR LEAVE TO FILE AMICUS CURIAE."**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES;**<br>**DECLARATION BY PATRICK J. D'ARCY IN SUPPORT THEREOF** |

-1-

**OPPOSITION TO EX PARTE APPLICATION**

# MEMORANDUM OF POINTS AND AUTHORITIES

## OVERVIEW

Patrick J. D'Arcy (Amicus Curiae or D'Arcy") hereby opposes Christopher Cordova's ("Plaintiff") self-styled "Ex Parte Application To Strike Non-Party Filing Or For Extension Of Time To Respond To Patrick J. D'Arcy's Motion For Leave To File Amicus Curiae Brief" (the "Ex Parte").  D'Arcy certainly opposes any "striking" of D'Arcy's motion for leave to file his proposed amicus brief (the "Motion"), as both procedurally and substantively improper, and can be denied on both grounds.

## THE EX PARTE IS PROCEDURALLY IMPROPER

The Ex Parte can be denied on procedural grounds, as he failed to comply with Civil L.R. 7-10:

> "Unless otherwise ordered by the assigned Judge, a party may file an ex parte motion, that is, a motion filed without notice to opposing party, only if a statute, Federal Rule, local rule, or Standing Order authorizes ex parte filing. The motion must include a citation to the statute, rule, or order which permits the use of an ex parte motion to obtain the relief sought."

First, the Ex Parte fails to cite to any authority to hear it.  Second, Plaintiff did not provide a supporting declaration containing facts based on personal knowledge of exigent circumstances or irreparable harm.  Third, Plaintiff never contacted D'Arcy at all regarding notice, or any stipulations that could be reached before filing the Ex Parte.  [D'Arcy Decl., ¶1.]

Plaintiff betrays any exigent circumstances or irreparable harm by seeking a time-extension beyond that of a regularly noticed motion.  He filed this Ex Parte within hours.  The September 2, 2025 opposition date is set by Court rule.  If Plaintiff wanted a reasonable time extension, I would have, as a matter of professional courtesy, granted him one.  *Id.*  Fourth, no proposed order was submitted.

## D'ARCY WOULD HAVE STIPULATED TO AN ADDITIONAL 14 DAYS TO RESPOND IF HE HAD BEEN CONTACTED.

D'Arcy will agree to give Plaintiff an additional 14 days to respond to the Brief, making his opposition due September 16, 2025. [D'Arcy Decl., ¶1.] Amicus briefs typically do not provide for a reply, and this would allow the hearing to remain on calendar for September 23, 2025. To wait "until thirty (30) days after the first defendant appears" means allowing Plaintiff continued pretrial publicity and videos to an uncertain date.

## THERE ARE NO GROUNDS TO STRIKE THE MOTION.

Plaintiff cited to Seventh Circuit authority, in *Ryan v. CFTC* 125 F.3d 1062 (7th Cir.) ("*Ryan*"), rather than Ninth Circuit authority. *Ryan* was vacated by the U.S. Supreme Court, other than barring attorney's fees in amicus filings. *Ryan* was sourced from a Ninth Circuit case, *Miller-Wohl Co., Inc., v. Comm'r of Labor and Indus.*, 694 F.2d 203 ("*Miller*"). *Miller* was vacated by the United States Supreme Court in 479 U.S. 1050, 107 S. Ct. 919, 93 L. Ed. 2d 972 (1987) (vacatur referenced in *Alliance of Nonprofits For Ins. Risk Retention Group v. Barratt*, 2011 U.S. Dist. LEXIS 127208 (unpublished)). Even though *Ryan* is of no value, given *Miller's* vacatur, it still provided the authority to file D'Arcy's motion that Plaintiff omitted from his Ex Parte:

> "An amicus brief should normally be allowed (1) when a party is not represented competently or is not represented at all, (2) when the amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case), **or** (3) *when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide*." *Id.*, at 1063. (numbering and emphasis added).

### A. D'Arcy Doesn't Have To Be "Disinterested" To File A Amicus Brief.

Turning to relevant Ninth Circuit authority, the role of amici is not as limited

3

**OPPOSITION TO EX PARTE APPLICATION**

as Plaintiff argues. In *Funbus Systems, Inc. v. Cal. Public Utilities Com.*, 801 F.2d 1120, 1125 (9th Cir. 1986) ("*Funbus*"), the Ninth Circuit stated, "Moreover, we have stated that there is no rule that amici must be totally disinterested."

