RANDALL S. NEWMAN (SBN 190547)
Attorney at Law
99 Wall St., Suite 3727
New York, NY 10005
212.797.3735
rsn@randallnewman.net

*Attorney for Plaintiff,*
*Christopher J. Cordova*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER J. CORDOVA, <br><br> Plaintiff, <br><br> vs. <br><br> JONATHAN HUDON-HUNEAULT, NNEKA OHIRI, <br><br> Defendants. | Case No. 25-cv-04685-VKD <br><br> **HON. VIRGINIA K. DEMARCHI** <br><br> *EX PARTE* **APPLICATION FOR ORDER AUTHORIZING ALTERNATIVE SERVICE** |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Christopher J. Cordova ("Plaintiff") will and hereby does apply to the Court *ex parte* for an Order pursuant to Fed. R. Civ. P. 4(f)(3) authorizing service by alternative means on defendants Jonathan Hudon-Huneault ("Huneault") and Nneka Ohiri ("Ohiri") (collectively, "Defendants").

This application is based upon the Memorandum of Points and Authorities; the attached Declaration of Randall S. Newman ("Newman Decl."); upon all pleadings and evidence on file in this matter; and upon such additional evidence or arguments as may be accepted by the Court.

Dated:  September 2, 2025                Respectfully submitted,

                                   By:  s/ Randall S. Newman
                                        Randall S. Newman, Esq.

                                        *Attorney for Plaintiff,*
                                        *Christopher J. Cordova*

# MEMORANDUM OF POINTS AND AUTHORITIES
## INTRODUCTION

Plaintiff seeks an order pursuant to Fed. R. Civ. P. 4(f)(3) authorizing service by email on Defendants. Defendants expressly agreed in nine separate DMCA counter-notices (the "Counter-Notices"), filed under penalty of perjury between July 2023 and October 2023, that they "will accept service of process" for any lawsuit related to the videos at issue, as required by 17 U.S.C. § 512(g)(3)(D). (ECF No. 20, Ex. A). Each Counter-Notice provided Defendants' physical and email address for service. (*Id.*).

Plaintiff filed this action on June 3, 2025 and attempted service at Defendants' provided address (99 Wall Street, New York, New York). (ECF No. 1, Newman Decl. ¶ 5 and Ex. B thereto). That address was demonstrably false; Defendants actually reside in Canada and lived there when they submitted the Counter-Notices. (Newman Decl. ¶¶ 10-12 and Ex. E thereto).

On August 30, 2025, Plaintiff filed an Amended Complaint adding Nneka Ohiri as a Defendant. (ECF No. 20). The amendment was based on new evidence from Google's Rule 45 production identifying Ohiri as the billing contact and monetizer of the YouTube channel at issue, together with Huneault's own public admissions that he and his wife operate the channel together. (Newman Decl. ¶¶ 7-13). These facts establish that Ohiri is married to Huneault and is jointly responsible with him for the channel's operations and revenues.

Defendants have actual knowledge of this lawsuit. Upon notification, the associated YouTube channel "Frauditor Troll" (https://www.youtube.com/@frauditortroll) (the "Frauditor Troll Channel") deleted over 1,700 videos. (ECF No. 8 at 4:15-28 and Ex. D thereto). Additionally, on August 18, 2025, Attorney Patrick J. D'Arcy ("D'Arcy") filed a

Motion for Leave to File *Amicus Curiae* brief which the Court denied.[1] (ECF Nos. 16, 19). In his Declaration, D'Arcy stated he spoke to "Frauditor Troll" and other YouTube channel operators about this lawsuit, "generally informed them to obtain local copyright counsel to respond to the lawsuit," and had "extensive" discussions specifically instructing Defendants to find counsel. (ECF No. 16 at 9-10).

Email service is reasonably calculated to provide actual notice and enforces the obligation Defendants accepted when they invoked the DMCA counter-notice process. The Court should grant this application.

I.  **FACTUAL BACKGROUND**

Between July and October 2024, Plaintiff submitted twelve DMCA takedown notices to YouTube to remove infringing videos that appeared on the Frauditor Troll Channel. (ECF No. 20, Amended Complaint ¶¶ 5, 48). Nine DMCA Counter-Notices were submitted to YouTube to restore those videos. (*Id.* ¶ 49 and Ex. A thereto). Each Counter-Notice contained the representation required by 17 U.S.C. § 512(g)(3)(D) that the filer "will accept service of process" for any lawsuit concerning those videos and provided a physical address of 99 Wall Street, New York, New York and an email address: frauditortroll@gmail.com. (*Id.*). These sworn representations were the condition for restoring the videos, and the channel, and its true owner, Ohiri, directly benefitted from them.

