Steven C. Vondran, [SBN 232337]
**THE LAW OFFICES OF STEVEN C. VONDRAN, PC**
620 Newport Center Drive, Suite 1100
Newport Beach, California 92660
Telephone: (877) 276-5084
steve@vondranlegal.com

Attorney for Defendant JONATHAN HUNEAULT
A/K/A "FRAUDITOR TROLL" (14693663 CANADA INC.)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER J CORDOVA | No. 5:25-cv-04685-VKD |
| Plaintiff, | Honorable Judge: Virginia K. DeMarchi |
| vs. | **NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).** |
| JONATHAN HUNEAULT A/K/A "FRAUDITOR TROLL" | |
| Defendant. | HEARING<br>Date: November 18, 2025<br>Time: 10:00<br>Place: 280 South 1st Street,<br>Courtroom: 2 (5th Floor), San Jose, CA 95113. |
| | *[Filed concurrently with proposed order, and declaration of Jonathan Huneault]* |

# <u>TABLE OF CONTENTS</u>

**Argument**                                                                                    **Page**

**I. INTRODUCTION**…………………………………………………    3-6

**II. MEMORANDUM OF POINTS AND AUTHORITIES**………..    6-24

  A. Issues to be decided…………………………………………..6-8

  B. Standard of Review Under Rule 12(b)(6)………………………………  6-8

  C. Plaintiff's Declaratory Relief Claim Is Duplicative and Should Be Dismissed……………………………………………….……….9

  D. Defendant's Use Is Transformative and Serves a Protected Purpose Without Market Harm……………………………………………...10-13

  E. The Asserted Works Are Factual and Receive Only Thin Copyright Protection………………………………………………………..13-16

  F. The Amount of Copying Was Reasonable and Necessary to Achieve That Purpose……………………………………………………..16-18

  G. Plaintiff's *17 U.S.C.* § 512(f) Claim Fails as a Matter of Law…19-21

**III. CONCLUSION**……………………………………………………..21

1

2

3

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Arista Records LLC v. Greubel, 453 F. Supp. 2d 961 (N.D. Tex. 2006)*.....*9*

*Ashcroft v. Iqbal, 556 U.S. 662 (2009)*……………………………………*7*

*Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605 (2d Cir. 2006)*..*12*

*Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687 (7th Cir. 2012)*...*8,13,17*

*Burnett v. Twentieth Century Fox Film Corp., 491 F. Supp. 2d 962 (C.D. Cal. 2007)*……………………………………………………………………………*8*

*Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569 (1994)*………...*8,10,11,12, 17*

*Equals Three, LLC v. Jukin Media, Inc., 139 F. Supp. 3d 1094 (C.D. Cal. 2015)*...*12*

*Ets-Hokin v. Skyy Spirits Inc., 323 F.3d 763 (9th Cir. 2003)*………………………*14*

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340 (1991)*………………*7,14*

*Fourth Estate Public Benefit Corp. vs. Wall Street.com, LLC* 586 U.S. 296 (2019)………………………………………………………………...…*12, 13, 14, 21*

*Galan v. Walt Disney Co., No. 2:20-cv-04145, 2021 WL 2533905 (C.D. Cal. June 17, 2021)*………………………………………………………………………*9*

*Harper & Row Publ'rs, Inc. v. Nation Enters., 471 U.S. 539 (1985)*………………*14*

*Hosseinzadeh v. Klein, 276 F. Supp. 3d 34 (S.D.N.Y. 2017), aff'd, 900 F.3d 39 (2d Cir. 2018)*…………………………………………………………………*12, 20*

*Kelly v. Arriba Soft Corp., 336 F.3d 811 (9th Cir. 2003)*………………………*15*

28

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ……………7

*Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109 (2d Cir. 1998) …………18

*Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016) ……………..19, 20

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018) ……………………..8, 15

*Ritchie v. United States*, 342 F.3d 903 (9th Cir. 2003) ……………………………7

*Rossi v. Motion Picture Ass'n of Am.*, 391 F.3d 1000 (9th Cir. 2004) …………19

*Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003) ……………………………………14

*Seltzer v. Green Day, Inc.*, 725 F.3d 1170 (9th Cir. 2013) ………………………12

*Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) ………………………15

*SOFA Entertainment, Inc. v. Dodger Productions, Inc.*, 709 F.3d 1273 (9th Cir. 2013)………………………………………………………………………………12

*Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004) …………………………………9

**Statutes**                                                                                     **Page**

*17 U.S.C.* §107……………………………………………………….1,5,14,15, 17, 20

*17 U.S.C.* §512(f) ……………………………………………..1, 3, 19, 20, 21, 22

**Rules**                                                                                          **Page**

*Fed. R. Civ. P.* 12(b)(6) …………………………1, 3, 5, 6, 7, 8, 9, 15, 19, 21, 22,

*Fed. R. Civ. P.* 12(d) ……………………………………………………………7

*Fed. R. Civ. P.* 56................................................................7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S**</u>

<u>**COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 18, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 2 (5th Floor) of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, California 95113, Defendant Jonathan Huneault, also known as "Frauditor Troll," (will and hereby does move this Court for an order dismissing the Complaint filed by Plaintiff Christopher J. Cordova pursuant to Federal Rule of Civil Procedure 12(b)(6).

This motion is made on the grounds that the Complaint fails to state a claim upon which relief can be granted. The challenged claims are barred by the doctrine of fair use under *17 U.S.C.* section 107, are unsupported by any plausible allegations of infringement, and otherwise fail to establish the elements required under federal law. Plaintiff's separate claim under *17 U.S.C.* section 512(f) likewise fails as a matter of law because Defendant's use of the material is lawful, transformative, and protected expression on a matter of public concern.

Defendant therefore seeks dismissal of the Complaint in its entirety, with prejudice, and an award of attorney's fees and costs as permitted under the

1

MOTION TO DISMISS

Copyright Act and other applicable law.  Moreover, two of the alleged copyright infringements lack registration, and the court thus lacks standing to hear them per the recent *Fourth Estate* case from the United States Supreme Court.  The cause of action for declaration judgement of copyright infringement is duplicative of the copyright infringement claim and should be dismissed.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Jonathan Huneault and attached exhibits, the pleadings and papers on file in this action, and such further argument and evidence as may be presented at the hearing.

Pursuant to Civil Local Rule 7-3, Defendant's counsel met and confer with Plaintiff regarding the issues raised in this motion but was unable to reach a resolution.

DATED this 13th day of October 2025

**THE LAW OFFICES OF STEVEN VONDRAN, P.C.**


By /s/ SteveVondran_____
Steven C. Vondran, Esq.
Attorney for Defendant
620 Newport Center Drive, Suite 1100
Newport Beach, California 92660
steve@vondranlegal.com

2

MOTION TO DISMISS

## MOTION TO DISMISS COMPLAINT

## I. INTRODUCTION

This motion seeks dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff, Christopher J. Cordova, has filed suit against Defendant Jonathan Huneault, known online as "Frauditor Troll," alleging copyright infringement, declaratory relief (a duplicative claim), and misrepresentation under *17 U.S.C.* section 512(f) for filing a counternotice. The claims arise entirely from Defendant's online parody and commentary video addressing the rather recent phenomenon of "First Amendment auditors" (individuals who instigate confrontations in public places and public forums with business owners and law enforcement officers for the purpose of creating video content, and of course, raising issues of "the First Amendment" which is an issue of public concern and importance).

These "auditors" record interactions with law enforcement or security personnel under the guise of testing constitutional rights and boundaries of the United States Constitution. The typical scenario involves auditors like the Plaintiff recording business owners on public streets or on public property (for example, in front of a police station and even in courthouses as Plaintiff has done) and seeking to get someone to approach them since this is seen as "creepy" to those they are recording.

3

Persons come out and ask them why they are shooting videos, sometimes through windows or in police parking lots. Eventually, these situations draw in not one, but typically many law enforcement officials (needlessly consuming public resources) who the auditor then seeks to confront with their purported superior knowledge of the First Amendment. In short, they assert their rights to NOT answer questions from law enforcement, and to belittle them if they are told they cannot film. The auditor then proudly announces they can do whatever they want because they are in a "public space" (also known as a public forum, including public streets). Then, for fun, entertainment, and profit, the auditor posts the videos for others to see and comment on. For the auditor, this is all fun and games and it comes at the expense of the public, who is paying for multiple law enforcement officers to show up to diffuse the situation which has by then built up into a lather.

