RANDALL S. NEWMAN (SBN 190547)
Attorney at Law
99 Wall St., Suite 3727
New York, NY 10005
212.797.3735
rsn@randallnewman.net

*Attorney for Plaintiff,*
 *Christopher J. Cordova*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER J. CORDOVA, | Case No. 25-cv-04685-VKD |
| Plaintiff, | **HON. VIRGINIA K. DEMARCHI** |
| vs. | **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS 2, 3 AND 4 OF PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| JONATHAN HUDON-HUNEAULT, NNEKA OHIRI, 14693663 CANADA INC., | |
| Defendants. | **HEARING:**<br>Date: January 13, 2026<br>Time: 10:00 a.m.<br>Place: 280 South 1st St.<br>Courtroom 2 (5th Floor)<br>San Jose, CA 95113 |

# **TABLE OF CONTENTS**

I.    STATEMENT OF ISSUES TO BE DECIDED ........................................................ 1

II.   INTRODUCTION ............................................................................................. 2

III.  FACTUAL BACKGROUND ............................................................................. 3

IV.  ARGUMENT .................................................................................................... 6

A.    Standard On A Motion To Dismiss ................................................................. 6

B.    Evidentiary Objections ..................................................................................... 7

　　  i.    Even If The Court Were Allowed To Consider The Huneault Declaration And
　　        Exhibits On A Motion To Dismiss, Such Evidence Would Be Barred By The
　　        Federal Rules Of Evidence .......................................................................... 7

C.    Nneka Ohiri Did Not Move Or Otherwise Plead And Defaulted ................... 8

D.    Fair Use Is Irrelevant To Defendants' Motion ............................................... 9

E.    Plaintiff States A Claim Under 17 U.S.C. § 512(f) ......................................... 9

　　  i.    Plaintiff Alleges That Defendants Knowingly And Materially Misrepresented
　　        That The Material Was Removed By Mistake ........................................... 10

　　  ii.   Plaintiff Alleges That YouTube Relied On Defendants' Misrepresentations
　　        And Restored Defendants' Videos ........................................................... 12

　　  iii.  Plaintiff Alleges That He Was Injured As A Result of Defendants'
　　        Misrepresentations In The Counter-Notices ............................................ 12

　　  iv.   Defendants Rely On A Nonexistent Citation, Misstated Procedural History,
　　        And Mischaracterized Authority To Support The Motion To Dismiss
　　        Plaintiff's § 512(f) Claim ......................................................................... 12

F.    The Declaratory Relief Claim Is Not Duplicative And Cannot Be Dismissed ........ 14

　　  i.    Defendants Have Not Shown That The Declaratory Judgment Claim Is
　　        Duplicative .............................................................................................. 15

G.    Plaintiff States A Claim For Violation Of 17 U.S.C. § 1201 ......................... 15

i

i.      Plaintiff Alleges That His Works Were Protected Under The Copyright Act
            16

ii.     Plaintiff Alleges That His Works Were Protected By A Technological
        Measure ...................................................................................... 16

iii.    Plaintiff Alleges that Defendants Circumvented YouTube's Technological
        Measures In Order to Obtain Access to His Copyrighted Works ................. 18

iv.     Defendants' Argument That Plaintiff Did Not Plead A Circumvention Claim
        Ignores The Allegations In The FAC ........................................................ 19

v.      Defendants' Argument That Plaintiff Lacks Standing To Assert A § 1201
        Claim Has No Merit ................................................................................ 19

V.    CONCLUSION ................................................................................................ 20

**Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Counts 2, 3 and 4 of Plaintiff's First Amended Complaint**

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*,

    556 U.S. 662 (2009)............................................................................................6

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544 (2007)............................................................................................6

*Campbell v. Acuff–Rose Music, Inc.*,

    510 U.S. 569 (1994)............................................................................................9

*ENTTech Media Group LLC v. Okularity, Inc.*,

    2:20-cv-06298-JWH-Ex, 2021 WL 916307 (C.D. Cal. Mar. 10, 2021)......................10

*Hosseinzadeh v. Klein*,

    276 F.Supp.3d 34 (S.D.N.Y. 2017) ..............................................................13-14

*iSpot.tv, Inc. v. Teyfukova*,

    No. 21-cv-6815-MEMF (MARx), 2023 WL 3602806 (C.D. Cal. May 22, 2023) .......16

*Khoja v. Orexigen Therapeutics, Inc.*,

    899 F.3d 988 (9th Cir. 2018) ........................................................................7

*Lenz v. Universal Music Corp.*,

    815 F.3d 1145 (9th Cir. 2016) ..................................................... 10, 12-13

*MedImmune, Inc. v. Genentech, Inc.*,

    549 U.S. 118 (2007)..........................................................................................15

*Navarro v. Block*,

    250 F.3d 729 (9th Cir. 2001). .......................................................................6

*Rossi v. Motion Picture Ass'n of America, Inc.*,

    391 F.3d 1000 (9th Cir. 2004).....................................................................13

*United States v. Hayes*,

    763 F. Supp. 3d 1054 (E.D. Cal. 2025) .......................................................14

iii

*Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*,

   633 F. Supp. 3d 650 (D. Conn. 2022) ................................................................. 17-18, 20

**STATUTES**

17 U.S.C. § 102(a) ........................................................................................................... 16

17 U.S.C. § 1201(a)(1)(A) ............................................................................................... 16, 19

17 U.S.C. § 512(g)(2)(C) ................................................................................................. 15

17 U.S.C. § 512(g)(3) ...................................................................................................... 5

17 U.S.C. §§ 512(f) ..................................................................................................... 3, 9, 20

28 U.S.C. § 1927 ............................................................................................................. 20

28 U.S.C. § 2201(a) ........................................................................................................ 15

**Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Counts 2, 3 and 4 of Plaintiff's First Amended Complaint**

## I.     STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court may consider the Declaration of Jonathan Hudon-Huneault ("Huneault Decl.) (ECF No. 43-2) and the exhibits attached thereto on a Rule 12(b)(6) motion.

