Steven C. Vondran, Esq. [SBN 232337]
**THE LAW OFFICES OF STEVEN C. VONDRAN, PC**
One Sansome Street, Sansome St #3500,
San Francisco, California 94104
Telephone: (877) 276-5084
E-mail:  steve@vondranlegal.com

Attorney for Defendants and Counterclaimants: JONATHAN HUDON-HUNEAULT,
NNEKA OHIRI, and 14693663 CANADA INC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| CHRISTOPHER J CORDOVA, an individual,<br><br>                    Plaintiff,<br><br>vs.<br><br>JONATHAN HUDON-HUNEAULT, NNEKA OHIRI, and 14693663 CANADA INC.<br><br>                    Defendant(s) and Counterclaimant(s). | Case No. 5:25-cv-04685-VKD<br><br>**DEFENDANT'S COUNTERCLAIM**<br><br>**DEMAND FOR A JURY TRIAL** |

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this Counterclaim pursuant

to 28 U.S.C. §§ 1331 and 1338 because the claims arise under the Copyright Act,

including 17 U.S.C. § 512(f), and under the Declaratory Judgment Act, 28 U.S.C. §§

1

COUNTERCLAIM

THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.
620 Newport Ctr.. Suite 1100
Newport Beach, California 92660

2201–2202.

2.    This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367 because those claims arise out of the same nucleus of operative facts as the federal claims.

3.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiffs invoked this forum, the operative conduct involves YouTube and DMCA processes administered in this District, and Plaintiffs expressly sought to hale Counterclaimant into this forum through copyright takedown and counter notification procedures, including by requiring consent to jurisdiction under the DMCA.

## **PARTIES**

4.    Counterclaimant **JONATHAN HUDON-HUNEAULT**, known online as "Frauditor Troll," is an individual and digital content creator. Together with Counterclaimants NNEKA OHIRI and 14693663 CANADA INC. (collectively, "Counterclaimants"), he operates a monetized YouTube channel focused on news reporting, commentary, criticism, and analysis of publicly available online videos and matters of public interest. Counterclaimant's channel regularly publishes reaction and commentary content that is highly transformative in nature, incorporating portions of third-party videos solely for purposes of criticism, discussion, and public commentary, and does not serve as a market substitute for the original works. Counterclaimant's

COUNTERCLAIM

content is directed to a distinct and different audience and is intended to inform, critique, and engage viewers on issues raised by the underlying videos, which deals with issues of the 1st Amendment and public interest.

5.    Plaintiff **CHRISTOPHER J. CORDOVA** is an individual who publishes videos on YouTube in the genre commonly referred to as "First Amendment auditing," consisting of recordings of interactions with law enforcement and public officials in public spaces. Plaintiff claims ownership of certain publicly posted online videos and submitted copyright takedown notices concerning those videos through YouTube, giving rise to the claims asserted in this action.

6.    At all relevant times, Plaintiff acted individually and or through agents, representatives, and other persons acting with Plaintiff's knowledge, consent, or authorization in connection with the submission of copyright takedown notices and related communications. The true names and capacities of such persons and entities are presently unknown to Counterclaimant and will be ascertained through discovery. Counterclaimant alleges that each such person or entity was acting within the course and scope of their authority and or participation in the conduct alleged herein.

## FACTUAL ALLEGATIONS

7.    Counterclaimant operates a YouTube commentary channel "Frauditor" focused on criticism, reaction, and discussion of publicly available online content,

THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.
620 Newport Ctr., Suite 1100
Newport Beach, California 92660

including videos addressing matters of public interest, by so-called "First Amendment auditors".

8.      Counterclaimant's videos are a parody of Plaintiff's videos and transformative in nature and incorporate necessary portions of third-party videos solely for purposes of criticism, commentary, news reporting, and public discussion.

9.      Counterclaimant's channel targets an entirely different audience and market than Plaintiffs' original content focuses on and does not function as a market substitute for Plaintiffs' videos.

10.     In or around early 2022, Plaintiffs became aware of Counterclaimant's YouTube channel and its coverage of Plaintiffs' content.

11.     Plaintiffs affirmatively engaged with Counterclaimant and his audience, including participating in livestream discussions on the "Frauditor" channel, appearing on live panels, requesting that specific videos be played, and engaging directly with Counterclaimant during broadcasts.

