RANDALL S. NEWMAN (SBN 190547)
Attorney at Law
99 Wall St., Suite 3727
New York, NY 10005
212.797.3735
rsn@randallnewman.net

*Attorney for Plaintiff,*
 *Christopher J. Cordova*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER J. CORDOVA,<br><br>         Plaintiff,<br><br>   vs.<br><br>JONATHAN HUDON-HUNEAULT,<br>NNEKA OHIRI, 14693663 CANADA<br>INC.,<br><br>        Defendants. | Case No. 25-cv-04685-VKD<br><br>**Hon. Virginia K. DeMarchi**<br><br>**NOTICE OF MOTION AND<br>MOTION TO DISMISS<br>DEFENDANTS' COUNTERCLAIMS;<br>MEMORANDUM OF POINTS AND<br>AUTHORITIES**<br><br>**HEARING:**<br>Date: March 3, 2026<br>Time: 10:00 a.m.<br>Place: 280 South 1st St.<br>Courtroom 2 (5th Floor)<br>San Jose, CA 95113 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 3, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 2 (5th Floor) of the Honorable Virginia K. DeMarchi, United States Magistrate Judge, at the Robert F. Peckham Federal Courthouse, 280 South First Street, San Jose, California 95113, Plaintiff Christopher J. Cordova ("Plaintiff") will and hereby does move the Court for an order dismissing the Counterclaims (ECF No. 58) [1] asserted by Defendants Jonathan Hudon-Huneault ("Huneault"), Nneka Ohiri ("Ohiri"), and 14693663 Canada Inc. ("Canada Inc.") (collectively, "Defendants").

This Motion is made on the following grounds:

1.      Count One of Defendants' Counterclaims under 17 U.S.C. § 512(f) fails as a matter of law because Defendants do not and cannot plead a knowing and material misrepresentation by Plaintiff, cognizable reliance, or legally sufficient damages; and

2.      Count Two of Defendants' Counterclaims for declaratory relief fails for lack of an actual, justiciable controversy.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this action, and such further evidence and argument as may be presented at or before the hearing.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Defendants' First Counterclaim under 17 U.S.C. § 512(f) fails to state a claim because Defendants do not plausibly allege that Plaintiff made a knowing and material misrepresentation in connection with the issuance of copyright takedown notices.

2.      Whether Defendants' § 512(f) counterclaim fails as a matter of law where it is premised on disagreement over fair use, post-hoc assertions of consent or authorization, or Defendants' subjective belief regarding the lawfulness of their conduct.

---

[1] On January 13, 2026, Defendants filed a Notice of Voluntary Dismissal as to Count Three of their Counterclaims for Tortious Interference with Prospective Economic Advance (ECF No 62).

**Notice of Motion and Motion to Dismiss Defendants' Counterclaims**

3.    Whether Defendants' § 512(f) counterclaim fails for failure to plead cognizable reliance and legally sufficient damages.

4.    Whether Defendants' Second Counterclaim for declaratory relief should be dismissed because it presents no actual, immediate, and justiciable controversy independent of issues already before the Court.

5.    Whether Defendants' declaratory judgment counterclaim improperly seeks an advisory opinion.

6.    Whether Counts One and Two of Defendants' counterclaims should be dismissed with prejudice because amendment would be futile.

Dated:  January 23, 2026

/s/ Randall S. Newman
Randall S. Newman, Esq. (SBN 190547)
99 Wall Street, Suite 3727
New York, NY 10005
(212) 797-3735
rsn@randallnewman.net

*Attorney for Plaintiff,*
*Christopher J. Cordova*

# **TABLE OF CONTENTS**

Contents

STATEMENT OF ISSUES TO BE DECIDED ................................................................ i

I.    INTRODUCTION ................................................................ 1

II.   FACTUAL BACKGROUND ................................................................ 2

III.  LEGAL STANDARD GOVERNING MOTIONS TO DISMISS ............................. 4

A.    Legal Standard Under 12(b)(1) ................................................................ 4

B.    Legal Standard Under 12(b)(6) ................................................................ 4

IV.   COUNT ONE (17 U.S.C. § 512(f)) FAILS AS A MATTER OF LAW ................... 5

A.    Section 512(f) Requires a Knowing and Material Misrepresentation, Not a Disagreement Over Copyright Law ................................................................ 6

B.    Defendants Do Not Allege Facts Showing Plaintiff Subjectively Knew the Challenged Uses Were Non-Infringing ................................................................ 7

C.    Defendants Fail to Plead a Material Misrepresentation on Which YouTube Relied . 9

D.    Defendants Fail to Plead Damages Proximately Caused by Any Knowing and Material Misrepresentation ................................................................ 10

E.    Count One Fails as a Matter of Law Under Any Theory Pled ................................ 11

V.    COUNT TWO OF THE COUNTERCLAIMS FAILS FOR LACK OF A JUSTICIABLE CONTROVERSY ................................................................ 12

A.    Failure to Identify Any Specific Video Deprives the Court of Article III Jurisdiction ................................................................ 12

