1

2

3

4          UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6          SAN JOSE DIVISION

7

8    CHRISTOPHER J. CORDOVA,                    Case No.  25-cv-04685-VKD

          Plaintiff,
9
                                                **ORDER GRANTING IN PART AND**
10        v.                                    **DENYING IN PART DEFENDANTS**
                                                **HUNEAULT'S AND 14693663 CANADA**
11   JONATHAN HUNEAULT, et al.,                 **INC.'S MOTION TO DISMISS CLAIMS**
                                                **2, 3, AND 4**
          Defendants.
12                                              Re: Dkt. No. 43

13

14

15        Plaintiff Christopher J. Cordova brings this action, asserting four claims against defendants

16   Jonathan Huneault, Nneka Ohiri, and 14693663 Canada Inc. ("Canada Inc."). Dkt. No. 39.

17   Defendants Mr. Huneault and Canada Inc. move to dismiss claims 2, 3, and 4 of the operative

18   complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 43. Mr. Cordova

19   opposes the motion. Dkt. No. 46. The motion is deemed suitable for determination without oral

20   argument.[1] Civil L.R. 7-1(b).

21        Upon consideration of the moving and responding papers, the Court grants in part and

22   denies in part the motion to dismiss.

23   **I.    BACKGROUND**

24        **A.    Procedural History**

25        Mr. Cordova initiated this action against Mr. Huneault on June 3, 2025. Dkt. No. 1. On

26   August 30, 2025, Mr. Cordova filed an amended complaint, adding Ms. Ohiri as a defendant. Dkt.

27

28   _____

[1] All parties have consented to magistrate judge jurisdiction. Dkt. Nos. 7, 34, 56.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    No. 20.  On November 3, 2025, Mr. Cordova filed the operative complaint, titled "first amended

2    complaint," adding Canada Inc. as a defendant.[2]  Dkt. No. 39.

3         On November 24, 2025, Mr. Huneault and Canada Inc. moved to dismiss claims 2, 3, and

4    4 of the first amended complaint (FAC).[3]  Dkt. No. 43-1.  Ms. Ohiri did not join the motion or

5    otherwise respond to the FAC.  On December 15, 2025, Mr. Cordova filed a motion for entry of

6    default by the Clerk against Ms. Ohiri.  Dkt. No. 47.  On December 22, 2025, the parties jointly

7    submitted a stipulation seeking to "set aside entry of default" and agreeing that Ms. Ohiri would

8    file an answer to the FAC.  Dkt. No. 52.  As the Clerk had not entered default against Ms. Ohiri,

9    the Court "construe[d] the parties' stipulated request as an indication that they agree plaintiff's

10   motion for entry of default should be withdrawn," and deemed the motion for entry of default

11   withdrawn.  Dkt. No. 53.  Pursuant to the parties' stipulation, the Court directed Ms. Ohiri to file

12   an answer to the FAC by January 6, 2026.  *Id.*

13        On January 6, 2026, while this motion was under submission, all defendants, including Mr.

14   Huneault and Canada Inc., filed an answer to the FAC.  Dkt. No. 57.  Defendants subsequently

15   advised that they do not withdraw Mr. Huneault's and Canada Inc.'s motion to dismiss.  *See* Dkt.

16   Nos. 59, 60.

17        **B.    Mr. Cordova's Claims**

18        According to the FAC, Mr. Cordova owns, operates, and creates content for a YouTube

19   channel called "Denver Metro Audits."  Dkt. No. 39 ¶ 17.  Mr. Huneault and Ms. Ohiri own and

20   operate the YouTube channel "Frauditor Troll Channel."  *Id.* ¶¶ 19, 20.  Canada Inc. is a Canadian

21   corporation owned and controlled by Mr. Huneault and Ms. Ohiri that acts as a co-owner or

22   operating entity of the Frauditor Troll Channel.  *Id.* ¶ 21.

23

---

24   [2] Technically, the operative complaint is Mr. Cordova's "second" amended complaint.  *See* Dkt.
25   No. 39 at 2 n.1.  However, to avoid confusion, the Court refers to it as the "first amended
     complaint," consistent with its title and the parties' briefing.

26   [3] Defendants Mr. Huneault and Canada Inc. purport to "incorporate[] . . . by reference" Mr.
27   Huneault's October 13, 2025 motion to dismiss (Dkt. No. 29), which has since been withdrawn.
     Dkt. No. 36 at 2.  This is improper.  *See* Civil L.R. 7-2(b) ("In one filed document not exceeding
28   25 pages in length, a motion must contain . . . the points and authorities in support of the motion
     . . . .").  The Court does not consider the withdrawn motion.

