RANDALL S. NEWMAN (SBN 190547)
Attorney at Law
99 Wall St., Suite 3727
New York, NY 10005
212.797.3735
rsn@randallnewman.net

*Attorney for Plaintiff,*
 *Christopher J. Cordova*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER J. CORDOVA, | Case No. 25-cv-04685-VKD |
| Plaintiff, | **HON. VIRGINIA K. DEMARCHI** |
| vs. | **DECLARATION OF RANDALL S. NEWMAN IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |
| JONATHAN HUDON-HUNEAULT, NNEKA OHIRI, 14693663 CANADA INC., | |
| Defendants. | **HEARING:**<br>Date: March 31, 2026<br>Time: 10:00 a.m.<br>Place: 280 South 1st St.<br>Courtroom 2 (5th Floor)<br>San Jose, CA 95113 |

## DECLARATION OF RANDALL S. NEWMAN

I, Randall S. Newman, hereby declare pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.    I am an attorney duly licensed to practice before this Court and am the attorney for Plaintiff Christopher J. Cordova ("Plaintiff"). Unless otherwise stated, I have personal knowledge of the facts stated herein and if called as a witness could competently testify thereto.

2.    Plaintiff filed the operative Complaint in this action on November 3, 2025. (ECF No. 39).

3.    On November 4, 2025, the Court entered a Case Management Order setting February 2, 2026 as the deadline to amend pleadings. (ECF No. 41).

4.    Plaintiff submitted the audiovisual work titled *Courthouse Fail* to the United States Copyright Office on October 15, 2025 but had not yet received a copyright registration for that work at the time the First Amended Complaint was filed.

5.    Because copyright registration is a statutory prerequisite to asserting a claim for copyright infringement, Plaintiff could not assert an infringement claim for *Courthouse Fail* at the time the First Amended Complaint was filed.

6.    On January 30, 2026, prior to the amendment deadline set forth in the Case Management Order, Plaintiff filed a Motion to Amend the Case Management Order seeking a limited extension of the deadline to amend pleadings in anticipation of the issuance of the *Courthouse Fail* registration. (ECF No. 66.) That motion remains pending.

7.    On February 6, 2026, the United States Copyright Office issued a copyright registration for *Courthouse Fail* (Reg. No. PA0002565781). Plaintiff received notice of the issuance of that registration on February 9, 2026.

8.    At the time the copyright registration for *Courthouse Fail* issued, the work was registered in the name of Executive Lens LLC, an entity wholly owned and controlled by Plaintiff. Plaintiff retained the exclusive right to enforce the copyright in *Courthouse Fail*, including the exclusive right to bring infringement actions in his own name, and

1

retained all accrued causes of action. No transfer or assignment of enforcement rights to Executive Lens LLC occurred. Plaintiff therefore has standing to assert the infringement claim added by the proposed Second Amended Complaint.

9.    Plaintiff now seeks leave to file a Second Amended Complaint to assert a copyright infringement claim for *Courthouse Fail* based on the newly issued registration and to conform the pleadings to intervening developments.

10.    The proposed Second Amended Complaint is narrow and corrective in nature, does not expand the factual scope of the case, and is based on statutory rights that accrued only after the filing of the operative pleading.

11.    A true and correct copy of the proposed Second Amended Complaint is attached hereto as Exhibit A.

12.    A redline comparison reflecting the changes between the First Amended Complaint and the proposed Second Amended Complaint is attached hereto as Exhibit B.

13.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 10th day of February, 2026.


                                   s/ Randall S. Newman
                                   Randall S. Newman

**Declaration of Randall S. Newman in Support of Motion for Leave to File Second Amended Complaint**



RANDALL S. NEWMAN (SBN 190547)
Attorney at Law
99 Wall St., Suite 3727
New York, NY 10005
212.797.3735
rsn@randallnewman.net

*Attorney for Plaintiff,*
*Christopher J. Cordova*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER J. CORDOVA, | Case No. 25-cv-04685-VKD |
| Plaintiff, | **[PROPOSED] SECOND AMENDED COMPLAINT FOR:** |
| vs. | |
| JONATHAN HUDON-HUNEAULT, NNEKA OHIRI and 14693663 CANADA INC., | **1. Copyright Infringement, 17 U.S.C. §§ 101 *et seq.*;** |
| Defendants. | **2. Misrepresentation, 17 U.S.C. § 512(f);** |
| | **3. Circumvention of Technological Measures, 17 U.S.C. §§ 1201, 1203** |

1

EXHIBIT A - Proposed Second Amended Complaint - Page 1 of 24

Plaintiff, Christopher J. Cordova ("Plaintiff"), files this Second Amended Complaint (the "SAC")[1] against Defendants Jonathan Hudon-Huneault ("Huneault"), Nneka Ohiri ("Ohiri") and 14693663 Canada Inc. ("Canada Inc.") (Huneault, Ohiri and Canada Inc. are collectively referred to as the "Defendants") who operate the Frauditor Troll YouTube channel located at www.youtube.com/@frauditortroll (the "Frauditor Troll Channel") and alleges as follows:

## INTRODUCTION

1.    This case arises from Defendants' systematic theft and monetization of Plaintiff's copyrighted YouTube videos and their abuse of the Digital Millennium Copyright Act's ("DMCA") counter-notice process, 17 U.S.C. § 512(g), to force those stolen works back online.

2.    Defendants built the Frauditor Troll Channel on wholesale misappropriation of Plaintiff's videos and the works of other First Amendment auditors ("Auditors").

3.    Instead of adding transformative commentary, critique, or analysis, Defendants' videos rely almost entirely on Plaintiff's original footage, often playing for extended durations, interspersed with brief derisive remarks, or unoriginal on-screen memes. These token alterations serve no critical or educational purpose; they exist solely to ridicule the subjects and harvest advertising revenue through YouTube's Partner Program.

4.    Defendants obtained Plaintiff's videos through unlawful circumvention of YouTube's rolling-cipher technology, software designed to prevent unauthorized downloading, thereby violating both YouTube's Terms of Service and the anti-circumvention provisions of 17 U.S.C. § 1201(a).[2] The result was a monetized archive of

---

[1] Plaintiff previously filed an Amended Complaint before service of process (ECF No. 20) and a First Amended Complaint after service of process (ECF No. 39). The current pleading is styled as the Second Amended Complaint to reflect that it is the second amendment following service.

[2] Plaintiff does not assert any independent claim under YouTube's Terms of Service. Those terms are referenced solely to illustrate the technological and contractual framework governing user access to

**[PROPOSED] SECOND AMENDED COMPLAINT**

1  stolen content repackaged as so-called "fair use."

2      5.      Huneault has repeatedly bragged, both in Counter-Notices and on public
3  livestreams, that he has received over forty-eight copyright strikes and that every single
4  one has been overturned through the counter-notification process. His message is clear:
5  mass infringement pays, and the DMCA's safeguards can be gamed indefinitely through
6  form responses, delay and the prohibitive cost of federal litigation.

7      6.      Between July and October 2023, Huneault submitted at least nine Counter-
8  Notices to YouTube under § 512(g)(3), each signed under penalty of perjury, asserting that
9  the videos were protected by the non-existent "Fair Use Act of 1976" (the "Counter-
10  Notices"). Huneault also claimed to own the Frauditor Troll Channel when Google's
11  records show the AdSense account belongs to Ohiri; later, Huneault asserted that the
12  Frauditor Troll Channel was owned by Canada Inc.

13      7.      Defendants' serial misrepresentations of ownership, combined with their use
14  of a fictitious U.S. service address, demonstrate deliberate deception intended to obstruct
15  enforcement and evade liability.

16      8.      Every Counter-Notice contained the same boilerplate paragraph, copied
17  verbatim from prior counter-notices, asserting fair use without any reference to the actual
18  content, purpose, or substantiality of the copied works. This rote formula bears no
19  resemblance to a genuine fair-use analysis; it is merely a script crafted to exploit
20  YouTube's automated reinstatement system.

21      9.      Upon learning of this action, Huneault and Ohiri publicly admitted that they
22  permanently deleted more than 1,700 videos from the Frauditor Troll Channel in an effort
23  to conceal evidence and evade accountability for their mass infringement of Plaintiff's and
24  other creators' works. The scope and timing of the deletion demonstrate willful destruction
25  of relevant evidence and a deliberate attempt to obstruct discovery in this case.

26      10.     After service of the Complaint, Huneault and Ohiri appeared on YouTube to

27  _____

28  YouTube's platform. Defendants' violations of those terms demonstrate their awareness that such conduct
    was unauthorized and support the inference of willful circumvention under 17 U.S.C. § 1201(a).

---

**[PROPOSED] SECOND AMENDED COMPLAINT**

---

mock the proceedings, publicly declaring that it was a one-in-a-billion chance Plaintiff would have filed this lawsuit and boasting that they would never settle. Those statements expose Defendants' mindset: profit from theft while daring Plaintiff or anyone else to stop them.

11.    Defendants' conduct, mass theft, repeated infringement, false Counter-Notices, circumvention of technological protections, and public taunting, reveals not misunderstanding of fair use but malice. This pattern of willful defiance threatens not only Plaintiff's rights but the integrity of the DMCA itself.

12.    Plaintiff therefore brings this action under the Copyright Act for: (a) direct infringement of his registered works, (b) knowing and material misrepresentations in Counter-Notices submitted under 17 U.S.C. § 512(g), (c) declaratory relief, and (d) circumvention of technological protection measures in violation of 17 U.S.C. § 1201(a). Plaintiff seeks damages, declaratory and injunctive relief, and all remedies available under the Act to halt Defendants' unlawful enterprise and restore the meaning of fair use.

### JURISDICTION AND VENUE

13.    This action arises under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and includes a claim for Declaratory Relief under 28 U.S.C. § 2201.

14.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), as this case involves federal questions arising under the Copyright Act and the Digital Millennium Copyright Act.

15.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(a) because a substantial part of the events giving rise to the claims occurred here and the infringing content was published and distributed via YouTube, which maintains its principal place of business in this District.

16.    Defendants consented to jurisdiction in this District by submitting the Counter-Notices under 17 U.S.C. § 512(g)(3).

**[PROPOSED] SECOND AMENDED COMPLAINT**

**PARTIES**

17.    Plaintiff is a resident of Colorado and the creator and operator of the YouTube channel "Denver Metro Audits" (@DenverMetroAudits) (the "DMA Channel").

18.    Plaintiff is the author and original copyright owner of the audiovisual works at issue. He retains all rights, title, and interest in the claims asserted in this action, including those arising under 17 U.S.C. §§ 512(f) and 1201. Although Plaintiff later assigned the copyrights in his broader catalog to Executive Lens LLC ("Executive Lens"), his wholly-owned company, those assignments expressly excluded and reserved to Plaintiff all accrued causes of action and claims relating to the infringements and DMCA violations alleged herein.

19.    Ohiri is an individual residing in Canada who co-owns and manages the Frauditor Troll Channel.

20.    Huneault is an individual residing in Canada who serves as the voice and narrator for videos on the Frauditor Troll Channel and co-owns and manages the Frauditor Troll Channel. Huneault and Ohiri are married.

21.    Canada Inc. is a Canadian corporation owned and controlled by Huneault and Ohiri, which acts as a co-owner or operating entity for the Frauditor Troll Channel.

22.    Upon information and belief, Ohiri, Huneault, and Canada Inc. jointly operate the Frauditor Troll Channel as a single business enterprise. They share access to the Channel's YouTube account, AdSense monetization, and related social media platforms, and each Defendant participates in the selection, editing, publication, and monetization of its videos. Defendants collectively profit from the unlawful conduct alleged herein and are therefore jointly and severally liable to Plaintiff for all resulting damages and statutory violations.

