Simon Lin – State Bar No. 313661
4388 Still Creek Drive, Suite 237
Burnaby, British Columbia, Canada V5C 6C6
T : 604-620-2666
F : 778-805-9830
E : simonlin@evolinklaw.com

*Attorney for Defendants Jonathan Hudon-Huneault,*
*Nneka Ohiri, and 14693663 Canada Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER J. CORDOVA,

        Plaintiff,

  vs.

JONATHAN HUDON-HUNEAULT,
NNEKA OHIRI, 14693663 CANADA INC.,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case Number: 5:25-cv-04685-VKD

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM (DKT. NO: 64)**

**Judge:** Magistrate Judge Virginia K. Demarchi
**Complaint Filed**: June 3, 2025
**Trial Date**: February 1-2, 2027 (Bench Trial)

**Hearing on Motion**: March 3, 2026 (vacated on February 6, 2026 and motion will be decided on the papers – Dkt. No. 77).

# Table of Contents

**TABLE OF AUTHORITIES** ...................................................................................... iii

**I.    INTRODUCTION** ......................................................................................... 1

**II.    RELEVANT FACTS FOR MOTION TO DISMISS COUNTERCLAIM** .................. 1

   *i.    The Parties Operate Separate and Independent YouTube Channels* ............................. 1

   *ii.    Plaintiff's Three YouTube Videos and Twelve (12) DMCA Takedown Notices* ............. 1

   *iii.    Plaintiff has Granted an Express License to All YouTube Users* ................................... 2

   *iv.    The Additional Implied License that Plaintiff Granted to the Defendants* ...................... 3

**III.    LEGAL STANDARD FOR RULE 12(B)(6) – MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** ............................................................................ 4

**IV.    COUNT 1: MISREPRESENTATION UNDER SECTION 512(F)** ........................... 4

   *i.    Requisite Elements of a Section 512(f) Claim* ................................................................ 4

   *ii.    Requisite Level of "Knowledge" under Section 512(f)* .................................................. 5

   *iii.    Plaintiff Knowingly Made a Material Misrepresentation in Three (3) Manners* ............ 6

   *iv.    YouTube Relied on the Plaintiff's Misrepresentations to Remove Videos* ....................... 8

   *v.    Plaintiff has Pleaded that they Suffered Injury* .............................................................. 8

   *vi.    Conclusion on Count #1 – Section 512(f) Misrepresentation* ........................................ 8

**V.    COUNT #2 – DECLARATORY RELIEF** ........................................................... 9

   *i.    The Relevant Videos are Known to the Plaintiff* ............................................................. 9

   *ii.    Failure to Plead an Implied Nonexclusive License under California Law* ...................... 9

   *iii.    Failure to Plead an Express Oral License under California Law* ................................... 9

   *iv.    Defendants' Conduct was Consistent with YouTube's Guidance* ................................... 10

**VI.    CONCLUSION** ........................................................................................... 11

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM (DKT. NO: 64); Case Number: 5:25-cv-04685-VKD

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................4

*Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011 (N.D. Cal. 2015)................................5, 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................4

*Crispin v. Christian Audigier, Inc.*, 839 F. Supp. 2d 1086 (C.D. Cal. 2011)....................10

*Effects Assocs. v. Cohen*, 908 F.2d 555 (9th Cir. 1990)................................................10

*Fahmy v. Jay-Z*, No. 2:07–cv–05715–CAS(PJWx), 2015 WL 3407908 (C.D. Cal. May 27, 2015) ..................................................................................................10

*Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821 (9th Cir. 2001)...........................9, 10

*Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34 (S.D.N.Y. 2017) .........................................5

*I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996)......................................................10

*Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016)......................................4, 8

*Michaels v. Internet Entertainment Group, Inc.* (C.D.Cal.1998) 5 F.Supp.2d 823 ............10

*Moonbug Entertainment Limited v. BabyBus (Fujian) Network Technology Co., Ltd.*, No. 21-cv-06536-EMC, 2024 WL 2193323 (N.D. Cal. May 15, 2024) .......................5

*Neveu v. City of Fresno*, 392 F. Supp. 2d 1159 (E.D. Cal. 2005) ...................................4

*Online Policy Grp. v. Diebold, Inc.*, 337 F.Supp.2d 1195 (N.D.Cal.2004) .....................5, 8

