RANDALL S. NEWMAN (SBN 190547)
Attorney at Law
99 Wall St., Suite 3727
New York, NY 10005
212.797.3735
rsn@randallnewman.net

*Attorney for Plaintiff,*
 *Christopher J. Cordova*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER J. CORDOVA,<br><br>     Plaintiff,<br><br>     vs.<br><br>JONATHAN HUDON-HUNEAULT, NNEKA OHIRI, 14693663 CANADA INC.,<br><br>     Defendants. | Case No. 25-cv-04685-VKD<br><br>**HON. VIRGINIA K. DEMARCHI**<br><br>**REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS**<br><br>**HEARING:**<br>Date: March 3, 2026 (decided on papers) |

**Reply Memorandum in Further Support of Plaintiff's Motion to Dismiss Defendants' Counterclaims**

## I. INTRODUCTION

Defendants' Opposition confirms the fundamental defects identified in Plaintiff's Motion to Dismiss. Rather than defending the Counterclaims as pleaded, Defendants rely almost entirely on new allegations raised for the first time in opposition, most notably, a purported "express license" arising from YouTube's Terms of Service ("ToS"). It is well settled that a party may not amend its pleadings through opposition briefing, and dismissal remains warranted on that basis alone.

Even if considered on the merits, Defendants' newly asserted theory fails as a matter of law. The ToS grant other users a limited license "only as enabled by a feature of the Service," not a blanket authorization to copy, edit, and re-upload another creator's videos using off-platform software. (Exhibit "A" to the Declaration of Simon Lin dated February 20, 2026, ECF No. 79-1, p. 12). Defendants' implied license theory fares no better, as the ToS require prior written permission from YouTube AND Plaintiff to "…reproduce, download, distribute, transmit, broadcast, display, sell, license, alter, modify or otherwise use…any Content". (Lin Decl., Ex. "A", ECF No. 79-1, p. 9).

And Defendants' § 512(f) counterclaim still rests on nothing more than disagreement over fair use and authorization, which the Ninth Circuit has repeatedly held is insufficient to establish a knowing and material misrepresentation.

Finally, Defendants' declaratory relief counterclaim merely repackages these same defective theories and seeks advisory rulings concerning unidentified "videos" and hypothetical future disputes. The Declaratory Judgment Act does not permit litigants to obtain abstract declarations divorced from a concrete, pleaded controversy. Because Defendants have failed to allege facts sufficient to state a claim under § 512(f), and because their request for declaratory relief is duplicative, speculative, and legally unsupported, the Counterclaims should be dismissed with prejudice without leave to amend.

//
//
//

1

**Reply Memorandum in Further Support of Plaintiff's Motion to Dismiss Defendants' Counterclaims**

## II. DEFENDANTS' NEWLY ASSERTED "EXPRESS LICENSE" THEORY IS NOT PLEADED AND FAILS AS A MATTER OF LAW

### A. Defendants May Not Amend the Counterclaims Through Opposition Briefing

Defendants do not allege that their use of Plaintiff's videos was authorized by an express license arising from YouTube's ToS. They do not reference the ToS as a source of authorization, do not allege compliance with any "feature of the Service," and do not plead facts establishing that Defendants' ripping and re-uploading fell within the scope of any ToS-granted license. Instead, Defendants advance this "express license" theory for the first time in opposition.

That is improper. It is black-letter law that a party may not amend its pleadings through arguments raised in an opposition brief. *Schneider v. Cal. Dep't of Corr. & Rehab.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Because the express license theory does not appear in the Counterclaims, it cannot be used to salvage them, and dismissal is warranted on that basis.

### B. YouTube's ToS Grant a Narrow License Limited to Use "as Enabled by a Feature of the Service"

Even if the Court were to consider Defendants' newly asserted theory, it fails as a matter of law. The ToS do not grant users a general right to download, copy, edit, and re-upload other creators' videos. Rather, they provide a limited, conditional license to access and use content as follows:

> You also grant each other use of the Service a worldwide, non-exclusive, royalty-free license to access your Content through the Service, and to use that Content, including to reproduce, distribute, prepare derivative works, display, and perform it, only as enabled by a feature of the Service (such as video playback or embeds). For clarity, this license does not grant any rights or permissions for a user to make use of your Content independent of the Service.

(Lin Decl., Ex. "A" ECF No. 79-1, p. 12).

Defendants' express license theory fails on the plain language of the ToS. The Terms provide that a user grants other users a license to access and use content "through the Service" and "only as enabled by a feature of the Service (such as video playback or embeds)," and expressly clarify that the license "does not grant any rights or permissions for a user to make use of [the] Content independent of the Service." Defendants do not allege that their reaction videos were created using YouTube's playback or embedding features. To the contrary, their theory depends on off-platform reproduction and editing, conduct that, by the ToS' own words, falls outside the scope of any license granted. A license expressly limited to use "through the Service" cannot be expanded to authorize copying and re-publication independent of it.