Plaintiff once again takes swipes at D'Arcy, claiming he is only supportive of the anti-Auditors, when D'Arcy has donated financially to other Auditor channels when the situation presents a topic he is interested in and promotes justice. [D'Arcy Decl., ¶8.]

### B. D'Arcy's Motion Is Procedurally Proper.

*Ryan* provides three grounds to file an amicus brief while largely tracks to the federal rules. D'Arcy's motion is not only procedurally proper, but satisfied choice "(3)" under *Miller*. D'Arcy's Motion complies with Fed. R. App. P. §§ 29(a)(1) – (a)(5), which, among things, required a motion under subsection (a)(3)(A), and, consistent with subsection (a)(3)(B), be both "desirable" and "relevant to the disposition of the case."

### C. The Motion Brings Insights Regarding Highly Improper Pretrial Publicity, Witness Intimidation, And The Tainting Of The Jury Pool

Even in the Ex Parte, the most Plaintiff will do is acknowledge mocking D'Arcy's faith [Ex. 1], when D'Arcy isn't the issue, *but is the pretrial publicity of the case, the Defendant, the parties in the other cases he filed, and witness intimidation*. Even now, Plaintiff fails to address the evidence stacked against him that goes way beyond D'Arcy. What D'Arcy presented are very unique assessments of how Newman and Cordova's actions will subvert the most important part of a trial: the right to an impartial jury, which protects *all* litigants. The Motion seeks modest relief – have Newman and Cordova take down their existing videos about this case, stop uploading new ones, and stop talking about the case on YouTube during livestreams, as thousands of people have watched his one-side videos. Cordova and the Defendant are both entitled to a fair trial. What isn't requested of

4

**OPPOSITION TO EX PARTE APPLICATION**

1  Newman isn't so "modest," but he needs to be accountable.

**D. The Motion Seeks Orders That All Litigants And Lawyers Are Expected To Comply With.**

The Motion's interim orders are about fairness, especially where Newman and Cordova brand the Defendant a "Loser" [Ex. 4-001] who is "stealing" content, is going to lose the case, that "You can run, but you can't hide" [Ex. 3-007], and is "trying to cover his tracks" [Ex. 3-010], among others. The Defendant has not made any videos about the litigation, but Newman and Cordova, as shown in Exhibit 3 to the Motion, are constantly beating the drum about "litigation updates," which tend to always portray the Defendant (and others) in a negative light.

**THERE WAS NO "THREAT"**

Newman's videos consistently brand D'Arcy as incompetent, a lunatic and dumb. There are eight made specifically about him, but that doesn't count how D'Arcy is the subject of pretty much everything that Newman and Cordova discuss about the case, including livestreams. Newman now calls a "threat" what he originally claimed confusing, which is unsurprising. Newman again removes context. Defending those who have no voice is not a "threat." What Newman does is threaten persons on a constant basis, and their fear is real.

Yes, Newman did bring D'Arcy into Newman's life, what with the defamation and character assassination through at least seven videos (and counting). Newman scored a bullseye in defaming a defamation lawyer, who had one case reach the California Supreme Court twice. D'Arcy was previously retained as appellate counsel in Los Angeles, and successfully reversed the trial court on two anti-SLAPP motions, and stripped away First Amendment protection to a *Twitter* account which claimed a "parody" defense to mock and berate others, as Newman has done.

Yes, it's going to be "expensive" when anyone seeks to make a series of videos to destroy someone's name, such as when Newman claimed that D'Arcy – an

5

**OPPOSITION TO EX PARTE APPLICATION**

accomplished trial lawyer - didn't even know what a subpoena was [Ex. 9-004], that D'Arcy said to use the *California Style Manual* in federal court, that he suffers from delusions, is dumb, among other things.

Yes, there will be times when I will help to fund his adversaries. As mentioned in the Motion, Newman and Cordova are steamrolling over elderly and retired persons, and putting them in fear of being sued, and then publicly announcing it. Channels are going down, and Newman is bragging about it. These persons, like Cordova, cannot afford the federal filing fees. Exhibit 7 is a Newman's opening of a "Go Fund Me" to cover the filing fee of $405 for a new lawsuit because Cordova cannot afford it.

D'Arcy can, as he has done for many years, assist those who lack the resources and have no voice, and protect them from being abused. There is no evidence D'Arcy did anything wrong, and the Motion seeks to protect a litigant's rights. Newman plays the victim, ignores his wrongdoing, and blames shifts in all directions. It's exhausting. We are here because of him.