Plaintiff filed this action on June 3, 2025 (ECF No. 1), naming Huneault as a defendant based on the nine Counter-Notices. (Newman Decl. ¶ 3). Plaintiff sent several emails to Huneault with waiver forms to which he did not respond. (Newman Decl. ¶ 4 and Ex. A thereto). Instead, shortly after receiving those emails, the Frauditor Troll Channel

---

[1] On August 22, 2025, after the Court denied D'Arcy's "Amicus" motion, D'Arcy posted a video to his YouTube channel titled *The Amicus Curiae Brief Filed in the Frauditor Troll Lawsuit, and Its "Stealth Bomb" Implications*. In that video, D'Arcy essentially admitted that the purpose of his filing was not to assist the Court but to prejudice it against Plaintiff and his counsel with irrelevant YouTube drama. Plaintiff believes YouTube drama belongs on YouTube, not on the Court's docket. For the Court's convenience, the video is publicly available at: https://www.youtube.com/watch?v=bbNa4g_jbRg&t=7s.

deleted more than 1,700 videos including most of the videos at issue in this matter. (ECF No. 8 at 4:15-28 and Ex. D thereto; ECF No. 20, Amended Complaint ¶ 75).

Plaintiff then attempted to serve Huneault at the 99 Wall Street address and confirmed that the address provided in the Counter-Notices was false. (Newman Decl. ¶ 5 and Ex. B thereto). Plaintiff subsequently sought and obtained leave to serve a subpoena on Google prior to the Rule 26(f) conference. (ECF No. 12). On August 25, 2025, Google produced digital files in response to the Rule 45 Subpoena. (Newman Decl. ¶ 10). That production confirmed that Huneault lied in the Counter-Notices about being the owner of the Frauditor Troll Channel and that the channel was never connected to the 99 Wall Street address. (Newman Decl. ¶¶ 10-13 and Ex. E thereto). Instead, Google's records identified Ohiri as the channel's owner and monetizer. (*Id.*). Google also produced a purported Canadian mailing address for Defendants. (*Id.*). However, given their proven history of fabricating an address under penalty of perjury, there is no basis to conclude that this newly disclosed address is authentic or suitable for service. Even if it were genuine, all evidence indicates that Huneault and Ohiri will continue to evade service if Plaintiff is forced to attempt international service there.

Public admissions confirm Defendants jointly operate the Frauditor Troll Channel and reside together in Canada. In an August 7, 2025 "face reveal" video, Huneault identified himself by real name and stated that "my wife calls me Joe," that "we live in Canada right now," and that "me and my wife appreciate every single one of you" who support their channels. (Newman Decl. ¶ 7). These statements confirm that Ohiri is married to Huneault, resides with him in Canada, and jointly benefits from the Frauditor Troll Channel's operations and revenue.

In addition to the frauditortroll@gmail.com address designated in the Counter-Notices, Defendants maintain and actively use several other email accounts associated with their other YouTube channels "15 Minutes of Shame," "Josh Prime," "Josh Prime Gaming," and "Josh Prime Streams," including JoshPrimeYT@gmail.com, thenextgengamesyt@gmail.com, and joshprimestreams@gmail.com. (Newman Decl. ¶ 8

and Ex. C thereto). Defendants have promoted these addresses publicly in connection with their YouTube operations, livestreams, and channel monetization. (*Id.*). Further, D'Arcy, whose email address is pat@patricklaw.net, admitted in his purported "Amicus" submission that he had extensive discussions with Defendants regarding this lawsuit. Service to these addresses is therefore reasonably calculated to provide actual notice. (ECF No. 16 at 9-10, Newman Decl. ¶ 9 and Ex. D thereto).

Defendants' awareness of this case is beyond dispute. Their refusal to accept service tracks directly with D'Arcy's threat to make this litigation "very expensive and difficult". (ECF No. 17 at 3:12-16).[2] This demonstrates that Defendants' evasion is not incidental but strategic, likely guided by D'Arcy's advice, and will continue absent court intervention.