While this may well be protected First Amendment activity, and while Plaintiffs like Cordova enjoy poking fun at public officers, they apparently do not like it when someone exercises their legal rights to parody to make fun of them. In other words, *they can dish it out, but they cannot take it.*

Defendant's video constitutes expressive conduct protected by the First Amendment and by the Copyright Act's fair use doctrine. Defendant's work is a satirical critique and a parody, combining excerpts of Plaintiff's audit footage with

4

MOTION TO DISMISS

original narration, humor, memes, and commentary to highlight and comment upon the broader social debate surrounding this genre of content. Such parody and commentary lie at the core of protected expression and are subject to fair use rights under *17 U.S.C.* section 107. The four-factor fair use inquiry is therefore at the core of this dispute and can be resolved on the pleadings where, as here, the transformative purpose, the factual nature of the source material, the limited and necessary amount used, and the absence of any plausible market substitution are evident from the Complaint and the works themselves.

The Complaint fails to allege facts that make their case plausible and overcome the obvious fair use defense that is apparent from the face of the works and the allegations. Under Rule 12(b)(6), where the works are incorporated by reference, courts may compare them directly and dismiss claims that cannot plausibly succeed as a matter of law.

Plaintiff cannot meet his burden to state a plausible claim because his allegations are barred by the fair use doctrine, and because there is no plausible likelihood of success on his (two <u>unregistered</u>) copyright infringement claims (and <u>duplicative</u> request for declaratory relief premised on the same alleged infringement), or on his DMCA misrepresentation theory where it is clear at a minimum that the counternotice was filed in good faith in the belief of fair use parody rights. All these

MOTION TO DISMISS

claims lack merit and fail as a matter of law. Accordingly, Defendant respectfully requests that the Court grant this motion and dismiss the Complaint in its entirety for failure to state a claim.

## II. MEMORANDUM OF POINTS AND AUTHORITIES

### A. ISSUES TO BE DECIDED:

1. Whether Plaintiff filed their DMCA takedown notice in bad faith.

2. Whether Defendant is liable for subjective bad faith counternotice where fair use rights clearly apply.

3. Whether the court should dismiss the two unregistered copyright claims under the *Fourth Estate* standard.

4. Whether the court should dismiss the duplicative claim for declaration judgment of copyright infringement.

5. Whether the entire action should be dismissed for fair use parody applying the fair use four-factor test.

### B. STANDARD OF REVIEW UNDER RULE 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal where a complaint fails to state a claim upon which relief can be granted. A plaintiff must plead

6

MOTION TO DISMISS

sufficient factual matter to permit a reasonable inference of liability; labels, conclusions, and formulaic recitations do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678. To state a case for copyright infringement, the complaint must plausibly allege ownership of a valid copyright and copying of original, protectable expression. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361. Copying of ideas, facts, or *scènes à faire* is not actionable. Id. at 348 to 350.

Under federal procedural standards, courts decide a Rule 12(b)(6) motion by assuming the truth of well-pleaded facts, drawing reasonable inferences in the plaintiff's favor, and then determining whether the claim is plausible on its face. When adjudicating such motions in copyright cases, courts may consider materials incorporated by reference in the complaint and matters subject to judicial notice, including the works themselves, without converting the motion to summary judgment under Rule 56. *Ritchie v. United States*, 342 F.3d 903, 908; *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 to 1003. If matters outside the pleadings are considered beyond those categories, the motion may be treated as one for summary judgment under Rule 56. See *Fed. R. Civ. P.* 12(d).

This standard is applied broadly and sensibly to safeguard expressive works and to discourage meritless suits that target protected commentary and parody. Courts in this Circuit routinely resolve substantial similarity and fair use at the pleading stage

7

where comparison of the works shows that the Plaintiff claims cannot succeed as a matter of law. See *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1121 to 1124 (no substantial similarity; Rule 12(b)(6) dismissal); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 967 to 973 (fair use for parody on Rule 12(b)(6)); accord *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 to 693. This approach ensures consistent application of the Copyright Act and the First Amendment's breathing space for criticism, commentary, and parody. See *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 to 585.