2.      Whether Plaintiff states a claim for misrepresentation under 17 U.S.C. § 512(f) in Count II of the First Amended Complaint ("FAC").

3.      Whether Plaintiff states a claim for declaratory relief under 17 U.S.C. § 512(g) and 28 U.S.C. § 2201 in Count III of the FAC.

4.      Whether Plaintiff states a claim for circumvention of a technological measure under 17 U.S.C. § 1201 in Count IV of the FAC.

5.      Whether the Motion can be granted as to Defendant Nneka Ohiri ("Ohiri"), where the Motion was not filed on her behalf, asserts no argument directed to her conduct, and does not seek dismissal of the claims asserted against her.

**Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Counts 2, 3 and 4 of Plaintiff's First Amended Complaint**

## II.    INTRODUCTION

Plaintiff Christopher J. Cordova ("Plaintiff") submits this Memorandum of Law in Opposition to the Motion to Dismiss Counts Two, Three, and Four of the FAC filed by Defendants Huneault and 14693663 Canada Inc. ("Canada Inc.") (collectively, "Defendants"), which fails to address the claims actually pled or apply the Rule 12(b)(6) standard. The Motion does not cite the FAC or meaningfully engage with Plaintiff's allegations. Instead, Defendants construct an alternative factual narrative untethered to the FAC. A motion that fails to address the allegations in the FAC cannot support dismissal under Rule 12(b)(6).

The deficiencies do not end there. Defendants misstate the procedural posture and holdings of the cases they cite, rely on a nonexistent appellate citation to a Second Circuit opinion, and ignore allegations central to Plaintiff's claims. These are not minor errors or debatable issues of interpretation; they reflect a fundamental failure to grapple with the governing law and the operative pleading.

Critically, only two defendants have moved for dismissal. Ohiri did not join the Motion and offers no independent basis for dismissing the claims asserted against her. As discussed below, the Motion therefore does not, and cannot, reach the claims against Ohiri at all.

The Motion proceeds as if Rule 12(b)(6) does not exist. Rather than accept the well-pleaded allegations of the FAC as true, Defendants invite the Court to credit the Huneault Decl., consider unauthenticated screenshots, and resolve factual disputes in Defendants' favor. Ninth Circuit law forbids that approach. A Rule 12(b)(6) motion is confined to the complaint and properly incorporated materials; it is not a vehicle for disputing facts or introducing extrinsic evidence.

Plaintiff alleges, in detailed and specific terms, that Defendants built the Frauditor Troll YouTube channel (the "Frauditor Troll Channel") by stealing other creators' content, including between fifty and one hundred of Plaintiff's videos alone, by bypassing YouTube's rolling-cipher technological protection measure using ripping tools. Plaintiff

**Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Counts 2, 3 and 4 of Plaintiff's First Amended Complaint**

1  further alleges that Defendants reproduced those unlawfully obtained videos in long,
2  uninterrupted blocks on the Frauditor Troll Channel under the guise of fair use.

3         Plaintiff also alleges that after he submitted DMCA Takedown Notices to YouTube
4  over Defendants' use of his videos, Defendants submitted nine DMCA counter-notices in
5  response containing multiple false statements, including a fabricated service address, a
6  reference to a nonexistent "Fair Use Act of 1976," a false assertion of retained counsel, and
7  boilerplate fair-use language undermined by Defendants' own admissions. Plaintiff alleges
8  that Defendants understood that invoking the so-called "magic words" of fair use would
9  trigger restoration by YouTube and believed there was virtually no risk that Plaintiff would
10  actually enforce his rights based on their perception that he lacked the resources to do so.

11         Finally, Plaintiff alleges that after commencing this action, Defendants, concerned
12  that their systematic copyright theft scheme would be exposed, deleted more than 1,700
13  videos from the Frauditor Troll Channel without retaining any backups, an extraordinary
14  act of spoliation that Defendants later acknowledged was motivated by fear of legal
15  exposure. Taken together, the allegations in the FAC more than suffice at the pleading
16  stage to plausibly state claims under 17 U.S.C. §§ 512(f) and 1201(a), as well as for
17  declaratory relief under 17 U.S.C. § 512(g) and 28 U.S.C. § 2201.

18         Because Defendants ask this Court to do precisely what Rule 12(b)(6) and Ninth
19  Circuit precedent forbid, resolve factual disputes, consider extrinsic evidence, and
20  substitute Defendants' preferred narrative for the allegations pled, the Motion must be
21  denied in its entirety. And because Defendant Ohiri never moved for dismissal at all, the
22  Motion does not, and cannot, reach the claims asserted against her.

23  ## III.    FACTUAL BACKGROUND

24         Plaintiff is a Colorado-based constitutional auditor and the creator of the Denver
25  Metro Audits YouTube channel, where he publishes original audiovisual works
26  documenting interactions with government officials, law enforcement, and public
27  employees. (FAC ¶¶ 17, 29–31). His works form part of a broader movement of citizen-
28  journalist creators ("Auditors") who film public-interest encounters and disseminate them

3

through YouTube. (*Id.*)

In response to the growing popularity of Auditors, Defendants created the Frauditor Troll Channel. (*Id.* ¶ 32). Huneault, Ohiri and Canada Inc., jointly operate the Frauditor Troll Channel for commercial profit. (*Id.* ¶¶ 19–22). The channel exists not to critique or analyze Plaintiff's work, but to misappropriate Plaintiff's and other Auditors' copyrighted videos in bulk, insert brief mockery, and monetize the resulting uploads through YouTube's Partner Program. (*Id.* ¶¶ 1–12). The Frauditor Troll Channel is one of the largest anti-Auditor channels. (*Id.* ¶ 33).