12.     During a publicly available livestream, Plaintiffs expressly stated words to the effect of "I do not have any problem with what you guys do," "You do your thing, I do what I do," and otherwise disclaimed any intent to pursue legal action against Counterclaimant (See **Exhibit "A"**, livestream screenshot and transcript). Counterclaimants relied on this.

COUNTERCLAIM

THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.
620 Newport Ctr., Suite 1100
Newport Beach, California 92660

13.    During the same livestream, Plaintiffs acknowledged that they had suffered little to no commercial harm from Counterclaimant's activities, including stating that only two shirts had been sold and that no meaningful damages had occurred (See **Exhibit "A"**).

14.    Plaintiffs remained on the livestream for approximately ninety minutes, disconnected and rejoined multiple times, and continued to participate after acknowledging the nature of Counterclaimant's channel, its prior videos, and its ongoing coverage of Plaintiffs' content.

15.    Plaintiffs were expressly informed that Counterclaimant had already created numerous videos covering Plaintiffs' content, including videos that had achieved significant viewership, and Plaintiffs raised no objection to such coverage, or videos.

16.    Following the livestream, Plaintiffs continued cordial communications with Counterclaimant for months and did not revoke permission, object to Counterclaimant's use of Plaintiffs' content, or issue any cease-and-desist notice.

17.    Plaintiffs subsequently sent Counterclaimant images and materials specifically labeled for use on Counterclaimant's livestreams and show, including messages stating, "for you my love" and "for your show" (See **Exhibit "B"**, email correspondence and attached images).

18.    At no time prior to submitting the copyright takedown notices did Plaintiffs

COUNTERCLAIM

THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.
620 Newport Ctr., Suite 1100
Newport Beach, California 92660

THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.
620 Newport Ctr., Suite 1100
Newport Beach, California 92660

revoke consent, object to Counterclaimant's use of the footage, demand removal of any content, or otherwise communicate that Counterclaimant lacked permission to publish or monetize the videos at issue. To the contrary, Plaintiffs knowingly participated in livestream interviews, voluntarily appeared on Counterclaimant's channel, and expressly or impliedly authorized recording, distribution, and public display of their content.

19.    During the same time period, Plaintiffs and their associates sent written communications to Counterclaimant accusing him of misconduct unrelated to copyright, threatening to publicly disclose private communications or recordings, and demanding that Counterclaimant remove or alter his commentary content, while referencing the use of platform reporting and enforcement processes as leverage (See **Exhibit "C"**, email correspondence).

20.    During these communications, Plaintiffs did not revoke any prior permission, issue a cease-and-desist notice, or identify any specific copyright objection to Counterclaimant's videos.

21.    Instead, Plaintiffs abruptly submitted multiple copyright takedown notices against Counterclaimant through YouTube, invoking the DMCA enforcement process without prior notice or revocation of permission (See **Exhibit "D"**, YouTube copyright strike notices).

22.    Plaintiffs issued eight copyright strikes in close temporal proximity, placing

6

COUNTERCLAIM

Counterclaimant's YouTube channel at immediate risk of suspension or permanent termination (See **Exhibit "D"**).

23.    The copyright strikes targeted videos that Plaintiffs knew were commentary and reaction parody videos and that Plaintiffs had previously approved, endorsed, or encouraged through their participation and communications.

24.    Plaintiffs submitted the takedown notices without mentioning their prior permission, participation, or consent and without conducting a proper fair use analysis.

25.    Plaintiffs knew or should have known that the representations made in the takedown notices were materially false and made in bad faith.

26.    As a direct result of the bad faith copyright strikes, Counterclaimant faced the imminent termination of his YouTube channel under YouTube's copyright enforcement policies.

27.    To prevent permanent loss of the channel, Counterclaimant was compelled to submit counter-notifications through YouTube, which constituted the only available mechanism to restore the videos and avoid termination (See **Exhibit "E"**, counter-notification confirmations).

28.    The counter-notification process required Counterclaimant to consent to jurisdiction in the United States despite being a Canadian citizen.

29.    Counterclaimant's consent to jurisdiction was obtained under economic

COUNTERCLAIM

duress and under threat of permanent channel termination resulting from Plaintiffs' copyright strikes.

30.    Plaintiffs' ability to invoke jurisdiction over Counterclaimant was predicated on their own submission of the copyright takedown notices.

31.    As a direct and proximate result of Plaintiffs' actions, Counterclaimant suffered immediate and substantial financial harm.