B.    Declaratory Relief as to an Alleged Nonexclusive License Fails as a Matter of Law . ................................................................ 13

i.    Defendants Fail to Plead an Express Oral License Under California Contract Law ................................................................ 14

ii.   Defendants Fail to Plead an Implied Nonexclusive License Under California Law ................................................................ 14

iii.    Defendants Own Conduct Contradicts Any Claim of License or Authorization ..............................................................................................15

VI.    DISMISSAL SHOULD BE WITH PREJUDICE ....................................................16

VII.    CONCLUSION.......................................................................................................17

**Notice of Motion and Motion to Dismiss Defendants' Counterclaims**

**TABLE OF AUTHORITIES**

**CASES**

*Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114 (9th Cir. 2002)......4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................5

*Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199 (Cal. Ct. App. 6th Dist. 2006) ...........14

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994)....................................6

*Doe v. United States*, 8 F.3d 494 (9th Cir. 1995) ..................................................5

*Effects Assocs., Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990) ...........................14

*Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048 (9th Cir.2003)..........................5

*ENTTech Media Group LLC v. Okularity, Inc.*, 2:20-cv-06298-JWH-Ex, 2021 WL 916307 (C.D. Cal. Mar. 10, 2021). .........................................................6

*Foad Consulting Group, Inc. v. Azzalino*, 270 F.3d 821 (9th Cir. 2001)...................13, 15

*Golden v. Zwickler*, 394 U.S. 103 (1969) ...........................................................13

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)...........................4

*Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522 (9th Cir. 2008)......................4, 17

*Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016)...................................6-8

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)....................................................5

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001)...................................................4

*Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004) ...................7

*Rossi v. Motion Picture Ass'n of America Inc.*, 391 F.3d 1000 (9th Cir. 2004)................7

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ......................................................4

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) .....................................................5

*Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (9th Cir. 2000) ................13

*Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998).........................14, 16

**Notice of Motion and Motion to Dismiss Defendants' Counterclaims**

**STATUTES**

17 U.S.C. § 107 ................................................................................................ 3

17 U.S.C. § 512 ......................................................................................... passim

17 U.S.C. § 512(g) ..................................................................................... 3, 15

28 U.S.C. § 2201 .............................................................................................. 2

**RULES**

Fed. R. Civ. P. 12(b)(1) ........................................................................ 2, 4, 12

Fed. R. Civ. P. 12(b)(6) ........................................................................... 4, 13

**Notice of Motion and Motion to Dismiss Defendants' Counterclaims**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants' counterclaims fail for two independent reasons. Count One fails to state a claim under 17 U.S.C. § 512(f) because Defendants do not plead facts plausibly showing that Plaintiff knowingly and materially misrepresented infringement when submitting takedown notices pursuant to the Digital Millennium Copyright Act, 17 U.S.C. § 512, et seq. (the "DMCA"). Count Two fails because it seeks advisory declaratory relief untethered to any identified video, copyright, or concrete dispute, and improperly asks this Court to manufacture copyright rights that do not exist.

Count One is a statutory misrepresentation claim. To state a claim under § 512(f), Defendants must plausibly allege that Plaintiff subjectively knew a specific use was authorized or non-infringing at the time he submitted a particular takedown notice. Defendants do not do so. They identify no specific takedown notice, no specific video allegedly covered by authorization, and no contemporaneous facts showing that Plaintiff disbelieved his own infringement claims. Instead, they rely on conclusory allegations that Plaintiff "knew" Defendants' uses were fair use or authorized, assertions unsupported by factual detail and insufficient as a matter of law.

Count Two suffers from a different and more fundamental defect. There, Defendants seek three declarations: (1) that "the videos" do not infringe Plaintiff's copyrights; (2) that "the videos" constitute fair use; and (3) that Plaintiff granted Defendants a nonexclusive license, express or implied, to use Plaintiff's works. But Defendants never identify what "the videos" are. They do not name a single title, URL, upload date, or copyrighted work. Declaratory judgment jurisdiction requires a concrete dispute over identifiable conduct, not abstract rulings about undefined categories of content or hypothetical future uses.

Count Two's defects are compounded by Defendants' reliance on what can only be described as an "accidental license" theory, the notion that informal livestream remarks on YouTube, cooperative interactions, or a lack of contemporaneous objection somehow created an ongoing, nonexclusive copyright license. Rather than alleging a negotiated grant

of rights tied to specific works, Defendants ask the Court to infer perpetual authorization from casual commentary and social interaction. California law and Copyright law do not recognize licenses created by inadvertence, tolerance, or post-hoc reinterpretation of informal conduct, and declaratory relief is not a vehicle for retroactively conferring copyright permissions that were never granted.

Finally, Count Two improperly repackages affirmative defenses, non-infringement, fair use, and license, into a freestanding declaratory action. Those issues will necessarily be resolved, if at all, in adjudicating Plaintiff's infringement claims. The Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. does not authorize duplicative litigation or advisory opinions designed to preempt merits determinations.