United States District Court
Northern District of California

1      According to the FAC, Mr. Cordova is the owner of copyrights in three videos at issue in

2   this action.  On March 16, 2022, Mr. Cordova published a video titled *Another Chad Exposed!!!*

3   *Worthless Denver Cops . . . Assaulted!!!* ("*Another Chad*") on his YouTube channel.  *Id.* ¶ 41.  He

4   obtained a copyright registration for *Another Chad* on February 6, 2024.  *Id.* ¶ 42.  On October 1,

5   2023, Mr. Cordova published another video titled *Angry Mob at Belmar Library!!! "Call 911!"*

6   *Cops don't show up* ("*Belmar Library*") on his YouTube channel.  *Id.* ¶ 43.  He obtained a

7   copyright registration for *Belmar Library* on June 3, 2025.  *Id.* ¶ 44.  On February 3, 2022, Mr.

8   Cordova published another video titled "*Federal Courthouse Fail!!! Threatened with arrest for*

9   *recording and not one officer identifies!* ("*Courthouse Fail*").  *Id.* ¶ 45.  He has not obtained a

10   copyright registration for *Courthouse Fail*.  *Id.* ¶ 45 n.6.

11      The FAC alleges that between February 2022 and October 2023, defendants published on

12   YouTube several videos containing content originally published by Mr. Cordova, including three

13   videos incorporating significant portions of *Another Chad*, *Belmar Library*, and *Courthouse Fail*,

14   without Mr. Cordova's authorization.  *Id.* ¶¶ 46-54.  In addition, Mr. Cordova alleges, on

15   information and belief, that defendants used various techniques to circumvent YouTube's

16   technological measures, which are designed to prevent unauthorized copying or downloading of

17   videos, to obtain copies of Mr. Cordova's videos from his YouTube channel.  *See id.* ¶¶ 35-40.

18      In June 2023 and October 2023, Mr. Cordova submitted twelve Digital Millennium

19   Copyright Act (DMCA) takedown notices to YouTube requesting removal of defendants' videos.

20   *Id.* ¶ 58.  YouTube removed eleven of the challenged videos.  *Id.* ¶ 60.  Thereafter, defendants

21   submitted DMCA counter-notices to YouTube, pursuant to 17 U.S.C. § 512(g)(3), seeking

22   reinstatement of nine of the eleven videos.  *Id.*  Mr. Cordova alleges that the counter-notices

23   contained "substantially identical boilerplate language and multiple false statements," including

24   that Mr. Huneault was the "original creator" of the videos, that the videos were protected by the

25   fair use doctrine and "were taken down by mistake because they fall under the Fair use act," and

26   that Mr. Huneault had already retained counsel "to defend my fair use videos in court."  *Id.* ¶¶ 59,

27   61.  In addition, all of defendants' counter-notices contained the same fictitious service address in

28   New York, New York.  *Id.* ¶ 62.  According to the FAC, YouTube reinstated all nine videos,

United States District Court
Northern District of California

1    "relying on Huneault's misrepresentations regarding fair use." *Id.* ¶ 64.

2    Mr. Cordova asserts four claims against all three defendants: (1) copyright infringement of

3    two copyrighted videos, *Another Chad* and *Belmar Library*, in violation of 17 U.S.C. § 501; (2)

4    misrepresentation in DMCA counter-notices, in violation of 17 U.S.C. § 512(f); (3) a declaration

5    that defendants' use of the *Courthouse Fail* video does not qualify as fair use under 17 U.S.C.

6    § 107; and (4) unlawful circumvention of technological measures, in violation of 17 U.S.C.

7    § 1201(a). *Id.* ¶¶ 85-123. Mr. Cordova seeks damages, injunctive relief, declaratory relief, and

8    attorneys' fees and costs. *Id.* at 24-25.

9    **II.    LEGAL STANDARD**

10    **A.    Rule 12(b)(6)**

11    A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of

12    the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is

13    appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to

14    support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

15    699 (9th Cir. 1988)). In such a motion, all material allegations in the complaint must be taken as

16    true and construed in the light most favorable to the claimant. *Id.*

17    However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

18    conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[f]actual

19    allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v.*

20    *Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Moreover, the Court is not required to

21    "'assume the truth of legal conclusions merely because they are cast in the form of factual

22    allegations.'" *Prager Univ. v. Google LLC*, No. 17-cv-06064-LHK, 2018 WL 1471939, at *3

23    (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per

24    curiam)). Nor does the Court accept "allegations that are merely conclusory, unwarranted

25    deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049,

26    1055 (9th Cir. 2008).

27    Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the

28    pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that the "[f]actual allegations

United States District Court
Northern District of California

1   must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555

2   (citations omitted).  However, only plausible claims for relief will survive a motion to dismiss.