**FACTUAL ALLEGATIONS**

23.    YouTube is the largest video-sharing platform in the world and operates under the framework established by the DMCA.

24.    The DMCA provides a process by which copyright owners may request the

---

5

**[PROPOSED] SECOND AMENDED COMPLAINT**

removal of infringing content through a notice-and-takedown mechanism. If the platform receives a valid takedown notice, it typically disables access to the allegedly infringing material.

25.    The statute also gives the alleged infringer a way to respond: a counter-notification claiming the use is authorized, lawful, or otherwise non-infringing. If the copyright owner does not file a federal lawsuit within 10 business days of receiving a counter-notice, YouTube must restore access to the disputed content. 17 U.S.C. § 512(g).

26.    This framework shifts the burden onto copyright owners, often small creators or publishers, to file suit quickly or see their work reposted.

27.    Defendants exploited this imbalance by filing boilerplate Counter-Notices under § 512(g) designed to intimidate Plaintiff into dropping the matter and force reinstatement of stolen videos.

28.    This abuse allowed Defendants' Frauditor Troll Channel, to continue monetizing stolen infringing content while publicly claiming "fair use." In truth, Defendants' uploads consist almost entirely of Plaintiff's unaltered footage, supplemented by trivial mockery, recycled memes, and other non-transformative filler.

29.    In the context of this FAC, the term "Auditor" refers to Plaintiff and other independent content creators who record interactions with government officials in public spaces to promote transparency, document public conduct, and assert constitutional rights, particularly those protected by the First Amendment. These creators act as citizen journalists, watchdogs, and public advocates, often filming police encounters, public meetings, and other matters of public interest, and then editing and publishing that original footage online, most prominently on YouTube.

30.    The Auditor movement has become a significant presence on social media, drawing millions of subscribers and billions of views, and generating substantial advertising revenue. Many Auditors operate under pseudonyms but have nonetheless become well-known figures within the digital civil rights community.

31.    Plaintiff is an Auditor, activist, and content creator who documents

**[PROPOSED] SECOND AMENDED COMPLAINT**

interactions with public officials, government employees, and law enforcement officers in the course of his advocacy work. He spends significant time filming, editing, and publishing these encounters to the DMA Channel, where the resulting videos serve both as a public record of official conduct and as a means of promoting government transparency and accountability. Plaintiff's work is part of the broader Auditor movement and has developed a dedicated audience focused on constitutional rights, public oversight, and civil liberties.

32.    In response to the growing popularity of Auditors like Plaintiff, Defendants created the Frauditor Troll Channel, an operation that purports to critique Auditor content but in reality exists to misappropriate, ridicule, and monetize Auditors' videos. Cloaked in the appearance of commentary, Defendants' videos rely on insult, mockery, and distortion rather than genuine critique or transformative discussion.

33.    The Frauditor Troll Channel is one of the largest Auditor-focused reaction channels and operates as a commercial enterprise built on satire, appropriation, and systematic infringement. It offers no new message, insight, or purpose. Instead, it repackages Plaintiff's original videos with intermittent ridicule to attract viewers and generate advertising revenue while contributing virtually no original content of its own. Although other channels have occasionally used Plaintiff's videos, none has engaged in the scale, volume, or deliberate exploitation of Plaintiff's works that defines Defendants' operation. This action targets that uniquely pervasive infringement, not the existence of criticism or commentary itself. The Frauditor Troll channel stands alone as the principal vehicle for mass theft and monetization of Plaintiff's copyrighted content.

34.    The Frauditor Troll Channel has repeatedly used Plaintiff's copyrighted works without permission and without satisfying fair-use standards. Upon information and belief, between 2022 and 2025, Defendants unlawfully obtained and reproduced dozens of Plaintiff's videos, estimated between fifty and one hundred distinct works, uploading them

**[PROPOSED] SECOND AMENDED COMPLAINT**

1  to the Frauditor Troll Channel to derive advertising revenue and other commercial gain.[3]

2      35.    Upon information and belief, Defendants obtained the videos used from the

3  DMA Channel by circumventing YouTube's technological protection measures, including

4  its "rolling cipher" system, which encrypts and dynamically alters the video stream's URL

5  signatures to prevent unauthorized downloads. YouTube's player software uses a

6  decryption routine embedded in JavaScript code to authenticate requests and deliver

7  content only through approved interfaces.

8      36.    Upon information and belief, Defendants used software applications, ripping

9  utilities, or browser extensions specifically designed to bypass that rolling cipher and other

10 technological measures controlling access to the audiovisual works hosted on YouTube.

11 These tools retrieve and decrypt the obfuscated streaming URLs, enabling Defendants to

12 make local copies of Plaintiff's videos in violation of YouTube's Terms of Service and 17

13 U.S.C. § 1201(a).

14     37.    The rolling cipher is a "technological protection measure" ("TPM") as defined

15 in 17 U.S.C. § 1201(a)(3) because it controls access to Plaintiff's copyrighted works by

16 requiring authorized software to decrypt and stream them in real time. By using programs

17 that strip away this cipher, Defendants intentionally circumvented a technological measure

18 and knowingly obtained unauthorized copies of Plaintiff's copyrighted works.

19     38.    Defendants' circumvention was not incidental but systematic. The Frauditor

20 Troll Channel's production speed, volume, quality, and uniform editing style demonstrate

21 the routine use of decryption software as part of a deliberate business model to acquire,

22 republish, and monetize Plaintiff's copyrighted videos, in violation of YouTube's Terms

23 of Service and 17 U.S.C. § 1201(a).

24

25

---

26 [3] Plaintiff estimates the number of stolen and infringed works based on the number of videos Plaintiff
   published and Defendants' pattern of serial theft and infringement of nearly every video Plaintiff posted
27 prior to Defendants' deletion and purported destruction of more than 1,700 videos and all related metadata
   shortly after learning of this lawsuit. The precise number of stolen and infringed works cannot presently
28 be determined due to Defendants' unilateral destruction of that evidence.

**[PROPOSED] SECOND AMENDED COMPLAINT**

39.    When publicly discussing Plaintiff's 17 U.S.C. § 1201(a) claim against Defendants, Huneault did not deny the use of circumvention tools; instead, he suggested that he had another "defense," reinforcing the inference that Defendants used such software to unlawfully obtain Plaintiff's videos.

40.    Federal courts have recognized that YouTube's rolling cipher constitutes a technological protection measure within the meaning of 17 U.S.C. § 1201(a)(3) and that it "effectively controls access" to copyrighted works because it prevents users from downloading video streams without first executing YouTube's proprietary decryption code.

### ***Plaintiff's Copyrighted Works***

41.    On or about March 16, 2022, Plaintiff published a video titled *ANOTHER CHAD EXPOSED!!! Worthless Denver Cops…ASSAULTED!!!* ("*Another Chad*"), to the DMA Channel.[4]

42.    Plaintiff registered *Another Chad* with the U.S. Copyright Office under Registration Number PA002457989 on February 6, 2024.

43.    On or about October 1, 2023, Plaintiff published a video titled *ANGRY MOB AT BELMAR LIBRARY!!! "CALL 911!" Cops don't show up* to the DMA Channel ("*Belmar Library*").[5]

44.    Plaintiff registered *Belmar Library* with the U.S. Copyright Office under Registration Number PA0002549333 on June 3, 2025.

45.    On or about February 2, 2022, Plaintiff published a video titled *FEDERAL COURTHOUSE FAIL!!! Threatened with arrest for recording and not one officer identifies!* ("*Courthouse Fail*") to the DMA Channel.[6]

46.    Plaintiff registered *Courthouse Fail* with the U.S Copyright Office under Registration Number PA0002565781 on October 15, 2025.

---

[4] https://youtu.be/bhgHsPl4Mr0?si=F-7EgMg0bBZiy-QY.
[5] https://www.youtube.com/watch?v=86UKGVikxKQ&t.
[6] https://www.youtube.com/watch?v=coiMQm_zzFE&t.

9

**[PROPOSED] SECOND AMENDED COMPLAINT**

1

***Defendants' Infringing Videos***

2    47.    On or about December 2, 2022, Defendants published a video titled *Frauditor*

3    *DMA Gets Confronted by Angry Citizen (Hilarious)* ("Infringing Video 1") to the Frauditor

4    Troll Channel.[7] Infringing Video 1 incorporates approximately twenty-five minutes and

5    fifty-four seconds of Plaintiff's video *Another Chad* without authorization.

6    48.    Infringing Video 1 reproduces Plaintiff's footage in fifteen separate blocks

7    with no commentary, twelve of which exceed one minute, three of which exceed two

8    minutes, one exceeds three minutes, and one exceeds four minutes. This repeated use of

9    lengthy, uninterrupted segments underscores the absence of meaningful transformation or

10    interspersed analysis.

11    49.    Plaintiff's *Another Chad* video is forty-eight minutes and fourteen seconds in

12    length, meaning Defendants reproduced more than fifty-four percent of Plaintiff's work.

13    Excluding the introductory and concluding segments, eighty-seven percent of Defendants'

14    video consists of Plaintiff's footage presented in long, unaltered blocks. The remaining

15    thirteen percent comprises brief interjections totaling less than four minutes, primarily

16    mocking Plaintiff rather than analyzing the subject matter or providing substantive

17    commentary.

18    50.    On or about February 4, 2022, Defendants published a video titled *Frauditors*

19    *Ejected from Federal Courthouse (NEW)* ("Infringing Video 2") to the Frauditor Troll

20    Channel.[8] Infringing Video 2 incorporates approximately eighteen minutes and forty-six

21    seconds of Plaintiff's *Courthouse Fail* video without authorization.

22    51.    Plaintiff's *Courthouse Fail* video is thirty minutes and twenty-seven seconds

23    long, meaning Defendants misappropriated approximately sixty-two percent of Plaintiff's

24    work. Excluding the brief introduction and outro, eighty-seven percent of Defendants'

25    video consists of Plaintiff's footage, while Defendants' commentary accounts for only

26

27    ---
[7] The video was available at the URL https://www.youtube.com/watch?v=I-J8sdKZ504. The video was
28    removed after the filing of this action.
[8] https://www.youtube.com/watch?v=eVe4eoOzPvc&t.

thirteen percent, two minutes and forty-eight seconds in total. These brief interjections provide no meaningful analysis or critique and do nothing to alter the expressive core of Plaintiff's work, which dominates the viewing experience.

52.    Infringing Video 2 remains publicly available on the Frauditor Troll Channel and continues to display and distribute substantial portions of Plaintiff's *Courthouse Fail* video without authorization.

53.    Plaintiff did not become aware of Infringing Video 2 until June 2023.

54.    On or about October 1, 2023, Defendants published a video titled *Frauditor DMA gets Camera Touched and CRIES A RIVER* ("Infringing Video 3") to the Frauditor Troll Channel.[9] Infringing Video 3 incorporates thirty-seven minutes and sixteen seconds of Plaintiff's *Belmar Library* video without authorization. (Infringing Video 1, Infringing Video 2 and Infringing Video 3 are collectively referred to as the "Infringing Videos").

55.    Infringing Video 3 reproduces Plaintiff's footage in twelve separate blocks with no commentary. Each block exceeds one minute; eight blocks exceed two minutes; three blocks exceed four minutes; and the longest uninterrupted segment runs over six minutes. This repeated use of extended, uninterrupted sequences underscores the absence of meaningful transformation or interspersed analysis.

56.    Plaintiff's *Belmar Library* video is forty-six minutes and fourteen seconds in length, meaning Defendants misappropriated approximately eighty-one percent of Plaintiff's work. Excluding the introductory and concluding segments, ninety-two percent of Defendants' video consists of Plaintiff's footage presented in long, uninterrupted blocks. The remaining eight percent consists of brief interjections totaling under three and a half minutes, primarily mocking Plaintiff rather than analyzing the subject matter or providing any meaningful commentary.