*Richardson v. Townsquare Media, Inc.*, No. 24 Civ. 4217 (AKH), 2025 WL 89191 (S.D.N.Y. Jan 14, 2025). .....................................................................................7, 9

*Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000 (9th Cir. 2004)..........................5

*Van Buskirk v. CNN, Inc.*, 284 F.3d 977 (9th Cir. 2002) ..............................................4

*Weinberg v. Dirty World, LLC*, No: CV 16-9179-GW(PJWx), 2017 WL 5665022 (C.D. Cal. Apr. 24, 2017) .....................................................................................6, 7

*Zero Motorcycles, Inc. v. Zero Labs Grp., LLC*, No. 22-CV-04034-SVK, 2023 WL 3237505 (N.D. Cal. May 3, 2023)..........................................................................4

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM (DKT. NO: 64); Case Number: 5:25-cv-04685-VKD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**<u>Statutes</u>**

17 U.S. Code § 512(c)(3)(A)(v) ........................................................................................2, 8

Rule 12(b)(6) ...............................................................................................................4

DEFENDANTS'   OPPOSITION   TO   PLAINTIFF'S   MOTION   TO   DISMISS
COUNTERCLAIM (DKT. NO: 64); Case Number: 5:25-cv-04685-VKD

1

## I.  **INTRODUCTION**

2

Jonathan Hudon-Huneault, Nneka Ohiri, and 14693663 Canada Inc. (the
"**Defendant(s)**") present this opposition taking into account this Court's Order Granting in
Part and Denying in Part the Defendants' Motion to Dismiss ("**Order on Defendants' Motion
to Dismiss**"), a motion bearing similarity to the Plaintiff's Motion to Dismiss Counterclaim.
Plaintiff's Motion to Dismiss Counterclaim was filed on the same day as, but before, the Order
on Defendants' Motion to Dismiss was rendered. The Plaintiff's Motion should be DENIED.
The Counterclaim clearly meets the requisite standard and there is no basis for dismissal.

## II.  **RELEVANT FACTS FOR MOTION TO DISMISS COUNTERCLAIM**

*i.    The Parties Operate Separate and Independent YouTube Channels*

Plaintiff pleaded that he owns, operates, and creates content for a YouTube channel called
"Denver Metro Audits." (Dkt. No. 58 ¶ 5, Dkt. No. 39 ¶ 17, and Order on Defendants' Motion
to Dismiss at p. 2). The Defendants also own and operate a YouTube channel titled "Frauditor
Troll." (Dkt. No. 58 ¶ 4, Dkt. No. 39 ¶ 19-20, and Order on Defendants' Motion to Dismiss at
p. 2). Defendants collectively own and/or operate the Frauditor Troll Channel. (Dkt. No. 58 ¶
4, Dkt. No. 39 ¶ 21, and Order on Defendants' Motion to Dismiss at p. 2).

*ii.    Plaintiff's Three YouTube Videos and Twelve (12) DMCA Takedown Notices*

Plaintiff published three (3) videos on YouTube on various dates:

1)  "*Federal Courthouse Fail!!! Threatened with arrest for recording and not
one officer identifies!*" ("**Courthouse Fail**") was published on February 3,
2022, but Plaintiff has no copyright registration so far. Dkt. No. 39 ¶ 45 n.6

2)  "*Another Chad Exposed!!! Worthless Denver Cops . . . Assaulted!!!*"
("**Another Chad**") was published on March 16, 2022, with copyright
registration obtained on February 6, 2024. Dkt. No. 39 ¶ 41-42.

3)  "*Angry Mob at Belmar Library!!! "Call 911! Cops don't show up"* ("**Belmar
Library**") was published on October 1, 2023, with copyright registration
obtained on February 6, 2024. Dkt. No. 39 ¶ 43-44.

1

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM
(DKT. NO: 64); Case Number: 5:25-cv-04685-VKD

1      Plaintiff submitted twelve (12) DMCA notices against several of the Defendants' videos

2    published on the Defendants' YouTube channel, alleging that the Defendants infringed the

3    copyright of the *Courthouse Fail, Another Chad,* and/or *Belmar Library* videos. Dkt. No. 39

4    ¶ 58; Dkt. No. 58 ¶ 21-22 and Exhibit D; Order on Defendants' Motion to Dismiss at p. 3.