This limiting language is dispositive. Contract interpretation requires that effect be given to all provisions of an agreement, not that restrictive clauses be read out of the contract entirely. Cal. Civ. Code § 1641. Defendants' interpretation, under which any YouTube user may freely reproduce and republish another creator's videos so long as the content was originally hosted on YouTube, would render the phrase "only as enabled by a feature of the Service" meaningless. Courts do not construe contracts in a manner that nullifies express limitations.

YouTube provides no feature that allows users to download, copy, edit, and re-upload another creator's videos as new works. Reaction videos necessarily require the creation of a new copy outside YouTube's platform, followed by off-platform editing and re-publication. That conduct falls outside the scope of any license granted by the ToS.

    **C.**    **Huneault's Own Sworn Admissions Foreclose Any Reliance of a ToS-Based License**

Defendants' express license theory also fails for an independent reason: Defendants have admitted that their videos were created through screen recording. (Declaration of Jonathan Huneault dated November 24, 2025, ECF No. 43-2 ¶ 29) ("…to the best of my knowledge and memory at the time of recording the videos in question (2022-2025) I was

using the screen recording feature in the app Power Director by Cyberlink)[1]. Screen recording is not a "feature of the Service." It is external software that captures audiovisual content outside YouTube's ecosystem and creates a new, locally stored copy. Defendants' admitted use of screen recording software therefore defeats any claim that their conduct was "enabled by a feature of the Service." Because Defendants' express license theory was not pleaded and is incompatible with both the text of the ToS and Defendants' own admissions, it cannot support either their § 512(f) counterclaim or their request for declaratory relief.

### D. *Richardson v. Townsquare Media* is Inapposite

Defendants' reliance on *Richardson v. Townsquare Media, Inc.*, No. 24 Civ. 4217 (AKH), 2025 WL 89191 (S.D.N.Y. Jan. 14, 2025), is misplaced. *Richardson* involved embedding a YouTube video using YouTube's native embedding and playback functionality, i.e., accessing and displaying the work "through the Service" and as enabled by a feature YouTube provides. *Id.* at *4. That factual predicate is the entire reason the sublicense analysis in *Richardson* made sense in the first place.

This case is different in kind, not degree. Defendants do not allege (and the record reflects they cannot allege) that their "reaction" videos were created through YouTube's embedded player or any other YouTube feature. Instead, Defendants admit that Huneault reproduced Plaintiff's content outside the YouTube platform, by screen recording, followed by off-platform editing and re-uploading as new videos. That conduct is not "embedding," not playback "through the Service," and not use "as enabled by a feature of the Service." For that reason, *Richardson* does not support Defendants' purported "express license" theory and provides no basis to salvage their Counterclaims.

---

[1] Plaintiff does not cite Mr. Huneault's Declaration for the truth of the matters asserted therein, but solely to demonstrate that *even if accepted as true*, Defendants' own description of their conduct, namely, screen recording Plaintiff's videos, does not constitute use "as enabled by a feature of the Service" and therefore cannot support an express license under the ToS.

### III. DEFENDANTS' IMPLIED LICENSE THEORY FAILS FOR THE REASONS CONFIRMED IN THEIR OPPOSITION

In their Opposition, Defendants do not contend that Plaintiff created or delivered his videos at their request, or that the videos were produced for the purpose of Defendants' reuse. Instead, Defendants argue that an implied license arose from alleged informal interactions, livestream commentary, or Plaintiff's failure to object immediately to Defendants' conduct. That theory fails as a matter of law.

California and Ninth Circuit precedent make clear that an implied nonexclusive license requires objective manifestations of intent to permit the *specific use at issue*, not post-hoc inferences drawn from silence or generalized cooperation. *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990); *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821 (9th Cir. 2001). Defendants' Opposition does not identify any statement, conduct, or communication in which Plaintiff objectively manifested an intent to authorize Defendants to copy, edit, monetize, and republish his videos as reaction content.

Defendants' reliance on "mere permission or lack of objection" misstates the law. Courts routinely reject the notion that silence, tolerance, or delayed enforcement creates a license, particularly where the alleged license would authorize ongoing commercial exploitation of copyrighted works. Accepting Defendants' position would collapse implied license doctrine into a rule that any publicly available work may be freely reused unless the copyright owner immediately objects, an outcome copyright law does not permit.

Defendants' theory is further undermined by the scope of use they seek to justify. An implied license, where it exists at all, is limited to the specific purpose for which the work was created. *Effects*, 908 F.2d at 559. Here, Defendants seek to infer authorization for wholesale reproduction, editing, and monetization of Plaintiff's videos, core exclusive rights under the Copyright Act, without any objective manifestation of intent supporting such use. The Opposition supplies none.

Defendants' implied and oral license theories fails for the additional and independent reason that the YouTube Terms of Service expressly prohibits the reposting of content

absent written authorization from both YouTube and the applicable rights holder. The ToS state that users may not "access, reproduce, download, distribute, transmit, broadcast, display, sell, license, alter, modify or otherwise use any part of the Service or any Content except: (a) as expressly authorized by the Service; or (b) with prior written permission from YouTube and, if applicable, the respective rights holders." (Lin Decl., Ex. "A", ECF No. 79-1, p. 9).