The Court will note that I did not file any Motions in the other pending matters, and hoped that the Court will grant the Motion so that Newman will be similarly restrained in other cases and to avoid this highly prejudicial pretrial publicity and completely unwarranted smear campaign against his rivals.

### **D'ARCY DID NOT "BOAST" ABOUT SPENDING $24K TO FILE THE MOTION.**

Plaintiff claims that D'Arcy is "boasting that he spent $24,000 preparing a brief that contains no meaningful law and instead consists largely of memes and screens from the YouTube commentary." [Ex Parte, 8:9-12.] Plaintiff misconstrues the basis for the $24,000 disclosure – all amicus briefs require that the Court be made aware of the costs to prepare the Motion and if any persons funded it. D'Arcy complied with the rule and no outside sources contributed any funding warranting further disclosure.

6

**OPPOSITION TO EX PARTE APPLICATION**

## THE PROPOSED AMICUS BRIEF INTENTIONALLY AVOIDS DISCUSSING THE FACTS AND ARGUING THE MERITS.

Plaintiff states that:

"D'Arcy has no connection whatsoever to this case or any other pending case involving the parties, and his submission advances no legal authority or *factual analysis* that could assist the Court. Notably, D'Arcy's submission does not even attempt to address 'fair use,' the very doctrine long invoked by the anti-auditor community to justify wholesale reposting of Plaintiff's work."   [Ex Parte, 6:5-10.] (emphasis added)

Once again, Plaintiff misstates the point of an amicus brief: they are not supposed to provide any "factual analysis," or argue the merits of a "fair use" defense.  Turning again to *Funbus*, the Ninth Circuit rejected Plaintiff's position: "These amici do not present 'highly partisan…account[s] of the facts, or indeed, *any* account of the facts; they take a legal position and present legal arguments in support of it, a perfectly permissible role for an amicus."  *Id.*, at 1125.  (emphasis retained)

An amicus brief serves to provide *insight* t*hat would be "desirable" and "relevant"* t*o the Court.*  The proposed amicus filing discusses what Plaintiff and Cordova have done through extensive pretrial publicity while trumpeting their version of the facts through livestreams and videos, and the vilification and demonization of witnesses and other litigants, including BlackHartKnight, Frauditor Mania, "Dr. Dave" and others.  Also brought to the Court's attention are Newman's anti-Semitic comment that Paul Cohen called "an obsession," and Newman's racist, misogynist and anti-Christian videos.  Newman and Cordova also omit that the amicus brief serves to avoid juror backlash against *them*, through interim orders to stop with the uploading of videos and to take down those concerning the litigation.

Plaintiff argues that "D'Arcy is not a party to this case, nor does he represent any party to any pending action." [Ex Parte, 5:9-10.]  D'Arcy agrees completely, as that's precisely the role of an amici.

7

**OPPOSITION TO EX PARTE APPLICATION**

## THE MOTION IS NOT ABOUT NEWMAN'S ATTACKS ON D'ARCY'S FAITH, BUT NEWMAN'S SHARP LITIGATION TACTICS.

Newman argues that the Motion is really about the "personal ridicule [of D'Arcy] and hurt feelings and to increase Plaintiff's litigation costs, not to assist the Court." This is false. [D'Arcy Decl., ¶6.] While arguing this point, he ignores Exhibits 2-11, which deal with persons other than D'Arcy. Exhibit 1, which concerns D'Arcy, is just four of 58 pages of exhibits, or 7% of the total.

In fact, the Motion does *not* request that Newman take down any videos about D'Arcy at all. In the Motion, D'Arcy mentioned uploading his miraculous sighting so that his enemies would use it to discredit him, and in so doing, bestow blessings upon him, allow persons such as Newman to unwittingly spread the Gospel, and possibly save a soul. In fact, despite hundreds of thousands of persons visiting D'Arcy's YouTube channel since the video was uploaded, Newman is the only one to use it to mock D'Arcy. *Id.* at ¶7.

The "*hurt feelings*" did not deal with D'Arcy, but by such persons as BlackHartKnight ("BHK"), an educator shown as a drooling "special needs" person "riding the short bus"; Frauditor Mania, and especially his wife, where Newman made videos about Frauditor Mania as a "*Mailroom Boy*," together with the outrageous racist drawings, and videos that targeted his new bride with imagery and comments we will not repeat.