## II.    Argument

Service of process must comply with the requirements of due process. The Supreme Court has long held that the "fundamental requirement of due process is the opportunity to be heard" and that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The method of service need not be perfect or guarantee actual notice; it is sufficient if the chosen method is reasonably certain to inform the defendant, or, where conditions do not reasonably permit such certainty, that it is not substantially less likely to provide notice than other feasible alternatives. *Id.* at 315.

Federal Rule of Civil Procedure 4(f) permits several methods of service on foreign individuals, including service "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). "[C]ourt-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)." *Rio Props*., *Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). In other words, "Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands

---

[2] https://www.youtube.com/watch?v=sn-7Wabymew&t=222s at 3:42.

independently, on equal footing. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means." *Id.*; *see also Brockmeyer v. May*, 383 F.3d 798, 806 (9th Cir. 2004). Thus, as one leading treatise explains, the "use of a court-directed means for service of process under Rule 4(f)(3) is not a disfavored process and should not be considered extraordinary relief." Wright & Miller, 4B Fed. Prac. & Proc. Civ. § 1134 (3d ed.).

In evaluating a motion to authorize service by alternative means on a foreign defendant, courts consider whether the requested means of service is (1) "reasonably calculated to provide actual notice" to the defendant, and (2) not prohibited by an international agreement. *Rio Props.*, 284 F.3d at 1014, 1016; *see also Liberty Media Holdings, LLC v. Vinigay.com*, 11-cv-0280-PHX-LOA, 2011 WL 810250, at *2 (D. Ariz. Mar. 3, 2011) ("Under Rule 4(f)(3), a method of service must comport with constitutional notions of due process and must not violate any international agreement."). Both conditions are met in this case.

    **A.**    **Service by email is reasonably calculated to provide actual notice of this lawsuit to Defendants**.

To satisfy the constitutional requirement of due process, an alternative method of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rio Props.*, 284 F.3d at 1016. Email fits that bill. That is especially true in cases like this one in which defendants conduct their business online and rely heavily on electronic communications. The Ninth Circuit recognized that email is a reliable method of alternative service, particularly when used to serve defendants who "embrace[] the modern ebusiness model and profit[] from it":

> [W]e conclude not only that service of process by email was…reasonably calculated to apprise [defendant] of the pendency of the action and afford it

an opportunity to respond [but also that] it was the method of service most likely to reach [defendant].

. . .

Although communication via email and over the Internet is comparatively new, [it] has been zealously embraced within the business community. [Defendant] particularly has embraced the modern e-business model and profited immensely from it. *In fact, [defendant] structured its business such that it could be contacted only via its email address.*

. . .

[W]hen faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process. Certainly in this case, it was a means reasonably calculated to apprise [defendant] of the pendency of the lawsuit, and the Constitution requires nothing more.

*Rio Props.*, 284 F.3d at 1017-18 (emphasis added).

Email has become ubiquitous since *Rio Props.* was decided, reinforcing both its reasoning and its conclusion. As a result, courts now routinely conclude that email is reasonably calculated to give notice, typically when one or more of the following factors are present: (1) the foreign defendant does business on the Internet; (2) the foreign defendant relies on electronic communications to operate its business; (3) the foreign defendant does not provide a physical address or provides a physical address that is unsuitable for service; and/or (4) the foreign defendant evades personal service or makes personal service difficult. *See, e.g., California Beach Co., LLC v. Exqline, Inc.*, 20-cv-01994-TSH, 2020 WL 8675427, at *4 (N.D. Cal. Jul. 7, 2020); *Gucci America, Inc. v. Huoqing*, 09-cv-05969-JCS, 2011 WL 31191, at *2-3 (N.D. Cal. Jan. 3, 2011) (noting that court granted motion for email service on foreign defendant); *Gurung v. Malhotra*, 10-cv-5086-WM, 2011 WL 5920766, *1 (S.D.N.Y. Nov. 22, 2011) (same); *Bank Julius Baer &*

*Co. Ltd v. Wikileaks*, 08-cv-00824-JSW, 2008 WL 413737, at *2 (N.D. Cal. Feb. 13, 2008) (authorizing email service).

Email service is particularly appropriate in this case because all four factors are present.

*First*, Defendants are clearly involved in commercial Internet activities. They operate the Frauditor Troll Channel and several other monetized YouTube channels. (Newman Decl. ¶¶ 7-8).