MOTION TO DISMISS

## C. PLAINTIFF'S DECLARATORY RELIEF CLAIM IS DUPLICATIVE AND SHOULD BE DISMISSED

Plaintiff's request for declaratory relief adds nothing independent to his copyright infringement claim and should be dismissed as duplicative. A claim for declaratory judgment cannot stand where it seeks resolution of issues already encompassed by a substantive cause of action. Courts consistently hold that declaratory relief merges with the underlying claim when it presents no separate controversy or remedy. *Swirsky v. Carey*, 376 F.3d 841, 853 n.16 (9th Cir. 2004) (noting that declaratory relief merges with the copyright action); *Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 965 (N.D. Tex. 2006) (dismissing declaratory claim as redundant where it mirrored the infringement claim); *Galan v. Walt Disney Co.*, No. 2:20-cv-04145, 2021 WL 2533905, at *6 (C.D. Cal. June 17, 2021) (same).

Here, Plaintiff's declaratory relief count seeks a determination that Defendant infringed his copyrights, which is the same issue raised in his infringement claim, and it requests no distinct form of relief. The claim therefore serves only to duplicate the existing cause of action and to create an additional path to request attorney's fees despite the apparent timing issues with Plaintiff's registrations. Because it offers no new facts, rights, or remedies beyond those already asserted, the Court should dismiss the declaratory judgment claim under Rule 12(b)(6).

9

## D. DEFENDANT'S USE IS TRANSFORMATIVE [PARODY] AND WITHOUT MARKET HARM.  THERE IS NO INFRINGEMENT.

The first fair-use factor, the purpose and character of the use, examines whether the secondary work adds something new with a further purpose or different character, thereby transforming the original's meaning or message. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). A use is transformative when it alters the original with new expression, meaning, or message and serves a purpose beyond mere duplication. The inquiry focuses on whether the new work merely supersedes the objects of the original creation or instead adds something new that contributes to public discourse.

Defendant's video does exactly that. It takes the familiar "First Amendment audit" format and turns it inside out. Through narration, editing, and humor, Defendant uses the same stylistic elements such as public confrontations, exaggerated tone, and self-declared constitutional lectures to critique the genre's tactics and tone. The purpose is not to mimic or replace Plaintiff's footage but to transform it into commentary that questions the motivations and methods of so-called auditors. The added narration, pacing, and humor recontextualize the source material and shift its message from self-promotion to social critique. Under *Campbell*, this transformation lies at the heart of what the first factor protects.

MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The transformative nature of Defendant's work also reflects the constitutional foundation of fair use. Fair use is not simply an after-the-fact excuse for infringement. It is a substantive right grounded in both the Copyright Act and the First Amendment. In *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153 (9th Cir. 2016), the Ninth Circuit confirmed that fair use is authorized by law and must be considered before issuing a takedown. It appears Plaintiff failed to implement its own fair use analysis before issuing their DMCA takedown and trying to impose a "strike" on Defendants channel.  *Campbell* described fair use as a guarantee of breathing space for criticism and commentary. This breathing space ensures that copyright law does not become a tool to suppress unfavorable expression. Defendant's work fits squarely within that protected zone. It uses Plaintiff's factual footage as raw material for commentary on a recent public phenomenon, not as a market substitute for the original recording.  See **Defendant's declaration pages 3-6** for a complete list of all transformations made to the original video.

The transformative nature of Defendant's work also eliminates any cognizable market harm. The Supreme Court has made clear that only substitution in the same or a protectable derivative market is actionable under the fourth factor and that "when a lethal parody kills demand for the original, it does not produce cognizable harm." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 591-592 (1994). Lost viewership that results from criticism or ridicule is not copyright injury.