The Frauditor Troll Channel has repeatedly used Plaintiff's copyrighted works without permission and outside any plausible claim of fair use. (*Id.* ¶ 34). Between 2022 and 2025, Defendants unlawfully obtained between fifty and one hundred of Plaintiff's copyrighted works. (*Id.*) Defendants did not obtain these works through legitimate means; instead, they circumvented YouTube's technological protection measures, including its rolling-cipher system, by using ripping software, browser extensions, or other decryption utilities specifically designed to bypass technological measures controlling access to Plaintiff's videos. (*Id.* ¶¶ 35–40). YouTube's rolling cipher is a technological protection measure. (*Id.* ¶ 40).

Using these unlawfully obtained copies, Defendants created monetized videos that reproduced vast portions of Plaintiff's copyrighted works in long, uninterrupted blocks without meaningful commentary or transformation. (*Id.* ¶¶ 46–54). For example, Defendants' video titled *Frauditor DMA Gets Confronted by Angry Citizen (Hilarious)*, incorporates approximately 25 minutes and 54 seconds of Plaintiff's registered video titled *ANOTHER CHAD EXPOSED!!! Worthless Denver Cops…ASSAULTED!!!* ("*Another Chad*"). (*Id.* ¶¶ 46–48). Defendants' video reproduces *Another Chad* in fifteen separate blocks with no commentary, twelve of which exceed one minute, three of which exceed two minutes, one exceeds three minutes, and one exceeds four minutes. (*Id.* ¶ 47).

In Defendants' video titled *Frauditor DMA gets Camera Touched and CRIES A RIVER*, uploaded to the Frauditor Troll Channel, Defendants incorporated more than thirty-

4

seven minutes of Plaintiff's registered video titled *ANGRY MOB AT BELMAR LIBRARY!!!* *"CALL 911" Cops don't show up* ("*Belmar Library*"), without authorization. Defendants' video reproduced *Belmar Library* in twelve separate blocks with no commentary. (*Id.* ¶ 53). Each block exceeds one minute; eight blocks exceed two minutes; three blocks exceed four minutes; and the longest uninterrupted segment runs over six minutes. (*Id.*)

In Defendants' video titled *Frauditors Ejected from Federal Courthouse (NEW)* uploaded to the Frauditor Troll Channel, Defendants incorporated more than eighteen minutes of Plaintiff video titled *FEDERAL COURTHOUSE FAIL!!! Threatened with arrest for recording and not one officer identifies!* ("*Courthouse Fail*")[1], without authorization. (*Id.* ¶¶ 45, 49).

Plaintiff submitted DMCA takedown notices in June and October 2023, identifying these and other videos on the Frauditor Troll Channel that incorporated Plaintiff's footage. (*Id.* ¶ 58). Defendants responded with nine counter-notices under 17 U.S.C. § 512(g)(3) (the "Counter-Notices"), each signed under penalty of perjury, asserting (1) that the videos were taken down by mistake because they were protected by the non-existent "Fair Use Act of 1976," (2) that he was the owner of the Frauditor Troll Channel, (3) that Defendants had already hired an attorney and were prepared to litigate, and (4) that Defendants could be served at "99 Wall Street, New York, NY," a fictitious service address in the United States (Defendants reside in Canada) that knowingly omitted a suite number. (*Id.* ¶¶ 59–63). Each of these statements was knowingly false when made, as Defendants admitted in public videos and in contemporaneous communications. (*Id.* ¶¶ 59-63, 66-71).

Each of the nine Counter-Notices contained nearly identical boilerplate language copied verbatim and bore no resemblance to a legitimate fair-use analysis. (*Id.* ¶¶ 8, 59–61). In the Counter-Notices, Huneault bragged that the Frauditor Troll Channel had received forty-eight copyright strikes and every video was reinstated through the counter

---

[1] Registration of the *Courthouse Fail* video is currently pending before the U.S. Copyright Office. (FAC ¶ 46 n. 7) .

**Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Counts 2, 3 and 4 of Plaintiff's First Amended Complaint**

1  notification system. (*Id.* ¶ 59). Defendants admitted on video and through
2  contemporaneous emails that they submitted the Counter-Notices not because they
3  believed in good faith that the works were non-infringing, but because doing so would
4  guarantee reinstatement and "penalize" Plaintiff. (*Id.* ¶¶ 66–71).

5      After receiving notice of this lawsuit on June 6, 2025, Defendants began mass-
6  deleting the evidence of their copyright infringement scheme, permanently destroying
7  more than 1,700 videos, amounting to nearly 90% of the Frauditor Troll Channel's library.
8  (*Id.* ¶¶ 79–82). They later publicly admitted that the deletion was intentional and motivated
9  by fear of accountability for their massive infringement scheme. (*Id.* ¶ 81). They also
10  admitted that they knew Plaintiff was broke, meaning that they believed Plaintiff could not
11  afford an attorney to pursue federal litigation to stop their blatant theft of his videos and
12  that it was a one-in-a-billion chance that they would ever be held responsible for the theft
13  and monetization of Plaintiff's videos. (*Id.* ¶ 82).

14      These facts, all taken from the FAC and presumed true at the Rule 12(b)(6) stage,
15  establish an extensive pattern of mass infringement, unlawful circumvention, knowing
16  misrepresentations in DMCA Counter-Notices, spoliation of evidence, and bad-faith
17  exploitation of the DMCA process.

## IV.   ARGUMENT

### A.   Standard On A Motion To Dismiss

20      A Rule 12(b)(6) motion "tests the legal sufficiency" of a complaint. *Navarro v.*
21  *Block*, 250 F.3d 729, 732 (9th Cir. 2001). The Court must accept all well-pleaded factual
22  allegations as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v.*
23  *Iqbal*, 556 U.S. 662, 678 (2009). The question is not whether the plaintiff will ultimately
24  prevail, but whether the complaint alleges "enough facts to state a claim to relief that is
25  plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is
26  plausible where the facts permit a reasonable inference of liability. *Id.*

27      In resolving a Rule 12(b)(6) motion, the Court generally may not consider evidence
28  outside the pleadings when assessing the sufficiency of a complaint. *Khoja v. Orexigen*

*Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). The Court's review is limited to the complaint, documents attached to the complaint, documents incorporated by reference, and matters properly subject to judicial notice. *Id.*

### B.   Evidentiary Objections

Defendants' Motion relies extensively on materials outside the pleadings, most notably the Huneault Decl. and its attached exhibits. Those materials may not be considered on a Rule 12(b)(6) motion. They are not attached to the FAC, not incorporated by reference, and not proper subjects of judicial notice. The Court therefore must disregard the Huneault Decl. and its exhibits in their entirety.