32.    Counterclaimant experienced a documented loss of advertising revenue exceeding $9,000 in the immediate aftermath of the copyright strikes (See **Exhibit "F"**, YouTube Analytics revenue reports).

33.    Counterclaimant's channel further suffered algorithmic suppression, delayed recovery, and prolonged revenue loss over subsequent months as a result of the strikes.

34.    At the time of the takedowns, Counterclaimant maintained existing and prospective sponsorship and business relationships, which were disrupted or lost due to video removals, channel instability, and reputational harm (See **Exhibit "G"**, sponsorship communications).

35.    Plaintiffs' conduct damaged Counterclaimant's reputation, goodwill, and business expectancy.

COUNTERCLAIM

THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.
620 Newport Ctr., Suite 1100
Newport Beach, California 92660

**FIRST CAUSE OF ACTION**

**VIOLATION OF 17 U.S.C. § 512(f) –**
**BAD FAITH MISREPRESENTATION IN DMCA TAKEDOWN NOTICES**

*[Against All Plaintiffs]*

36.    Counterclaimant incorporates by reference paragraphs 1 through 35 as though fully set forth herein.

37.    Section 512(f) of the Copyright Act imposes liability on any person who knowingly and materially misrepresents that material or activity is infringing when submitting a copyright takedown notice under the Digital Millennium Copyright Act.

38.    Plaintiffs submitted multiple copyright takedown notices to YouTube asserting that Counterclaimant's videos infringed Plaintiffs' copyrights, despite knowing that such assertions were false or made with reckless disregard for their truth or falsity.

39.    At the time Plaintiffs submitted the takedown notices, Plaintiffs knew that Counterclaimant's videos were "mockery" and parody commentary and reaction videos incorporating only necessary portions of Plaintiffs' content for purposes of criticism, discussion, and public commentary of matters involving the First Amendment.

40.    Plaintiffs further knew that Counterclaimant's videos were transformative, targeted a distinct audience, and did not serve as a market substitute for Plaintiffs' original content.

COUNTERCLAIM

THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.
620 Newport Ctr., Suite 1100
Newport Beach, California 92660

41.    Plaintiffs also knew that they had expressly authorized, encouraged, and consented to Counterclaimant's use of Plaintiffs' content, including through direct participation in livestreams, affirmative statements disclaiming any objection to Counterclaimant's activities, and the transmission of materials for use on Counterclaimant's show.

42.    Plaintiffs never revoked such permission, never issued a cease-and-desist notice, and never objected to Counterclaimant's use of Plaintiffs' content prior to submitting the takedown notices.

43.    Despite this knowledge, Plaintiffs submitted the takedown notices without disclosing their prior consent, participation, or encouragement and without conducting a good-faith fair use analysis.

44.    Plaintiffs' failure to disclose their prior authorization and course of conduct rendered the takedown notices materially misleading, as such facts were directly relevant to whether Counterclaimant's use was infringing.

45.    Plaintiffs' submission of multiple takedown notices in close temporal proximity further demonstrates that the misrepresentations were knowing and intentional rather than the result of mistake or inadvertence and were designed and intended to injure Counterclaimants.

46.    Plaintiffs knew or should have known that the submission of multiple

10

COUNTERCLAIM

copyright strikes would result in the removal of Counterclaimant's videos, suppression of Counterclaimant's channel, and the imminent risk of channel termination.

47.    Counterclaimant relied on Plaintiffs' misrepresentations by responding through YouTube's counter-notification process in an effort to avoid permanent loss of his channel and livelihood.

48.    As a direct and proximate result of Plaintiffs' knowing and material misrepresentations, Counterclaimant suffered substantial damages, including loss of advertising revenue, loss of sponsorship opportunities, reputational harm, and business disruption.

49.    Plaintiffs are liable to Counterclaimant for all damages caused by their violations of 17 U.S.C. § 512(f), including actual damages, consequential damages, attorney's fees and any other relief available under law.

## SECOND CAUSE OF ACTION

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT

#### *[Against All Plaintiffs]*

50.    Counterclaimant incorporates by reference paragraphs 1 through 49 as though fully set forth herein.

51.    An actual, present, and justiciable controversy exists between Counterclaimant and Plaintiffs concerning Counterclaimant's right to create, publish,

COUNTERCLAIM

THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.
620 Newport Ctr., Suite 1100
Newport Beach, California 92660

and monetize commentary and reaction videos incorporating limited portions of Plaintiffs' content.