Because Count One fails to plead a plausible § 512(f) claim and Count Two seeks abstract declarations based on undefined works and a legally nonexistent "accidental license," both counterclaims should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## II.    FACTUAL BACKGROUND

Plaintiff is a Colorado-based constitutional auditor and the creator of the *Denver Metro Audits* YouTube channel, where he publishes original audiovisual works documenting interactions with government officials, law enforcement, and public employees. (First Amended Complaint, ECF No. 39 ("FAC") ¶¶ 17, 29–31.) His works form part of a broader movement of citizen-journalist creators ("Auditors") who film public-interest encounters and disseminate them through YouTube. (*Id.*)

Huneault, Ohiri, and Canada Inc. jointly operate the *Frauditor Troll* YouTube channel, which publishes reaction-style and commentary videos that incorporate significant portions of Plaintiff's publicly available content. (FAC ¶¶ 19–22, 32–34; Counterclaim ¶¶ 4–7).

Plaintiff alleges that Defendants unlawfully reproduced, displayed, and monetized portions of his copyrighted videos and brought claims against Defendants for copyright infringement, misrepresentation under § 512(f), circumvention of technological protection

**Notice of Motion and Motion to Dismiss Defendants' Counterclaims**

1   measures, and declaratory relief. (FAC ¶¶ 85–123). Defendants deny liability and contend

2   that their videos were authorized and/or protected by fair use under 17 U.S.C. § 107.

3   (Answer to FAC, ECF No. 57).

4        Plaintiff submitted multiple DMCA takedown notices to YouTube in 2023

5   identifying videos uploaded by Defendants that Plaintiff contended infringed his

6   copyrighted works. (FAC ¶ 58). Defendants responded by submitting DMCA counter-

7   notifications pursuant to 17 U.S.C. § 512(g), asserting that the challenged videos were non-

8   infringing and requesting reinstatement of the removed content. (FAC ¶¶ 59–61;

9   Counterclaim ¶¶ 21, 27).

10       In those counter-notifications, Defendants asserted that their videos were protected

11  by fair use. (FAC ¶ 59). The counter-notifications did not assert that Defendants were

12  authorized by Plaintiff to use the copyrighted works, nor did they claim the existence of

13  any express or implied license. (*Id.*)

14       Plaintiff thereafter commenced this action. Defendants filed an answer denying

15  liability and asserting affirmative defenses, including fair use. (Answer, ECF No. 57).

16       On January 13, 2026, Defendants filed counterclaims against Plaintiff (ECF No. 58).

17  As relevant here, Defendants asserted a counterclaim under 17 U.S.C. § 512(f), alleging

18  that Plaintiff knowingly and materially misrepresented infringement when submitting the

19  2023 DMCA takedown notices to YouTube. (Counterclaim ¶¶ 36-49). Defendants further

20  asserted a counterclaim for declaratory relief, seeking a declaration that their videos do not

21  infringe Plaintiff's copyrights and that Defendants possess authorization or a license,

22  express or implied, to use Plaintiff's content. (Counterclaim ¶¶ 50–61).

23       The § 512(f) counterclaim is premised in part on Defendants' allegation that Plaintiff

24  previously made informal statements during YouTube livestreams and engaged in

25  cooperative or non-adversarial interactions that Defendants contend amounted to consent

26  or authorization to use Plaintiff's videos. (Counterclaim ¶¶ 41-44). The declaratory relief

27  counterclaim similarly relies on the theory that these prior interactions created ongoing

28  authorization or license rights governing Defendants' future uses of Plaintiff's copyrighted

3

**Notice of Motion and Motion to Dismiss Defendants' Counterclaims**

1 works. (Counterclaim ¶¶ 55–56).

2     Plaintiff now moves to dismiss Defendants' Counterclaims for failure to state a claim

3 and for lack of a justiciable controversy.

4 **III.   LEGAL STANDARD GOVERNING MOTIONS TO DISMISS**

5     Defendants' Counterclaims are subject to dismissal under Fed. R. Civ. P. 12(b)(1)

6 and 12(b)(6). Rule 12(b)(1) governs dismissal for lack of subject matter jurisdiction,

7 including where a claim fails to present an actual case or controversy under Article III.

8 Rule 12(b)(6) governs dismissal where a pleading fails to state a claim upon which relief

9 can be granted. Because Defendants' Counterclaims suffer from both jurisdictional and

10 substantive defects, dismissal with prejudice is warranted under each rule as set forth

11 below.

12     **A.   Legal Standard Under 12(b)(1)**

13     A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges the Court's subject

14 matter jurisdiction. The plaintiff bears the burden of establishing that jurisdiction exists.

15 *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Where, as here, a

16 defendant challenges jurisdiction based on the absence of an Article III case or controversy,

17 dismissal is required if the allegations do not demonstrate a concrete, particularized, and

18 actual dispute suitable for judicial resolution. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338

19 (2016).