3   *Iqbal*, 556 U.S. at 679.  A claim is plausible if the facts pled permit the court to draw a reasonable

4   inference that the defendant is liable for the alleged misconduct.  *Id.* at 678.  A plaintiff does not

5   have to provide detailed facts, but the pleading must include "more than an unadorned, the-

6   defendant-unlawfully-harmed-me accusation." *Id.*

7               **B.      Judicial Notice / Incorporation by Reference**

8               A court generally may not consider any material beyond the pleadings when ruling on a

9   Rule 12(b)(6) motion.  If matters outside the pleadings are considered, "the motion must be treated

10  as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  However, a court may

11  consider matters that are "capable of accurate and ready determination by resort to sources whose

12  accuracy cannot reasonably be questioned" without converting the motion to a motion for

13  summary judgment.  *Roca v. Wells Fargo Bank, N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153,

14  at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R. Evid. 201(b)).  Documents appended to the

15  complaint, incorporated by reference in the complaint, or which properly are the subject of judicial

16  notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion.  *Khoja*

17  *v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v.*

18  *Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

19  **III.    DISCUSSION**

20          Defendants[4] move pursuant to Rule 12(b)(6) to dismiss claims 2, 3, and 4 of the FAC for

21  failure to state a claim.  Dkt. No. 43-1.  They ask the Court to consider a declaration and other

22  materials filed with their motion.  *Id.* at 2-3; Dkt. No. 43-2.

23              **A.      Request for Consideration of Matters Outside the Pleading**

24              Defendants ask the Court to consider a declaration by Mr. Huneault and four exhibits in

25  support of their motion to dismiss.  Dkt. No. 43-1 at 2-3; Dkt. No. 43-2.  The exhibits purport to

26  be: (1) a partial transcript of a YouTube video titled "*DMA and AFA do Prank Calls like*

27  _____

28  [4] For simplicity, the Court refers to the moving defendants, Mr. Huneault and Canada Inc., as
    "defendants," but in so doing does not include Ms. Ohiri, who has not joined the motion.

5

1   *Children*," uploaded to the Frauditor Troll Channel on July 24, 2022; (2) a list of fifteen channels

2   that the audience of the Frauditor Troll Channel watches the most; (3) a document with various

3   individuals' information, including police badge numbers, phone numbers, and email addresses;

4   and (4) an October 1, 2022 email exchange between defendants and a YouTube viewer.  Dkt. Nos.

5   43-3, 43-4, 43-5, 43-6.  Mr. Cordova argues that Mr. Huneault's declaration and the

6   accompanying exhibits may not be considered on a Rule 12(b)(6) motion because those

7   documents "are not attached to the FAC, not incorporated by reference, and not proper subjects of

8   judicial notice."  Dkt. No. 46 at 7.  Defendants respond that they do not ask the Court to take

9   judicial notice of these documents; rather, they argue that the Court may properly consider these

10  documents under the incorporation by reference doctrine.  *See* Dkt. No. 54 at 3-4.

11          A document may be deemed incorporated by reference, and therefore part of the

12  complaint, "if the plaintiff refers extensively to the document or the document forms the basis of

13  the plaintiff's claim."  *Khoja*, 899 F.3d at 1002 (citing *United States v. Ritchie*, 342 F.3d 903, 907

14  (9th Cir. 2003)).  However, "the mere mention of the existence of a document is insufficient to

15  incorporate the contents of a document."  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th

16  Cir. 2010) (citing *Ritchie*, 342 F.3d at 908-09).

17          Defendants argue that the Court may consider the declaration and four exhibits because

18  Mr. Cordova "incorporated [the DMCA] counternotices by their continual reference into the

19  complaint."  Dkt. No. 54 at 3.  Defendants' argument misapprehends the incorporation by

20  reference doctrine.  Although that doctrine might warrant consideration of *the DMCA counter-*

21  *notices* referenced in the FAC, defendants do not ask the Court to consider those counter-notices.

22  None of the exhibits defendants ask the Court to consider form the basis of *Mr. Cordova's claims*

23  or are referenced extensively in the FAC.  The Court therefore declines to consider these

24  materials.  *See Khoja*, 899 F.3d at 1002 ("[I]f the document merely creates a defense to the well-

25  pled allegations in the complaint, then that document did not necessarily form the basis of the

26  complaint.  Otherwise, defendants could use the doctrine to insert their own version of events into

27  the complaint to defeat otherwise cognizable claims.").

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.      Claim 2: Misrepresentation in DMCA Counter-Notices**

Mr. Cordova asserts a claim for misrepresentation in the DMCA counter-notices

defendants filed, in violation of 17 U.S.C. § 512(f)(2).  Dkt. No. 39 ¶¶ 94-106.  Section 512(f)

contemplates liability for abuse of the notice and takedown procedures in the DMCA.  17 U.S.C.

§ 512(f); *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151 (9th Cir. 2016).  Section 512(f)(2)

applies when an accused infringer knowingly mispresents in a counter-notice that the accused

material was removed or disabled by mistake or misidentification.  *See Lenz*, 815 F.3d at 1151.