---

[9] https://www.youtube.com/watch?v=rSUT6MDdfoo. The video was removed after the filing of this action.

***Defendants' Video - How to do Fair Use Properly and Avoid Copyright Strikes***

57.    On or about May 24, 2022, the Frauditor Troll Channel (or a related channel owned by Defendants) posted a video titled *How to do Fair Use Properly and Avoid Copyright Strikes*. The video is narrated by Huneault.

58.    In that video, Huneault claims to offer a formula for "100% safe fair use commentary videos." He instructs viewers that a "good amount of commentary is about 40 seconds to every minute so you say a little comment every minute that way you'll be safe." He also advises creators to pad videos with lengthy intros and outros and to intersperse other clips in order to "increase the proportion of time that is something else than one specific video." Finally, Huneault says that the goal is to use "less than fifty percent of a specific video" and asserts that when you're "only using 30% of someone's video, you are very unlikely to get a copyright strike."

59.    Although Plaintiff disagrees with Huneault's oversimplistic take on fair use, as discussed above, Huneault did not even follow his own purported "fair use" formula when misappropriating Plaintiff's Videos. This inconsistency demonstrates that Huneault and Ohiri lacked a subjective good-faith belief that the Infringing Videos were protected by fair use when submitting the Counter-Notices, satisfying the knowledge and bad-faith elements of 17 U.S.C. § 512(f).

***Plaintiff's DMCA Takedowns and Defendants' Abuse of the Counter-Notice System***

60.    In June and October 2023, Plaintiff submitted twelve DMCA takedown notices to YouTube identifying videos uploaded by Defendants to the Frauditor Troll Channel that infringed Plaintiff's copyrighted works.

61.    Each Counter-Notice submitted by Defendants under penalty of perjury contained substantially identical boilerplate language, including the following:

> I am once again asking you to forward this counter notification to the plaintiff,
> according to the fair use act of 1976 I am legally allowed to make these types
> of videos. I am once again asking you to forward my counter notification to
> the plaintiff so I can have a chance to defend myself in a court of Law. I have

**[PROPOSED] SECOND AMENDED COMPLAINT**

a commentary channel where I provide review videos of 1st amendment auditors, I provide commentary, I add memes and sound effects to completely transform the original work into a Fair use video. On my channel I have received 48 copyright strikes and every single one of my videos have been reinstated through the counter notification system. I am willing to defend myself in a court of law. I have already hired an attorney to defend my fair use videos in court and I am asking you to forward my counter notification to the plaintiff so he can decided for himself if he chooses to go that route. I am the original creator of the Fair use videos on my channel and I know that my videos were taken down by mistake because they fall under the Fair use act. Please forward my counter notification so I can defend myself in a court of Law. Thank you, Jonathan Huneault

62.    The results were mixed. Defendants accepted two strikes without filing counter-notices, YouTube declined to remove one video, and Defendants filed the nine Counter-Notices under §512(g)(3) seeking reinstatement of the remaining works.[10]

63.    Each of the Counter-Notices contained substantially identical boilerplate language and multiple false statements, including that the uploads were protected by "fair use," that Huneault was "the original creator of the Fair Use videos on my channel," and that Defendants had retained legal counsel prepared to litigate the matter. These statements were materially false. Upon information and belief, Defendants made inconsistent and misleading representations about the ownership and monetization of the Frauditor Troll Channel, at times claiming it was owned by Huneault personally, at other times by Ohiri, and elsewhere by their Canadian corporation. Regardless of the claimed ownership, no counsel had been retained, and the Counter-Notices were knowingly false when submitted.

64.    Defendants further misrepresented their location by providing "99 Wall Street, New York, NY" without a suite number, as their service address in each Counter-

---

[10] Defendants filed eight counter-notices on or about July 5, 2023 and one counter-notice on or about October 20, 2023.

**[PROPOSED] SECOND AMENDED COMPLAINT**

Notice. In reality, Defendants are residents of Canada. This fictitious U.S. address obstructed Plaintiff's ability to effect service of process and constitutes an additional knowing misrepresentation to support the inference that Defendants' Counter-Notices were not filed in good faith.

65.  Defendants recently publicly admitted that they knew suite number 5892 was assigned to their bogus 99 Wall Street address, further demonstrating that the omission of the suite number was intentional and that the Counter-Notices were filed in bad faith.

66.  Relying on Huneault's misrepresentations regarding fair use, YouTube reinstated nine videos, resulting in financial benefit to all Defendants. After Plaintiff commenced this action on June 3, 2025, Defendants deleted nine of the ten videos,[11] including eight of the nine that had been reinstated by the Counter-Notices. One infringing video remains live on the Frauditor Troll Channel as of the filing of this FAC.

67.  Defendants' repeated use of false claims of fair use, a sham address, and fabricated assertions of ownership and legal representation demonstrate that the Counter-Notices were not merely mistaken but knowingly false and submitted in bad faith.

68.  On July 5, 2023, the same day Defendants submitted eight Counter-Notices under 17 U.S.C. § 512(g), Huneault emailed Plaintiff, stating: "If I counter every strike and they all get reinstated eventually it could penalize your channel. I'm going to keep making fair use videos, I'm legally allowed to do so."

69.  That evening, Huneault emailed again, identifying himself as "Josh," claiming he had "talked to a lawyer," demanding $9,000, and asserting: "You already know the videos will be reinstated in 3 weeks through the counter notification system."

70.  These contemporaneous emails confirm Defendants used the counter-notice mechanism as a tactic to force automatic reinstatement, not to correct any mistake or misidentification, and that Huneault deployed a false identity while doing so.

71.  On July 6, 2023, Huneault posted a video titled *DMA disabled Frauditor Troll*

---

[11] As alleged above, YouTube refused to remove one of the ten videos.

14

**[PROPOSED] SECOND AMENDED COMPLAINT**

*for 3 Weeks, Big Mistake*, describing the counter-notice process and his expectation of reinstatement. He stated, among other things: "Obviously all the counter notifications are sent… I already filed the counter notifications… [Plaintiff] has 10 days to reply… then it gets reinstated… I beat 35 copyright strikes."

72.    That video also directly contradicted the July 2023 Counter-Notices, which stated: "I have already hired an attorney to defend my fair use videos in court." In the July 6 video, Huneault admitted he had not retained counsel, saying: "A paralegal can take care of that. I don't need to hire an expensive lawyer… I'm not a lawyer… I'm going to talk to a paralegal tomorrow."

73.    These contemporaneous statements constitute admissions of state of mind: Defendants viewed counter-notices as an automatic reinstatement mechanism and had not retained counsel despite swearing otherwise. They corroborate that Defendants' Counter-Notices were knowingly false and submitted in bad faith to force reinstatement, continue monetization, and intimidate Plaintiff into abandoning the infringement claims against them.

### The Market for Plaintiff and other Auditors' Footage

74.    Defendants' dozens of stolen and uploaded videos serve as market substitutes for Plaintiff's original footage. For example, a legitimate commentary channel, Really Cool News[12], discusses Auditors' videos and conduct without reproducing a single frame of their copyrighted footage. Its view counts are a fraction of those on the Frauditor Troll Channel. This disparity demonstrates that audience demand for Defendants' content is driven not by any transformative commentary, but by the unauthorized display of Plaintiff's original works. Defendants' reproductions therefore serve as market substitutes for the originals, directly diminishing the market for authorized distribution and derivative works.

75.    Upon information and belief, the Frauditor Troll Channel unlawfully obtained and infringed between fifty and one hundred of Plaintiff's copyrighted works. A serial

---

[12] www.youtube.com/@ReallyCoolNews

**[PROPOSED] SECOND AMENDED COMPLAINT**

misappropriation of Plaintiff's works on that scale functions as a market substitute: a YouTube viewer can watch virtually all of Plaintiff's copyrighted material on the Frauditor Troll Channel instead of on Plaintiff's own channel.

76.     Indeed, many of Defendants' followers have publicly admitted that they watch Plaintiff's copyrighted footage on Defendants' channel instead of viewing the originals, often bragging that doing so "deprives the auditors of views and revenue." These admissions confirm that Defendants' uploads displace legitimate consumption of Plaintiff's content and usurp the economic incentive underlying copyright protection.

77.     Plaintiff, through Executive Lens, is in the process of developing a licensing program under which authorized YouTube channels may license and monetize Plaintiff's footage in exchange for royalties. Plaintiff has already engaged in discussions with multiple channels regarding such licensing. However, Defendants' ongoing theft, monetization, and public rationalization of infringement have undermined this effort by fostering a belief among anti-Auditor content creators that Plaintiff's videos are free for the taking under the guise of "fair use." Until Defendants are held accountable, Plaintiff's ability to establish a lawful licensing market remains severely impaired.

78.     Defendants' wholesale reproduction and monetization of Plaintiff's videos directly substitute for the originals, divert traffic, and poison the emerging licensing market for Plaintiff's footage. By saturating YouTube with unauthorized copies of Plaintiff's works, Defendants have not merely harmed the potential market-they have sought to destroy it, ensuring that theft and infringement, not creativity, determine who profits from Plaintiff's works.

### ***Defendants' Conduct After this Action was Initiated***

79.     Plaintiff commenced this action on June 3, 2025.

80.     Defendants were informed of this action via email on June 6, 2025.

81.     On the same day that Defendants received notice of this action, they began a campaign to mass-delete evidence in an effort to conceal their wrongdoing and avoid accountability.

**[PROPOSED] SECOND AMENDED COMPLAINT**

82.    In total, Defendants deleted more than 1,700 videos from the Frauditor Troll Channel which amounted to nearly ninety percent of the channel's video library.

83.    After Huneault and Ohiri were formally served in this action, they publicly admitted that the 1,700 videos were not just merely removed from YouTube but were permanently destroyed because they were concerned about being held accountable for their mass infringement scheme.

84.    Huneault also publicly admitted that he knew Plaintiff was "broke" meaning that he believed Plaintiff could not afford an attorney to pursue federal litigation, and that it was a one-in-a-billion chance that Plaintiff would find counsel willing to hold Defendants liable for their blatant copyright infringement scheme given the relatively modest monetary damages.

85.    Huneault admitted that he paid Patrick J. D'Arcy, Esq. $2,800 before D'Arcy filed an amicus brief in this matter, even though D'Arcy falsely represented to the Court that he had not been compensated. The amicus filing was a bad-faith effort to inflate Plaintiff's litigation costs and discourage Plaintiff and his counsel from pursuing legitimate claims against Defendants. This conduct further demonstrates Defendants' bad faith regarding the theft and monetization of Plaintiff's videos on the Frauditor Troll Channel.

86.    Lastly, Huneault publicly admitted that the Frauditor Troll Channel was a satire channel, further confirming Plaintiff's allegation that the Infringing Videos are not fair use.

### **FIRST CAUSE OF ACTION**
**Copyright Infringement**
**(17 U.S.C. § 501)**
***(Infringement of Another Chad, Belmar Library and Courthouse Fail)***

87.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 86.

88.    Plaintiff is the creator and original author of the copyrighted audiovisual works titled *Another Chad* (U.S. Copyright Reg. No. PA0002457989) *Belmar Library*

17
**[PROPOSED] SECOND AMENDED COMPLAINT**

(U.S. Copyright Reg. No. PA0002549333) and *Courthouse Fail* (U.S. Copyright Reg. No. PA0002565781).

89.     Cordova subsequently assigned to Executive Lens all rights, title, and interest in and to *Another Chad, Belmar Library* and *Courthouse Fail*, including the exclusive rights under 17 U.S.C. § 106, while expressly reserving and retaining all causes of action and claims for infringement, violations of 17 U.S.C. § 512(f), and circumvention under 17 U.S.C. § 1201 arising prior to the effective date of the assignment.