5      The YouTube standard DMCA takedown form included a specific provision that

6    reflected  the legal requirements of 17 U.S. Code § 512(c)(3)(A)(v) to include ("*A statement*

7    *that the complaining party has a good faith belief that use of the material in the manner*

8    *complained of is not authorized by the copyright owner, its agent, or the law.*"). The YouTube

9    standard DMCA takedown form also included a warning that fair use may apply:

21                        Declaration of Simon Lin, Exhibit B

22    *iii.*     <u>*Plaintiff has Granted an Express License to All YouTube Users*</u>

23      The YouTube Terms of Service *expressly* provided that a YouTube user (such as the

24    Plaintiff) grants other YouTube users a royalty-free license to prepare derivative works, as

25    detailed below. Both the Plaintiff and Defendants are bound by the same YouTube Terms of

26    Service:

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM
(DKT. NO: 64); Case Number: 5:25-cv-04685-VKD

1

## **<u>TERMS OF SERVICE</u>**

2

***Welcome to YouTube!***
***Introduction***

3

*Thank you for using the YouTube platform and the products, services and features*

4

*we make available to you as part of the platform (collectively, the "**Service**").*
*...*

5

***Content on the Service***

6

*The content on the Service includes videos, audio (for example music and other*
*sounds), graphics, photos, text (such as comments and scripts), branding (including*

7

*trade names, trademarks, service marks, or logos), interactive features, software,*
*metrics, and other materials whether provided by you, YouTube or a third-party*

8

*(collectively, **"Content"**).*

9

*...*

10

***License to Other Users***

11

*You also grant each other user of the Service a worldwide, non-exclusive, royalty-*
*free license to access your Content through the Service, <u>and to **use** that Content</u>,*

12

*<u>**including**</u> to reproduce, distribute, **<u>prepare derivative works</u>**, display, and perform*
*it, only as enabled by a feature of the Service (**<u>such as</u>** video playback or embeds).*

13

*For clarity, this license does not grant any rights or permissions for a user to make*
*use of your Content independent of the Service.*

14

*...*

15

***Interpretation***

16

*In these terms, "include" or "<u>including</u>" means "including but not limited to," and*

17

*<u>any examples we give are for illustrative purposes</u>.*

18

[emphasis added]
Declaration of Simon Lin, Exhibit A

19

20

    *iv.*    <u>*The Additional Implied License that Plaintiff Granted to the Defendants*</u>

21

       In addition to the YouTube terms of service above, the Defendants pleaded that the

22

Defendants had granted a license, in the nature of an implied consent, for the Defendants to

23

use and/or perform the Plaintiff's videos on YouTube or build derivative works upon them,

24

including the *Courthouse Fail, Another Chad,* and/or *Belmar Library* videos. Dkt. No. 58 ¶

25

10-17.

26

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM
(DKT. NO: 64); Case Number: 5:25-cv-04685-VKD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### III.     LEGAL STANDARD FOR RULE 12(B)(6) – MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

The threshold for succeeding on a Rule 12(b)(6) motion to dismiss for failure to state a claim is high. Such motions are "disfavored and rarely granted." *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1168 (E.D. Cal. 2005) (citing *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)). A complaint need only contain allegations, accepted as true and construed in the light most favorable to the claimant, to "state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if the facts pled permit the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*

Finally, even if a motion to dismiss is granted, the Court "must" allow leave to amend unless it is clear that no amendment could cure pleading's deficiencies. *Zero Motorcycles, Inc. v. Zero Labs Grp., LLC*, No. 22-CV-04034-SVK, 2023 WL 3237505, at *2 (N.D. Cal. May 3, 2023).

### IV.     COUNT 1: MISREPRESENTATION UNDER SECTION 512(F)

#### i.     *Requisite Elements of a Section 512(f) Claim*

Section 512(f) contemplates liability for abuse of the notice and takedown procedures in the DMCA. 17 U.S.C. § 512(f); *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151 (9th Cir. 2016). Section 512(f)(1) applies when a copyright owner knowingly mispresents in a takedown notice that the material was infringing. See *Lenz*, 815 F.3d at 1151.