Defendants do not allege, because they cannot, that they obtained written permission from YouTube AND Plaintiff authorizing the copying, editing, and re-publication of Plaintiff's videos. To the contrary, their theory depends on oral or implied consent and generalized platform participation, which the ToS expressly reject. A contract that conditions authorization on written permission cannot be satisfied by vague oral statements, implication, silence, or post hoc interpretation of informal conduct.

## IV. DEFENDANTS' § 512(f) COUNTERCLAIM FAILS BECAUSE LEGAL DISAGREEMENT IS NOT A KNOWING MISREPRESENTATION

In their Opposition, Defendants do not allege facts showing that Plaintiff subjectively disbelieved his infringement claims when the takedown notices were submitted. Instead, Defendants argue that Plaintiff "should have known" their videos were authorized or constituted fair use, and that his contrary legal conclusions therefore amount to misrepresentations. That argument misstates the governing standard and confirms the insufficiency of the Counterclaims.

As Defendants acknowledge, § 512(f) requires allegations of *knowing* misrepresentation, i.e., facts showing that the copyright holder lacked a subjective good-faith belief at the time of the takedown. *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153–55 (9th Cir. 2016); *Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1005 (9th Cir. 2004). Allegations that a copyright holder was mistaken, aggressive, or ultimately unsuccessful are insufficient as a matter of law. *Rossi*, 391 F.3d at 1005. Defendants' Opposition identifies no facts, emails, statements, admissions, or contemporaneous conduct suggesting that Plaintiff disbelieved his infringement claims when he submitted

the takedown notices.

Defendants' effort to repackage disputed legal issues as "misrepresentations" fares no better. Each alleged misrepresentation identified in the Opposition depends entirely on Defendants' express license, implied license, or fair use theories, none of which establishes knowing falsity even if accepted arguendo. Section 512(f) does not require a copyright holder to resolve contested questions of authorization or fair use in favor of the alleged infringer before invoking the DMCA. *Lenz*, 815 F.3d at 1154. A takedown notice is not a warranty of legal correctness; it is a statement of good-faith belief.

Because Defendants' Opposition confirms that their § 512(f) theory rests on legal disagreement rather than facts showing knowing misrepresentation, the counterclaim fails as a matter of law and should be dismissed with prejudice.

## V.   DEFENDANTS' OPPOSITION CONFIRMS THAT THE DECLARATORY RELIEF COUNTERCLAIM IS DEFECTIVE

Defendants' Opposition confirms, rather than cures, the defects in their declaratory relief counterclaim. Defendants do not dispute that the Counterclaim fails to identify any specific videos by title, URL, or upload date. Instead, they argue that the "relevant videos are known to the Plaintiff" and suggest that any lack of specificity can be cured by amendment.

That concession underscores the problem. A declaratory judgment claim must present a concrete, pleaded controversy at the time it is asserted; it cannot be deferred to a future amendment or clarified through implication.

Nor does Defendants' Opposition address the independent defect that their declaratory relief counterclaim merely mirrors their affirmative defenses. Defendants seek declarations that their conduct was authorized by license or constituted fair use, the very issues that will necessarily be resolved in adjudicating Plaintiff's infringement claims. The Declaratory Judgment Act does not permit litigants to obtain advance merits rulings on defenses already before the Court, and Defendants' Opposition offers no authority to the contrary.

Finally, Defendants' attempt to ground declaratory relief in the ToS and implied license theories fares no better here than elsewhere in their brief. As shown above, those theories were not properly pleaded and fail as a matter of law. Declaratory relief cannot be used to resurrect defective legal theories or to obtain advisory opinions about hypothetical future enforcement.

Because Defendants' Opposition confirms that the declaratory relief counterclaim is indefinite, duplicative, and dependent on legally insufficient license theories, it should be dismissed with prejudice.

## VI. LEAVE TO AMEND SHOULD BE DENIED

Leave to amend should be denied because amendment would be futile. Defendants have already demonstrated that the defects in their Counterclaims cannot be cured by additional factual allegations. Rather than pointing to facts plausibly supporting the claims as pleaded, Defendants rely on shifting legal theories, including a newly minted express license theory based on the YouTube ToS and an expanded implied license theory foreclosed by California law.

Permitting amendment under these circumstances would not cure the fundamental deficiencies identified above. The YouTube Terms of Service do not authorize Defendants' conduct as a matter of law, implied license cannot be inferred from the facts alleged, and § 512(f) does not impose liability for legal disagreement or unsuccessful takedown efforts. Where, as here, a claim "could not be saved by amendment," dismissal with prejudice is appropriate. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

## VII. CONCLUSION

For the foregoing reasons, Defendants' Counterclaims should be dismissed with prejudice.

//
//
//
//

8

**Reply Memorandum in Further Support of Plaintiff's Motion to Dismiss Defendants' Counterclaims**

Dated: February 27, 2026

/s/ Randall S. Newman
Randall S. Newman, Esq. (SBN 190547)
99 Wall Street, Suite 3727
New York, NY 10005
(212) 797-3735
rsn@randallnewman.net

*Attorney for Plaintiff,
Christopher J. Cordova*

**Reply Memorandum in Further Support of Plaintiff's Motion to Dismiss Defendants' Counterclaims**