## D'ARCY DID NOT PUBLICIZE HIS MOTION

Consistent with stopping all pretrial publicity, D'Arcy instructed his clients not to do videos about the Motion. [D'Arcy Decl., ¶5.]

## CONCLUSION

The application should be denied.

Dated: August 19, 2025

**PATRICK J. D'ARCY, APLC**

By: _____

PATRICK J. D'ARCY,

Attorney

**DECLARATION BY PATRICK J. D'ARCY**

I, Patrick J. D'Arcy, declare as follows:

I am an attorney licensed to practice law before this Court. I have personal knowledge of the matters stated herein, and if called as a witness I could and would testify competently thereto. This declaration is submitted in opposition to Plaintiff's "Ex Parte Application To Strike Non-Party Filing Or For Extension To Respond To Patrick J. D'arcy's Motion For Leave To File Amicus Curiae" (the "Ex Parte"). Capitalized terms are as set forth in the Motion.

1. At no time did Newman reach out to me before filing this Ex Parte. I would have provided a reasonable time extension if he requested, but not more than 14 days, given the hearing being set for September 23, 2025.

2. I was not served with any supporting declaration based upon personal knowledge where either Newman or the Plaintiff provide factually sufficient exigent circumstances or that irreparable harm warranting the Ex Parte, or that would arise from the Motion being granted.

3. The Motion, is not, as Newman contends, based on my personal animus towards him. The main focus of the Motion is on the Defendant, and his right to a fair trial. For instance, the proposed interim orders almost entirely concern the Defendant and the "Litigation," and if it applies to me, it does so indirectly. In fact, I have not suggested that he take down the videos mocking my faith.

4. Part 6(e) of the proposed order does concern me, as it would any Court Officer being harassed and having his faith attacked through at least seven videos. There simply is basis for Newman to publicly vilify me as incompetent, mentally deranged and stupid.

5. Newman sees fit to publicize this Litigation with at least eight videos about me, plus the Defendant and other persons. Without waiving the attorney-client privilege and attorney work-product doctrine, I instructed my clients who reached out to me to not put up any videos about the Motion, so as to avoid more

10

**OPPOSITION TO EX PARTE APPLICATION**

pretrial publicity.

6.    What Newman is now calling a "threat" he takes out of context. The video exposed his lies about me: that I didn't know what a subpoena was, that I supposedly stated or said that you use the *California Style Manual* for federal court briefing, and his insinuations that I am not mentally sound or lucid, all of which serves his goals of ridiculing me and harming my reputation. His litigation model consists of sharp litigation tactics, and the persons he targets are largely unable to afford a lawyer. I wanted to give them a voice. He has scared many people with his behavior. If I need to spend money to keep them from being rolled over, then I will do it. This Motion, while difficult and very time-consuming, gave persons hope that the Court will intervene and stop Newman's sharp litigation tactics.

7.    In the Motion, I mentioned uploading his miraculous sighting so that my enemies would use it to discredit me, and in so doing, bestow blessings upon me, allow persons such as Newman to unwittingly spread the Gospel, and possibly save a soul. In fact, despite hundreds of thousands of persons visiting my YouTube channel since the video was uploaded, Newman is the only one to use it to mock me.

8.    Newman falsely states that I only support the "anti-Auditors," which is untrue. I subscribed and watch videos of some Auditor channels, including supporting their channels through donations.

I declare under penalty of perjury that the foregoing is true and correct under the laws of the United States of America. Executed on August 19, 2025, at Irvine, California.

_____
Patrick J. D'Arcy

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange; I am over the age of eighteen years and not a party to the within entitled action; my business address is 1 Park Plaza, Suite 380, Irvine, CA 92614.

On the date below, I served the following document(s) described as **"Patrick J. D'Arcy's Opposition to "Ex Parte Application To Strike Non-Party Filing Or For Extension To Respond To Patrick J. D'Arcy's Motion For Leave To File Amicus Curiae"** on the interested party(ies) in this action by placing true copies thereof enclosed in sealed envelopes and/or packages addressed as follows:

Randall S. Newman, Esq.,
99 Wall Street, Post Office Box 3727
New York, New York, 10005
(212) 797-3735
rsn@randallnewman.net

☐ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **BY CM/ECF** I electronically served all persons noticed on the Court's CM/ECF system when filing the above papers.

☐ **STATE:** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ **FEDERAL:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 19, 2025, at Irvine, California.

_____
Patrick J. D'Arcy