*Second*, Defendants relied and continue to rely on electronic communications to conduct business. Defendants' Counter-Notices were submitted to YouTube via email, and their YouTube channels depend entirely on electronic communications for monetization and audience engagement. (ECF No. 20, Amended Complaint, Ex. A).

*Third*, Defendants held out a physical address that was invalid and unsuitable for personal service. (Newman Decl. ¶ 5, 10-13 and Ex A thereto). In contrast, Defendants corresponded with YouTube and Plaintiff himself via email, strongly suggesting that email is the best way to contact Defendants. (ECF No. 20, Amended Complaint ¶¶ 54-56 and Ex. A thereto). *See Vinigay.com*, 2011 WL 810250, at *4 ("Plaintiff has shown that because Defendants conduct business through the internet…service through email will give Defendants sufficient notice and opportunity to respond."). And while Plaintiff is unaware of the true physical address of Defendants, Plaintiff has several valid email addresses for Defendants and a valid email address for D'Arcy. (Newman Decl. ¶¶ 8-9 and ECF Nos. 16, 18).

Although Google's production included a purported Canadian address for Defendants, that does not change the analysis. In their DMCA counter-notices, Defendants represented under penalty of perjury that 99 Wall Street, New York, was their address for service. That representation was false. Having once provided a fabricated address under oath, Defendants cannot now be trusted to have provided an authentic or serviceable address to Google. Courts are not required to indulge serial misrepresentations by forcing Plaintiff to waste time and resources chasing phantom addresses.

Moreover, even if the Canadian address were genuine, it does not diminish the appropriateness of email service. Defendants expressly agreed in the nine Counter-Notices that they "will accept service of process" at the email address provided. That sworn promise required by 17 U.S.C. § 512(g)(3)(D)[3] is itself sufficient to satisfy due process. *Rio Props.* makes clear that Rule 4(f)(3) "is not subsumed within or in any way dominated by Rule 4(f)'s other subsections" and is not a method of "last resort." 284 F.3d at 1014. The Court may authorize email service in the first instance without requiring Plaintiff to attempt physical service abroad, particularly where Defendants have already chosen email as their designated method of service.

*Fourth*, Defendants have frustrated efforts to serve them in a variety of ways. They provided an invalid physical address in New York; Huneault misrepresented ownership of the Frauditor Troll Channel; and Huneault ignored Plaintiff's attempts to contact him via email. (Newman Decl. ¶¶ 3-5).

In sum, Defendants have refused to acknowledge this lawsuit, hoping that Plaintiff (and the Court) will let them off the hook if they ignore it long enough. Their intransigence should not be rewarded. Because Plaintiff has been diligent and persistent in its efforts to contact and serve Defendants; because Defendants have resisted those efforts despite considerable evidence that they know about this lawsuit; and because email is reasonably calculated to give Defendants actual notice of this case, the Court should grant Plaintiff's motion and permit Plaintiff to serve Defendants via email. *See, e.g.*, *Rio Props.*, 284 F.3d at 1018 ("[W]hen faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process.").

Unlike the typical alternative-service motion, this application does not rest solely on Defendants' evasion or the unreliability of their physical address (though both are present). It is grounded in Defendants' prior, voluntary designation of email as an accepted means

---

[3] 17 U.S.C. § 512(g)(3)(D) requires that a counter-notice include: "a statement…that the subscriber will accept service of process from the person who provided notification under subsection (c)(1)(C) [the DMCA takedown notice] or an agent of such person."

of receiving process in a statutory counter-notice regime designed to trigger litigation. This case thus presents an even stronger record than a case like *Facebook, Inc. v. Banana Ads, LLC,* No. 11-cv-3619-YGR, 2012 WL 1038752 (N.D. Cal. Mar. 27, 2012) where the court authorized email service because it was the most reliable means available. Here, email is not only the most reliable means, it is the one Defendants expressly chose when they submitted the nine Counter-Notices to YouTube to have their infringing videos restored.

Words in statutes, contracts, and court filings are to be given their plain meaning and effect. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (courts must give effect, if possible, to every clause and word of a statute). This principle applies equally to representations made to the Court and to the parties in litigation.