11

MOTION TO DISMISS

While there may be minor overlap of viewers due to YouTube algorithms, there is no market harm in a parody. The fourth factor asks whether the secondary work usurps demand in a traditional or likely-to-be-developed market, not whether both appeal to the same audience. Courts have consistently held that modest audience overlap is inevitable when a transformative work comments on its source and that such overlap reflects successful commentary, not market harm. *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1181 (9th Cir. 2013); *Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094, 1113 (C.D. Cal. 2015); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 614-615 (2d Cir. 2006); *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 47 (S.D.N.Y. 2017), aff'd, 900 F.3d 39 (2d Cir. 2018); *SOFA Entertainment, Inc. v. Dodger Productions, Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013).

Defendant's video does not compete with or replace Plaintiffs. It critiques and satirizes it. Any reduced interest in Plaintiff's channel would arise from the force of that critique, which copyright law does not protect against. See **Defendant's Declaration Exhibits A, B, C and D** for factual evidence of a lack of market harm as set forth in Defendant's declaration.

The first and fourth factors (often considered the two most important) therefore weigh strongly in Defendant's favor.

Because Defendant's use is transformative, critical, a parody, and socially valuable, it serves the precise purpose that the fair-use doctrine was designed to protect. Courts routinely resolve fair use at the pleading stage when transformation is clear from the face of the complaint and the works themselves. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 692 (7th Cir. 2012). The same result is appropriate here.

## E. THE ASSERTED WORKS ARE FACTUAL AND RECEIVE ONLY <u>THIN</u> COPYRIGHT PROTECTION

First Amendment audit videos document real-world encounters in public spaces, and the imagery and dialogue are dictated by that setting. Plaintiff's asserted works are exactly that. They are documentary-style recordings of auditor interactions with public law enforcement officers that common scenes such as depicting uniforms, badges, marked patrol cars, courthouse façades and lobbies, intake windows and counters, public signage, and the predictable exchanges of stop, question, identity request, refusal, and dispersal. These features flow naturally from filming an "audit" of police or courthouse personnel in public and are not original expression.

The idea-expression dichotomy and the *scènes à faire doctrine* foreclose protection for stock features that arise from subject matter, convention, or practical necessity. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 to 350. The

13

1
2
3
4
5
6
7
8
9
10
11
12

Ninth Circuit repeatedly excludes commonplace imagery and routine choices that "flow from the subject matter." *Ets-Hokin v. Skyy Spirits Inc.*, 323 F.3d 763, 766 to 768; *Satava v. Lowry*, 323 F.3d 805, 810 to 812. To the extent Plaintiff relies on the presence of police officers, marked vehicles, government counters and windows, and the standard dialogue described above, those are classic scènes à faire left in the public domain and are not protectable by copyright.  Two of Plaintiff's alleged movies are UNREGISTERED, also precluding this court from ruling on them per the *Fourth Estate* case, *Fourth Estate Public Benefit Corp. vs. Wall Street.com, LLC* 586 U.S. 296 (2019).

13
14
15
16
17
18
19
20
21
22
23
24

This analysis also satisfies the second fair-use factor under 17 U.S.C. § 107, which examines the nature of the copyrighted work. Courts give the least protection to factual or informational works that contribute to public knowledge rather than creative expression. *Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 563. In this Circuit, published factual images and recordings are entitled to comparatively weaker protection. *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820. Plaintiff's videos portray real events in public forums and were posted online for public viewing, which confirms that any protectable expression is limited and context dependent.

25
26
27
28

14

MOTION TO DISMISS

1    Nor does a generic sequencing of events convert unprotectable elements into

2    protectable authorship. Selection and arrangement can be protectable only when the

3    combination is both original and not dictated by common, unprotectable building

4    blocks. *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1069 to 1071 (en banc). A routine

5    sequence that predictably follows from an auditor encounter in a public place does

6    not meet that standard. The overlap Plaintiff alleges is precisely what the scènes à

7    faire doctrine anticipates in a genre built around real-world police interactions.