The Ninth Circuit has repeatedly warned that the incorporation-by-reference and judicial-notice doctrines may not be used as an "end-run" around Rule 12(d) to introduce defendant-friendly facts or to resolve factual disputes at the pleading stage. *See Khoja v. Orexigen Therapeutics, Inc.* at 1002–03. That is precisely what Defendants ask the Court to do here. They urge the Court to credit Huneault's self-serving factual narrative over the FAC's allegations.

### i.   Even If The Court Were Allowed To Consider The Huneault Declaration And Exhibits On A Motion To Dismiss, Such Evidence Would Be Barred By The Federal Rules Of Evidence

Even assuming *arguendo* that the Huneault Decl. was procedurally admissible at the pleading stage, which it is not, the declaration and its exhibits would independently be inadmissible under the Federal Rules of Evidence.

First, much of the declaration consists of improper lay opinion and legal conclusions regarding "parody," "transformation," "authorization," "market harm," and "fair use," all of which are ultimate legal issues reserved for the Court. Fed. R. Evid. 701.

Second, the Exhibits A-D to the Huneault Decl. rely extensively on hearsay and unauthenticated materials, including an alleged transcript (Exhibit A) and YouTube screenshots offered for their truth (Exhibits B-D), without any foundation establishing admissibility. Plaintiff objects to these exhibits pursuant to Fed. R. Evid. 401, 602, 801-

7

803 and 901.

Accordingly, even if the Court were inclined to look beyond the pleadings, which it cannot, the Huneault Decl. and its exhibits are inadmissible and must be disregarded.

## C.    Nneka Ohiri Did Not Move Or Otherwise Plead And Defaulted

The procedural record makes one fact unmistakably clear: the Motion cannot dismiss any claim against Ohiri because she never moved to dismiss the FAC and is in default. (ECF Nos. 43, 43-1). On October 13, 2025, Huneault filed a Motion to Dismiss Plaintiff's initial complaint that named Huneault and Ohiri as defendants. (ECF No. 29). Ohiri was not named as a moving party and Plaintiff requested entry of default against Ohiri. (ECF No. 30). Thereafter, the parties stipulated to set aside Ohiri's initial default as counsel claimed that he "was not aware that Nneka Ohiri was also named as a Defendant" so the mooted motion to dismiss "did not respond on her behalf." (ECF No. 36).

The stipulation expressly required Defendants to "file a response to Plaintiff's First Amended Complaint on or before November 24, 2025." (ECF No. 36 ¶ 6). Yet when the deadline arrived, counsel once again repeated the *same mistake* that caused the first default, and Ohiri was not named as a moving party. (ECF No. 43). This is now the *second time* defense counsel failed to include her in a filing.

The Notice of Motion (ECF No. 43) leaves no ambiguity. It identifies only Huneault and Canada Inc. as the moving parties. (*Id.*) Ohiri is not listed in the caption; her name does not appear in the introductory paragraph; the motion expressly states that "Defendants Jonathan Huneault… and 14693663 Canada Inc. will and hereby do move this Court" (ECF Nos. 43, 43-1); and nowhere does the filing request relief on her behalf. The Memorandum in Support likewise states on its face that it is submitted "for Defendant Jonathan Huneault a/k/a Frauditor Troll (14693663 Canada Inc.)," again omitting Ohiri entirely from the caption, the introduction and the argument. (ECF No. 43-1). In fact, the name Nneka Ohiri appears nowhere in the Notice of Motion or Memorandum confirming that the omission was substantive, not clerical. (*Id.*)

The Court cannot construe the Motion as a Rule 12(b)(6) motion filed on Ohiri's

8

behalf. A defendant not named in the notice of motion is not a moving party. *See* L.R. 7-2. The procedural posture is therefore straightforward: Plaintiff filed the FAC; the November 24, 2025 response deadline passed; and Ohiri filed nothing for the second time and again failed to plead or otherwise defend. Accordingly, the Motion affords no basis to dismiss the claims asserted against Ohiri.

### D.    Fair Use Is Irrelevant To Defendants' Motion

Defendants devote substantial portions of the Motion to arguments about fair use. Those arguments are irrelevant to the issues before the Court.

Defendants did not move to dismiss Count One of the FAC, in which Plaintiff asserts a claim against Defendants for copyright infringement related to Defendants' use of his *Another Chad* and *Belmar Library* videos. Fair use is an affirmative defense to copyright infringement, not a basis for dismissal of the claims Defendants have actually challenged, namely, Plaintiff's claims under 17 U.S.C. §§ 512(f) and 1201(a), and Plaintiff's request for declaratory relief. *See Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (fair use is an affirmative defense). Because Defendants have not sought dismissal of the infringement claim, their fair use arguments do not address any element of the counts at issue and provide no ground for dismissal.

Even assuming fair use was implicated, which it is not, Defendants have failed to lodge **any** of the videos at issue with the Court. Indeed, Huneault inadvertently admits to spoliation in his Declaration as he claims he longer possesses copies of the videos based on *Another Chad* and *Belmar Library*, even though those works remained live on the Frauditor Troll channel until Defendants were served with this lawsuit. (Huneault Decl. ¶¶ 6, 11(1); FAC n. 7, 9). Accordingly, fair use could not be adjudicated on Defendants' Motion even if it was relevant.