52.    Plaintiffs have asserted, through the submission of copyright takedown notices and related enforcement actions, that Counterclaimant's videos infringe Plaintiffs' copyrights and are unlawful.

53.    Counterclaimant disputes Plaintiffs' assertions and contends that his videos are lawful and non-infringing.

54.    Counterclaimant's videos constitute fair use under 17 U.S.C. § 107 because they are transformative in nature, incorporate only limited portions of Plaintiffs' content, are used for purposes of criticism, commentary, news reporting, and public discussion, and do not serve as market substitutes for Plaintiffs' original works.

55.    Counterclaimant further contends that Plaintiffs expressly and impliedly authorized Counterclaimant's use of the content at issue through affirmative statements, direct participation in Counterclaimant's livestreams, encouragement of engagement, and subsequent conduct consistent with ongoing consent.

56.    Plaintiffs never revoked such authorization, never issued any notice of revocation or objection, and instead abruptly asserted copyright infringement after months of express approval and participation.

57.    Plaintiffs' actions have created uncertainty and instability regarding

THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.
620 Newport Ctr., Suite 1100
Newport Beach, California 92660

12

COUNTERCLAIM

THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.
620 Newport Ctr., Suite 1100
Newport Beach, California 92660

Counterclaimant's ability to continue publishing commentary content without fear of further takedowns, strikes, or enforcement actions.

58.    Without declaratory relief, Counterclaimant faces a credible and ongoing threat of repeated copyright strikes, channel suspension or termination, loss of monetization, and continued disruption of his livelihood.

59.    A judicial declaration is necessary and appropriate to determine the rights and legal relations of the parties and to resolve whether Counterclaimant's videos infringe Plaintiffs' copyrights and to declare that Counterclaimants are not infringers.

60.    Counterclaimant therefore seeks a declaration that his videos do not infringe Plaintiffs' copyrights, that such videos constitute fair use under the Copyright Act, and that Plaintiffs granted Counterclaimant a nonexclusive license, express or implied, to use the content at issue.

61.    Declaratory relief will clarify the parties' respective rights and obligations, eliminate uncertainty, and prevent further misuse of copyright enforcement mechanisms against Counterclaimants. Counterclaimants seek all available remedies.

## THIRD CAUSE OF ACTION

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### *[Against All Plaintiffs]*

62.    Counterclaimant incorporates by reference paragraphs 1 through 61 as

13

COUNTERCLAIM

though fully set forth herein.

63.    At all relevant times, Counterclaimant maintained existing and prospective economic relationships with advertisers, sponsors, viewers, and platform partners, including relationships arising from YouTube monetization and third-party sponsorship opportunities.

64.    These economic relationships carried a reasonable probability of future economic benefit to Counterclaimant, including continued advertising revenue, sponsorship agreements, and growth of Counterclaimant's channel as a monetized business.

65.    Plaintiffs knew of Counterclaimant's monetized YouTube channel, revenue streams, and commercial relationships, including the fact that Counterclaimant derived income from advertising and sponsorships tied to the continued availability and stability of his videos and channel.

66.    Plaintiffs intentionally engaged in conduct designed to interfere with Counterclaimant's economic relationships by submitting multiple copyright takedown notices and causing copyright strikes to be issued against Counterclaimant's channel.

67.    Plaintiffs' conduct was wrongful and independently unlawful because it consisted of knowing and material misrepresentations in copyright takedown notices, submission of takedowns without a good-faith fair use analysis, and misuse of the

THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.
620 Newport Ctr., Suite 1100
Newport Beach, California 92660

14

COUNTERCLAIM

copyright enforcement process for purposes unrelated to legitimate copyright protection.

68.     Plaintiffs knew or should have known that the submission of multiple copyright strikes would foreseeably result in removal of Counterclaimant's videos, suppression of channel visibility, disruption of monetization, loss of advertiser confidence, and termination or withdrawal of sponsorship opportunities.

69.     Plaintiffs' conduct in submitting the copyright strikes directly disrupted Counterclaimant's existing and prospective economic relationships, including relationships with advertisers and sponsors who rely on stable content availability, consistent posting, and platform compliance.

70.     As a direct and proximate result of Plaintiffs' actions, Counterclaimant suffered financial harm, including loss of advertising revenue, loss of sponsorship opportunities, diminished channel growth, and damage to business goodwill and expectancy.