20     Where jurisdiction is lacking, the Court must dismiss the claim, and may do so with

21 prejudice where amendment would be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512

22 F.3d 522, 532 (9th Cir. 2008).

23     **B.   Legal Standard Under 12(b)(6)**

24     A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the claims

25 asserted in a complaint." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on

26 a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed

27 in the light most favorable to the nonmoving party." *Am. Family Ass'n v. City & County of*

28 *San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002). Although a complaint attacked by a

**Notice of Motion and Motion to Dismiss Defendants' Counterclaims**

Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact). . . ." *Twombly*, 550 U.S. at 555 (citations and footnote omitted). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that a plaintiff must plead sufficient factual content to "allow[ ] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also id.* at 679 (a complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct").

Furthermore, if the court finds that dismissal of a claim is appropriate, it must also decide whether to grant leave to amend. In ruling on a motion to dismiss, the court has discretion to deny leave to amend if it determines "that the pleading could not possibly be cured by the allegation of other facts[.]" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 8 F.3d 494, 497 (9th Cir. 1995)); *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir.2003) (dismissal is appropriate without leave to amend if it is clear that "the complaint could not be saved by amendment[]").

## IV. COUNT ONE (17 U.S.C. § 512(f)) FAILS AS A MATTER OF LAW

Section 512(f) is a narrow cause of action aimed at a specific evil: knowing and material misrepresentations of infringement or non-infringement, not disagreements over fair use, not regret over prior interactions, and not post-hoc attempts to weaponize context into liability. Defendants' allegations do not come close to meeting the statute's demanding standard.

//

//

**Notice of Motion and Motion to Dismiss Defendants' Counterclaims**

**A.    Section 512(f) Requires a Knowing and Material Misrepresentation, Not a Disagreement Over Copyright Law**

17 U.S.C. § 512(f) provides that "[a]ny person who knowingly materially misrepresents under this section…that material is infringing…shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer…who is injured by such misrepresentation, as the result of the service provider relying on such misrepresentation in removing or disabling access to the material…claimed to be infringing..."

In order to state a claim for violation of § 512(f), Defendants must allege facts to show that (1) Plaintiff materially misrepresented that Defendants' videos were infringing; (2) the service provider (YouTube) relied on that misrepresentation; and (3) Defendants were injured as a result. *See ENTTech Media Group LLC v. Okularity, Inc.*, 2:20-cv-06298-JWH-Ex, 2021 WL 916307, at *4 (C.D. Cal. Mar. 10, 2021). To satisfy the "knowingly" prong of § 512(f), Defendants must allege facts showing that Plaintiff lacked a subjective good-faith belief that Defendants' videos were lawful. *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153-54 (9th Cir. 2016). The Ninth Circuit reaffirmed this subjective-belief standard holding that a copyright holder must consider fair use before issuing a takedown notice, but that § 512(f) liability attaches only where the copyright holder lacks a subjective good-faith belief that the use is infringing. *Id.* at 1153–55. *Lenz* did not convert § 512(f) into a strict-liability regime for erroneous takedowns; to the contrary, it emphasized that liability turns on whether the copyright holder actually disbelieved its infringement claim at the time the notice was sent. *Id.* at 1154.

Accordingly, disagreement over fair use, transformative purpose, or authorization does not constitute a knowing misrepresentation. Fair use is a "fact-specific, case-by-case" inquiry that is often the subject of reasonable disagreement. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577–78 (1994). A copyright holder does not commit a misrepresentation merely by concluding that a use is infringing rather than fair. If that were enough, § 512(f) would function as a penalty for being wrong about fair use, a result the Ninth Circuit has

6

expressly rejected. *Rossi v. Motion Picture Ass'n of America Inc.*, 391 F.3d 1000, 1005 (9th Cir. 2004); *Lenz*, 815 F.3d at 1154–55.

Nor does § 512(f) require Plaintiff to resolve disputed issues of consent, license, or authorization in Defendants' favor before invoking the DMCA. The statute targets falsity not contested legal characterizations. Courts have consistently refused to expand § 512(f) into a vehicle for litigating copyright defenses by proxy. *See Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004) (finding § 512(f) liability where internal evidence showed the copyright holder knew the material was non-infringing).

In short, § 512(f) is not triggered by aggressive enforcement, imperfect judgment, or later-asserted defenses. It requires well-pleaded facts showing that the copyright holder knew its infringement claim was false when made. Absent such allegations, a § 512(f) claim fails as a matter of law.

### B.  Defendants Do Not Allege Facts Showing Plaintiff Subjectively Knew the Challenged Uses Were Non-Infringing

Measured against the governing standard, Count One of Defendants' Counterclaims does not plausibly allege that Plaintiff subjectively knew his infringement assertions were false at the time the DMCA takedown notices were submitted. Instead, Defendants' claim relies on conclusory labels, hindsight disagreement, and an improper attempt to substitute Defendants' beliefs for Plaintiff's state of mind, none of which suffices under § 512(f).