Mr. Cordova asserts a claim against defendants for violation of § 512(f)(2), alleging that

defendants' counter-notices falsely asserted that the videos were removed by mistake because they

are protected by the fair use doctrine and therefore non-infringing.  Dkt. No. 39 ¶¶ 56-63, 96-104;

*see also* Dkt. No. 46 at 10.  To state a claim for misrepresentation under 17 U.S.C. § 512(f)(2), a

plaintiff must allege facts plausibly showing (1) that the defendant knowingly and materially

misrepresented that its accused material was removed or disabled by mistake or misidentification;

(2) the internet service provider relied on the misrepresentation in replacing the removed material

or ceasing to disable access to it; and (3) the plaintiff was injured as a result.  *See Automattic Inc.*

*v. Steiner*, 82 F. Supp. 3d 1011, 1026 (N.D. Cal. 2015).  Whether a misrepresentation was made

"knowingly" is assessed against a subjective standard; it requires a showing that the defendant had

"some actual knowledge" of the misrepresentation and did not possess a good faith belief that the

material was removed by mistake or misidentification.  *See Rossi v. Motion Picture Ass'n of Am.*

*Inc.*, 391 F.3d 1000, 1004-05 (9th Cir. 2004); *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 44

(S.D.N.Y. 2017) (same subjective standard that applies to takedown notices also applies to

counter-notices).

Defendants move to dismiss claim 2 on the ground that the FAC contains "no allegations

showing that Defendant[sic] subjectively believed his use [of Mr. Cordova's videos] was unlawful

or that he knowingly issued a false counter-notification."[5]  Dkt. No. 43-1 at 6.  Defendants do not

---

[5] The Court does not consider defendants' belated challenges to other misrepresentations in the
FAC (*i.e.*, that defendants had hired legal counsel and included a false address in the counter-
notices) because defendants' arguments in support of dismissal as to these alleged
misrepresentations were made for the first time in their reply brief.  *See* Dkt. No. 54 at 4-6; *see,*

1    challenge Mr. Cordova's pleading as to the other elements of his § 512(f)(2) claim.

2        To the extent defendants ask the Court to find as a matter of law that defendants' use of

3    content from Mr. Cordova's videos in their own videos posted on the Frauditor Troll Channel

4    constitutes "fair use" of that content, *see* Dkt. No. 43-1 at 2-3, the Court denies the motion on this

5    point, as such a determination would require the Court to resolve disputed questions of fact. *See*

6    *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 549, 560 (1985) (fair use is "a

7    mixed question of law and fact" that "requires a case-by-case determination whether a particular

8    use is fair"); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012) (fair use is "a

9    mixed question of law and fact"); *Stebbins v. Polano*, No. 21-cv-04184-JSC, 2021 WL 2682339,

10   at *3 (N.D. Cal. June 30, 2021) (quoting *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522,

11   530 (9th Cir. 2008)) (fair use is "[t]ypically considered at the summary judgment stage" and may

12   only be considered on a motion to dismiss "where no material facts are in dispute").  The Court

13   will address only whether Mr. Cordova has pled factual allegations that plausibly support his

14   claim that defendants "knowingly" misrepresented that their videos were removed by mistake

15   because they are protected by the fair use doctrine.

16       Defendants argue that Mr. Cordova must plead facts showing that defendants "actually

17   knew" their use of content from Mr. Cordova's videos was unlawful.  Dkt. No. 43-1 at 7.  In

18   response, Mr. Cordova points to allegations in the FAC that he contends show that defendants

19   knew their videos were not protected by the fair use doctrine and that their contrary

20   representations to YouTube in their counter-notices were not made in good faith.  Dkt. No. 46 at

21   10-11.  The Court has carefully examined the allegations in the FAC and agrees that Mr. Cordova

22   has adequately alleged facts from which a reasonable inference may be drawn that defendants'

23   "fair use" representations were false and made in bad faith.

24       According to the FAC, in May 2022, defendants published a video on the Frauditor Troll

25

26   *e.g.*, *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider
27   arguments raised for the first time in a reply brief.").  In any event, Mr. Cordova explains in his
     opposition that these other alleged misrepresentations "are not themselves the misrepresentation
28   that triggers § 512(f) liability, but they are relevant to whether Defendants approached the
     Counter-Notice process with any regard for truth or accuracy."  Dkt. No. 46 at 11.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Channel titled "*How to do Fair Use Properly and Avoid Copyright Strikes.*"  Dkt. No. 39 ¶ 55.

2    Mr. Cordova alleges that in that video, Mr. Huneault instructs viewers on how to make

3    commentary videos that are "100% safe fair use."  *Id.* ¶ 56.  The instructions include inserting

4    commentary "about 40 seconds to every minute [of the original video]," using lengthy

5    introductions and conclusions, interspersing other clips to "increase the proportion of time that is

6    something else than one specific video," and using "less than fifty percent of a specific video."  *Id.*

7    Mr. Huneault further advises his viewers that one is "unlikely to get a copyright strike," if he or

8    she "only us[es] 30% of someone's video."  *Id.*  Mr. Cordova alleges that, in contrast to this

9    advice, defendants' videos reproduced approximately 54% of *Another Chad*; 62% of *Courthouse*

10   *Fail*; and 81% of *Belmar Library*.  *Id.* ¶¶ 48, 50, 54.  Thus, regardless of whether Mr. Huneault's

11   advice to others reflects an accurate understanding of the fair use doctrine, Mr. Cordova contends

12   that these allegations indicate defendants lacked a good faith belief that their videos (all of which

13   use more than 50% of each original video) are entitled to protection and were removed by mistake.