90.     Accordingly, Executive Lens is the current owner of the copyrights, and Plaintiff retains standing to pursue the pre-assignment infringement and DMCA-related claims asserted herein.

91.     Defendants copied, displayed, and distributed substantial portions of *Another Chad, Belmar Library* and *Courthouse Fail* without authorization, including through the publication of three infringing videos on YouTube. Infringing Video 1 incorporated approximately 56% of *Another Chad* (Infringing Video 1 is approximately 87% of Plaintiff's *Another Chad* footage excluding intro and outro material), Infringing Video 2 incorporated approximately 62% of *Courthouse Fail* (Infringing Video 2 is approximately 87% of Plaintiff's *Courthouse Fail* footage excluding intro and outro material), and Infringing Video 3 incorporated approximately 81% of *Belmar Library* (Infringing Video 3 is approximately 92% of Plaintiff's *Belmar Library* footage excluding intro and outro material).

92.     Defendants' use of *Another Chad*, *Belmar Library* and *Courthouse Fail* was for commercial purposes, including monetization through advertisements and the promotion of merchandise and channel memberships.

93.     Defendants' use was not transformative and does not qualify as fair use under 17 U.S.C. § 107. As alleged herein, Defendants' reproductions served as market substitutes for Plaintiff's original works, diverting viewership and advertising revenue from the DMA Channel.

---

18

**[PROPOSED] SECOND AMENDED COMPLAINT**

94.    As a direct and proximate result of Defendants' infringement, Plaintiff has suffered actual damages including lost viewership, lost advertising revenue, and diminution of the market and licensing value of *Another Chad*, *Belmar Library* and *Courthouse Fail*.

95.    Pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to recover actual damages and any profits of Defendants attributable to the infringement.

96.    Defendants' infringement is ongoing, including because Infringing Video 2 remains live and continues to exploit Plaintiff's Courthouse Fail video. Plaintiff is entitled to injunctive relief under 17 U.S.C. §§ 502 and 503 requiring removal of infringing material and preventing further infringement.

## SECOND CAUSE OF ACTION

### Misrepresentation in Counter-Notifications under the DMCA

### (17 U.S.C. § 512(f))

97.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 96.

98.    Section 512(f)(2) of the Copyright Act provides, in relevant part, that "any person who knowingly materially misrepresents under this section . . . that material was removed or disabled by mistake or misidentification, shall be liable for any damages, including costs and attorneys' fees, incurred by…any copyright owner…who is injured by such misrepresentation."

99.    In the Counter-Notices submitted to YouTube under penalty of perjury, Defendants represented, among other things, that: (a) the removals were the result of "mistake or misidentification" and the Infringing Videos were protected by "fair use," citing a nonexistent "fair use act of 1976"; (b) Huneault owned the Frauditor Troll Channel and the videos at issue; (c) Defendants had already hired an attorney and were prepared to litigate; and (d) Defendants could be served at 99 Wall Street, New York, New York.

100.    Those statements were false, and, critically, were made without a good-faith belief at the time of each Counter-Notice that the videos were not infringing or the removals

**[PROPOSED] SECOND AMENDED COMPLAINT**

EXHIBIT A - Proposed Second Amended Complaint - Page 19 of 24

were by mistake or misidentification. As alleged above, the Infringing Videos reproduce the bulk of Plaintiff's works in long, uninterrupted blocks with only token, non-transformative interjections. Moreover, in or about May 2022, Defendants published a video titled *How to Do Fair Use Properly and Avoid Copyright Strikes,* in which Huneault instructed viewers to (a) insert commentary at least every 40 seconds, (b) limit use to less than 50% of another's work, and (c) pad videos with intros/outros to dilute the proportion of infringing content. Defendants' own infringing videos ignored each of those purported safeguards. This objective contradiction between Huneault's professed "fair use formula" and his conduct demonstrates that he knew the videos were not fair use and nonetheless represented otherwise under penalty of perjury in the Counter-Notices.[13] On July 5–6, 2023, Huneault further admitted that he filed counter-notices to "penalize" Plaintiff's channel, expected automatic reinstatement within three weeks, and had not retained counsel. YouTube relied on these misrepresentations to reinstate the removed videos, causing Plaintiff to incur litigation costs and other damages that would not have occurred but for Defendants' fraudulent Counter-Notices. These contemporaneous admissions show the Counter-Notices were tactical rather than truthful.

101.    After being served, Huneault and Ohiri publicly admitted in a YouTube video that there was a one-in-a-billion chance Plaintiff would actually hold Defendants accountable for copyright infringement because they knew Plaintiff lacked the financial resources to pursue federal litigation.

102.    Huneault misrepresented facts essential to the statutory process under §512(g)(3) which further demonstrates Defendants' pattern of knowingly false statements.

103.    The "already hired an attorney" assertion was false. As alleged above, the day after submitting the July 2023 Counter-Notices Huneault publicly admitted he had not hired a lawyer and would "talk to a paralegal" instead. Huneault made that statement

---

[13] Plaintiff does not concede that Huneault's statements regarding fair use are correct-they are reproduced solely to demonstrate that Huneault understood the principles he articulated and that his representations in the Counter-Notices were knowingly false.

merely to mislead Plaintiff into believing that an attorney determined that Defendants' dozens of infringing videos were fair use.

104.   After being notified of this lawsuit, Defendants took no steps to appear or defend; instead, they engaged in evasive tactics, refusing to accept service of process and permanently destroying over 1,700 videos. These facts underscore that Defendants' Counter-Notices were not only legally baseless but knowingly false.

105.   Defendants publicly admitted that they destroyed the 1,700 videos to avoid being held accountable for the massive copyright infringement claims Plaintiff and others could have brought.

106.   The New York service address was false and materially misleading. As alleged above, Defendants are residents of Canada; listing "99 Wall Street, New York, NY" impeded service and misrepresented their true location. Defendants knowingly omitted suite number 5892 from the Counter-Notices to evade service and increase Plaintiff's litigation costs.

107.   Defendants' conduct epitomizes the systemic abuse Congress sought to prevent in § 512(f). Having publicly instructed others on the requirements of fair use, Huneault later admitted that Defendants simply file counter-notices without regard to the law because they believe no one will enforce it. This is not a mistake or misidentification, it is a deliberate exploitation of a flawed process, undertaken with knowledge that false assertions of lawful use would go unchallenged unless Plaintiff shouldered the cost of federal litigation Defendants believed he could not afford.

108.   As a direct result of Defendants' material misrepresentations regarding fair use, Plaintiff was forced to initiate this action to have the Infringing Videos removed from the Frauditor Troll Channel, and to prevent their re-upload. Plaintiff is entitled to recover damages, costs, and attorneys' fees under 17 U.S.C. § 512(f).

109.   Plaintiff is further entitled to injunctive relief requiring YouTube or its agents to remove the Infringing Videos from the Frauditor Troll Channel and to prevent their re-upload.

---

21

**[PROPOSED] SECOND AMENDED COMPLAINT**

### THIRD CAUSE OF ACTION

**Unlawful Circumvention of Technological Measures**

**(17 U.S.C. §§ 1201, 1203)**

110.   Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 109.

111.   Plaintiff is the author of the original audiovisual works published on his YouTube channels.

112.   Plaintiff owns all rights, title, and interest in and to the claims asserted in this action, including all claims for violations of 17 U.S.C. § 1201.

113.   Each of Plaintiff's works was uploaded to YouTube through the platform's standard publishing system. When published, YouTube automatically applied TPMs that control access to and prevent unauthorized copying or downloading of Plaintiff's audiovisual files, consistent with 17 U.S.C. § 1201.

114.   Upon information and belief, Defendants intentionally circumvented these TPMs by employing software tools commonly known as "rippers" or "downloaders" to download native-quality copies of Plaintiff's YouTube videos.

115.   Upon information and belief, Defendants unlawfully obtained between fifty and one hundred of Plaintiff's videos using these tools, often on the same day that the videos were posted to Plaintiff's YouTube channels so that Defendants could post the unlawfully obtained videos on the Frauditor Troll Channel.

116.   Defendants used those unlawfully obtained copies to create monetized videos for the Frauditor Troll Channel, reproducing extensive, unaltered portions of Plaintiff's works without license or authorization.

117.   By using circumvention software and disabling or bypassing YouTube's copy-protection systems, Defendants violated 17 U.S.C. § 1201(a), which prohibits the circumvention of a technological measure that effectively controls access to a copyrighted work.

**[PROPOSED] SECOND AMENDED COMPLAINT**

118.   Defendants' conduct was willful, knowing, and undertaken for commercial advantage, including the generation of advertising revenue through YouTube's AdSense program.

119.   As a direct and proximate result of Defendants' circumvention, Plaintiff has suffered actual damages, including loss of control over his copyrighted works, impairment of market value, and costs incurred to identify, remove, and prevent further distribution of infringing content.

120.   Plaintiff is entitled to recover actual or statutory damages under 17 U.S.C. § 1203(c), together with attorney's fees and costs, and to obtain injunctive relief restraining Defendants from further circumvention or trafficking in circumvention technology.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

A.   That judgment be entered in favor of Plaintiff and against Defendants for monetary damages caused by their infringement of Plaintiff's *Another Chad*, *Belmar Library* and *Courthouse Fail* copyrights;

B.   That judgment be entered in favor of Plaintiff and against Defendants for monetary damages caused by their knowing material misrepresentations in the Counter-Notices pursuant to 17 U.S.C. § 512(f);

C.   That judgment be entered in favor of Plaintiff and against Defendants for their unlawful circumvention of technological protection measures in violation of 17 U.S.C. § 1201(a), including statutory damages of $2,500 per act of circumvention, actual damages, attorneys' fees, and a permanent injunction prohibiting further circumvention or distribution of works obtained through circumvention;

D.   That the Court enter a permanent injunction enjoining Defendants from further infringement of *Another Chad, Courthouse Fail* and *Belmar Library*, requiring removal of the Infringing Videos (including Infringing Video 2 which remains live), and requiring YouTube and any third-party platforms with notice to disable access to and prevent re-upload or further dissemination of the Infringing Videos;

E.    That the Court award Plaintiff costs and attorneys' fees as permitted by law;

F.    Any other relief the Court deems just and proper.


Dated:  February __, 2026

/s/_____
Randall S. Newman, Esq. (SBN 190547)
99 Wall Street, Suite 3727
New York, NY 10005
(212) 797-3735
rsn@randallnewman.net

*Attorney for Plaintiff,*
*Christopher J. Cordova*



1  RANDALL S. NEWMAN (SBN 190547)
2  Attorney at Law
   99 Wall St., Suite 3727
3  New York, NY 10005
4  212.797.3735
5  rsn@randallnewman.net
6  *Attorney for Plaintiff,*
   *Christopher J. Cordova*
7

8

9          UNITED STATES DISTRICT COURT

10        NORTHERN DISTRICT OF CALIFORNIA

11

12  CHRISTOPHER J. CORDOVA,          Case No. 25-cv-04685-VKD

13         Plaintiff,                ~~FIRST~~[PROPOSED] SECOND
14                                   AMENDED COMPLAINT
                                     FOR:
    vs.
15
16  JONATHAN HUDON-HUNEAULT,         1. **Copyright Infringement, 17 U.S.C.**
17  NNEKA OHIRI and 14693663 CANADA     **§§ 101 *et seq.*;**
    INC.,
18                                   2. **Misrepresentation, 17 U.S.C. §**
19         Defendants.                  **512(f);**

20                                   ~~3. Declaratory Relief, 28 U.S.C. § 2201~~
21                                   ~~and 17 U.S.C. § 512(g);~~

22
23                                   ~~4.~~3.**Circumvention of Technological**
24                                      **Measures, 17 U.S.C. §§ 1201, 1203**

25
26
27
28

                            1
    ~~FIRST~~[PROPOSED] SECOND **AMENDED COMPLAINT**

1

2    Plaintiff, Christopher J. Cordova ("Plaintiff"), files this ~~First~~Second Amended

3  Complaint (the "~~FAC~~SAC")[1] against Defendants Jonathan Hudon-Huneault ("Huneault"),

4  Nneka Ohiri ("Ohiri") and 14693663 Canada Inc. ("Canada Inc.") (Huneault, Ohiri and

5  Canada Inc. are collectively referred to as the "Defendants") who operate the Frauditor

6  Troll YouTube channel located at www.youtube.com/@frauditortroll (the "Frauditor Troll

7  Channel") and alleges as follows:

8                                    **INTRODUCTION**

9    1.    This case arises from Defendants' systematic theft and monetization of

10  Plaintiff's copyrighted YouTube videos and their abuse of the Digital Millennium

11  Copyright Act's ("DMCA") counter-notice process, 17 U.S.C. § 512(g), to force those

12  stolen works back online.