4

To state a claim for misrepresentation against a copyright owner under 17 U.S.C. § 512(f)(1), the plaintiff needs to allege facts plausibly showing (1) that the defendant knowingly and materially misrepresented that copyright infringement has occurred; (2) the internet service provider relied on the misrepresentation in removing or disabling the plaintiff's content; and (3) the plaintiff was injured as a result. See *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1026 (N.D. Cal. 2015).

ii.    *Requisite Level of "Knowledge" under Section 512(f)*

Whether a misrepresentation was made "knowingly" is assessed against a subjective standard; it requires a showing that the defendant had "*some* actual knowledge" of the misrepresentation and did not possess a good faith belief that the material was removed by mistake or misidentification. See *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004-05 (9th Cir. 2004); *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 44 (S.D.N.Y. 2017) (same subjective standard that applies to takedown notices also applies to counter-notices).

"[K]nowingly means that a party actually knew, <u>should have known</u> if it acted with reasonable care or diligence, or would have had no substantial doubt had it been acting in good faith, that it was making misrepresentations." [emphasis added] *Online Policy Grp. v. Diebold, Inc.*, 337 F.Supp.2d 1195, 1204 (N.D.Cal.2004) (citing Black's Law Dictionary (8th ed. 2004) (definitions of "knowledge," in particular, "actual" and "constructive" knowledge)); more recently in *Moonbug Entertainment Limited v. BabyBus (Fujian) Network Technology Co., Ltd.*, No. 21-cv-06536-EMC, 2024 WL 2193323 at *15 (N.D. Cal. May 15, 2024)

In *Diebold*, the court found that the defendant made a knowing misrepresentation because "[n]o reasonable copyright holder could have believed that the portions of the email archive... were protected by copyright," and because the defendant specifically intended the takedown notice to result in the prevention of publication of certain content. *Diebold, Inc.*, 337 F.Supp.2d at 1204.

Defendants recognize there may be some debate whether *Diebold* was overtaken in *Rossi*. However, Defendants submit this controversy need not be resolved at this stage, as this Court

5

had indicated the applicable standard in the Order on Defendants' Motion to Dismiss at p. 8. The Court should carefully examine the Counterclaim and determine if the Defendants have adequately alleged facts from which a reasonable inference may be drawn that the **three (3)** aspects of the plaintiff's representation(s) (detailed below) were false and made in bad faith.

Furthermore, *Weinberg v. Dirty World, LLC*, No: CV 16-9179-GW(PJWx), 2017 WL 5665022 (C.D. Cal. Apr. 24, 2017) may also be a complete answer in this instance.

### iii.    *Plaintiff Knowingly Made a Material Misrepresentation in Three (3) Manners*

The material misrepresentation relates to the first check-box under #4 of the YouTube DMCA takedown form that the person submitting the form is representing that he/she has a good faith belief that the use of the material is not authorized by the copyright owner or the law. The situation herein is analogous to *Weinberg*, at *5-6 where the court denied a motion to dismiss involving similar pleadings as those in the present case.

The Plaintiff's misrepresentation is three (3) fold, as detailed below.

Declaration of Simon Lin, Exhibit A

**Firstly**, Defendants' usage of Plaintiff's videos posted on YouTube was expressly licensed under the YouTube Terms of Service to prepare derivative works. The YouTube Terms of Service is open-ended and the copyright holder grants all other users the right to "use" the works, which includes preparation of derivative works. The Defendants' usage of the Plaintiff's videos was clearly not independent of the YouTube service – the Defendants'

6

videos are also posted on YouTube. The Defendants have pleaded in their Counterclaim that the Plaintiff *knew* that the Defendants have express authorization to use the Defendants works. Dkt. No. 58 ¶ 41-45.

Notably, the also Plaintiff knows of the YouTube Terms of Service, where the above license is explicitly referenced. Dkt. No. 39 ¶ 4, 36 and 38. No user that uploads videos to YouTube could ever, in good faith, claim that they were not granting a license to other users of YouTube to use the videos that were uploaded. If it were otherwise, every YouTube user would become a copyright infringer. (The Plaintiff also appears to know of this express license in the YouTube Terms of Service and attempts to avoid relying on those Terms of Service - Dkt. No. 39 footnote 2.)

Another district court had relied on the same license terms to dismiss a copyright infringement claim. *Richardson v. Townsquare Media, Inc.*, No. 24 Civ. 4217 (AKH), 2025 WL 89191 (S.D.N.Y. Jan 14, 2025 - appeal filed Feb. 7, 2025).