Here, Defendants expressly stated nine times in the Counter-Notices, under penalty of perjury, that they "will accept service" at the physical address or email address they provided. That statement was not idle fluff; it is a key statutory representation required by 17 U.S.C. § 512(g)(3)(D). Congress included it so that copyright owners could rely upon it for service of process, thereby facilitating the efficient resolution of disputes without needless expense or delay.

If that representation can be ignored without consequence, forcing Plaintiff to chase Defendants across Canada with process servers, it renders the statutory language meaningless. This Court should avoid any interpretation that reduces such a congressional requirement to a nullity. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (courts are reluctant to treat statutory terms as surplusage).

Given Defendants' own voluntary, sworn statement of willingness to accept service, coupled with evidence that Defendants have actual knowledge of this case, service via the email address associated with the DMCA Counter-Notices (in addition to the email addresses identified below) is both reasonable and fully consistent with due process.

**B. Service on D'Arcy is also appropriate.**

Courts authorize email service on attorneys who have communicated with defendants about the case, even without formal representation. In *Columbia Pictures v.*

*Ex Parte* **Application for Alternative Service**

*Galindo*, 20-cv-03129-SVW-GJSx, 2021 WL 10139466, at *3 (C.D. Cal. Oct. 13, 2021), the court authorized service on an attorney who had litigated motions on behalf of a related defendant and contacted opposing counsel about the target defendant, despite the attorney's denial that he represented her. The court held that "due process does not require that the individuals served on behalf of foreign defendants have represented them or been authorized to accept service on their behalf." *Id.*

Here, D'Arcy's Amicus motion in connection with Defendants establishes a far stronger basis for service than existed in *Galindo*, where the attorney merely denied representing the defendant and had only spoken with opposing counsel about her. Unlike the passive communication in *Galindo*, D'Arcy voluntarily injected himself into this litigation by filing a motion on the docket, admitting extensive discussions with Defendants, and expressly tagging himself to Huneault in the court's electronic filing system. (ECF No. 16 at 9-10, Newman Decl. ¶ 9 and Ex. D thereto).

### C. Service by email is not prohibited by any relevant international agreement.

Canada is a signatory to or bound by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361, T.I.A.S. No. 6638 (1969) ("Hague Service Convention"). *See* Hague Conf. on Private Int'l Law, Status Table 14, http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last visited Sep. 2, 2025) (listing Canada as a signatory).

The Hague Service Convention does not expressly prohibit email service. *See, e.g.*, *Williams-Sonoma Inc. Friendfinder, Inc.*, 06-cv-06572-JSW, 2007 WL 1140639, at *2 (N.D. Cal. Apr. 17, 2007). In any event, the true address of Defendants is unknown. Although Defendants provided an address to Google for purposes of AdSense, based on the address in their fraudulent Counter-Notices, it would be reasonable to assume that they provided fraudulent information to Google as well. As a result, the Hague Service Convention is inapplicable. *See* Hague Service Conv., art. 1 ("This Convention shall not apply where the address of the person to be served with the document is not known.");

*United States v. Distribuidora Batiz CGH, S.A. De C.V.*, 07-cv-370-WQH-JMA, 2011 WL 1561086, at *5 (S.D. Cal. Apr. 21, 2011) (same). Accordingly, service by email on the Defendants residing in Canada is not prohibited by an international agreement.

## CONCLUSION

Defendants have evaded service despite Plaintiff's diligent efforts to locate, contact, and serve them, and despite overwhelming evidence that they are fully aware of this lawsuit. In nine separate Counter-Notices, Defendants expressly agreed under penalty of perjury to accept service of process, and they publicly stated that they had retained counsel and were "willing to defend [themselves] in a court of law." Having chosen email as their service channel and having benefited from the restoration of videos on that basis, Defendants cannot now disavow their own sworn commitment. Because email service is reasonably calculated to give Defendants actual notice of this lawsuit, the Court should authorize service via the following email addresses:

frauditortroll@gmail.com;

JoshPrimeYT@gmail.com;

thenextgengamesyt@gmail.com;

joshprimestreams@gmail.com; and

pat@patricklaw.net.

Dated:  September 2, 2025

/s/ Randall S. Newman
Randall S. Newman, Esq. (SBN 190547)
99 Wall Street, Suite 3727
New York, NY 10005
(212) 797-3735
rsn@randallnewman.net

*Attorney for Plaintiff,
Christopher J. Cordova*