8

9    Because the asserted similarities lie in unprotectable facts and conventions,

10   Plaintiff's copyright claim is, at most, *thin*. Where protection is thin, minor

11   differences in purpose, selection, and treatment defeat infringement as a matter of

12   law. And where the works are incorporated by reference, courts may resolve that

13   question on a Rule 12(b)(6) motion by comparing the works directly. *Rentmeester v.*

14   *Nike, Inc.*, 883 F.3d 1111, 1121 to 1124 (affirming dismissal after comparing works

15   and finding no protectable overlap). The same result follows here and frames the

16   subsequent fair-use analysis in Defendant's favor.

17

18   The limited scope of protection here not only narrows Plaintiff's claim but also

19   highlights the broader context in which this lawsuit arises. Plaintiff's own conduct

20   reveals that this action is not a genuine attempt to vindicate copyright rights but

21   rather an effort to retaliate against critical commentary.

15

MOTION TO DISMISS

The evidence will show that Plaintiff appears not to sue content creators who speak favorably about him yet brings claims against those who are critical or humorous at his expense. This pattern underscores that Plaintiff's lawsuit is not about copyright infringement but about silencing commentary and parody that he dislikes.

Defendant's work, by contrast, focuses only on the most extreme participants in the "First Amendment audit" movement. These are individuals whose confrontations escalate into public disturbances under the guise of constitutional activism. The Plaintiff in this case fits squarely within that description. He was previously removed from a courthouse after provoking disruption during one of his filming encounters, conduct that directly interfered with the administration of justice. Defendant's parody addresses precisely these types of behavior by using humor and critique to expose the tactics of those who exploit civic institutions for online attention. This context reinforces the public significance of the commentary and further supports dismissal.

## F. THE AMOUNT OF COPYING WAS REASONABLE AND NECESSARY TO ACHIEVE THAT PURPOSE

While Defendant's video includes approximately 30 minutes of Defendants 48-minute footage from the original recording, the third fair-use factor under 17 U.S.C.

16

1    §107 considers "the amount and substantiality of the portion used" in relation to the

2    copyrighted work as a whole. The inquiry is qualitative, not mechanical. Courts

3    have repeatedly emphasized that substantial copying may be permissible when it is

4    necessary for the audience to recognize the source material and understand the

5    commentary.

6

7        The Supreme Court in *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 588

8    (1994), explained that a parody or critique must be able to "conjure up" the original

9    to be intelligible, and that copying more than a small portion can therefore be

10   justified when required to achieve a transformative purpose.  That principle has been

11   reinforced in numerous cases.  In *Brownmark Films, LLC v. Comedy Partners*, 682

12   F.3d 687 (7th Cir. 2012), the court affirmed dismissal at the pleading stage, holding

13   that *South Park*'s parody was "so obviously" transformative that discovery was

14   unnecessary. The court reasoned that extensive copying can be fair when the

15   purpose of the new work is to critique or ridicule the original, and the borrowed

16   elements are integral to making that commentary meaningful to viewers.

17

18       Similarly, in *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 115 (2d Cir.

19   1998), the Second Circuit found that a movie advertisement which recreated the

20   pose and lighting of Annie Leibovitz's famous portrait of a pregnant Demi Moore

21   was a lawful parody. Even though the defendant's image closely mimicked the

17

composition and feel of the original, the court held that such imitation was necessary to evoke the original work and *make the parody effective*. The court explained that the law does not require a parodist to use only a minimal portion, because "the heart of any parody is the recognizable allusion to its object."

The same reasoning applies here. Defendant's inclusion of a substantial portion of the audit footage was essential to his commentary and to fully parody the original. The copied material consists largely of factual, standardized, and unoriginal elements that are typical of the genre; police encounters, confrontational exchanges, and common phrases such as "*am I being detained*?", "*I have a right to be here*". These *scènes à faire* elements are not protectable in and of themselves and serve primarily as a vehicle for Defendant's critique of the genre's tone and tactics.

Courts have consistently held that when the purpose of the use is transformative and the amount taken is reasonable considering that purpose, even extensive copying may qualify as fair use as a matter of law. Because Defendant's work uses the footage to parody and analyze a widely recognized online format rather than exploit its market value, the extent of copying is permissible. The transformative character of the work is apparent on the face of the complaint and the works themselves, making dismissal under Rule 12(b)(6) appropriate.