### E.    Plaintiff States A Claim Under 17 U.S.C. § 512(f)

17 U.S.C. § 512(f) provides that "[a]ny person who knowingly materially misrepresents…that material…was removed or disabled by mistake or misidentification shall be liable for any damages, including costs and attorneys' fees, incurred by…any

9

1  copyright owner…who is injured by such misrepresentation, as the result of the service
2  provider relying on such misrepresentation…in replacing the removed material."

3      In order to state a claim for violation of § 512(f), a plaintiff must allege facts to show
4  that (1) the defendants knowingly and materially misrepresented that the material was
5  removed by mistake; (2) the service provider relied on that misrepresentation; and (3) the
6  plaintiff was injured as a result. *See ENTTech Media Group LLC v. Okularity, Inc.*, 2:20-
7  cv-06298-JWH-Ex, 2021 WL 916307, at *4 (C.D. Cal. Mar. 10, 2021). To satisfy the
8  "knowingly" prong of § 512(f), a plaintiff must allege facts showing that the defendant
9  lacked a subjective good-faith belief that the material was lawful. *Lenz v. Universal Music*
10 *Corp.*, 815 F.3d 1145, 1153-54 (9th Cir. 2016). Whether the defendant formed a subjective
11 good-faith belief is ordinarily a factual question inappropriate for resolution at the pleading
12 stage. *ENTTech Media Group LLC* at *5.

### i.       Plaintiff Alleges That Defendants Knowingly And Materially Misrepresented That The Material Was Removed By Mistake

15     Plaintiff alleges that Defendants' Counter-Notices falsely asserted that the
16 takedowns were the result of mistake or misidentification because the videos were
17 purportedly protected by fair use. (FAC ¶¶ 56–63, 96-104). To state a claim under 17
18 U.S.C. § 512(f), Plaintiff need not prove that Defendants' fair-use position was incorrect
19 as a matter of law; he must plausibly allege that Defendants did not actually believe their
20 use was non-infringing when they submitted the Counter-Notices. *Lenz v. Universal Music*
21 *Corp.*, 815 F.3d at 1154–55. Plaintiff plausibly alleges precisely that lack of subjective
22 good-faith belief.

23     Before submitting the Counter-Notices, Huneault published a video titled *How to*
24 *Do Fair Use Properly and Avoid Copyright Strikes*, in which he purported to explain what
25 he believed fair use requires. (FAC ¶¶ 55–57). In that video, Huneault articulated specific
26 criteria he claimed were necessary to qualify as fair use, including limiting the amount of
27 copyrighted material used, inserting frequent commentary, and avoiding long
28 uninterrupted playback of another creator's work. (*Id.*)

**Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Counts 2, 3 and 4 of Plaintiff's First Amended Complaint**

Plaintiff alleges that Defendants' infringing videos do not remotely conform to the standards Huneault himself described. (*Id.* ¶¶ 46–57, 97). Those videos consist primarily of long, uninterrupted blocks of Plaintiff's footage, with minimal interjection. (*Id.* ¶¶ 46-54). The significance of the *How to Do Fair Use Properly* video is not that it accurately states the law, but that it reflects Huneault's own stated understanding of what fair use required at the time he submitted the Counter-Notices.

A defendant who publicly articulates a set of criteria he believes defines lawful fair use and then submits Counter-Notices asserting fair use for videos that plainly disregard those criteria, cannot plausibly claim that he subjectively believed the takedowns were the result of mistake or misidentification. At the pleading stage, this internal inconsistency alone supports a reasonable inference that the fair-use assertions in the Counter-Notices were not honestly held.

Plaintiff further alleges that Defendants publicly admitted they believed there was only a "one in a billion chance" Plaintiff would ever sue them. (FAC ¶ 82). That admission further supports the inference that Defendants' decision to file Counter-Notices was driven not by a belief that their use was lawful, but by the belief that they would not be held accountable. A belief that "no one will sue me" is not a belief that the use is lawful.

Plaintiff also alleges that immediately after receiving notice of this lawsuit, Defendants deleted more than 1,700 videos from the Frauditor Troll Channel, including videos whose legality they had sworn to under penalty of perjury in their Counter-Notices. (*Id.* ¶ 80). While deletion alone is not an element of § 512(f), at the pleading stage it is probative of state of mind. A defendant who genuinely believed his videos were lawful would have no reason to destroy nearly his entire library upon being sued.

Finally, Plaintiff alleges that the Counter-Notices contained multiple facial falsehoods, including a fictitious service address, reference to a nonexistent "Fair Use Act of 1976," a false claim of retained counsel, and inconsistent claims of ownership. (*Id.* ¶¶ 59–63). These misstatements are not themselves the misrepresentation that triggers § 512(f) liability, but they are relevant to whether Defendants approached the Counter-Notice

**Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Counts 2, 3 and 4 of Plaintiff's First Amended Complaint**

process with any regard for truth or accuracy.

As *Lenz* makes clear, subjective good faith requires that the defendant actually form a legal belief based on the facts. *Lenz*, 815 F.3d at 1153–55. Boilerplate assertions, internal contradictions, and demonstrably false statements support a reasonable inference that no such belief was formed here.

Taken together, Defendants' own statements about what they believed fair use required, their disregard of those beliefs in practice, their admissions that enforcement was unlikely, and their subsequent destruction of the very videos they swore were lawful more than plausibly alleges that Defendants knowingly and materially misrepresented that the takedowns were the result of mistake or misidentification.

### ii. Plaintiff Alleges That YouTube Relied On Defendants' Misrepresentations And Restored Defendants' Videos

Plaintiff alleges that YouTube relied on Defendants' knowing misrepresentations of fair use and reinstated nine videos, including Defendants' videos based on *Another Chad*, *Belmar Library* and *Courthouse Fail*. (FAC ¶ 64).

### iii. Plaintiff Alleges That He Was Injured As A Result of Defendants' Misrepresentations In The Counter-Notices

Plaintiff alleges that as a result of the reinstatement of Defendants' videos, Plaintiff suffered damages and was forced to initiate this action to have Defendants' videos removed from the Frauditor Troll Channel, and to prevent their re-upload. (*Id.* ¶ 105). Plaintiff also alleges that he suffered actual damages including lost viewership, lost advertising revenue, and diminution of market and licensing value of his videos. (*Id.* ¶ 92). *Lenz* recognizes these injuries as sufficient. 815 F.3d at 1156-57.