71.     Plaintiffs' intentional interference was a substantial factor in causing Counterclaimant's economic harm and was not justified by any legitimate business or copyright enforcement interest.

72.     Counterclaimant suffered damages as a proximate result of Plaintiffs' tortious interference, including lost profits, lost business opportunities, and reputational harm, in an amount to be proven at trial.

COUNTERCLAIM

THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.
620 Newport Ctr., Suite 1100
Newport Beach, California 92660

**PRAYER FOR RELIEF**

**WHEREFORE**, Counterclaimant respectfully requests that the Court:

1.    Enter judgment in favor of Counterclaimant on all causes of action.

2.    Declare that Counterclaimants videos are protected by 17 U.S.C. § 512(f).

3.    Issue a declaratory judgement that Counterclaimants did not infringe on Plaintiff's copyright.

4.    Award actual damages, consequential damages, and statutory damages where available, subject to proof.

5.    Award attorneys' fees and costs.

6.    Grant injunctive relief preventing further misuse of the DMCA.

7.    Grant such other and further relief as the Court deems just and proper.

Respectfully Submitted,

DATED: January 6, 2026        **THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.**


By:  /s/ Steven C. Vondran, Esq.
Steven C. Vondran, [SBN 232337]
*Attorney for Defendants and Counterclaimants*
JONATHAN HUDON-HUNEAULT;
NNEKA OHIRI AND 14693663 CANADA
INC.
One Sansome Street, Sansome St #3500,
San Francisco, California 94104
Telephone: (877) 276-5084
E-mail:  steve@vondranlegal.com

COUNTERCLAIM

The Law Offices of Steven C. Vondran, P.C.
620 Newport Ctr., Suite 1100
Newport Beach, California 92660

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.
620 Newport Ctr., Suite 1100
Newport Beach, California 92660

## **LIST OF EXHIBITS**

**Exhibit "A"**

Screenshots and transcript excerpts from Plaintiffs' publicly available livestream in which Plaintiffs expressly disclaimed any intent to pursue legal action, stated that they had no issue with Counterclaimant's activities, and acknowledged minimal or no commercial harm resulting from Counterclaimant's content.

**Exhibit "B"**

Email correspondence and attached images sent by Plaintiffs to Counterclaimant following the livestream, including materials expressly labeled for use on Counterclaimant's show or livestreams, demonstrating Plaintiffs' encouragement and consent to use of the content at issue.

**Exhibit "C"**

Written communications from Plaintiffs and their associates accusing Counterclaimant of misconduct unrelated to copyright, threatening disclosure of private communications or recordings, and demanding removal or alteration of commentary content while referencing platform reporting and enforcement mechanisms as leverage.

COUNTERCLAIM

**Exhibit "D"**

YouTube copyright strike notifications and takedown notices issued against Counterclaimant's channel, reflecting multiple DMCA takedowns submitted in close temporal proximity and placing Counterclaimant's channel at risk of suspension or termination.

**Exhibit "E"**

YouTube counter-notification confirmations submitted by Counterclaimant in response to Plaintiffs' copyright strikes, demonstrating that Counterclaimant was required to invoke the DMCA counter-notification process to avoid permanent channel termination.

**Exhibit "F"**

Evidence of financial harm resulting from Plaintiffs' copyright strikes, including:

- Counterclaimant's contemporaneous written demand letter asserting lost income.

- YouTube Analytics revenue report for July 2023 (strike period).

- YouTube Analytics revenue report for August 2023 (immediate post-strike period).

COUNTERCLAIM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.
620 Newport Ctr., Suite 1100
Newport Beach, California 92660

**Exhibit "G"**

Email correspondence reflecting Counterclaimant's existing and prospective sponsorship and business relationships, including partnership communications disrupted or jeopardized as a result of video removals, channel instability, and reputational harm.

COUNTERCLAIM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.
620 Newport Ctr., Suite 1100
Newport Beach, California 92660

**SERVICE LIST**

RANDALL S. NEWMAN (SBN 190547)
Attorney at Law
99 Wall St., Suite 3727
New York, NY 10005
212.797.3735
rsn@randallnewman.net

__xx__   **ELECTRONIC FILING:** I filed the above-described document(s) electronically through the Court's ECF filing system to all registered users.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on January 6, 2026

_/s/  Lisa Vondran_____
Lisa Vondran, legal assistant

20

COUNTERCLAIM