At the outset, Defendants do not identify any specific DMCA takedown notice in which Plaintiff allegedly made a knowing misrepresentation. They do not plead the text of any notice, do not tie any alleged misrepresentation to a particular video, and do not allege contemporaneous facts showing that Plaintiff disbelieved his own infringement claims when the DMCA notices were sent. Rather than pleading falsity with particularity, Defendants assert in sweeping terms that Plaintiff "knew or should have known" that the videos were non-infringing. (Counterclaim ¶ 25). That formulation is legally insufficient as a matter of law. *Rossi* expressly rejects a "should have known" standard in favor of actual, subjective knowledge. 391 F.3d at 1004–05 (stating that a copyright owner cannot

7

1    be liable because of an unknowing mistake even if he acted unreasonably).

2    Defendants attempt to manufacture subjective knowledge by making conclusory

3    allegations that Plaintiff was aware that Defendants' videos were "mockery," "parody,"

4    "commentary," and "transformative." (Counterclaim ¶¶ 8–9, 39–40). Even if true,

5    awareness of the *nature* of a use does not establish subjective knowledge of *non-*

6    *infringement*. The Ninth Circuit has made clear that a copyright holder does not commit a

7    misrepresentation merely by concluding that a use is infringing rather than fair. *Lenz*, 815

8    F.3d at 1154–55. Defendants' allegations describe nothing more than a disagreement over

9    how copyright law applies to reaction content, not subjective falsity.

10    Defendants next contend that Plaintiff subjectively knew the takedown notices were

11    false because Plaintiff had previously engaged with Defendants, participated in a YouTube

12    livestream, and made generalized statements such as "I do not have any problem with what

13    you guys do" and "You do your thing, I do what I do." (Counterclaim ¶¶ 11–17, 41). But

14    even taking those allegations at face value, they do not plausibly establish that Plaintiff

15    subjectively believed Defendants' use of his videos were authorized or non-infringing at

16    the time the takedowns were submitted to YouTube.

17    Critically, Defendants do not allege that Plaintiff ever stated that Defendants could

18    download, copy, republish, or monetize his copyrighted videos without limitation, nor do

19    they allege that Plaintiff agreed that Defendants' use of his videos was lawful. At most,

20    Defendants allege informal expressions of non-hostility during a YouTube livestream.

21    Such statements do not plausibly establish subjective knowledge that Defendants' uses

22    were non-infringing, particularly where the scope, extent, and commercial exploitation of

23    the content evolved over time. *See Rossi*, 391 F.3d at 1005 (good-faith belief defeats §

24    512(f)).

25    The Counterclaim also relies heavily on the assertion that Plaintiff failed to "revoke"

26    consent or issue a cease-and-desist letter before submitting takedown notices.

27    (Counterclaim ¶¶ 16, 18, 20–21, 42–44). But § 512(f) does not impose a duty to provide

28    advance warning, to revoke alleged consent, or to narrate prior interactions before invoking

8

**Notice of Motion and Motion to Dismiss Defendants' Counterclaims**

the DMCA. The absence of a cease-and-desist letter does not support an inference that Plaintiff subjectively knew his infringement claims were false. To the contrary, copyright holders routinely enforce their rights through the DMCA without pre-litigation correspondence, and nothing in the statute suggests that doing so evidences bad faith.

Notably absent from Defendants' Counterclaim is any allegation that Plaintiff contemporaneously (or ever) acknowledged that the takedown notices were improper, unlawful, or false. Defendants do not allege any internal communications, admissions, or statements by Plaintiff reflecting disbelief in infringement. Here, Defendants rely instead on inference stacked upon inference: because Plaintiff previously interacted with Defendants and because Defendants believe their videos are fair use, Plaintiff must have known the takedowns were false. That leap is precisely what *Rossi* and *Lenz* forbid.

Finally, Defendants' own conduct undermines any claim of contemporaneous subjective knowledge. In their DMCA counter-notifications, Defendants did not assert that Plaintiff had authorized their use of the videos; they asserted fair use and non-infringement. (FAC ¶ 59). That omission is telling. If Defendants themselves did not believe authorization was dispositive at the time of the takedowns, Plaintiff's failure to accept that theory cannot plausibly be recast as knowing falsity.

In short, Defendants allege disagreement, not deception. They plead their own interpretation of copyright law, not facts showing that Plaintiff disbelieved his infringement claims when the takedown notices were submitted. Because § 512(f) requires well-pleaded allegations of actual, subjective knowledge of falsity, Count One fails as a matter of law.

## C.   Defendants Fail to Plead a Material Misrepresentation on Which YouTube Relied

Defendants also fail to plead facts showing that any misrepresentation was material to YouTube or that YouTube relied on it in taking the challenged action. Their allegations are generalized: Plaintiff submitted takedown notices; YouTube issued strikes; Defendants faced termination risk. (Counterclaim ¶¶ 21–23, 26). What is missing is the necessary link:

**Notice of Motion and Motion to Dismiss Defendants' Counterclaims**

factual allegations that YouTube's actions were driven by any specific false statement, as opposed to YouTube's standard DMCA processing and enforcement rules triggered by the submission of takedown notices. Defendants do not allege the content of any particular notice, do not identify what statement in that notice was false, and do not plead how disclosure of their asserted "permission" or fair-use position would have changed YouTube's response.