14   *See id.* ¶¶ 57, 97 n.13; *see also* Dkt. No. 46 at 10-11.

15        In addition, the FAC alleges that on July 5, 2023, the same day defendants submitted eight

16   of the nine counter-notices at issue, Mr. Huneault emailed Mr. Cordova, claiming he had "talked

17   to a lawyer" and demanding payment of $9,000.  Dkt. No. 39 ¶ 67.  Mr. Huneault also stated:

18   "You already know the videos will be reinstated in 3 weeks through the counter notifications

19   system."  *Id.*  In a separate email on the same date, Mr. Huneault allegedly warned Mr. Cordova

20   that "[i]f I counter every strike and they all get reinstated eventually it could penalize your

21   channel."  *Id.* ¶ 66.  The FAC also alleges that on July 6, 2023, Mr. Huneault posted a video

22   discussing Mr. Cordova's takedown notices and defendants' counter-notices, in which he stated:

23   "I already filed the counter notifications . . . [Plaintiff] has 10 days to reply . . . then it gets

24   reinstated . . . I beat 35 copyright strikes."  *Id.* ¶ 69.  Mr. Cordova argues and alleges that these

25   statements, coupled with defendants' misrepresentations about their service address and retention

26   of counsel, show that defendants viewed the DMCA counter-notice procedure as a mere tactic to

27   obtain automatic reinstatement of the accused videos, knowing that false assertions of "fair use"

28   would likely go unchallenged, due to the burden and expense of litigation.  *Id.* ¶¶ 68, 71, 97, 104;

1    Dkt. No. 46 at 11-12.

2    Drawing all reasonable inferences in Mr. Cordova's favor, the Court concludes that the

3    allegations in the FAC are sufficient to state a claim of misrepresentation in violation of 17 U.S.C.

4    § 512(f)(2) with respect to defendants' nine DMCA counter-notices. *See Shropshire v. Canning,*

5    809 F. Supp. 2d 1139, 1148 (N.D. Cal. 2011) (denying motion to dismiss § 512(f)(2) claim where

6    copyright owner made specific and plausible allegations that accused infringer did not have a good

7    faith belief for statement in DMCA counter-notice, based in part on communications between

8    copyright owner and accused infringer); *Shande v. Zoox, Inc.,* No. 22-cv-05821-BLF, 2024 WL

9    2306284, at *4 (N.D. Cal. May 21, 2024) (denying motion to dismiss § 512(f)(1) claim where

10   accused infringer alleged, among other things, contemporaneous comments of high-ranking

11   company officials suggesting company did not believe accused material was infringing).

12   The authority on which defendants rely does not support a contrary conclusion.  As Mr.

13   Cordova observes, all of defendants' cases addressed questions of fair use and/or knowing

14   misrepresentation on *summary judgment*, not at the pleading stage.  *See Rossi*, 391 F.3d at 1002

15   ("We review a district court's grant of summary judgment *de novo*."); *Lenz*, 815 F.3d at 1150

16   (same); *Hosseinzadeh*, 276 F. Supp. 3d at 39 ("Before the Court are dueling motions for summary

17   judgment.").[6]  Indeed, in *Lenz*, the Ninth Circuit held that, in that case, "a *jury* must determine

18   whether [defendant's] actions were sufficient to form a subjective good faith belief about the

19   video's fair use or lack thereof."  *Lenz*, 815 F.3d at 1154 (emphasis added); *see also id.* n.3

20   ("[T]he question is whether the analysis [defendant] did conduct of the video was sufficient . . . to

21   form a subjective good faith belief that the video was infringing . . . *that question is for the jury,*

22   *not this court to decide*.") (emphasis added).[7]

23

24   [6] Defendants misrepresent *Hosseinzadeh* as a decision on a motion to dismiss at the pleading
     stage.  *See* Dkt. No. 43-1 at 6-7.  It is not.  Nor was the district court's decision affirmed on
25   appeal, as defendants contend.  *See id.*  In their reply, defendants continue to refer to a "Second
     Circuit" decision cited and described as "*Hosseinzadeh v. Klein,* 900 F.3d 39, 50-51 [sic] (finding
26   fair use as a matter of law)."  Dkt. No. 54 at 9.  The Court can locate no such decision.
     Defendants say that the mischaracterization of *Hosseinzadeh* and its appellate history in their
27   opening motion was a "simple mistake," *id.* at 9, but they do not explain why they *repeat the same*
     *mistake in their reply*.