13    2.    Defendants built the Frauditor Troll Channel on wholesale misappropriation

14  of Plaintiff's videos and the works of other First Amendment auditors ("Auditors").

15    3.    Instead of adding transformative commentary, critique, or analysis,

16  Defendants' videos rely almost entirely on Plaintiff's original footage, often playing for

17  extended durations, interspersed with brief derisive remarks, or unoriginal on-screen

18  memes. These token alterations serve no critical or educational purpose; they exist solely

19  to ridicule the subjects and harvest advertising revenue through YouTube's Partner

20  Program.

21    4.    Defendants obtained Plaintiff's videos through unlawful circumvention of

22  YouTube's rolling-cipher technology, software designed to prevent unauthorized

23  downloading, thereby violating both YouTube's Terms of Service and the anti-

24

25  _____

[1] Plaintiff previously filed an Amended Complaint before service of process (ECF No. ~~20). Because that~~ ~~amendment was made as~~20) and a First Amended Complaint after service ~~of right under Rule 15(a)(1)~~ ~~while the original complaint~~process (ECF No. ~~1) had not yet been served, the~~39). The current pleading is ~~properly~~ styled as the ~~First~~Second Amended Complaint to reflect that it is the ~~first~~second amendment following service.

1  circumvention provisions of 17 U.S.C. § 1201(a).[2] The result was a monetized archive of
2  stolen content repackaged as so-called "fair use."

3      5.    Huneault has repeatedly bragged, both in Counter-Notices and on public
4  livestreams, that he has received over forty-eight copyright strikes and that every single
5  one has been overturned through the counter-notification process. His message is clear:
6  mass infringement pays, and the DMCA's safeguards can be gamed indefinitely through
7  form responses, delay and the prohibitive cost of federal litigation.

8      6.    Between July and October 2023, Huneault submitted at least nine Counter-
9  Notices to YouTube under § 512(g)(3), each signed under penalty of perjury, asserting that
10  the videos were protected by the non-existent "Fair Use Act of 1976" (the "Counter-
11  Notices"). Huneault also claimed to own the Frauditor Troll Channel when Google's
12  records show the AdSense account belongs to Ohiri; later, Huneault asserted that the
13  Frauditor Troll Channel was owned by Canada Inc.

14      7.    Defendants' serial misrepresentations of ownership, combined with their use
15  of a fictitious U.S. service address, demonstrate deliberate deception intended to obstruct
16  enforcement and evade liability.

17      8.    Every Counter-Notice contained the same boilerplate paragraph, copied
18  verbatim from prior counter-notices, asserting fair use without any reference to the actual
19  content, purpose, or substantiality of the copied works. This rote formula bears no
20  resemblance to a genuine fair-use analysis; it is merely a script crafted to exploit
21  YouTube's automated reinstatement system.

22      9.    Upon learning of this action, Huneault and Ohiri publicly admitted that they
23  permanently deleted more than 1,700 videos from the Frauditor Troll Channel in an effort
24  to conceal evidence and evade accountability for their mass infringement of Plaintiff's and

26  _____
27  [2] Plaintiff does not assert any independent claim under YouTube's Terms of Service. Those terms are
referenced solely to illustrate the technological and contractual framework governing user access to
28  YouTube's platform. Defendants' violations of those terms demonstrate their awareness that such conduct
was unauthorized and support the inference of willful circumvention under 17 U.S.C. § 1201(a).

3
~~FIRST~~[PROPOSED] SECOND AMENDED COMPLAINT

1    other creators' works. The scope and timing of the deletion demonstrate willful destruction
2    of relevant evidence and a deliberate attempt to obstruct discovery in this case.

3         10.     After service of the Complaint, Huneault and Ohiri appeared on YouTube to
4    mock the proceedings, publicly declaring that it was a one-in-a-billion chance Plaintiff
5    would have filed this lawsuit and boasting that they would never settle. Those statements
6    expose Defendants' mindset: profit from theft while daring Plaintiff or anyone else to stop
7    them.

8         11.     Defendants' conduct, mass theft, repeated infringement, false Counter-
9    Notices, circumvention of technological protections, and public taunting, reveals not
10    misunderstanding of fair use but malice. This pattern of willful defiance threatens not only
11    Plaintiff's rights but the integrity of the DMCA itself.

12         12.     Plaintiff therefore brings this action under the Copyright Act for: (a) direct
13    infringement of his registered works, (b) knowing and material misrepresentations in
14    Counter-Notices submitted under 17 U.S.C. § 512(g), (c) declaratory relief, and (d)
15    circumvention of technological protection measures in violation of 17 U.S.C. § 1201(a).
16    Plaintiff seeks damages, declaratory and injunctive relief, and all remedies available under
17    the Act to halt Defendants' unlawful enterprise and restore the meaning of fair use.

18                                **JURISDICTION AND VENUE**

19         13.     This action arises under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and
20    includes a claim for Declaratory Relief under 28 U.S.C. § 2201.

21         14.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and
22    1338(a), as this case involves federal questions arising under the Copyright Act and the
23    Digital Millennium Copyright Act.

24         15.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(a)
25    because a substantial part of the events giving rise to the claims occurred here and the
26    infringing content was published and distributed via YouTube, which maintains its
27    principal place of business in this District.

28

4

~~FIRST~~[PROPOSED] SECOND **AMENDED COMPLAINT**

16.    Defendants consented to jurisdiction in this District by submitting the Counter-Notices under 17 U.S.C. § 512(g)(3).

**PARTIES**

17.    Plaintiff is a resident of Colorado and the creator and operator of the YouTube channel "Denver Metro Audits" (@DenverMetroAudits) (the "DMA Channel").

18.    Plaintiff is the author and original copyright owner of the audiovisual works at issue. He retains all rights, title, and interest in the claims asserted in this action, including those arising under 17 U.S.C. §§ 512(f) and 1201. Although Plaintiff later assigned the copyrights in his broader catalog to Executive Lens LLC ("Executive Lens"), his wholly-owned company, those assignments expressly excluded and reserved to Plaintiff all accrued causes of action and claims relating to the infringements and DMCA violations alleged herein.

19.    Ohiri is an individual residing in Canada who co-owns and manages the Frauditor Troll Channel.

20.    Huneault is an individual residing in Canada who serves as the voice and narrator for videos on the Frauditor Troll Channel and co-owns and manages the Frauditor Troll Channel. Huneault and Ohiri are married.

21.    Canada Inc. is a Canadian corporation owned and controlled by Huneault and Ohiri, which acts as a co-owner or operating entity for the Frauditor Troll Channel.

22.    Upon information and belief, Ohiri, Huneault, and Canada Inc. jointly operate the Frauditor Troll Channel as a single business enterprise. They share access to the Channel's YouTube account, AdSense monetization, and related social media platforms, and each Defendant participates in the selection, editing, publication, and monetization of its videos. Defendants collectively profit from the unlawful conduct alleged herein and are therefore jointly and severally liable to Plaintiff for all resulting damages and statutory violations.

Formatted: No widow/orphan control

5

~~FIRST~~[PROPOSED] SECOND **AMENDED COMPLAINT**

**FACTUAL ALLEGATIONS**

23.    YouTube is the largest video-sharing platform in the world and operates under the framework established by the DMCA.

24.    The DMCA provides a process by which copyright owners may request the removal of infringing content through a notice-and-takedown mechanism. If the platform receives a valid takedown notice, it typically disables access to the allegedly infringing material.

25.    The statute also gives the alleged infringer a way to respond: a counter-notification claiming the use is authorized, lawful, or otherwise non-infringing. If the copyright owner does not file a federal lawsuit within 10 business days of receiving a counter-notice, YouTube must restore access to the disputed content. 17 U.S.C. § 512(g).

26.    This framework shifts the burden onto copyright owners, often small creators or publishers, to file suit quickly or see their work reposted.

27.    Defendants exploited this imbalance by filing boilerplate Counter-Notices under § 512(g) designed to intimidate Plaintiff into dropping the matter and force reinstatement -of stolen videos.

28.    This abuse allowed Defendants' Frauditor Troll Channel, to continue monetizing stolen infringing content while publicly claiming "fair use." In truth, Defendants' uploads consist almost entirely of Plaintiff's unaltered footage, supplemented by trivial mockery, recycled memes, and other non-transformative filler.

29.    In the context of this FAC, the term "Auditor" refers to Plaintiff and other independent content creators who record interactions with government officials in public spaces to promote transparency, document public conduct, and assert constitutional rights, particularly those protected by the First Amendment. These creators act as citizen journalists, watchdogs, and public advocates, often filming police encounters, public meetings, and other matters of public interest, and then editing and publishing that original

6

~~FIRST~~[PROPOSED] SECOND **AMENDED COMPLAINT**

Formatted: No widow/orphan control

Formatted: No widow/orphan control

1  footage online, most prominently on YouTube.

2    30.    The Auditor movement has become a significant presence on social media,

3  drawing millions of subscribers and billions of views, and generating substantial

4  advertising revenue. Many Auditors operate under pseudonyms but have nonetheless

5  become well-known figures within the digital civil rights community.

6    31.    Plaintiff is an Auditor, activist, and content creator who documents

7  interactions with public officials, government employees, and law enforcement officers in

8  the course of his advocacy work. He spends significant time filming, editing, and

9  publishing these encounters to the DMA Channel, where the resulting videos serve both as

10  a public record of official conduct and as a means of promoting government transparency

11  and accountability. Plaintiff's work is part of the broader Auditor movement and has

12  developed a dedicated audience focused on constitutional rights, public oversight, and civil

13  liberties.

14    32.    In response to the growing popularity of Auditors like Plaintiff, Defendants

15  created the Frauditor Troll Channel, an operation that purports to critique Auditor content

16  but in reality exists to misappropriate, ridicule, and monetize Auditors' videos. Cloaked in

17  the appearance of commentary, Defendants' videos rely on insult, mockery, and distortion

18  rather than genuine critique or transformative discussion.

19    33.    The Frauditor Troll Channel is one of the largest Auditor-focused reaction

20  channels and operates as a commercial enterprise built on satire, appropriation, and

21  systematic infringement. It offers no new message, insight, or purpose. Instead, it

22  repackages Plaintiff's original videos with intermittent ridicule to attract viewers and

23  generate advertising revenue while contributing virtually no original content of its own.

24  Although other channels have occasionally used Plaintiff's videos, none has engaged in the

25  scale, volume, or deliberate exploitation of Plaintiff's works that defines Defendants'

26  operation. This action targets that uniquely pervasive infringement, not the existence of

27  criticism or commentary itself. The Frauditor Troll channel stands alone as the principal

28  vehicle for mass theft and monetization of Plaintiff's copyrighted content.