**Secondly**, Defendants' usage of Plaintiff's videos posted on YouTube was also subject to an implied license that arose from the Plaintiff's representations and/or course of conduct. Dkt. No. 58 ¶ 10-20 and Exhibits A-C. The Defendants have pleaded in their Counterclaim that the Plaintiff *knew* that the Defendants have authorization to use the Defendants works based on such implied license. Dkt. No. 58 ¶ 41-45. The Defendants also pleaded that the copyright takedown notices were merely a pretense for an attempt at revenge against the Defendants, which would not be a good faith use of the DMCA process. Dkt. No. 58 ¶ 19-21 and Exhibits C-D.

**Thirdly**, Defendants' usage of Plaintiff's videos posted on YouTube would be protected by fair use. The Defendants have pleaded that the Plaintiff knew the Defendants' videos were "mockery" and parody and not a market substitute for Plaintiff's content. Dkt. No. 58 ¶ 38-40. The Plaintiff's past interactions with the Defendants give rise to a reasonable inference that the Plaintiff could have believed that the Defendants' usage of the Plaintiff's video was fair use (Dkt. No. 58 ¶ 12-17 and Exhibits A-B; see *Weinberg*, at *6 for comparison).

7

Copyright holders must consider whether the work would be permitted under fair use when submitting their takedown notice. See *Lenz*, 815 F.3d at 1151. There is a reasonable inference that the Plaintiff failed to consider fair use. In one of the DMCA takedown notices submitted, the Plaintiff focused on approximately 6 minutes of a lengthy 41-minute video (see Dkt. No. 58-4). Implicitly, the Plaintiff acknowledged that the remaining 35 minutes or more are not infringing in any way.

### iv. *YouTube Relied on the Plaintiff's Misrepresentations to Remove Videos*

Exhibit D to the Counterclaim clearly illustrate that YouTube relied on the Plaintiff's DMCA takedown notices to disable/remove the Defendants' videos. See *Diebold*, 337 F. Supp. 2d at 1204 ("The misrepresentations were material in that they resulted in removal of the content from websites and the initiation of the present lawsuit."); *Automattic*, 82 F. Supp. 3d at 1026.

### v. *Plaintiff has Pleaded that they Suffered Injury*

Plaintiff failed to cite a single authority in pages 10-11 for this element. Defendants clearly pleaded a loss of revenue following the Plaintiff's DMCA takedown notices.

The Plaintiff is repeating their argument that there is no misrepresentation. As detailed above, there was a three-fold misrepresentation raised in the Counterclaim. It was these misrepresentations that triggered YouTube's automated copyright enforcement. But-for the Plaintiff failing to by 17 U.S. Code § 512(c)(3)(A)(v) requirement (i.e., to have a good faith basis to believe the Defendants' usage was not authorized by the copyright owner or the law), the YouTube DMCA takedown requests would not have been accepted or processed. It was the Plaintiff's checking of that box claiming he had a good faith belief that triggered all of YouTube's actions. The YouTube actions were not taken unilaterally by YouTube.

### vi. *Conclusion on Count #1 – Section 512(f) Misrepresentation*

The Defendant's Counterclaim based on Section 512(f) clearly meets the requisite standard. There is no basis to dismiss the claim. Even if the requisite standard is not met, any dismissal should be with leave to file an amended claim.

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## V.    COUNT #2 – DECLARATORY RELIEF

The Plaintiff's four concerns in relation to Count #2 are easily answered: (a) Failure to Identify Any Specific Video; (b) Failure to Plead an Express Oral License under California Contract Law; (c) Failure to Plead an Implied Nonexclusive License under California Law; and (d) Defendants' Conduct Contradicting Any Claim of License or Authorization.

### i.    *The Relevant Videos are Known to the Plaintiff*

Although the videos were not explicitly named in the Counterclaim, it is apparent that the videos that are subject to this Count #2 would be all videos that the Plaintiff alleges is an infringement of the Plaintiff's copyright, including in particular the three videos specifically identified in Dkt. No. 39 ¶ 46-54.

To the extent there is any residual confusion, the Defendants can easily rectify this by way of an amendment to the Counterclaim to clarify this narrow point.

### ii.    *Failure to Plead an Implied Nonexclusive License under California Law*

The Plaintiff is mistaken that the Defendants rely on an "express oral license." At Dkt. No. 58 ¶ 60, the Defendants did make reference to a "nonexclusive license, express or implied." The express license that this was intended to capture is the written license in the YouTube Terms of Service, as noted above. There can be no doubt that the YouTube Terms of Service is a written contract under California law.