MOTION TO DISMISS

## G. PLAINTIFF'S *17 U.S.C.* § 512(f) CLAIM FAILS AS A MATTER OF LAW

Plaintiff's second cause of action under *17 U.S.C.* section 512(f) alleges that Defendant knowingly made a false representation regarding infringement. This claim fails as a matter of law. The Ninth Circuit has long held that a plaintiff must show both a <u>knowing and material misrepresentation</u> to state a claim under section 512(f). *Rossi v. Motion Picture Association of America*, 391 F.3d 1000, 1005 (9th Cir. 2004). A defendant who acts upon a subjective good faith belief that material is infringing cannot, as a matter of law, be liable for a knowing misrepresentation. Id. at 1005 to 1006.   See **Defendant's declaration pages paragraph 28-page 11** testifying to the good faith belief given the four fair use factors.

In *Rossi*, the court rejected a section 512(f) claim where the copyright holder issued a takedown notice based on its genuine belief that a website offered infringing movies, even though that belief later proved mistaken. The Ninth Circuit held that the statute imposes a subjective good faith standard rather than an objective one. Id. at 1005. This means that a claim of bad faith requires more than error or disagreement. It requires clear allegations that the sender knew the challenged use was lawful yet misrepresented it as infringing. Plaintiff has not, and cannot, make that showing here.

MOTION TO DISMISS

Defendant's use of Plaintiff's footage is a textbook example of fair use under *17 U.S.C.* section 107. The video at issue is transformative, noncommercial commentary on a matter of public concern. It is a parody that pokes fun of the original. The Ninth Circuit in *Lenz v. Universal Music Corporation*, 815 F.3d 1145, 1153 (9th Cir. 2016), confirmed that fair use is authorized by law. When fair use applies, or even when it presents a reasonable legal question, a party cannot be found to have acted with knowing falsity. Where the copyright status of a use is debatable, a section 512(f) claim cannot survive because there can be no knowing misrepresentation as a matter of law.

Courts applying this principle have routinely dismissed section 512(f) claims in cases involving transformative commentary or parody. In *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 46 (S.D.N.Y. 2017), aff'd, 900 F.3d 39 (2d Cir. 2018), the court rejected a section 512(f) claim against the creators of a commentary video that mocked and analyzed the plaintiff's work, holding that because the use was fair, no reasonable jury could find that a takedown notice was made in bad faith. The same reasoning applies here.

The fair use analysis in this case not only weighs decisively in Defendant's favor but at <u>minimum</u> raises a legitimate and reasonable legal dispute. A fair use question that is close or unresolved cannot give rise to liability under section 512(f) because a

party cannot know that a work is infringing when its legality depends on judicial interpretation of fair use. To hold otherwise would impose strict liability for every mistaken takedown, which is contrary to the statute's text and purpose.

Because Defendant's use of Plaintiff's footage is fair as a matter of law, or at the very least reasonably subject to fair use debate, Plaintiff cannot plausibly allege that Defendant acted with knowing falsity or bad faith. The section 512(f) claim therefore fails as a matter of law and should be dismissed under Rule 12(b)(6).

**CONCLUSION**

For the reasons set forth above, Defendant has demonstrated that Plaintiff's Complaint targets protected expressive conduct on a matter of public concern and fails to state any claim upon which relief can be granted. The parody videos at issue constitutes transformative, non-substitutive commentary that is squarely protected under the First Amendment and the fair use doctrine. The copyright infringement claim is not plausible. The bad faith 512(f) is likewise not plausible. The unregistered copyright claims must also be dismissed under the *Fourth Estate* case.

Defendant therefore respectfully requests that the Court grant this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), dismiss the Complaint and all causes of action with prejudice, and award Defendant his reasonable attorney's fees and costs incurred in defending against this action.

DATED this 13th day of October 2025

                                   **THE LAW OFFICES OF STEVEN**
                                   **VONDRAN, P.C.**


                                   By /s/ SteveVondran
                                   Steven C. Vondran, Esq.
                                   Attorney for Defendant
                                   620 Newport Center Drive, Suite 1100
                                   Newport Beach, California 92660
                                   Telephone: (877) 276-5084
                                   steve@vondranlegal.com

22