### iv. Defendants Rely On A Nonexistent Citation, Misstated Procedural History, And Mischaracterized Authority To Support The Motion To Dismiss Plaintiff's § 512(f) Claim

Defendants rely on *Rossi v. Motion Picture Ass'n of America, Inc.*, 391 F.3d 1000 (9th Cir. 2004), *Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016), and

*Hosseinzadeh v. Klein*, 276 F.Supp.3d 34 (S.D.N.Y. 2017) to invent a new pleading rule that a plaintiff states a claim under §512(f) only if the complaint pleads facts showing Defendants subjectively knew the videos were not fair use and nonetheless submitted the Counter-Notices anyway. (Defendants' Motion at 6).

This argument fails for multiple independent reasons. First, *Rossi*, *Lenz*, and *Hosseinzadeh* were all decided on summary judgment on a developed factual record, and none of those cases articulated, or purported to articulate, a heightened pleading standard applicable at the Rule 12(b)(6) stage. *Rossi* 391 F.3d at 1002 ("We review a district court's grant of summary judgment *de novo*."); *Lenz*, 815 F.3d at 1148-49 ("We affirm the denial of the parties' cross-motions for summary judgment."); *Hosseinzadeh*, 276 F.Supp.3d at 39 ("Before the Court are dueling motions for summary judgment.").

Defendants cite no authority holding that § 512(f) imposes a special pleading requirement beyond Rule 8, or that allegations plausibly supporting an inference of lack of subjective good faith are insufficient as a matter of law at the pleading stage.[2]

Second, Defendants misrepresent the procedural history of *Hosseinzadeh v. Klein*. Defendants assert that the Second Circuit "affirmed" the district court's decision, citing 900 F.3d 39 (2d Cir. 2018). That citation is false. The district court's decision in *Hosseinzadeh* was not appealed, and the cited Second Circuit opinion has no connection to that case.

Third, Defendants further misstate that the district court in *Hosseinzadeh* "dismissed the § 512(f) bad-faith claim at the motion-to-dismiss stage," allegedly confirming that allegations of knowing misrepresentation cannot survive absent concrete facts establishing subjective awareness of unlawfulness. (Motion at 7). That statement is also false. *Hosseinzadeh* was resolved on summary judgment, and there was never a motion to dismiss

---

[2] Plaintiff does not contend that § 512(f) claims are categorically immune from dismissal at the pleading stage. Plaintiff's argument is limited to the absence of authority in Defendants' Motion supporting the pleading rule Defendants assert.

**Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Counts 2, 3 and 4 of Plaintiff's First Amended Complaint**

1  ruling in that case. *Hosseinzadeh*, 276 F.Supp.3d at 39 ("Before the Court are dueling
2  motions for summary judgment."). *See also* Docket 16-cv-3087 (KBF) (S.D.N.Y) .

3  Defendants' citation to a nonexistent Second Circuit decision, together with the false
4  procedural history they attribute to it, is not a debatable characterization of authority; it is
5  an objectively false citation that raises serious concerns under Rule 11's requirement of a
6  reasonable pre-filing inquiry and the duty of candor to the Court. *See United States v.*
7  *Hayes*, 763 F. Supp. 3d 1054, 1063–66 (E.D. Cal. 2025) (imposing sanctions where counsel
8  cited non-existent authority and fabricated quotations).

9  **F.    The Declaratory Relief Claim Is Not Duplicative And Cannot Be**
10 **Dismissed**

11 Plaintiff posted the *Courthouse Fail* video to YouTube on February 3, 2022. (FAC
12 ¶ 45). On or about February 4, 2022, Defendants published *Frauditors Ejected from*
13 *Federal Courthouse (New)* to the Frauditor Troll channel. (*Id*. ¶ 49). Plaintiff did not
14 become aware of Defendants' video incorporating *Courthouse Fail* until June 2023. (*Id.* ¶
15 51). Thereafter, Plaintiff submitted a DMCA takedown notice; on or about July 5, 2023,
16 Defendants submitted a Counter-Notice, and YouTube reinstated the video based solely on
17 Defendants' sworn representations. (*Id*. ¶¶ 58-60). The video remains live on the Frauditor
18 Troll Channel. (*Id.* ¶ 110).

19 Plaintiff asserts a declaratory-relief claim under 17 U.S.C. § 512(g) and 28 U.S.C. §
20 2201 to resolve the concrete, ongoing controversy created by the Counter-Notice and the
21 fact that Defendants' video remains live on the Frauditor Troll Channel. (*Id.*) Defendants
22 expressly claimed lawful use and forced reinstatement. (*Id.* ¶ 111). That put the legality of
23 their conduct, and Plaintiff's rights under the DMCA, squarely in dispute. The Declaratory
24 Judgment Act exists to eliminate precisely this sort of legal uncertainty.

25 The Declaratory Judgment Act provides that, "[i]n a case of actual controversy
26 within its jurisdiction ... any court of the United States ... may declare the rights and other
27 legal relations of any interested party seeking such declaration, whether or not further relief
28 is or could be sought." 28 U.S.C. § 2201(a).

**Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Counts 2, 3 and 4 of Plaintiff's First Amended Complaint**

1   A case-or-controversy exists when the dispute between the parties is definite and
2   concrete and affects the legal relations between the parties. *See MedImmune, Inc. v.*
3   *Genentech, Inc.*, 549 U.S. 118, 127 (2007). The DMCA's own structure likewise presumes
4   that disputes over takedowns and counter-notifications will be resolved in "an action
5   seeking a court order to restrain the subscriber from engaging in infringing activity." 17
6   U.S.C. § 512(g)(2)(C). Here, Plaintiff's DMCA Takedown Notice, Defendants' Counter-
7   Notice, YouTube's reinstatement of the video, and the fact that the video remains live on
8   the Frauditor Troll Channel and continues to assert that their use is lawful create exactly
9   that kind of concrete, ongoing controversy.