Finally, Defendants' allegation that Plaintiff's "failure to disclose" prior authorization "rendered the takedown notices materially misleading" is a legal conclusion, not a well-pleaded fact. (Counterclaim ¶ 44). Section 512(f) targets affirmative misrepresentations of infringement (or non-infringement), not an alleged duty to volunteer disputed defenses and background context to the service provider. *See Rossi*, 391 F.3d at 1005 (rejecting expansion of § 512(f) beyond knowing falsity).

Because Defendants do not plausibly allege (i) a specific materially false representation in a particular takedown notice and (ii) YouTube's reliance on that false representation in taking the challenged action, Count One independently fails.

### D.    Defendants Fail to Plead Damages Proximately Caused by Any Knowing and Material Misrepresentation

Section 512(f) authorizes recovery only for "any damages, including costs and attorneys' fees, incurred by the alleged infringer … as the result of the service provider relying upon such misrepresentation." 17 U.S.C. § 512(f). Accordingly, Defendants must plausibly allege that their damages were proximately caused by a knowing and material misrepresentation, not merely by the existence of copyright enforcement activity or by the service provider's independent policies.

Defendants' damages allegations do not satisfy that requirement. They allege loss of advertising revenue, algorithmic suppression, sponsorship disruption, and reputational harm following the issuance of copyright strikes. (Counterclaim ¶¶ 31–35, 48). But those allegations are untethered to any specific false statement in a takedown notice and instead rest on the downstream effects of YouTube's automated enforcement and monetization

systems.

Platform-level consequences flowing from a service provider's internal policies do not establish proximate causation under § 512(f) absent well-pleaded facts showing that the service provider's action was driven by a knowing misrepresentation. Section 512(f) does not impose liability for all adverse effects that follow a takedown; it imposes liability only for damages caused by reliance on a materially false statement. Here, Defendants do not identify any false representation that YouTube relied upon in imposing strikes, suppressing content, or affecting monetization.

Instead, Defendants allege that YouTube applied its standard copyright enforcement framework after receiving Plaintiff's takedown notices. (Counterclaim ¶¶ 21–23, 26–27). Allegations that YouTube followed its own rules do not establish that Plaintiff's statements, rather than YouTube's independent policies, were the proximate cause of Defendants' claimed losses. Section 512(f) does not convert routine platform enforcement into actionable damages.

Defendants' revenue-loss allegations are also conclusory. They cite analytics reports and generalized assertions of lost sponsorships without pleading facts showing how those losses were caused by a knowing misrepresentation as opposed to temporary content removal, advertiser discretion, or YouTube's algorithmic behavior. (Counterclaim ¶¶ 32–35). Such speculative and derivative harms are insufficient to state a claim under § 512(f). In short, Defendants allege consequences, not causation. Because they do not plausibly allege damages proximately caused by YouTube's reliance on a knowing and material misrepresentation, Count One independently fails as a matter of law.

### E.    Count One Fails as a Matter of Law Under Any Theory Pled

Defendants' § 512(f) counterclaim fails for multiple, independent reasons, each of which is fatal on its own. Defendants do not plausibly allege that Plaintiff subjectively knew his infringement claims were false at the time the takedown notices were submitted. They rely instead on hindsight disagreement over fair use, conclusory recitations of statutory factors, and disputed theories of consent or authorization, none of which

**Notice of Motion and Motion to Dismiss Defendants' Counterclaims**

establishes knowing falsity under controlling Ninth Circuit law.

Even assuming Defendants' fair-use allegations or consent theories were true, § 512(f) does not impose liability for asserting infringement in the face of contested defenses. Nor do Defendants plausibly allege a material misrepresentation on which YouTube relied, or damages proximately caused by such reliance. At most, the Counterclaim describes the ordinary consequences of invoking the DMCA process and YouTube's independent enforcement policies.

Because § 512(f) is a narrow statute aimed at deliberate falsehoods, not aggressive enforcement, mistaken judgment, or unresolved legal disputes, Count One fails as a matter of law and should be dismissed with prejudice.

## V. COUNT TWO OF THE COUNTERCLAIMS FAILS FOR LACK OF A JUSTICIABLE CONTROVERSY

Defendants' declaratory judgment counterclaim fails because it does not present an actual case or controversy within the meaning of Article III and the Declaratory Judgment Act. Paragraph 60 of the Counterclaims makes clear that Defendants seek three separate declarations: (1) that Defendants' videos do not infringe Plaintiff's copyrights; (2) that the videos constitute fair use; and (3) that Plaintiff granted Defendants a nonexclusive license, express or implied. (Counterclaim ¶ 60). Each requested declaration is independently defective and must be dismissed as a matter of law pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

### A. Failure to Identify Any Specific Video Deprives the Court of Article III Jurisdiction

As a threshold matter, Defendants' claim fails because it does not identify any specific video or copyrighted work for which declaratory relief is sought. Throughout the Counterclaim, Defendants refer only to "the videos" or "Counterclaimants' videos," without alleging a single title, URL, upload date, or identifiable work purportedly covered by the requested declarations. (Counterclaim ¶¶ 50–60).