28   [7] To the extent defendants suggest that Mr. Cordova may not assert a claim for violation of

United States District Court
Northern District of California

1       Accordingly, the Court denies defendants' motion to dismiss claim 2.

2       **C.      Claim 3: Declaratory Relief**

3       The FAC asserts a claim for "declaratory relief" with respect to Mr. Cordova's

4  unregistered video *Courthouse Fail*.  Dkt. No. 39 ¶¶ 107-112.  "Plaintiff seeks a judicial

5  declaration that [d]efendants' use of *Courthouse Fail* does not qualify as fair use under 17 U.S.C.

6  § 107 and an injunction requiring YouTube to remove the video from its platform and prevent its

7  re-upload." *Id.* ¶ 112.  Defendants move to dismiss this claim on the ground that Mr. Cordova

8  seeks declaratory judgment "for the sole purposes of seeking attorney fees, where it cannot [do] so

9  due to its untimely copyright registration mandating dismissal with prejudice."  Dkt. No. 43-1 at 8.

10  Mr. Cordova responds that there is a "concrete, ongoing controversy" that can be addressed, under

11  the authority of the Declaratory Judgment Act, 28 U.S.C. § 2201, because defendants' allegedly

12  infringing video remains on the Frauditor Troll Channel.  Dkt. No. 46 at 14.

13       "The Declaratory Judgment Act does not provide a cause of action when a party . . . lacks a

14  cause of action under a separate statute and seeks to use the Act to obtain affirmative relief." *City*

15  *of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022).[8]  "'[D]eclaratory relief is not an

16  independent cause of action'—only a remedy." *See, e.g.*, *Fish v. Aviation*, No. 18-cv-06671-

17  VKD, 2019 WL 690286, at *6 (N.D. Cal. Feb. 19, 2019) (quoting *VIA Techs., Inc. v. SONICBlue*

18  *Claims LLC*, No. 09-cv-02109-PJH, 2010 WL 2486022, at *3 (N.D. Cal. June 16, 2010)); *see also*

19  *Spangler v. Selene Fin. LP*, No. 16-cv-05103-WHO, 2016 WL 5681311, at *7 (N.D. Cal. Oct. 3,

20  2016) (dismissing claim for declaratory judgment because declaratory relief is not an independent

21  cause of action and plaintiff's complaint otherwise failed to state a claim under which any relief

22  could be granted).

23

24  § 512(f)(2) because he had not obtained copyright registrations for any of the videos
corresponding to the counter-notices at the time the counter-notices were submitted to YouTube,

25  *see* Dkt. No. 43-1 at 7, defendants cite no authority for this proposition, and it is inconsistent with
the plain language of the statute.

26  [8] As the *City of Reno* court observed, "[a] plaintiff's inability to rely on the Declaratory Judgment

27  Act to obtain affirmative relief where no cause of action otherwise exists contrasts with the well-
established availability of the Act for defensive use against anticipated claims." *City of Reno*, 52

28  F.4th at 879.  Here, claim 3 seeks affirmative relief against defendants.

United States District Court
Northern District of California

11

1    Mr. Cordova concedes he does not hold a registered copyright for *Courthouse Fail*, *see*

2    Dkt. No. 39 ¶ 45 n.6; Dkt. No. 46 at 5 n.1, and therefore he cannot assert a claim for copyright

3    infringement against defendants as to that work.  *See* 17 U.S.C. § 411(a); *Fourth Est. Pub. Benefit*

4    *Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019).[9]  It appears that Mr. Cordova attempts

5    to avoid the registration requirement by framing his claim with respect to *Courthouse Fail* as a

6    claim for declaratory relief, rather than a claim for copyright infringement.  *Compare* Dkt. No. 39

7    ¶¶ 85-93 (claim for copyright infringement of *Another Chad* and *Belmar Library*) *with id.* ¶¶ 107-

8    112 (claim for declaratory relief in connection with *Courthouse Fail*).  He cites no authority that

9    would support such a claim in the circumstances alleged in the FAC.  As Mr. Cordova elsewhere

10   observes, fair use is an affirmative defense to a claim of copyright infringement.  *See* Dkt. No. 46

11   at 9.  The Declaratory Judgment Act generally may not be invoked to anticipate an affirmative

12   defense.  *See, e.g., Divino Grp. LLC v. Google LLC*, No. 19-cv-04749-VKD, 2021 WL 51715, at

13   *11 (N.D. Cal. Jan. 6, 2021) ("Dismissal of a declaratory relief claim intended to anticipate an

14   affirmative defense is appropriate, particularly where, as here, the Court need not consider the

15   affirmative defense in order to resolve defendants' motion to dismiss plaintiffs' other claims.").

16   The Court finds that Mr. Cordova has not stated any claim for which he might be entitled

17   to the declaratory relief sought in claim 3 with respect to the *Courthouse Fail* video.  Accordingly,

18   the Court grants defendants' motion to dismiss claim 3.