---

7

~~FIRST~~[PROPOSED] SECOND **AMENDED COMPLAINT**

34.    The Frauditor Troll Channel has repeatedly used Plaintiff's copyrighted works without permission and without satisfying fair-use standards. Upon information and belief, between 2022 and 2025, Defendants unlawfully obtained and reproduced dozens of Plaintiff's videos, estimated between fifty and one hundred distinct works, uploading them to the Frauditor Troll Channel to derive advertising revenue and other commercial gain.[3]

35.    Upon information and belief, Defendants obtained the videos used from the DMA Channel by circumventing YouTube's technological protection measures, including its "rolling cipher" system, which encrypts and dynamically alters the video stream's URL signatures to prevent unauthorized downloads. YouTube's player software uses a decryption routine embedded in JavaScript code to authenticate requests and deliver content only through approved interfaces.

36.    Upon information and belief, Defendants used software applications, ripping utilities, or browser extensions specifically designed to bypass that rolling cipher and other technological measures controlling access to the audiovisual works hosted on YouTube. These tools retrieve and decrypt the obfuscated streaming URLs, enabling Defendants to make local copies of Plaintiff's videos in violation of YouTube's Terms of Service and 17 U.S.C. § 1201(a).

37.    The rolling cipher is a "technological protection measure" ("TPM") as defined in 17 U.S.C. § 1201(a)(3) because it controls access to Plaintiff's copyrighted works by requiring authorized software to decrypt and stream them in real time. By using programs that strip away this cipher, Defendants intentionally circumvented a technological measure and knowingly obtained unauthorized copies of Plaintiff's copyrighted works.

38.    Defendants' circumvention was not incidental but systematic. The Frauditor Troll Channel's production speed, volume, quality, and uniform editing style demonstrate

---

[3] Plaintiff estimates the number of stolen and infringed works based on the number of videos Plaintiff published and Defendants' pattern of serial theft and infringement of nearly every video Plaintiff posted prior to Defendants' deletion and purported destruction of more than 1,700 videos and all related metadata shortly after learning of this lawsuit. The precise number of stolen and infringed works cannot presently be determined due to Defendants' unilateral destruction of that evidence.

~~FIRST~~[PROPOSED] SECOND **AMENDED COMPLAINT**

Formatted: Add space between paragraphs of the same style, No widow/orphan control

Formatted: No widow/orphan control

1  the routine use of decryption software as part of a deliberate business model to acquire,

2  republish, and monetize Plaintiff's copyrighted videos, in violation of YouTube's Terms

3  of Service and 17 U.S.C. § 1201(a).

4      39.    When publicly discussing Plaintiff's 17 U.S.C. § 1201(a) claim against

5  Defendants, Huneault did not deny the use of circumvention tools; instead, he suggested

6  that he had another "defense," reinforcing the inference that Defendants used such software

7  to unlawfully obtain Plaintiff's videos.

8      40.    Federal courts have recognized that YouTube's rolling cipher constitutes a

9  technological protection measure within the meaning of 17 U.S.C. § 1201(a)(3) and that it

10 "effectively controls access" to copyrighted works because it prevents users from

11 downloading video streams without first executing YouTube's proprietary decryption

12 code.

13                 ***Plaintiff's Copyrighted Works***

14     41.    On or about March 16, 2022, Plaintiff published a video titled *ANOTHER

15 CHAD EXPOSED!!! Worthless Denver Cops…ASSAULTED!!!* ("*Another Chad*"), to the

16 DMA Channel.[4]

17     42.    Plaintiff registered *Another Chad* with the U.S. Copyright Office under

18 Registration Number PA002457989 on February 6, 2024.

19     43.    On or about October 1, 2023, Plaintiff published a video titled *ANGRY MOB

20 AT BELMAR LIBRARY!!! "CALL 911!" Cops don't show up* to the DMA Channel

21 ("*Belmar Library*").[5]

22     44.    Plaintiff registered *Belmar Library* with the U.S. Copyright Office under

23 Registration Number PA0002549333 on June 3, 2025.

24

25

26

27

28

---

[4] https://youtu.be/bhgHsPl4Mr0?si=F-7EgMg0bBZiy-QY.
[5] https://www.youtube.com/watch?v=86UKGVikxKQ&t=~~100s~~.

~~FIRST~~[PROPOSED] SECOND **AMENDED COMPLAINT**

EXHIBIT B - Redline Comparison - Page 9 of 26

1    45.    On or about February 32, 2022, Plaintiff published a video titled *FEDERAL*

2  *COURTHOUSE FAIL!!! Threatened with arrest for recording and not one officer*

3  *identifies!* ("*Courthouse Fail*") to the DMA Channel.[6]

4    45.46.Plaintiff registered *Courthouse Fail* with the U.S Copyright Office under

5  Registration Number PA0002565781 on October 15, 2025.

6                      ***Defendants' Infringing Videos***

7    46.47.On or about December 2, 2022, Defendants published a video titled *Frauditor*

8  *DMA Gets Confronted by Angry Citizen (Hilarious)* ("Infringing Video 1") to the Frauditor

9  Troll Channel.[7] Infringing Video 1 incorporates approximately twenty-five minutes and

10 fifty-four seconds of Plaintiff's video *Another Chad* without authorization.

11   47.48.Infringing Video 1 reproduces Plaintiff's footage in fifteen separate blocks

12 with no commentary, twelve of which exceed one minute, three of which exceed two

13 minutes, one exceeds three minutes, and one exceeds four minutes. This repeated use of

14 lengthy, uninterrupted segments underscores the absence of meaningful transformation or

15 interspersed analysis.

16   48.49.Plaintiff's *Another Chad* video is forty-eight minutes and fourteen seconds in

17 length, meaning Defendants reproduced more than fifty-four percent of Plaintiff's work.

18 Excluding the introductory and concluding segments, eighty-seven percent of Defendants'

19 video consists of Plaintiff's footage presented in long, unaltered blocks. The remaining

20 thirteen percent comprises brief interjections totaling less than four minutes, primarily

21 mocking Plaintiff rather than analyzing the subject matter or providing substantive

22 commentary.

23   49.50.On or about February 4, 2022, Defendants published a video titled *Frauditors*

24 *Ejected from Federal Courthouse (NEW)* ("Infringing Video 2") to the Frauditor Troll

---

26 [6] https://www.youtube.com/watch?v=coiMQm_zzFE&t=1s. Registration of the *Courthouse Fail* video is
27 currently pending before the U.S. Copyright Office. Plaintiff intends to amend this FAC to include that
registration once it is issued..

28 [7] The video was available at the URL https://www.youtube.com/watch?v=I-J8sdKZ504. The video was
removed after the filing of this action.

FIRST[PROPOSED] SECOND **AMENDED COMPLAINT**

1  Channel.[8] Infringing Video 2 incorporates approximately eighteen minutes and forty-six
2  seconds of Plaintiff's *Courthouse Fail* video without authorization.

3  ~~50.~~51. Plaintiff's *Courthouse Fail* video is thirty minutes and twenty-seven seconds
4  long, meaning Defendants misappropriated approximately sixty-two percent of Plaintiff's
5  work. Excluding the brief introduction and outro, eighty-seven percent of Defendants'
6  video consists of Plaintiff's footage, while Defendants' commentary accounts for only
7  thirteen percent, two minutes and forty-eight seconds in total. These brief interjections
8  provide no meaningful analysis or critique and do nothing to alter the expressive core of
9  Plaintiff's work, which dominates the viewing experience.

10  52.    Infringing Video 2 remains publicly available on the Frauditor Troll Channel
11  and continues to display and distribute substantial portions of Plaintiff's *Courthouse Fail*
12  video without authorization.

13  ~~51.~~53. Plaintiff did not become aware of Infringing Video 2 until June 2023.

14  ~~52.~~54. On or about October 1, 2023, Defendants published a video titled *Frauditor*
15  *DMA gets Camera Touched and CRIES A RIVER* ("Infringing Video 3") to the Frauditor
16  Troll Channel.[9] Infringing Video 3 incorporates thirty-seven minutes and sixteen seconds
17  of Plaintiff's *Belmar Library* video without authorization. (Infringing Video 1, Infringing
18  Video 2 and Infringing Video 3 are collectively referred to as the "Infringing Videos").

19  ~~53.~~55. Infringing Video 3 reproduces Plaintiff's footage in twelve separate blocks
20  with no commentary. Each block exceeds one minute; eight blocks exceed two minutes;
21  three blocks exceed four minutes; and the longest uninterrupted segment runs over six
22  minutes. This repeated use of extended, uninterrupted sequences underscores the absence
23  of meaningful transformation or interspersed analysis.

24
25
26
27  ---
[8] https://www.youtube.com/watch?v=eVe4eoOzPvc&t=~~700s~~.
28  [9] https://www.youtube.com/watch?v=rSUT6MDdfoo. The video was removed after the filing of this action.

~~FIRST~~[PROPOSED] SECOND **AMENDED COMPLAINT**

54.56.Plaintiff's *Belmar Library* video is forty-six minutes and fourteen seconds in length, meaning Defendants misappropriated approximately eighty-one percent of Plaintiff's work. Excluding the introductory and concluding segments, ninety-two percent of Defendants' video consists of Plaintiff's footage presented in long, uninterrupted blocks. The remaining eight percent consists of brief interjections totaling under three and a half minutes, primarily mocking Plaintiff rather than analyzing the subject matter or providing any meaningful commentary.

### *Defendants' Video - How to do Fair Use Properly and Avoid Copyright Strikes*

55.57.On or about May 24, 2022, the Frauditor Troll Channel (or a related channel owned by Defendants) posted a video titled *How to do Fair Use Properly and Avoid Copyright Strikes*. The video is narrated by Huneault.

56.58.In that video, Huneault claims to offer a formula for "100% safe fair use commentary videos." He instructs viewers that a "good amount of commentary is about 40 seconds to every minute so you say a little comment every minute that way you'll be safe." He also advises creators to pad videos with lengthy intros and outros and to intersperse other clips in order to "increase the proportion of time that is something else than one specific video." Finally, Huneault says that the goal is to use "less than fifty percent of a specific video" and asserts that when you're "only using 30% of someone's video, you are very unlikely to get a copyright strike."

57.59.Although Plaintiff disagrees with Huneault's oversimplistic take on fair use, as discussed above, Huneault did not even follow his own purported "fair use" formula when misappropriating Plaintiff's Videos. This inconsistency demonstrates that Huneault and Ohiri lacked a subjective good-faith belief that the Infringing Videos were protected by fair use when submitting the Counter-Notices, satisfying the knowledge and bad-faith elements of 17 U.S.C. § 512(f).

### *Plaintiff's DMCA Takedowns and Defendants' Abuse of the Counter-Notice System*

12

FIRST[PROPOSED] SECOND **AMENDED COMPLAINT**

58.60. In June and October 2023, Plaintiff submitted twelve DMCA takedown notices to YouTube identifying videos uploaded by Defendants to the Frauditor Troll Channel that infringed Plaintiff's copyrighted works.