Another district court had relied on the same license terms to grant judgment on a copyright infringement claim. *Richardson*.

### iii.    *Failure to Plead an Express Oral License under California Law*

At the bottom of page 14, the Plaintiff misquotes the Ninth Circuit's decision in *Foad* at 831. *Foad* at 831 does <u>not</u> say that a nonexclusive license arises only where the parties' conduct demonstrates an intent to permit *specific* use of a *specific* work.

Because the Copyright Act's requirement of a written instrument "applies solely to a `transfer of copyright ownership,' which by definition does not include nonexclusive licenses. . . . nonexclusive licenses may . . . be granted orally, or may even be implied from conduct.

9

When the totality of the parties' conduct indicates an intent to grant such permission, the result is a nonexclusive license." 3 Nimmer on Copyright § 10.03[A][7] (Matthew Bender, rev. ed. 2014) (footnotes omitted); see 17 U.S.C. § 101 (defining "transfer of copyright ownership" to exclude "a nonexclusive license"), cited with approval in *Fahmy v. Jay-Z*, No. 2:07–cv– 05715–CAS(PJWx), 2015 WL 3407908 at *7 (C.D. Cal. May 27, 2015) also *Michaels v. Internet Entertainment Group, Inc.* (C.D.Cal.1998) 5 F.Supp.2d 823, 831. Another court has explicitly stated that a "a nonexclusive license can be transferred . . . by implication." *Crispin v. Christian Audigier, Inc.*, 839 F. Supp. 2d 1086, 1092 (C.D. Cal. 2011) (emphasis in original) (citing *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 826-28 (9th Cir. 2001))). Explaining that courts "universally have recognized that a nonexclusive license may be implied from conduct," [emphasis added] the Seventh Circuit has held that "consent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license and is not required to be in writing," [emphasis added] and that a nonexclusive license "creates an affirmative defense to copyright infringement." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996) (citing *Effects Assocs. v. Cohen*, 908 F.2d 555, 559 (9th Cir. 1990)).

In this instance, there is clearly a pleading that there was "mere permission or lack of objection" Dkt. No. 58 ¶ 12-20 and Exhibits A-C, which would be equivalent to a nonexclusive license. No further instrument in writing was required

*iv.    Defendants' Conduct was Consistent with YouTube's Guidance*

The Plaintiff appears to be inviting this Court on this motion to make adverse factual findings against the Defendants, in the absence of any discovery or evidence. The Plaintiff's argument under this branch is easily answered, as a matter of fact, and as a matter of law.

As a matter of fact, the Defendants were merely following the YouTube guidance to provide the information requested:

> In your own words, you must include a statement to the claimant that clearly and concisely explains **why you believe the removal of the content was a mistake or misidentification**. Misidentification includes cases of copyright exceptions, such as fair use, fair dealing, or public domain.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM (DKT. NO: 64); Case Number: 5:25-cv-04685-VKD

[emphasis added with underline] Declaration of Simon Lin at Exhibit C

In other words, YouTube is telling its users that submit a counter-notification to focus on the particular copyright exceptions fair use (or fair dealing in Canada) and public domain. There was no suggestion to include any other grounds, such as permission or license. The Defendants cannot be faulted for not having included information that was never requested.

As a matter of law, 17 U.S. Code § 512(g)(3)(C) similarly does not require the person submitting a counternotice to provide each and every defense they may have. The person is only asked to provide a statement that they have a good faith belief that the material was removed by mistake or misidentification. By law, all that is required is stating the person "has a good faith belief that the material was removed or disabled as a result of mistake or misidentification of the material to be removed or disabled." Any further information that the person submitting a counternotice is not required by law and was provided gratuitously.

Ultimately, both fair use and authorization are affirmative defenses to copyright infringement. The Defendants' choice to focus on a particular defense in their motion to strike does not preclude them from advancing any other reasonable defense that may be available on the facts. A plaintiff's claim (and a defendant's defense) are based on the pleadings, not the opposing party's speculation of what should have been raised, and when.

## VI.    **CONCLUSION**

The Plaintiff's motion should be denied in its entirety. There is clearly a valid Counterclaim at this stage, consisting with this Court's Order on Defendants' Motion to Dismiss.

Respectfully submitted,

Date: February 20, 2026          By: _____

Simon Lin – State Bar No. 313661

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM (DKT. NO. 64); Case Number: 5:25-cv-04685-VKD