### i.      Defendants Have Not Shown That The Declaratory Judgment Claim Is Duplicative

12   Defendants' argument that the declaratory-relief claim is "duplicative" of the
13   copyright claim makes little sense: Count 1 is an infringement claim concerning the
14   registered works *Another Chad Exposed* and *Belmar Library*, not *Courthouse Fail*. The
15   declaratory-relief claim (Count 3) concerns only the dispute triggered by Defendants'
16   Counter-Notice relating to *Courthouse Fail* and the fact that the video remains live on the
17   Frauditor Troll Channel. No other claim addresses that controversy. Defendants' position
18   ignores the operative allegations in the FAC and appears to be a leftover artifact of their
19   prior, now-moot motion to dismiss.

20   Because the FAC pleads an actual, ongoing controversy arising from the Counter-
21   Notice and reinstated *Courthouse Fail* video that remains live on the Frauditor Troll
22   Channel, and because no other cause of action resolves that controversy, the declaratory-
23   relief claim is neither duplicative nor subject to dismissal.

### G.      Plaintiff States A Claim For Violation Of 17 U.S.C. § 1201

25   Plaintiff's claim under 17 U.S.C. § 1201 arises from a simple and unavoidable
26   question: how did Defendants obtain local copies of Plaintiff's YouTube videos in the first
27   place? YouTube does not provide users with downloadable copies of uploaded videos
28   through ordinary use of the platform. As Plaintiff alleges in the FAC, Defendants obtained

local copies of Plaintiff's works using ripping software and reuploaded them to the Frauditor Troll channel. (FAC ¶¶ 4, 34–43, 117-18).

Section 1201 squarely addresses this conduct. In order to state a claim for violation of 17 U.S.C. § 1201(a)(1)(A), a plaintiff must allege that: (1) the works at issue were protected under the Copyright Act; (2) the copyrighted works were protected by a "technological measure"; and (3) the technological measure was "circumvented" in order to obtain access to the copyrighted works. *iSpot.tv, Inc. v. Teyfukova*, No. 21-cv-6815-MEMF (MARx), 2023 WL 3602806, at *4 (C.D. Cal. May 22, 2023) (citing 17 U.S.C. § 1201(a)(1)(A)). As set forth below, Plaintiff plausibly alleges each of these elements.

### i.    Plaintiff Alleges That His Works Were Protected Under The Copyright Act

Plaintiff adequately alleges that the works at issue are protected under the Copyright Act. To qualify for copyright protection, a work must be an original work of authorship fixed in a tangible medium of expression. 17 U.S.C. § 102(a).

Plaintiff alleges that he is the creator and original owner of original audiovisual works consisting of videos fixed in a tangible medium of expression and published on YouTube. (FAC ¶¶ 18, 114-15). Plaintiff further alleges that these works contain original audiovisual expression and are protected by copyright from the moment of creation. (*Id.*) Those allegations are sufficient to establish copyright protection at the pleading stage. Accordingly, Plaintiff has adequately pleaded the first element of a claim under 17 U.S.C. § 1201(a)(1)(A).

### ii.    Plaintiff Alleges That His Works Were Protected By A Technological Measure

Plaintiff alleges that his copyrighted audiovisual works were protected by a technological measure within the meaning of 17 U.S.C. § 1201(a) because when published, YouTube automatically applied a technological protection measure that controls access to and prevents unauthorized copying or downloading of Plaintiff's audiovisual files by directing users to stream content through YouTube's player interface rather than access the

16

1    underlying downloadable files, consistent with 17 U.S.C. § 1201. (FAC ¶ 116). *See also*
2    *Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, 633 F. Supp. 3d 650, 666-67 (D. Conn.
3    2022) (taking judicial notice that YouTube's terms of service contains "features that…limit
4    the use of the Service or Content" to streaming.)

5         The only known court decision to examine YouTube's access controls under § 1201
6    did so in the context of a declaratory-judgment action brought by a software developer
7    seeking a ruling that its conduct did not violate § 1201. In *Yout,* the plaintiff, sought a
8    declaration that its software, which enabled downloading YouTube videos, did not
9    circumvent a technological measure. *Id.* at 655. The court ultimately dismissed the
10   declaratory judgment claim, concluding that declaratory relief was inappropriate. *Id.* at
11   677.

12        Importantly, however, before dismissing the action, the court conducted an extensive
13   analysis of § 1201 and YouTube's technical architecture to determine whether YouTube
14   employed a technological measure. *See id.* at 662-78. In doing so, the court rejected the
15   premise that a technological measure must consist of traditional DRM, passwords,
16   encryption, or secret keys. *Id.* at 663–65. The court explained that § 1201 encompasses
17   measures that "restrain" or "direct" access to copyrighted works, even if those measures
18   do not absolutely prevent access. *Id.* at 665–66.

19        As part of that analysis, the court described YouTube's streaming-based architecture
20   as restraining access to downloadable media files by directing users to stream content
21   through the player page rather than obtain the underlying files. *Id.* at 666. The court further
22   discussed YouTube's use of a signature-based request mechanism, referred to by the parties
23   as a "rolling cipher," and explained that access to downloadable files required modification
24   of that signature value. *Id.* at 666–67. The court observed that, without modifying the
25   signature value, users could not access the downloadable file, supporting the inference that
26   the signature mechanism functions as an access control. *Id.* at 667.

27        Although the *Yout* court did not decide the motion to dismiss in the context of the
28   merits of a § 1201 claim, it explained that bypassing YouTube's player page and modifying

17

**Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Counts 2, 3 and 4 of Plaintiff's First Amended Complaint**

1  request parameters to obtain downloadable files would qualify as circumvention of an

2  access-control measure as defined by § 1201(a). *Id.* at 671-72.