Article III limits federal jurisdiction to concrete disputes involving identifiable

conduct and specific legal rights. Declaratory relief must therefore be tethered to a defined and particularized controversy, not an abstract category of works or an undefined universe of content. *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (federal courts may not adjudicate claims resting on abstract disagreements). Where a declaratory plaintiff fails to identify the specific conduct or works at issue, the claim is non-justiciable because the disagreement is not concrete. *Id.*

Defendants' failure to identify any particular video is not a pleading technicality; it is a jurisdictional defect. Without knowing which works are allegedly non-infringing, fair use, or licensed, the Court cannot assess infringement, evaluate defenses, or determine the scope of any declaration. Any ruling issued in the absence of such specificity would necessarily be advisory, exceeding the limits of Article III. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000).

This defect alone requires dismissal. Because Defendants seek sweeping declarations untethered to any identified work, their declaratory judgment counterclaim fails to present an actual case or controversy and must be dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).

## B.    Declaratory Relief as to an Alleged Nonexclusive License Fails as a Matter of Law

Even assuming Defendants could establish a justiciable controversy, declaratory relief as to an alleged nonexclusive license fails as a matter of law because the statements they rely upon do not satisfy the requirements of contract formation under California law. Nonexclusive copyright licenses are governed by ordinary principles of state contract law. *Foad Consulting Group, Inc. v. Azzalino*, 270 F.3d 821, 827 (9th Cir. 2001). Under those principles, Defendants' allegations do not establish mutual assent to a license of any kind.

Defendants' theory rests entirely on two informal statements allegedly made by Plaintiff during a YouTube livestream in 2022: "I do not have any problem with what you guys do" and "You do your thing, I do what I do." (Counterclaim ¶¶ 11–18). Defendants contend that these remarks conferred ongoing nonexclusive express and/or implied license

**Notice of Motion and Motion to Dismiss Defendants' Counterclaims**

to download, copy, display, and monetize Plaintiff's copyrighted works. California law forecloses that interpretation.

### i. Defendants Fail to Plead an Express Oral License Under California Contract Law

An express oral contract under California law requires mutual assent to sufficiently definite terms. *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (Cal. Ct. App. 2d Dist., Div 2 1998). While nonexclusive copyright licenses need not be in writing, an express oral license still requires a meeting of the minds as to the essential terms of the agreement, including the subject matter and scope of the authorization. *Id.; Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990).

The statements Defendants rely upon, "I do not have any problem with what you guys do" and "You do your thing, I do what I do," are facially insufficient to establish an express license. They do not identify any copyrighted work, do not define any permitted use, do not address reproduction, distribution, monetization, or duration, and do not manifest assent to grant Defendants any copyright rights whatsoever. At most, they reflect a generalized expression of tolerance at that moment in time, not an express oral license.

Where a contract is so uncertain and indefinite that the intentions of the parties cannot be ascertained, the contract is void and unenforceable. *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209 (Cal. Ct. App. 6th Dist. 2006).

Applied here, Defendants' reliance on these statements is legally untenable. Accepting their position would mean that any content creator who expresses some tolerance for criticism or commentary risks unintentionally granting a perpetual copyright license. California law does not permit such a result.

### ii. Defendants Fail to Plead an Implied Nonexclusive License Under California Law

Defendants fare no better under an implied-license theory. Under California law, an implied nonexclusive license arises only where the parties' conduct demonstrates an intent to permit a specific use of a specific work. *Foad*, 270 F.3d at 831. The Ninth Circuit has

1  consistently limited implied licenses to circumstances in which a creator produces a work
2  at another's request and delivers it with the intent that it be used in a particular way. *Id.*;
3  *Effects*, 908 F.2d at 558–59.

4       No such facts are alleged here. Plaintiff did not create any videos at Defendants'
5  request, did not deliver works to Defendants for use, and did not produce content with the
6  intent that Defendants copy or monetize it. Defendants instead obtained Plaintiff's publicly
7  available videos by using third-party tools and later pointed to Plaintiff's informal remarks
8  to fabricate retroactive authorization.

9           ###     iii.      Defendants Own Conduct Contradicts Any Claim of License
10                            or Authorization

11      Defendants' license theory fails for an additional, independent reason: their own
12  contemporaneous conduct is fundamentally inconsistent with any genuine belief that
13  Plaintiff had granted them authorization, express, implied, or otherwise, to use his
14  copyrighted works.

15      At every stage where a license or authorization would have been legally relevant,
16  Defendants failed to assert it.

17      First, in their DMCA counter-notifications submitted to YouTube pursuant to 17
18  U.S.C. § 512(g), Defendants did not claim that they were authorized by Plaintiff to use the
19  copyrighted works. Instead, they asserted that the videos were non-infringing and protected
20  by fair use. (FAC ¶¶ 59–61; Counterclaim ¶¶ 21, 27). The counter-notification process is
21  expressly designed to surface defenses to infringement, including authorization.
22  Defendants' failure to invoke any license at that stage is telling.