19   **D.    Claim 4: Circumvention of Technological Measures**

20   Mr. Cordova asserts a claim for unlawful circumvention of technological measures, in

21   violation of 17 U.S.C. § 1201(a)(1).  Dkt. No. 39 ¶¶ 113-123.  Defendants argue that the claim

22   should be dismissed on two grounds: (1) lack of standing and (2) failure to adequately allege that

23   defendants circumvented any technological measure.  Dkt. No. 43-1 at 8-10.

24   Section 1201(a)(1) prohibits the circumvention of any technological measure that

25   "effectively controls access to" a protected work.  17 U.S.C. § 1201(a)(1)(A); *see MDY Indus.,*

26

27   [9] The statute includes some limited exceptions to the registration requirement for live broadcasts
     and works preregistered with the Copyright Office before distribution.  *See Fourth Est.*, 586 U.S.

28   at 301; 17 U.S.C. §§ 408(f), 411(c).  However, there is no indication that these exceptions apply
     here.

United States District Court
Northern District of California

1    *LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 943-44 (9th Cir. 2010), *as amended on denial of reh'g*

2    (Feb. 17, 2011), *opinion amended and superseded on denial of reh'g*, No. 09-15932, 2011 WL

3    538748 (9th Cir. Feb. 17, 2011).  To state a claim for violation of § 1201(a), a plaintiff must

4    plausibly allege that "(i) the work at issue was protected under the Copyright Act, (ii) the

5    copyrighted work was protected by a 'technological measure,' and (iii) the technological measure

6    was 'circumvented' in order to obtain access to the copyrighted work."  *CDK Glob., LLC v.*

7    *Tekion Corp.*, No. 25-cv-01394-JSC, 2025 WL 1939951, at *8 (N.D. Cal. July 15, 2025) (quoting

8    *iSpot.tv, Inc. v. Teyfukova*, No. 21-cv-06815-MEMF(MARX), 2023 WL 3602806, at *4 (C.D.

9    Cal. May 22, 2023)).

10           The Court first considers defendants' argument that Mr. Cordova lacks statutory standing

11    to bring a § 1201(a) claim.[10]  This argument lacks merit, as the DMCA permits "[a]ny person

12    injured by a violation of section 1201 . . . [to] bring a civil action in an appropriate United States

13    district court for such violation."  17 U.S.C. § 1203(a); *see also Viral DRM LLC v. Seven W.*

14    *Media Ltd.*, 768 F. Supp. 3d 1025, 1031 (N.D. Cal. 2025) (noting that district courts "within the

15    Ninth Circuit have concluded that 'any person injured by a violation of section 1201 . . .' may

16    bring an action for such violation, even where that person was not the copyright owner or

17    holder.").  Defendants cite no authority to the contrary.  Because Mr. Cordova alleges injury based

18    on defendants' alleged circumvention of technological measures protecting his copyrighted works,

19    he has plausibly alleged statutory standing.

20           The Court next considers whether Mr. Cordova has adequately pled a claim for violation of

21    § 1201(a)(1).  Defendants argue that the FAC does not plausibly allege that the videos at issue

22    were protected by a "technological measure" when published on Mr. Cordova's YouTube channel,

23    or that defendants "circumvented" any such measure in order to obtain access to the videos.  Dkt.

24    No. 43-1 at 9-10.  Defendants' argument is not well-taken, as it ignores the allegations of the FAC.

25

26

27    [10] The Court addresses a motion to dismiss for lack of statutory standing under Rule 12(b)(6).  *See ChowNow, Inc v. Owner.com*, No. 25-cv-07315-VKD, 2026 WL 125612, at *5 (N.D. Cal. Jan. 16,

28    2026).

United States District Court
Northern District of California

United States District Court
Northern District of California

1

**1.      Technological measures**

2      The DMCA defines a "technological measure that effectively controls access to a work" as

3 a measure that, "in the ordinary course of its operation, requires the application of information, or

4 a process or a treatment, with the authority of the copyright owner, to gain access to the work."  17

5 U.S.C. § 1201(a)(3)(B).  According to the FAC, YouTube "automatically applie[s]" technological

6 measures to published videos "that control access to and prevent unauthorized copying or

7 downloading" of Mr. Cordova's videos.  Dkt. No. 39 ¶ 116.  The FAC alleges that YouTube's

8 technological measures include "rolling-cipher technology," which is "software designed to

9 prevent unauthorized downloading" of videos.  *Id.* ¶ 4.  This technology "encrypts and

10 dynamically alters the video stream's URL signatures to prevent unauthorized downloads."  *Id.* ¶

11 35.

12      Citing *MDY Industries*, defendants argue that Mr. Cordova's claim fails and YouTube's

13 technological measures do not "effectively control access" because Mr. Cordova's videos are

14 "publicly available" on YouTube.  Dkt. No. 43-1 at 9-10.  Defendants misread *MDY Industries*.