59.61. Each Counter-Notice submitted by Defendants under penalty of perjury contained substantially identical boilerplate language, including the following:

> I am once again asking you to forward this counter notification to the plaintiff, according to the fair use act of 1976 I am legally allowed to make these types of videos. I am once again asking you to forward my counter notification to the plaintiff so I can have a chance to defend myself in a court of Law. I have a commentary channel where I provide review videos of 1st amendment auditors, I provide commentary, I add memes and sound effects to completely transform the original work into a Fair use video. On my channel I have received 48 copyright strikes and every single one of my videos have been reinstated through the counter notification system. I am willing to defend myself in a court of law. I have already hired an attorney to defend my fair use videos in court and I am asking you to forward my counter notification to the plaintiff so he can decided for himself if he chooses to go that route. I am the original creator of the Fair use videos on my channel and I know that my videos were taken down by mistake because they fall under the Fair use act. Please forward my counter notification so I can defend myself in a court of Law. Thank you, Jonathan Huneault

60.62. The results were mixed. Defendants accepted two strikes without filing counter-notices, YouTube declined to remove one video, and Defendants filed the nine Counter-Notices under §512(g)(3) seeking reinstatement of the remaining works.[10]

61.63. Each of the Counter-Notices contained substantially identical boilerplate language and multiple false statements, including that the uploads were protected by "fair

---

[10] Defendants filed eight counter-notices on or about July 5, 2023 and one counter-notice on or about October 20, 2023.

FIRST [PROPOSED] SECOND **AMENDED COMPLAINT**

use," that Huneault was "the original creator of the Fair Use videos on my channel," and that Defendants had retained legal counsel prepared to litigate the matter. These statements were materially false. Upon information and belief, Defendants made inconsistent and misleading representations about the ownership and monetization of the Frauditor Troll Channel, at times claiming it was owned by Huneault personally, at other times by Ohiri, and elsewhere by their Canadian corporation. Regardless of the claimed ownership, no counsel had been retained, and the Counter-Notices were knowingly false when submitted.

62.64. Defendants further misrepresented their location by providing "99 Wall Street, New York, NY" without a suite number, as their service address in each Counter-Notice. In reality, Defendants are residents of Canada. This fictitious U.S. address obstructed Plaintiff's ability to effect service of process and constitutes an additional knowing misrepresentation to support the inference that Defendants' Counter-Notices were not filed in good faith.

63.65. Defendants recently publicly admitted that they knew suite number 5892 was assigned to their bogus 99 Wall Street address, further demonstrating that the omission of the suite number was intentional and that the Counter-Notices were filed in bad faith.

64.66. Relying on Huneault's misrepresentations regarding fair use, YouTube reinstated nine videos, resulting in financial benefit to all Defendants. After Plaintiff commenced this action on June 3, 2025, Defendants deleted nine of the ten videos,[11] including eight of the nine that had been reinstated by the Counter-Notices. One infringing video remains live on the Frauditor Troll Channel as of the filing of this FAC.

65.67. Defendants' repeated use of false claims of fair use, a sham address, and fabricated assertions of ownership and legal representation demonstrate that the Counter-Notices were not merely mistaken but knowingly false and submitted in bad faith.

66.68. On July 5, 2023, the same day Defendants submitted eight Counter-Notices under 17 U.S.C. § 512(g), Huneault emailed Plaintiff, stating: "If I counter every strike and

---

[11] As alleged above, YouTube refused to remove one of the ten videos.

they all get reinstated eventually it could penalize your channel. I'm going to keep making fair use videos, I'm legally allowed to do so."

67.69. That evening, Huneault emailed again, identifying himself as "Josh," claiming he had "talked to a lawyer," demanding $9,000, and asserting: "You already know the videos will be reinstated in 3 weeks through the counter notification system."

68.70. These contemporaneous emails confirm Defendants used the counter-notice mechanism as a tactic to force automatic reinstatement, not to correct any mistake or misidentification, and that Huneault deployed a false identity while doing so.

69.71. On July 6, 2023, Huneault posted a video titled *DMA disabled Frauditor Troll for 3 Weeks, Big Mistake*, describing the counter-notice process and his expectation of reinstatement. He stated, among other things: "Obviously all the counter notifications are sent… I already filed the counter notifications… [Plaintiff] has 10 days to reply… then it gets reinstated… I beat 35 copyright strikes."

70.72. That video also directly contradicted the July 2023 Counter-Notices, which stated: "I have already hired an attorney to defend my fair use videos in court." In the July 6 video, Huneault admitted he had not retained counsel, saying: "A paralegal can take care of that. I don't need to hire an expensive lawyer… I'm not a lawyer… I'm going to talk to a paralegal tomorrow."

71.73. These contemporaneous statements constitute admissions of state of mind: Defendants viewed counter-notices as an automatic reinstatement mechanism and had not retained counsel despite swearing otherwise. They corroborate that Defendants' Counter-Notices were knowingly false and submitted in bad faith to force reinstatement, continue monetization, and intimidate Plaintiff into abandoning the infringement claims against them.

### *The Market for Plaintiff and other Auditors' Footage*

72.74. Defendants' dozens of stolen and uploaded videos serve as market substitutes for Plaintiff's original footage. For example, a legitimate commentary channel, Really Cool

15

Formatted: No widow/orphan control

Formatted: Centered

News[12], discusses Auditors' videos and conduct without reproducing a single frame of their copyrighted footage. Its view counts are a fraction of those on the Frauditor Troll Channel. This disparity demonstrates that audience demand for Defendants' content is driven not by any transformative commentary, but by the unauthorized display of Plaintiff's original works. Defendants' reproductions therefore serve as market substitutes for the originals, directly diminishing the market for authorized distribution and derivative works.

73.75. Upon information and belief, the Frauditor Troll Channel unlawfully obtained and infringed between fifty and one hundred of Plaintiff's copyrighted works. A serial misappropriation of Plaintiff's works on that scale functions as a market substitute: a YouTube viewer can watch virtually all of Plaintiff's copyrighted material on the Frauditor Troll Channel instead of on Plaintiff's own channel.

74.76. Indeed, many of Defendants' followers have publicly admitted that they watch Plaintiff's copyrighted footage on Defendants' channel instead of viewing the originals, often bragging that doing so "deprives the auditors of views and revenue." These admissions confirm that Defendants' uploads displace legitimate consumption of Plaintiff's content and usurp the economic incentive underlying copyright protection.

75.77. Plaintiff, through Executive Lens, is in the process of developing a licensing program under which authorized YouTube channels may license and monetize Plaintiff's footage in exchange for royalties. Plaintiff has already engaged in discussions with multiple channels regarding such licensing. However, Defendants' ongoing theft, monetization, and public rationalization of infringement have undermined this effort by fostering a belief among anti-Auditor content creators that Plaintiff's videos are free for the taking under the guise of "fair use." Until Defendants are held accountable, Plaintiff's ability to establish a lawful licensing market remains severely impaired.

76.78. Defendants' wholesale reproduction and monetization of Plaintiff's videos directly substitute for the originals, divert traffic, and poison the emerging licensing market

_____

[12] www.youtube.com/@ReallyCoolNews

16

FIRST[PROPOSED] SECOND **AMENDED COMPLAINT**

Formatted: No widow/orphan control

for Plaintiff's footage. By saturating YouTube with unauthorized copies of Plaintiff's works, Defendants have not merely harmed the potential market-they have sought to destroy it, ensuring that theft and infringement, not creativity, determine who profits from Plaintiff's works.

### *Defendants' Conduct After this Action was Initiated*

Formatted: Centered

77.79. Plaintiff commenced this action on June 3, 2025.

78.80. Defendants were informed of this action via email on June 6, 2025.

79.81. On the same day that Defendants received notice of this action, they began a campaign to mass-delete evidence in an effort to conceal their wrongdoing and avoid accountability.

80.82. In total, Defendants deleted more than 1,700 videos from the Frauditor Troll Channel which amounted to nearly ninety percent of the channel's video library.

81.83. After Huneault and Ohiri were formally served in this action, they publicly admitted that the 1,700 videos were not just merely removed from YouTube but were permanently destroyed because they were concerned about being held accountable for their mass infringement scheme.

82.84. Huneault also publicly admitted that he knew Plaintiff was "broke" meaning that he believed Plaintiff could not afford an attorney to pursue federal litigation, and that it was a one-in-a-billion chance that Plaintiff would find counsel willing to hold Defendants liable for their blatant copyright infringement scheme given the relatively modest monetary damages.

83.85. Huneault admitted that he paid Patrick J. D'Arcy, Esq. $2,800 before D'Arcy filed an amicus brief in this matter, even though D'Arcy falsely represented to the Court that he had not been compensated. The amicus filing was a bad-faith effort to inflate Plaintiff's litigation costs and discourage Plaintiff and his counsel from pursuing legitimate

FIRST[PROPOSED] SECOND **AMENDED COMPLAINT**

1    claims against Defendants. This conduct further demonstrates Defendants' bad faith

2    regarding the theft and monetization of Plaintiff's videos on the Frauditor Troll Channel.

3        84.86.Lastly, Huneault publicly admitted that the Frauditor Troll Channel was a

4    satire channel, further confirming Plaintiff's allegation that the Infringing Videos are not

5    fair use.

6

7

8                            **FIRST CAUSE OF ACTION**

9                              **Copyright Infringement**

10                               **(17 U.S.C. § 501)**

11        ***(Infringement of Another Chad and, Belmar Library and Courthouse Fail)***

12        85.87.Plaintiff incorporates by reference the allegations set forth in Paragraphs 1

13    through 8486.

14        86.88.Plaintiff is the creator and original author of the copyrighted audiovisual

15    works titled *Another Chad* (U.S. Copyright Reg. No. PA0002457989) and *Belmar Library*

16    (U.S. Copyright Reg. No. PA0002549333) and *Courthouse Fail* (U.S. Copyright Reg. No.

17    PA0002565781).

18        87.89.Cordova subsequently assigned to Executive Lens LLC all rights, title, and

19    interest in and to *Another Chad and, Belmar Library and Courthouse Fail*, including the

20    exclusive rights under 17 U.S.C. § 106, while expressly reserving and retaining all causes

21    of action and claims for infringement, violations of 17 U.S.C. § 512(f), and circumvention

22    under 17 U.S.C. § 1201 arising prior to the effective date of the assignment.

23        88.90.Accordingly, Executive Lens is the current owner of the copyrights, and

24    Plaintiff retains standing to pursue the pre-assignment infringement and DMCA-related

25    claims asserted herein.

26        89.91.Defendants copied, displayed, and distributed substantial portions of *Another*

27    *Chad and, Belmar Library and Courthouse Fail* without authorization, including through

28    the publication of twothree infringing videos on YouTube ("Infringing Video 1" and

                                          18

"Infringing Video 3")., Infringing Video 1 incorporated approximately 56% of *Another Chad* (Infringing Video 1 is approximately 87% of Plaintiff's *Another Chad* footage excluding intro and outro material), Infringing Video 2 incorporated approximately 62% of *Courthouse Fail* (Infringing Video 2 is approximately 87% of Plaintiff's *Courthouse Fail* footage excluding intro and outro material), and Infringing Video 3 incorporated approximately 81% of *Belmar Library* (Infringing Video 3 is approximately 92% of Plaintiff's *Belmar Library* footage excluding intro and outro material).

90.92. Defendants' use of *Another Chad* and, *Belmar Library* and *Courthouse Fail* was for commercial purposes, including monetization through advertisements and the promotion of merchandise and channel memberships.

91.93. Defendants' use was not transformative and does not qualify as fair use under 17 U.S.C. § 107. As alleged herein, Defendants' reproductions served as market substitutes for Plaintiff's original works, diverting viewership and advertising revenue from the DMA Channel.

92.94. As a direct and proximate result of Defendants' infringement, Plaintiff has suffered actual damages including lost viewership, lost advertising revenue, and diminution of the market and licensing value of *Another Chad* and, *Belmar Library* and *Courthouse Fail*.

93.95. Pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to recover actual damages and any profits of Defendants attributable to the infringement.

96.    Defendants' infringement is ongoing, including because Infringing Video 2 remains live and continues to exploit Plaintiff's Courthouse Fail video. Plaintiff is entitled to injunctive relief under 17 U.S.C. §§ 502 and 503 requiring removal of infringing material and preventing further infringement.