3  Here, unlike *Yout*, Plaintiff is not seeking declaratory relief and is not asking the

4  Court to resolve § 1201 liability in the abstract. Plaintiff alleges that his works were

5  distributed through YouTube subject to the platform's access controls and that Defendants

6  defeated those controls to obtain unauthorized downloadable copies. (FAC ¶¶ 4, 11, 35-40,

7  116-17). At the pleading stage, *Yout* supports the conclusion that such allegations plausibly

8  describe a technological measure that controls access to Plaintiff's videos within the

9  meaning of § 1201(a). 633 F. Supp. 3d at 665–67, 671–72.

### iii. Plaintiff Alleges that Defendants Circumvented YouTube's Technological Measures In Order to Obtain Access to His Copyrighted Works

13  Plaintiff alleges that Defendants used ripping software to bypass YouTube's

14  technological protection measures, specifically the rolling cipher encryption that prevents

15  users from downloading videos for offline copying, and that they used the resulting

16  unauthorized downloads to create their own uploads incorporating Plaintiff's copyrighted

17  works. (FAC ¶¶ 4, 34–43, 117-18). These allegations state a textbook violation of §

18  1201(a)(1). At the pleading stage, Plaintiff need only plausibly allege circumvention,

19  which Plaintiff does.

20  Taken as true, Plaintiff alleges that YouTube employs technological protection

21  measures that effectively control access to Plaintiff's works; that Defendants bypassed

22  those measures using ripping software; that they obtained unauthorized offline copies; and

23  that they used those copies to create infringing uploads. (FAC ¶¶ 4, 34–40, 116-18). These

24  allegations sufficiently allege that Defendants circumvented YouTube's technological

25  measures in order to gain access to his copyrighted works. Accordingly, Defendants'

26  motion to dismiss Plaintiff's § 1201 claim must be denied.

27  //

28  //

18

**Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Counts 2, 3 and 4 of Plaintiff's First Amended Complaint**

1
2

  **iv.**  **Defendants' Argument That Plaintiff Did Not Plead A Circumvention Claim Ignores The Allegations In The FAC**

3
4
5
6
7

  Defendants argue that Plaintiff failed to state a plausible claim under 17 U.S.C. § 1201 because, according to Defendants, Plaintiff alleges only that Defendants "accessed," "viewed," or "recorded" content made available by YouTube. (Motion at 8-10). That argument is based on a willful mischaracterization of the pleadings. Defendants do not cite, let alone engage with, a single paragraph of the FAC in advancing this claim.

8
9
10
11
12
13

  Plaintiff did not allege mere "accessing," "viewing," or "recording" of YouTube content. To the contrary, the FAC specifically alleges that Defendants used tools commonly known as "rippers" or "downloaders" to bypass YouTube's access controls and obtain native-quality copies of Plaintiff's YouTube videos. (FAC ¶¶ 4, 36-39, 117-118). These allegations go well beyond passive viewing or screen recording and plausibly plead circumvention of a technological measure within the meaning of § 1201(a)(1)(A).

14
15
16
17

  Defendants' failure to confront the actual allegations in the FAC, and their decision instead to attack a strawman version of the pleadings, does not support dismissal. At the Rule 12(b)(6) stage, the Court must credit Plaintiff's allegations as pleaded, not Defendants' rewritten version of them.

18
19

  **v.**  **Defendants' Argument That Plaintiff Lacks Standing To Assert A § 1201 Claim Has No Merit**

20
21
22
23

  Without citing any authority, Defendants argue that Plaintiff lacks standing to bring a claim under 17 U.S.C. § 1201 because YouTube, rather than Plaintiff, implemented the technological protection measure at issue. That argument is legally incorrect and was squarely rejected by the Court in *Yout*.

24
25
26
27
28

  As the court held, Defendants' argument regarding standing is contrary to the plain text of § 1201, which imposes no requirement that the copyright owner itself implement the technological measure. *Yout* 633 F. Supp. 3d at 665. As the court explained, "The statute defines circumvention and effectiveness in reference to the 'authority of the copyright owner,' but it does not require that the copyright owner establish an access

19

control." *Id.* So long as the technological measure controls access to a copyrighted work and operates with the copyright owner's authorization, § 1201 applies. Accordingly, Defendants' standing argument fails as a matter of law under the plain text of § 1201 and should be rejected.

## V.    CONCLUSION

Defendants' Motion fails at the threshold. It does not include a statement of the relevant facts as required by Civil Local Rule 7-1(a)(4); it does not cite or address the allegations actually plead in the FAC; it relies on extrinsic evidence barred at the Rule 12(b)(6) stage; and it repeatedly misstates both Plaintiff's allegations and the law Defendants purport to apply. A motion to dismiss that substitutes its own factual narrative for the allegations in the complaint, cites authority that does not exist, and ignores controlling standards cannot support dismissal.

Equally fatal, the Motion offers no basis for dismissing the claims against Ohiri, who did not move and again failed to plead or otherwise defend. The Court cannot dismiss claims on behalf of a non-moving, defaulted defendant.

In short, this is not a close case. The FAC plausibly pleads violations of 17 U.S.C. §§ 512(f) and 1201, as well as a live controversy warranting declaratory relief. Defendants' Motion does not engage those allegations and provides no lawful basis for dismissal. Accordingly, the Motion should be denied in its entirety.

The Court may also wish to consider whether Defendants' use of fabricated citations, misstated procedural history, and disregard of basic pleading standards complies with their obligations under Rule 11 and 28 U.S.C. § 1927.

//
//
//
//
//
//

20

**Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Counts 2, 3 and 4 of Plaintiff's First Amended Complaint**

Dated:  December 15, 2025

/s/ Randall S. Newman
Randall S. Newman, Esq. (SBN 190547)
99 Wall Street, Suite 3727
New York, NY 10005
(212) 797-3735
rsn@randallnewman.net

*Attorney for Plaintiff,*
*Christopher J. Cordova*

**Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Counts 2, 3 and 4 of Plaintiff's First Amended Complaint**