23      Second, in contemporaneous emails sent by Huneault to Plaintiff on the very day the
24  copyright strikes were issued, Defendants again did not assert that Plaintiff had granted
25  permission or consent. (Counterclaims, Ex. F). Those communications focused on
26  disagreement with Plaintiff's infringement position, not on the existence of any license. If
27  Defendants genuinely believed they possessed ongoing authorization, one would expect
28  that belief to have been asserted immediately, particularly when facing removal of content.

**Notice of Motion and Motion to Dismiss Defendants' Counterclaims**

Third, Defendants did not assert authorization or license in the Joint Statement filed with this Court (ECF No. 37). Nor did they do so in their initial motions to dismiss Plaintiff's claims (ECF Nos. 29, 33). In both instances, Defendants advanced fair use arguments, but conspicuously omitted any claim that Plaintiff had granted them a nonexclusive oral license to copy and monetize his works.

This pattern of omission matters. Under California law, contract formation turns on objective manifestations of assent. *Weddington Prods., Inc.* at 811. Defendants' silence when authorization would have been dispositive undermines any claim that the parties shared a contemporaneous understanding that a license existed. A purported license that surfaces only later, after litigation has commenced and only in the form of recharacterized informal remarks, is not evidence of mutual assent; it is evidence of post-hoc reconstruction and fabrication.

Here, Defendants' course of conduct confirms that their "license" theory is not a belief held at the time of the takedowns, but a litigation-driven reframing introduced only to increase Plaintiff's litigation costs after realizing their fair use affirmative defense was legally weak. California law does not permit parties to manufacture contractual rights through hindsight, and the Declaratory Judgment Act does not authorize courts to ratify such after-the-fact theories.

## VI.    DISMISSAL SHOULD BE WITH PREJUDICE

Dismissal of the Counterclaims should be with prejudice because amendment would be futile. The defects identified above are not pleading deficiencies that can be cured by additional factual allegations; they are legal failures that foreclose relief as a matter of law.

With respect to Count One, Defendants cannot state a viable claim under 17 U.S.C. § 512(f) because the statute requires a knowing and material misrepresentation by Plaintiff, judged by Plaintiff's subjective good-faith belief at the time of the 2023 DMCA takedowns. No amendment can transform Defendants' disagreement over fair use, post-hoc assertions of consent, or subjective beliefs about authorization into a knowing misrepresentation. Nor can amendment cure the absence of reliance, the failure to plead cognizable damages, or

the attempt to expand § 512(f) beyond its narrowly circumscribed scope. These are legal barriers, not factual gaps.

Similarly, Count Two fails as a matter of law because Defendants cannot plead a justiciable declaratory judgment claim independent of issues already before the Court. Declaratory relief cannot be used to obtain an advisory opinion, adjudicate hypothetical future conduct, or repackage affirmative defenses as stand-alone causes of action. No amendment can create an actual, immediate controversy where none exists, nor can it cure the duplicative and speculative nature of the relief sought.

Courts routinely dismiss claims with prejudice where, as here, amendment would be futile because the claims rest on legally untenable theories rather than insufficient factual detail. *See*, e.g., *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (dismissal with prejudice appropriate where amendment would be futile).

Because Defendants' pleading defects are substantive and incurable, further amendment would only impose unnecessary burden and delay. Accordingly, Defendants' Counterclaims should be dismissed with prejudice.

## VII. CONCLUSION

Defendants' counterclaims fail because they rest on legal theories the law does not recognize. Section 512(f) does not impose liability for good-faith enforcement of copyright rights, does not require copyright holders to anticipate or disprove an accused infringer's unreasonable subjective beliefs, and does not convert informal online interactions into "knowing misrepresentations." Defendants' attempt to recast casual online statements and cooperative conduct as an irrevocable grant of rights amounts to an impermissible theory of *accidental license*, one under which copyright holders would forfeit exclusive rights through online banter and courtesy. California contract law, the Copyright Act and the DMCA reject that result.

Nor does Defendants' declaratory judgment claim cure these defects. It seeks no concrete relief independent of issues already before the Court, presents no actual and immediate controversy, and improperly asks the Court to issue an advisory opinion about

**Notice of Motion and Motion to Dismiss Defendants' Counterclaims**

hypothetical future uses. Declaratory relief cannot be used to repackage affirmative defenses or to obtain advance immunity from future enforcement.

Because the defects in Defendants' Counterclaims are legal, not factual, amendment would be futile. Accordingly, Plaintiff respectfully requests that the Court dismiss Defendants' counterclaims with prejudice.

Dated: January 23, 2026

/s/ Randall S. Newman
Randall S. Newman, Esq. (SBN 190547)
99 Wall Street, Suite 3727
New York, NY 10005
(212) 797-3735
rsn@randallnewman.net

*Attorney for Plaintiff,*
*Christopher J. Cordova*

**Notice of Motion and Motion to Dismiss Defendants' Counterclaims**