15 As the Ninth Circuit explained in that decision:

16      The statutory definition of the phrase "effectively control access to
       a work" does not require that an access control measure be strong or
17      circumvention-proof.  Rather, it requires an access control measure
       to provide some degree of control over access to a copyrighted
18      work.  As one district court has observed, if the word "effectively"
       were read to mean that the statute protects "only successful or
19      efficacious technological means of controlling access," it would
       "gut" DMCA § 1201(a)(2), because it would "limit the application
20      of the statute to access control measures that thwart circumvention,
       but withhold protection for those measures that can be
21      circumvented."
22

23 *MDY Indus.*, 629 F.3d at 954 n.17 (quoting *Universal City Studios v. Reimerdes*, 111 F. Supp. 2d

24 294, 318 (S.D.N.Y. 2000)).

25      Mr. Cordova has adequately pled that YouTube applies technological measures, including

26 "rolling-cipher technology" designed to prevent unauthorized downloading, to videos published

27 on its platform that effectively control access to his videos for purposes of § 1201(a).  Whether the

28 videos may be viewed by the public is immaterial; the FAC refers to technological measures

14

United States District Court
Northern District of California

1    intended to prevent unauthorized downloading.  As other courts have concluded, allegations

2    similar to those in the FAC, identifying measures that restrict access to downloadable files, are

3    sufficient for purposes of the second element of a § 1201(a)(1) claim.  *See Yout, LLC v. Recording*

4    *Indus. Ass'n of Am., Inc.*, 633 F. Supp. 3d 650, 665, 670 (D. Conn. 2022) (finding allegations that

5    YouTube's technological protection measures "control access to downloadable files" sufficient at

6    pleading stage); *Edland v. Basin Elec. Power Coop.*, No. 21-cv-04008-KES, 2021 WL 3080225,

7    at *6 (D.S.D. July 21, 2021) (denying dismissal of § 1201(a)(1)(A) claim where plaintiff plausibly

8    alleged that "YouTube has 'many [technological protection measures] to prevent unauthorized

9    copying, recording, and distribution of video content'"); *UMG Recordings, Inc. v. Kurbanov*, No.

10   18-cv-957-CMH TCB, 2021 WL 6492907, at *4, 7 (E.D. Va. Dec. 16, 2021) (finding plaintiff

11   sufficiently alleged § 1201(b) claim where plaintiff alleged YouTube's technological protection

12   measures included "rolling cipher" protections), *report and recommendation adopted*, No. 18-cv-

13   957, 2022 WL 20417526 (E.D. Va. Feb. 10, 2022).

**2.      Circumvention**

15        The DMCA provides that "to 'circumvent a technological measure' means to descramble a

16   scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate,

17   or impair a technological measure, without the authority of the copyright owner."  17 U.S.C.

18   § 1201(a)(3)(A).  According to the FAC, defendants circumvented YouTube's technological

19   measures by using "software applications, ripping utilities, or browser extensions specifically

20   designed to bypass" YouTube's technological measures.  Dkt. No. 39 ¶¶ 36, 117.  Mr. Cordova

21   alleges that defendants' tools "retrieve and decrypt the obfuscated streaming URLs, enabling

22   [d]efendants to make local copies of [p]laintiff's videos."  *Id.* ¶ 36.

23        Defendants argue that the FAC relies on conclusory allegations and describes nothing

24   more than defendants' "downloading" or "screen-recording" a publicly available video.  Dkt. No.

25   43-1 at 10; Dkt. No. 54 at 7.  Defendants also fault Mr. Cordova for failing to allege "what tools

26   were used, [and] when such [tools were] used."  Dkt. No. 54 at 7.

27        Defendants mischaracterize the allegations in the FAC.  Moreover, defendants cite no

28   support for their apparent contention that a plaintiff must identify in his complaint the specific

United States District Court
Northern District of California

1    tools used to circumvent the technological measures, or a date on which those tools were used, in

2    order to survive a motion to dismiss.  As noted above, the Court does not consider and weigh

3    defendants' opposing evidence when addressing a Rule 12(b)(6) motion to dismiss.

4         Drawing all reasonable inferences in Mr. Cordova's favor, the Court concludes that the

5    FAC plausibly alleges that defendants circumvented YouTube's technological measures using the

6    described techniques in order to download his videos, and therefore adequately pleads the third

7    element of the § 1201(a)(1) claim.

8         Accordingly, defendants' motion to dismiss claim 4 is denied.

## IV.  CONCLUSION

10         For the reasons discussed above, the Court grants in part and denies in part defendants'

11    motion to dismiss the FAC as follows:

12         (1) the motion to dismiss claims 2 and 4 is denied;

13         (2) the motion to dismiss claim 3 is granted.

14         As defendants have already answered the FAC (Dkt. No. 57), no further response to that

15    pleading is required.

16         **IT IS SO ORDERED.**

17    Dated: January 23, 2026

18

19

                           Virginia K. DeMarchi

20                            United States Magistrate Judge

21

22

23

24

25

26

27

28