**SECOND CAUSE OF ACTION**

**Misrepresentation in Counter-Notifications under the DMCA**

**(17 U.S.C. § 512(f))**

19

FIRST[PROPOSED] SECOND AMENDED COMPLAINT

94.97. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 9396.

95.98. Section 512(f)(2) of the Copyright Act provides, in relevant part, that "any person who knowingly materially misrepresents under this section . . . that material was removed or disabled by mistake or misidentification, shall be liable for any damages, including costs and attorneys' fees, incurred by…any copyright owner…who is injured by such misrepresentation."

96.99. In the Counter-Notices submitted to YouTube under penalty of perjury, Defendants represented, among other things, that: (a) the removals were the result of "mistake or misidentification" and the Infringing Videos were protected by "fair use," citing a nonexistent "fair use act of 1976"; (b) Huneault owned the Frauditor Troll Channel and the videos at issue; (c) Defendants had already hired an attorney and were prepared to litigate; and (d) Defendants could be served at 99 Wall Street, New York, New York.

97.100.    Those statements were false, and, critically, were made without a good-faith belief at the time of each Counter-Notice that the videos were not infringing or the removals were by mistake or misidentification. As alleged above, the Infringing Videos reproduce the bulk of Plaintiff's works in long, uninterrupted blocks with only token, non-transformative interjections. Moreover, in or about May 2022, Defendants published a video titled *How to Do Fair Use Properly and Avoid Copyright Strikes,* in which Huneault instructed viewers to (a) insert commentary at least every 40 seconds, (b) limit use to less than 50% of another's work, and (c) pad videos with intros/outros to dilute the proportion of infringing content. Defendants' own infringing videos ignored each of those purported safeguards. This objective contradiction between Huneault's professed "fair use formula" and his conduct demonstrates that he knew the videos were not fair use and nonetheless represented otherwise under penalty of perjury in the Counter-Notices.[13] On July 5–6,

---

[13] Plaintiff does not concede that Huneault's statements regarding fair use are correct-they are reproduced solely to demonstrate that Huneault understood the principles he articulated and that his representations in the Counter-Notices were knowingly false.

20

2023, Huneault further admitted that he filed counter-notices to "penalize" Plaintiff's channel, expected automatic reinstatement within three weeks, and had not retained counsel. YouTube relied on these misrepresentations to reinstate the removed videos, causing Plaintiff to incur litigation costs and other damages that would not have occurred but for Defendants' fraudulent Counter-Notices. These contemporaneous admissions show the Counter-Notices were tactical rather than truthful.

98.101.    After being served, Huneault and Ohiri publicly admitted in a YouTube video that there was a one-in-a-billion chance Plaintiff would actually hold Defendants accountable for copyright infringement because they knew Plaintiff lacked the financial resources to pursue federal litigation.

99.102.    Huneault misrepresented facts essential to the statutory process under §512(g)(3) which further demonstrates Defendants' pattern of knowingly false statements.

100.103.    The "already hired an attorney" assertion was false. As alleged above, the day after submitting the July 2023 Counter-Notices Huneault publicly admitted he had not hired a lawyer and would "talk to a paralegal" instead. Huneault made that statement merely to mislead Plaintiff into believing that an attorney determined that Defendants' dozens of infringing videos were fair use.

101.104.    After being notified of this lawsuit, Defendants took no steps to appear or defend; instead, they engaged in evasive tactics, refusing to accept service of process and permanently destroying over 1,700 videos. These facts underscore that Defendants' Counter-Notices were not only legally baseless but knowingly false.

102.105.    Defendants publicly admitted that they destroyed the 1,700 videos to avoid being held accountable for the massive copyright infringement claims Plaintiff and others could have brought.

103.106.    The New York service address was false and materially misleading. As alleged above, Defendants are residents of Canada; listing "99 Wall Street, New York, NY" impeded service and misrepresented their true location. Defendants knowingly

21

FIRST [PROPOSED] SECOND AMENDED COMPLAINT

EXHIBIT B - Redline Comparison - Page 21 of 26

1  omitted suite number 5892 from the Counter-Notices to evade service and increase

2  Plaintiff's litigation costs.

3      104.107.    Defendants' conduct epitomizes the systemic abuse Congress sought to

4  prevent in § 512(f). Having publicly instructed others on the requirements of fair use,

5  Huneault later admitted that Defendants simply file counter-notices without regard to the

6  law because they believe no one will enforce it. This is not a mistake or misidentification,

7  it is a deliberate exploitation of a flawed process, undertaken with knowledge that false

8  assertions of lawful use would go unchallenged unless Plaintiff shouldered the cost of

9  federal litigation Defendants believed he could not afford.

10     105.108.    As a direct result of Defendants' material misrepresentations regarding

11 fair use, Plaintiff was forced to initiate this action to have the Infringing Videos removed

12 from the Frauditor Troll Channel, and to prevent their re-upload. Plaintiff is entitled to

13 recover damages, costs, and attorneys' fees under 17 U.S.C. § 512(f).

14     106.109.    Plaintiff is further entitled to injunctive relief requiring YouTube or its

15 agents to remove the Infringing Videos from the Frauditor Troll Channel and to prevent

16 their re-upload.

### THIRD CAUSE OF ACTION
#### Declaratory Relief
#### (28 U.S.C. § 2201 and 17 U.S.C. § 512(g))
#### (*Courthouse Fail*)

21     107.   Plaintiff incorporates by reference the allegations set forth in Paragraphs 1

22 through 106.

23     108.   On or about February 4, 2022, Defendants published Infringing Video 2 to the

24 Frauditor Troll Channel.[14] Infringing Video 2 incorporates approximately eighteen minutes

25 and forty-six seconds of Plaintiff's *Courthouse Fail* video without authorization.

---

[14] https://www.youtube.com/watch?v=eVe4eoOzPvc&t=700s.

22

FIRST[PROPOSED] SECOND **AMENDED COMPLAINT**

109.  Plaintiff's *Courthouse Fail* video is thirty minutes and twenty-seven seconds long, meaning Defendants misappropriated approximately sixty-two percent of Plaintiff's work. Excluding the brief introduction and outro, eighty-seven percent of Defendants' video consists of Plaintiff's footage, while Defendants' commentary accounts for only thirteen percent, two minutes and forty-eight seconds in total. These brief interjections provide no meaningful analysis or critique and do nothing to alter the expressive core of Plaintiff's work, which dominates the viewing experience.

110.  An actual and justiciable controversy exists concerning Defendants' use of Plaintiff's *Courthouse Fail* video as that video remains live on the Frauditor Troll Channel and was subject to a DMCA Takedown and Counter Notice under 17 U.S.C. § 512(g)(3), each claiming that the removed material was lawful and protected by fair use.

111.  YouTube reinstated Infringing Video 2 following a Counter Notice submitted by Defendants under § 512(g)(3), creating an actual, live controversy as to whether the continued display of Infringing Video 2 is lawful.

112.  Plaintiff seeks a judicial declaration that Defendants' use of *Courthouse Fail* does not qualify as fair use under 17 U.S.C. § 107 and an injunction requiring YouTube to remove the video from its platform and prevent its re-upload.

### FOURTH CAUSE OF ACTION

**Unlawful Circumvention of Technological Measures**

**(17 U.S.C. §§ 1201, 1203)**

113.110.  Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 112109.

114.111.  Plaintiff is the author of the original audiovisual works published on his YouTube channels.

115.112.  Plaintiff owns all rights, title, and interest in and to the claims asserted in this action, including all claims for violations of 17 U.S.C. § 1201.

116.113.  Each of Plaintiff's works was uploaded to YouTube through the platform's standard publishing system. When published, YouTube automatically applied

1    TPMs that control access to and prevent unauthorized copying or downloading of
2    Plaintiff's audiovisual files, consistent with 17 U.S.C. § 1201.

3    ~~117.~~114.    Upon information and belief, Defendants intentionally circumvented
4    these TPMs by employing software tools commonly known as "rippers" or "downloaders"
5    to download native-quality copies of Plaintiff's YouTube videos.

6    ~~118.~~115.    Upon information and belief, Defendants unlawfully obtained between
7    fifty and one hundred of Plaintiff's videos using these tools, often on the same day that the
8    videos were posted to Plaintiff's YouTube channels so that Defendants could post the
9    unlawfully obtained videos on the Frauditor Troll Channel.

10   ~~119.~~116.    Defendants used those unlawfully obtained copies to create monetized
11   videos for the Frauditor Troll Channel, reproducing extensive, unaltered portions of
12   Plaintiff's works without license or authorization.

13   ~~120.~~117.    By using circumvention software and disabling or bypassing
14   YouTube's copy-protection systems, Defendants violated 17 U.S.C. § 1201(a), which
15   prohibits the circumvention of a technological measure that effectively controls access to
16   a copyrighted work.

17   ~~121.~~118.    Defendants' conduct was willful, knowing, and undertaken for
18   commercial advantage, including the generation of advertising revenue through YouTube's
19   AdSense program.

20   ~~122.~~119.    As a direct and proximate result of Defendants' circumvention, Plaintiff
21   has suffered actual damages, including loss of control over his copyrighted works,
22   impairment of market value, and costs incurred to identify, remove, and prevent further
23   distribution of infringing content.

24   ~~123.~~120.    Plaintiff is entitled to recover actual or statutory damages under 17
25   U.S.C. § 1203(c), together with attorney's fees and costs, and to obtain injunctive relief
26   restraining Defendants from further circumvention or trafficking in circumvention
27   technology.

28                        **PRAYER FOR RELIEF**

~~FIRST~~[PROPOSED] SECOND **AMENDED COMPLAINT**

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

A.    That judgment be entered in favor of Plaintiff and against Defendants for monetary damages caused by their infringement of Plaintiff's *Another Chad* ~~and~~, *Belmar Library* and *Courthouse Fail* copyrights;

B.    That judgment be entered in favor of Plaintiff and against Defendants for monetary damages caused by their knowing material misrepresentations in the Counter-Notices pursuant to 17 U.S.C. § 512(f);

~~C.    That the Court enter a declaratory judgment that Defendants' use of *Courthouse Fail* is not protected by 17 U.S.C. § 107;~~

~~D.~~C.    That judgment be entered in favor of Plaintiff and against Defendants for their unlawful circumvention of technological protection measures in violation of 17 U.S.C. § 1201(a), including statutory damages of $2,500 per act of circumvention, actual damages, attorneys' fees, and a permanent injunction prohibiting further circumvention or distribution of works obtained through circumvention;

~~E.~~D.    That the Court enter a permanent injunction enjoining Defendants from further ~~use~~infringement of *Another Chad, Courthouse Fail* and *Belmar Library*, requiring removal of the Infringing Videos (including Infringing Video 2 which remains live), and requiring YouTube and any third-party platforms with notice to ~~remove the Infringing Videos~~disable access to and prevent re-upload or further dissemination of the Infringing Videos;

~~F.~~E.    That the Court award Plaintiff costs and attorneys' fees ~~pursuant to 17 U.S.C. § 512(f);~~as permitted by law;

~~G.~~F.    Any other relief the Court deems just and proper.

25

~~FIRST~~[PROPOSED] SECOND **AMENDED COMPLAINT**

EXHIBIT B - Redline Comparison - Page 25 of 26

Dated: ~~November 3, 2025~~February ___, 2026

/s/ ~~Randall S. Newman~~

Randall S. Newman, Esq. (SBN 190547)
99 Wall Street, Suite 3727
New York, NY 10005
(212) 797-3735
rsn@randallnewman.net

*Attorney for Plaintiff,*
*Christopher J. Cordova*

26

~~FIRST~~[PROPOSED] SECOND **AMENDED COMPLAINT**

EXHIBIT B - Redline Comparison - Page 26 of 26