RANDALL S. NEWMAN (SBN 190547)
Attorney at Law
99 Wall St., Suite 3727
New York, NY 10005
212.797.3735
rsn@randallnewman.net

*Attorney for Plaintiff,*
*Christopher J. Cordova*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTOPHER J. CORDOVA,<br><br>Plaintiff,<br><br>vs.<br><br>JONATHAN HUDON-HUNEAULT, NNEKA OHIRI, 14693663 CANADA INC.,<br><br>Defendants. | Case No. 25-cv-04685-VKD<br><br>**HON. VIRGINIA K. DEMARCHI**<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FORUM NON CONVENIENS AND ALTERNATIVELY FOR AN ORDER REQUIRING PLAINTIFF TO POST SECURITY**<br><br>**HEARING:**<br>Date: April 14, 2026<br>Time: 10:00 a.m.<br>Place: 280 South 1st St.<br>Courtroom 2 (5th Floor)<br>San Jose, CA 95113 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FORUM NON CONVENIENS AND ALTERNATIVELY FOR AN ORDER REQUIRING PLAINTIFF TO POST SECURITY**

## Contents

I.    INTRODUCTION ...............................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND .......................................2

III.  EVIDENTIARY OBJECTIONS .....................................................................5

IV.   DEFENDANTS' *FORUM NON CONVENIENS* MOTION SHOULD BE DENIED 6

    A.    Defendants Fail to Show That Canada Is An Adequate Alternative Forum .......................................................................................................6

    B.    Deference to Plaintiff's Chosen Forum ..............................................7

    C.    Private Interest Factors Weigh Decisively Against Dismissal .............9

        i.    Ease of Access to Sources of Proof ........................................9

        ii.   The Availability of compulsory process.................................10

        iii.  Cost of Obtaining Attendance of Willing Witnesses.........................10

        iv.   Other Practical Considerations .............................................11

    D.    The Public Interest Factors Strongly Favor Retaining the Case.........11

        i.    Local Interest in the Lawsuit.................................................12

        ii.   The Court's Familiarity with Governing Law...................................12

        iii.  Burden on Local Courts and Juries.......................................12

        iv.   Congestion in the Court .......................................................12

        v.    The Costs of Resolving a Dispute Unrelated to This Forum..............13

    E.    Defendants' Authorities Are Factually Inapposite ............................13

V.    THE REQUEST FOR SECURITY SHOULD BE DENIED ..................................14

    A.    Legal Standard ................................................................................14

    B.    Defendants Fail to Show a "Reasonable Possibility" of Prevailing ...15

        i.    Plaintiff Has Standing to Pursue the Claims Asserted Against Defendants ..........................................................................15

i

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FORUM NON CONVENIENS AND ALTERNATIVELY FOR AN ORDER REQUIRING PLAINTIFF TO POST SECURITY**

ii.    There Is No Reasonable Possibility That Defendants Will Prevail on Their Express License Theory ...............................................................17

iii.   Defendants' Implied License and/or Equitable Estoppel Defenses Have No Reasonable Possibility of Prevailing ...........................................19

iv.   Defendants' Fair Use Affirmative Defense Has No Reasonable Possibility of Prevailing.......................................................................20

C.    Conduct of Parties and Plaintiff's Ability to Post Bond.....................22

D.    Plaintiff's Financial Status Should Not Deprive Him of Access to This Court....................................................................................................23

E.    Plaintiff Has Pending Motion for Anti-SLAPP Fees That Offsets Any Claimed Need for Security...................................................................23

VI.  CONCLUSION...........................................................................................................24

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FORUM NON CONVENIENS AND ALTERNATIVELY FOR AN ORDER REQUIRING PLAINTIFF TO POST SECURITY**

# TABLE OF AUTHORITIES

**CASES**

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971 (2d Cir. 1991) ..................16

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023)...........21

*Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201 (9th Cir. 2009) ...................................10

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994)................................................21

*Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011) ...... 6-9, 12

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    68 Cal. App. 4th 445 (1998) .......................................................................................17

*Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696 (9th Cir. 1995).......................13

*DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*,
    870 F.3d 978 (9th Cir. 2017) ......................................................................................16

*Effects Assocs., Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990)............................................19

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) .................................................................22

*González Cantón v. Mad Ruk Entertainment, Inc.*, Case No. 22-cv-1458-CVR, 2023 WL
    4546545 (D. Puerto Rico July 13, 2023) ....................................................................14

*Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023 (9th Cir. 1996) .......20

*Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985) .........................21

*In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010) ...............................5, 22

*Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197 (2016) .............................................22

*L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924 (9th Cir. 2002).................................21

*Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526 (9th Cir. 2011) .........................................5

*Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001) ...............................7, 9, 11, 13

*Mattel, Inc. v. MGA Ent., Inc.*, 705 F.3d 1108 (9th Cir. 2013).........................................22

*Nexon Korea Corp. v. Ironmace Ltd.*,
    2023 WL 5305996 (W.D. Wash. Aug. 17, 2023).........................................................14

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)..................................................................8

*Righthaven LLC v. Hoehn*, 716 F.3d 1166 (9th Cir. 2013) ...................................................16

*Rutherford v. Palo Verde Health Care District*, 13-cv-1247-JAK (SPx), 2014 WL
    12634510 (C.D. Cal. May 13, 2014) ................................................................................24

*Simulnet East Associates v. Ramada Hotel Operating Co.,*
    37 F.3d 573 (9th Cir. 1994) ....................................................................................14, 23

*Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163 (9th Cir. 2006) ....................6, 11, 13

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003)...........................16

**STATUTES**

17 U.S.C. § 1201 ...............................................................................................................7, 12

17 U.S.C. § 512 ...............................................................................................................*passim*

Cal. Civ. Code § 1641 ...........................................................................................................17

California Code of Civil Procedure § 1030 ......................................................1, 2, 14, 24

**RULES**

Federal Rule of Civil Procedure 37(e) .................................................................................22

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

## I.    INTRODUCTION

Plaintiff Christopher J. Cordova ("Plaintiff") respectfully submits this Memorandum of Law in Opposition to Defendants' Motion to Dismiss on *forum non conveniens* grounds, or, in the alternative, for an order requiring security pursuant to California Code of Civil Procedure § 1030.

Defendants' motion relies heavily on the citation of more than fifty cases, yet it rarely applies those authorities to the specific facts or procedural posture of this case. Given the applicable page limitations, Plaintiff cannot address each cited decision individually and instead focuses on the controlling legal standards and the material factual distinctions that render Defendants' authorities inapposite.

Defendants' motion is a transparent attempt to derail this litigation after months of active participation in this Court. Defendants terminated prior counsel and retained new counsel who is licensed in both California and Canada and now seeks to leverage that dual licensure to play procedural games with this Court.

Defendants themselves invoked this Court's jurisdiction to secure the reinstatement of their infringing videos through the counter-notification procedures of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, which necessarily required Plaintiff to sue in this district, where YouTube is located. Defendants then agreed in the Joint Case Management Statement ("JCMS") that this District was proper. (ECF No. 37).

They answered the Complaint, asserted counterclaims, participated in discovery, and litigated here without objection. Now, faced with the consequences of their own litigation misconduct, including the destruction of almost all the central evidence in this case and their refusal to meaningfully participate in discovery, Defendants seek to abandon the very forum they previously accepted and to impose a six-figure financial barrier designed to prevent Plaintiff from pursuing his claims.

Defendants' litigation conduct is entirely consistent with the copyright infringement scheme alleged in the First Amended Complaint ("FAC") (ECF No. 39). Plaintiff alleges that Defendants unlawfully copied and republished up to one hundred of Plaintiff's videos

1

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

to the Frauditor Troll channel, adding little or no meaningful commentary, in order to monetize Plaintiff's content and create an alternative market for viewing his videos. When Plaintiff attempted to stop that infringement, Defendants submitted fraudulent counter-notifications to force reinstatement of the videos, confident that Plaintiff lacked the financial resources to pursue federal litigation. Their conduct throughout this case reflects the same objective: to increase the cost of enforcement and deter Plaintiff from pursuing his claims.

Defendants now ask this Court to dismiss the case in favor of Canada, fully aware that Plaintiff lacks the financial means to retain Canadian counsel and refile there. The request is not grounded in convenience. It is a litigation tactic designed to place the courthouse out of reach.

Defendants' alternative request for a bond under section 1030 is no more persuasive. They offer speculation, not competent evidence, regarding their supposed likelihood of success. Their request rests on newly manufactured defenses, a distorted reading of YouTube's Terms of Service ("ToS"), a misleading presentation of the facts relevant to fair use and a misunderstanding of how attorneys' fees are awarded in copyright actions. The requested bond is not grounded in any realistic prospect of recovery; it rests on the unsupported assumption that Defendants will prevail.

At bottom, Defendants ask this Court to do two things it should not do: dismiss a properly filed federal action in favor of a foreign forum that is no more convenient and require Plaintiff to post a prohibitive bond based on conjecture, disputed facts, and uncertain defenses. The Court should do neither.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a Colorado-based content creator and constitutional auditor who operates the Denver Metro Audits YouTube channel, where he publishes original audiovisual works documenting interactions with government officials, law enforcement, and public employees. (FAC ¶¶ 17, 29). His works are part of a broader category of citizen-journalist content disseminated through YouTube. (*Id.*)

2

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

Defendants jointly operate the "Frauditor Troll" YouTube channel, a monetized channel that republishes videos created by constitutional auditors, including Plaintiff. (FAC ¶¶ 19–22, 32). Between 2022 and 2025, Defendants copied and reuploaded between fifty and one hundred of Plaintiff's videos, incorporating substantial portions of those works into their own uploads. (FAC ¶ 34).

The videos identified in the First Amended Complaint include works titled *Another Chad*, *Belmar Library*, and *Courthouse Fail*, each of which was reproduced in extended segments within Defendants' videos. (FAC ¶¶ 46–54). These videos include long uninterrupted portions of Plaintiff's works with little or no meaningful commentary. (*Id*.)

Plaintiff submitted DMCA takedown notices in June and October 2023 identifying infringing videos on the Frauditor Troll channel. (FAC ¶ 58). Defendants responded with nine counter-notifications pursuant to 17 U.S.C. § 512(g)(3), each signed under penalty of perjury. (FAC ¶¶ 59–61).

Plaintiff commenced this action on June 3, 2025. (ECF No. 1). Shortly thereafter, Plaintiff provided Defendants with notice of the lawsuit. (Newman Decl. ¶ 3). Following that notice, Defendants deleted more than 1,700 videos from the Frauditor Troll channel, including a substantial portion of the evidence relevant to Plaintiff's claims. (Newman Decl. ¶ 4).

Prior to commencing this action, Plaintiff did not create a comprehensive list of the titles of the approximately 50-100 videos Defendants created using Plaintiff's footage. (Newman Decl. ¶ 5). This was because in the DMCA counter-notifications, Huneault repeatedly invited Plaintiff to file suit so that the parties could resolve their fair use dispute in Court, and there was no reason to anticipate that Defendants would delete the very evidence central to that dispute. (*Id*.; FAC ¶ 58).

On June 21, 2025, Plaintiff filed an ex parte application seeking a preservation order. (ECF No. 8). The Court denied the application but expressly noted that Defendants were subject to an existing preservation obligation and that failure to comply could result in sanctions. (ECF No. 10).

3

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

On October 28, 2025, the parties filed a JCMS in which Defendants acknowledged that subject matter jurisdiction, personal jurisdiction, and venue were proper in this District. (ECF No. 37).

Plaintiff served written discovery requests in November 2025 seeking, among other things, copies of all videos incorporating Plaintiff's works and related metadata. (Newman Decl. ¶ 10). Defendants served responses on December 23, 2025 and supplemental responses on January 23, 2026. (Newman Decl. ¶¶ 11, 15). Defendants have not produced a single video during discovery. (Newman Decl. ¶ 30). Defendants admitted that approximately 1,700 videos from the Frauditor Troll channel had been deleted and that no copies or related electronically stored information were retained. (Newman Decl. ¶¶ 16-20, Ex. "A", Huneault's Supplemental Responses to Plaintiff's First Set of Requests for Admissions).

Plaintiff served a Rule 45 subpoena on Google on or about January 2, 2026 seeking copies of the deleted videos and related data (Newman Decl. ¶ 12). Google advised that the videos and related data were no longer available due to its data retention policies. (Newman Decl. ¶ 13). Google eventually produced only two videos and limited related ESI, as those videos remained live until recently. (Newman Decl. ¶ 14).

On January 31, 2026, Defendants' prior counsel, attorney Steven Vondran, sent an email stating that he would be sending Defendants' "initial bates stamped doc responses" and that certain files, including videos and images, could not be Bates stamped. (Newman Decl. ¶ 22). On February 2, 2026, I spoke with Mr. Vondran by telephone. During that conversation, Mr. Vondran advised that he was in the process of sending Defendants' discovery materials to Mr. Lin and that the production consisted of more than 1,000 pages of Bates-numbered documents as well as numerous videos. (Newman Decl. ¶ 24).

On March 5, 2026, Defendants produced fewer than 300 pages of largely non-substantive documents despite Mr. Vondran's previous representations. (Newman Decl. ¶¶ 28-29). Defendants did not produce any videos, metadata, or a list of videos incorporating Plaintiff's works. (Newman Decl. ¶¶ 30-32).

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

Plaintiff has since identified 67 videos that appear to contain Plaintiff's footage based on a third-party archive of the Frauditor Troll channel. (Newman Decl. ¶ 37 and Ex. "B"). This number is consistent with the allegations in the FAC that Defendants created between fifty and one hundred infringing videos incorporating Plaintiff's works. (FAC ¶ 34).

On March 10, 2026, Defendants served their First Request for Production on Plaintiff. (Newman Decl. ¶ 39). This was Defendants' first discovery request served on Plaintiff since the November 2025 initial conference. (*Id.*) On March 11, 2026, Defendants filed the present motion seeking dismissal on *forum non conveniens* grounds or, alternatively, an order requiring Plaintiff to post security. (ECF No. 91).

## III.   EVIDENTIARY OBJECTIONS

Plaintiff objects to portions of the declaration submitted by Defendant Jonathan Hudon-Huneault in support of their Motion (ECF No. 91-2) (the "Huneault Declaration") on the grounds described below. The Court should disregard such material.

Plaintiff's evidentiary objections: Paragraphs 6-8, Exs. B, C: FRE 801-802, 901; Paragraphs 10, Ex. D: FRE 106, 403, 901, 1002, 802; Paragraph 11, Ex. E: FRE 403, 802, 901, 1002; Paragraph 12, Ex. F: FRE 403, 802, 901, 1002; Paragraphs 13-14: 602, 901, 1002

The Huneault Declaration relies heavily on hyperlinks, excerpts, and transcripts of purported video evidence, but the underlying recordings themselves were not lodged with the Court or produced to Plaintiff in admissible form. A hyperlink is not evidence, and materials must be properly authenticated to be considered. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010) (the party seeking admission bears the burden of proof to show its admissibility).

Absent the actual videos, there is no foundation for authentication under Rule 901. *See Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532–33 (9th Cir. 2011). The transcripts themselves are unauthenticated hearsay and lack any showing that they accurately reflect the underlying recordings.

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION

Moreover, Defendant's reliance on selective excerpts creates a substantial risk of misleading the Court. Any minimal probative value is outweighed by the danger of confusion and lack of context. FRE. 403. Rule 106 further bars the use of incomplete excerpts to create a distorted record. Finally, these defects are compounded by Defendants' failure to produce the underlying videos in discovery. Defendants cannot substitute curated snippets, transcripts, and hyperlinks for competent, admissible evidence.

## IV.    DEFENDANTS' *FORUM NON CONVENIENS* MOTION SHOULD BE DENIED

*Forum non conveniens* is a "drastic" remedy that results in dismissal of a properly filed federal action and is therefore to be applied "sparingly." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011). A plaintiff's choice of forum is entitled to substantial deference and may be disturbed only where the defendant makes a clear showing that an adequate alternative forum exists and that the balance of private and public interest factors strongly favors dismissal. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1180 (9th Cir. 2006). Defendants bear a heavy burden on both prongs, and failure on either is fatal. Defendants cannot satisfy that burden here.

Defendants' motion is not a good-faith effort to identify a more convenient forum; it is a transparent attempt to abandon a forum they previously accepted once the litigation ceased to proceed in their favor and the consequences of their spoliation became apparent. The Court should not permit Defendants to test the waters and then seek dismissal when the tide turns, such gamesmanship weighs heavily against dismissal.

### A.    Defendants Fail to Show That Canada Is An Adequate Alternative Forum

Defendants fail to meet their threshold burden of establishing that Canada is an adequate alternative forum. The adequacy inquiry is not satisfied by pointing to the existence of "copyright law" in the abstract. The question is whether the alternative forum permits litigation of the claims at issue and provides a remedy for the alleged wrong. *Carijano*, 643 F.3d at 1225.

6

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

Here, Plaintiff asserts claims for infringement under the U.S. Copyright Act, a claim for misrepresentation pursuant to 512(f), and a claim for circumvention of YouTube's technological protection measures pursuant to 17 U.S.C. § 1201. (ECF No. 39). These are not generic copyright principles; they are specific statutory rights created by U.S. law to regulate online conduct and platform-based infringement. Rights that Defendants took advantage of to have their videos restored by the DMCA counter-notification process.

Defendants identify no Canadian analogue to the DMCA 512(f) misrepresentation claim or the § 1201 anti-circumvention claims that are central to this action, nor do they explain how those claims could be meaningfully pursued in Canada without the significant cost of retaining a Canadian attorney.

They also fail to address how their admitted spoliation of evidence would be treated in a Canadian forum, particularly in light of this Court's specific warning that Defendants could be subject to sanctions for any failure to comply with their preservation obligations. (ECF No. 10, "[a]s a party to this action, Mr. Huneault has an *existing* and well-established preservation obligation, and his failure to comply with this obligation could result in the imposition of sanctions or another remedy determined by the Court.").

Defendants bear the burden of establishing that Canada is an adequate alternative forum. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001). They have not met that burden. Defendants offer no competent evidence, such as expert testimony, addressing the availability of remedies under Canadian law, particularly with respect to Plaintiff's claims under 512(f) and 17 U.S.C. § 1201. Instead, Defendants rely on attorney argument and generalized assertions about Canadian copyright law. But, even assuming Canada could serve as an adequate alternative forum, dismissal is not warranted because deference to Plaintiff's chosen forum as well as the private and public interest factors strongly favor retaining this action in this District.

**B.    Deference to Plaintiff's Chosen Forum**

There is a strong presumption in favor of a plaintiff's choice of forum. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1229 (9th Cir. 2011); *Piper Aircraft Co. v.*

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

*Reyno*, 454 U.S. 235, 255 (1981). Although that presumption may be reduced when a plaintiff files outside his home district, it is not eliminated. As the Ninth Circuit has made clear, less deference is not the same as no deference. *Carijano* at 1227.

Defendants attempt to recast Plaintiff as a "foreign" litigant entitled to minimal deference because he resides in Colorado rather than California. Defendants' argument ignores that Colorado has even less connection to this dispute. Defendants have no connection to Colorado, the events at issue did not occur there, and none of the relevant third-party evidence appears to be located there. Plaintiff's decision not to sue in Colorado was therefore not strategic forum shopping, but the opposite: Colorado lacked any meaningful nexus to the case.

This District, by contrast, bears a substantial relationship to the dispute. Courts afford greater deference where the chosen forum has a strong connection to the underlying events. *Carijano*, 643 F.3d at 1229. That connection exists here. The case arises from Defendants' use of YouTube, a U.S.-based platform, their submission of DMCA counter-notifications under U.S. law, and the resulting restoration and exploitation of content in the United States. The forum is not incidental to the dispute; it is tied directly to the statutory mechanism Defendants invoked.

That point is critical. By submitting DMCA counter-notifications, Defendants invoked a statutory process that required a foreign subscriber to consent to jurisdiction in a United States federal court where the service provider is located. *See* 17 U.S.C. § 512(g)(3)(D). Defendants chose to avail themselves of the DMCA framework to restore their videos. Having done so, they cannot now argue that litigation in a United States forum arising directly from that conduct is inconvenient.

Their own statements underscore the point. In the counter-notifications submitted to YouTube, they invoked fair use under the U.S. Copyright Act, represented that they were willing to defend themselves in court, stated that they had already retained counsel, and effectively invited Plaintiff to sue. (FAC ¶ 59). Having taken that position repeatedly to secure restoration of their content, Defendants cannot now retreat from it when the

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

litigation they invited becomes inconvenient.

Nor is there any evidence of improper forum shopping. Plaintiff did not select this forum to inconvenience Defendants or obtain some unfair tactical advantage. He filed here because this forum bears a real connection to the dispute and because Defendants themselves accepted the U.S. judicial process as part of the DMCA scheme. *See* 17 U.S.C. § 512(g)(3)(D) Under those circumstances, concerns about forum shopping are muted. *Carijano*, 643 F.3d at 1229.

Accordingly, Plaintiff's choice of forum is entitled to substantial deference, and Defendants have not come close to carrying the heavy burden required to overcome it.

## C.    Private Interest Factors Weigh Decisively Against Dismissal

The Ninth Circuit evaluates the private interest factors by examining: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process; (3) the cost of obtaining attendance of willing witnesses; and (4) other practical considerations affecting the ease and efficiency of trial. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001); *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1229 (9th Cir. 2011). Courts disturb a plaintiff's chosen forum only where the balance of these factors "strongly favors" the defendant. *Lueck*, 236 F.3d at 1145.

### i.    Ease of Access to Sources of Proof

This factor strongly favors retaining the case in this forum because the remaining relevant evidence is overwhelmingly digital, third-party, and U.S.-based. *See Lueck,* 236 at 1146 (private interest factors include access to sources of proof). That evidence includes Plaintiff's copies of the underlying works, records and metadata maintained by Google to the extent they still exist and archived or recovered materials held by third-parties in the United States.

Defendants argue that trial in this District would burden them because they reside in Canada and may need to travel to Northern California. But that argument proves little. Plaintiff likewise does not reside in California and would also be required to travel for trial. More importantly, in a case centered on YouTube videos, platform records, DMCA

9

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

counter-notifications, and other electronically stored information, the possibility that parties may have to travel for a bench trial does not outweigh the location of the principal sources of proof or make Canada a clearly more convenient forum. *See Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1206–07 (9th Cir. 2009).

### ii.    The Availability of compulsory process

This factor also favors this forum because the remaining third-party evidence is controlled by a party subject to this Court's subpoena power. To the extent relevant platform data, account records, policies, or other materials still exist, they are maintained by YouTube, within this Court's reach. The same is true for evidence of YouTube's technological measures, its Terms of Service, and internal policies, all of which are central to Plaintiff's claims.

In short, Defendants have failed to identify any witness beyond this Court's reach whose testimony is necessary to resolve this case. This factor therefore weighs against dismissal.

### iii.    Cost of Obtaining Attendance of Willing Witnesses

This factor does not support dismissal. Defendants argue that litigating in this District would impose travel burdens because they reside in Canada, but that contention carries little weight in a case driven primarily by electronic evidence.

That is the situation here. The claims turn on videos, platform data, and DMCA submissions, not live testimony. Defendants themselves acknowledge that discovery will proceed largely through electronically stored information and remote depositions, further reducing any meaningful burden associated with travel.

Defendants' position is also internally inconsistent. While claiming that this forum is unduly burdensome, they simultaneously indicate an intent to depose seven (7) witnesses in the United States. (Declaration of Simon Lin dated March 10, 2026 ¶ 19, ECF No. 91-1). That concession undercuts any assertion that litigating in Canada is more appropriate because of witness location.

In any event, modern litigation tools, including remote depositions and video

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

testimony, substantially minimize the significance of geographic distance. Under these circumstances, any marginal travel burden does not favor dismissal. Accordingly, this factor does not favor dismissal.

### iv.    Other Practical Considerations

This factor weighs decisively against dismissal. First, Defendants' spoliation fundamentally reshapes the *forum non conveniens* analysis. Courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001). Defendants' destruction of evidence is precisely such a problem.

Second, this case is already well underway in this Court. Here, Defendants have moved to dismiss, answered the Complaint, asserted counterclaims, and participated in discovery, including third-party subpoenas. Substantial resources have already been expended litigating in this forum. Dismissal at this stage would not promote efficiency. It would require a foreign court to duplicate proceedings, reconstruct a record already developed here, and increase both cost and delay. That outcome is directly contrary to FRCP 1.

Finally, Defendants' motion reflects a shift in litigation strategy, not a genuine concern for convenience. Defendants invoked this forum through their own conduct, agreed it was the proper forum and actively litigated here. Only after the case ceased to proceed in their favor, and after the consequences of their own spoliation became apparent, did they seek dismissal. In sum, this is not a case where dismissal would conserve resources, it would squander them. This factor strongly weighs against dismissal.

### D.    The Public Interest Factors Strongly Favor Retaining the Case

The public interest factors include: (1) local interest in the lawsuit; (2) the court's familiarity with governing law; (3) the burden on local courts and juries; (4) congestion in the courts; and (5) the costs of resolving a dispute unrelated to this forum. *Lueck*, 236 F.3d at 1147; *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006).

//

11

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

### i.    Local Interest in the Lawsuit

This factor strongly favors this forum. The United States has a substantial interest in adjudicating disputes arising under its federal statutes governing online conduct, including the Copyright Act, the DMCA, and 17 U.S.C. § 1201. The United States also has a substantial interest in adjudicating fair use disputes on YouTube.

That interest is particularly strong here because the alleged conduct occurred on a U.S.-based platform and through a U.S. statutory scheme. This is not a foreign-centered dispute with incidental U.S. contacts it arises directly from conduct directed at and occurring within the United States.

### ii.    The Court's Familiarity with Governing Law

This factor also strongly favors retaining the case. Plaintiff's claims arise exclusively under U.S. federal law, including the Copyright Act, § 512(f), and § 1201. This Court is uniquely suited to interpret and apply these statutes. By contrast, dismissal would require a foreign court to interpret and apply U.S. copyright law or risk misapplication of complex statutory and doctrinal frameworks developed by U.S. courts. That consideration weighs heavily against dismissal.

### iii.    Burden on Local Courts and Juries

This factor does not support dismissal. As an initial matter, the parties have agreed to a bench trial, eliminating any burden on local jurors entirely. That alone significantly reduces any concern regarding imposition on the forum. (ECF No. 37).

More broadly, this District has a direct connection to the dispute through the presence of YouTube and the location of relevant third-party evidence. This Court should reject any argument that adjudicating disputes with substantial domestic connections imposes an undue burden on the forum. *See Carijano*, 643 F.3d at 1232-33. In these circumstances, retaining the case does not impose an unfair burden on the Court or the community.

### iv.    Congestion in the Court

This factor is neutral and does not support dismissal. Defendants have made no

12

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

showing that this Court is so congested as to warrant dismissal in favor of a foreign forum. *Id.* at 1233. More importantly, this case is already well underway in this District. The parties have litigated motions, engaged in discovery, and obtained third-party evidence. Transferring the case at this stage would not promote efficiency, it would duplicate proceedings, delay resolution, and undermine the interests of judicial economy.

### v.    The Costs of Resolving a Dispute Unrelated to This Forum

This factor strongly favors retaining the case because the dispute is not unrelated to this forum. To the contrary, it arises directly from conduct occurring on a U.S.-based platform and through a U.S. statutory framework. The claims are governed exclusively by federal law, and the alleged infringement, DMCA counter-notifications, and related conduct are all tied to YouTube and its operations in the United States.

Adjudicating this dispute in this District does not impose the costs of resolving a foreign controversy on a local forum. Rather, it reflects the appropriate allocation of judicial resources to a dispute with substantial domestic connections. Defendants cannot recast this as a foreign-centered dispute merely because they reside in Canada.

### E.    Defendants' Authorities Are Factually Inapposite

Defendants cite a series of *forum non conveniens* cases for the unremarkable propositions that the adequacy standard is low and that dismissal may be appropriate where a dispute is centered abroad. *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163 (9th Cir. 2006); *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696 (9th Cir. 1995). None resembles this case.

Those cases involved foreign-centered disputes, foreign evidence, and non-U.S. legal regimes. This case arises under U.S. copyright law and the DMCA from Defendants' conduct on a U.S.-based platform. Defendants do not meaningfully engage with these facts or attempt to explain how their authorities apply here.

Nor does the "low" adequacy standard carry Defendants' burden. Even where an alternative forum exists, dismissal is improper unless the private and public interest factors strongly favor it. *Lueck*, 236 F.3d at 1143; *Tuazon*, 433 F.3d at 1178. Defendants make no

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

such showing.

Most notably, none of Defendants' authorities involves a case where the moving party destroyed central evidence and then sought dismissal. That fact alone distinguishes this case and weighs heavily against dismissal.

Defendants' reliance on *Nexon Korea Corp. v. Ironmace Ltd.*, Case No. 23-cv-576-TL, 2023 WL 5305996 (W.D. Wash. Aug. 17, 2023), is misplaced. *Nexon* involved a foreign dispute between Korean parties, parallel litigation in Korea, and conduct centered abroad. This case involves none of those features.

Defendants' reliance on *González Cantón v. Mad Ruk Entertainment, Inc.*, Case No. 22-cv-1458-CVR, 2023 WL 4546545 (D. Puerto Rico July 13, 2023) is also misplaced. That case involved a film production dispute arising from a contractual relationship centered entirely in Canada, including the location of the production, the governing agreements, and an ongoing parallel action in Canadian courts.

In short, Defendants' authorities address fundamentally different circumstances and do not support dismissal here. Therefore, Defendants motion to dismiss on *forum non conveniens* grounds should be denied.

## V.    THE REQUEST FOR SECURITY SHOULD BE DENIED

### A.    Legal Standard

Although the Federal Rules of Civil Procedure do not contain a general provision governing cost bonds, federal courts have inherent authority to require security for costs and typically look to the forum state's practice. *See Simulnet East Assocs. v. Ramada Hotel Operating Co.*, 37 F.3d 573, 574 (9th Cir. 1994). Under California Code of Civil Procedure § 1030, a defendant seeking a bond has the burden to show that the plaintiff resides out of state and that there is a "reasonable possibility" the defendant will obtain judgment in the action. Cal. Civ. Proc. Code § 1030(b);

In determining whether a bond is appropriate, courts consider: (i) the degree of probability/improbability of success on the merits, and the background and purpose of the suit; (ii) the reasonable extent of the security to be posted, if any, viewed from the

14

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION

defendant's perspective; and (iii) the reasonable extent of the security to be posted, if any, viewed from the nondomiciliary plaintiff's perspective. *Simulnet*, 37 F.3d at 576 (citations omitted). Courts may also consider the conduct of the parties, and the plaintiff's ability to post the bond. *Id*. "While it is neither unjust nor unreasonable to expect a suitor 'to put his money where his mouth is,' toll-booths cannot be placed across the courthouse doors in a haphazard fashion." *Id.* at 576 (citations omitted).

### B.    Defendants Fail to Show a "Reasonable Possibility" of Prevailing

Defendants fail to satisfy its core requirement: demonstrating a reasonable possibility that they will prevail. Defendants rely on a list of asserted defenses, standing, license under YouTube's Terms of Service, implied license or estoppel, and fair use. But merely reciting defenses is not enough. Each of these issues is fact-intensive, disputed, and dependent on a developed evidentiary record.

Defendants do not present evidence establishing that any of these defenses is likely to succeed. Instead, they offer argument, often speculative, about how those defenses might apply. That is insufficient. A "reasonable possibility" requires more than identifying legal theories; it requires a showing grounded in facts, a showing Defendants avoid.

At this stage, where the claims have survived pleading and the factual record is still developing, Defendants cannot meet that burden.

####      i.    Plaintiff Has Standing to Pursue the Claims Asserted Against Defendants

Defendants' contention that Plaintiff lacks standing to pursue the claims asserted against Defendants is incorrect and rests entirely on speculation unsupported by any evidence in the record. At this time this action was filed, Plaintiff owned the copyrights to the works at issue. Subsequent agreements did not transfer the claims asserted in this case, which Plaintiff has at all times retained. (Newman Decl. ¶ 42 and Exs. D, E, and F attached thereto).

Section 501(b) of the Copyright Act provides that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement

15

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). Plaintiff satisfies this requirement because he was the undisputed owner of the works when this action commenced. (*Id.*)

As such, Defendants' authorities do not apply. Those cases address plaintiffs who never owned the copyrights, or who held only a bare right to sue. *See Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 890 (9th Cir. 2005) (holding that an assignee of an accrued infringement claim, without any ownership interest in the copyright, lacks standing); *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013) (holding that an assignment conveying only the right to sue, without meaningful ownership rights, is insufficient for standing); *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 988 (9th Cir. 2017) (holding that a nonexclusive license or assignee of bare right to sue lacks standing); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1145 (9th Cir. 2003) (holding that a plaintiff who never owned the copyright, including in a work-for-hire context, lacks standing). Plaintiff is none of those things. He is not an assignee, agent, or litigation vehicle, he is the original owner of the copyrights who filed suit in his own name.

The governing rule is that accrued infringement claims do not automatically transfer with a copyright; they transfer only if expressly assigned. *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991) (holding that an assignee may not sue for pre-assignment infringements absent an express transfer of those claims); *Silvers*, 402 F.3d at 890 (recognizing that accrued claims may be transferred, but only where expressly conveyed). If such claims are not expressly conveyed, they remain with the assignor.

That rule controls here because Defendants have identified no evidence, none, that Plaintiff ever assigned the claims asserted in this action. Nor could they. To the contrary, the governing agreements exclude claims arising from pending litigation, including this case. (Newman Decl. ¶ 42 and Exs. D, E and F attached thereto). Accordingly, the claims at issue were never transferred.

16

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

Because Plaintiff owned the copyrights at the time of filing and never transferred the claims asserted here, he remains the property party to pursue them. Defendants' standing defense, untethered to any evidence, fails to establish any likelihood of success and should be rejected outright.

### ii. There Is No Reasonable Possibility That Defendants Will Prevail on Their Express License Theory

Defendants' "express license" theory cannot form a basis for the Court to conclude that there is a reasonable possibility that they will prevail on an express license theory because it is based on a misreading of YouTube's ToS and an attempt to expand a narrow, platform-limited license into a blanket authorization to copy and republish copyrighted works.

As Defendants themselves rely on the ToS, those terms grant users only a limited, conditional license to access and use content "through the Service" and "only as enabled by a feature of the Service," and expressly clarify that the license "does not grant any rights or permissions… independent of the Service." (Lin Decl. ¶ 17 and Ex. "J" thereto, ECF No. 91-1). This limiting language is dispositive. Under basic principles of contract interpretation, courts must give effect to all provisions of an agreement and may not adopt constructions that render express limitations meaningless. Cal. Civ. Code § 1641; *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 473 (Ct. App. 1998). Defendants' interpretation, under which any user may freely download, copy, edit, and re-upload another creator's content, would read the phrase "only as enabled by a feature of the Service" out of the ToS entirely.

Defendants' conduct falls squarely outside the scope of any ToS-based license. They do not, and cannot, allege that their videos were created using YouTube's playback or embedding features. To the contrary, by Defendants own admission (which Plaintiff disputes) Huneault reproduced Plaintiff's content through screen recording, followed by off-platform editing and re-uploading as new videos. (Declaration of Jonathan Huneault dated November 24, 2025, ¶ 29, ECF No. 43-2). That is not use "through the Service," nor

17

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

is it use "as enabled by a feature of the Service." It is off-platform copying and republication, precisely the type of conduct the ToS exclude.

The ToS independently foreclose Defendants' theory for an additional reason: they prohibit reproduction, distribution, and modification of content absent permission from both YouTube and the rights holder. (Lin Decl. ¶ 17 and Ex. "J" thereto, ECF No. 91-1). Defendants do not allege that they obtained such permission, written or otherwise, from either YouTube or Plaintiff. Their theory instead relies on the existence of the ToS themselves, but those same terms expressly require authorization for the very conduct Defendants engaged in. (*Id.*)

Finally, Defendants' interpretation would eviscerate copyright protection on YouTube. If accepted, any publicly available video could be freely copied, edited, and re-uploaded by any user without permission, so long as the content originated on the platform. That is not the law, and courts do not construe contracts to produce such absurd results. For all of these reasons, Defendants' "express license" theory fails as a matter of law and provides no basis for the Court to conclude that Defendants would prevail on this basis.

Defendants' fallback assertion, that YouTube Premium provides access to a "native file" that can be freely copied or reused, is not only legally irrelevant, it is factually false. YouTube's own materials confirm that Premium downloads are not accessible media files at all but are instead stored in an encrypted format that can only be viewed within the YouTube application. As reflected in YouTube's published FAQs: "The videos are stored encrypted on the device and can only be watched in the YouTube app." (Newman Decl., ¶ 41, Ex. "C"). That alone defeats Defendants' premise. A file that is encrypted, inaccessible to the user, and restricted to in-app playback is not a "native file" capable of extraction, editing, or redistribution.

Premium provides a consumer convenience feature for offline viewing, not a mechanism to obtain or exploit copyrighted content. Defendants' effort to characterize it otherwise is nothing more than an attempt to mislead the Court. As such, it cannot support any finding that Defendants have a "reasonable possibility" of prevailing on their express

18

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

license theory.

### iii.    Defendants' Implied License and/or Equitable Estoppel Defenses Have No Reasonable Possibility of Prevailing

Defendants' implied license and equitable estoppel theories fare no better. Like their "express license" argument, these theories were constructed after the fact in an attempt to justify conduct that was plainly unauthorized. That undermines any claim that Defendants have a "reasonable possibility" of prevailing.

Under Ninth Circuit law, an implied license arises only where there is objective evidence that (1) the copyright owner created the work at the defendant's request, (2) delivered the work to the defendant, and (3) intended that the defendant copy and distribute the work. *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558–59 (9th Cir. 1990). Defendants cannot satisfy any of these elements. Plaintiff did not create his videos at Defendants' request, did not deliver them for Defendants' use, and did not manifest any intent, express or implied, to authorize Defendants to copy, edit, and republish them as monetized "reaction" content. The absence of any such objective manifestation is fatal.

Defendants attempt to avoid this defect by pointing to a single alleged interaction in which Plaintiff purportedly "participated" in one of Defendants' videos and made statements suggesting Defendants could "continue what they are doing." Even if accurately characterized, which Plaintiff disputes, such an isolated and ambiguous exchange does not come close to establishing an implied license. Courts do not infer sweeping rights to reproduce, edit, and commercially exploit copyrighted works based on informal remarks or generalized participation in online content. At most, the alleged statement reflects conversational commentary, not a clear and objective manifestation of intent to grant Defendants a license to exercise Plaintiff's exclusive rights under § 106.

Defendants' equitable estoppel theory is equally deficient. To establish estoppel, Defendants must show that: (1) Plaintiff was apprised of the facts; (2) Plaintiff intended that his conduct be relied upon, (3) the party asserting estoppel must be ignorant of the true state of facts; and (4) the party asserting estoppel must rely upon the conduct to his injury.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

*Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1028 (9th Cir. 1996) (citations omitted).

Defendants identify no such conduct. There is no allegation that Plaintiff affirmatively represented that Defendants were authorized to copy and republish his videos. Moreover, any claim of reliance is foreclosed by Defendants' own conduct. Defendants consistently asserted a fair use defense in their counter-notifications to YouTube, in their communications with Plaintiff, in their Joint Statement filed with this Court and in their first motion to dismiss. (FAC ¶¶ 59, 66, 67, ECF No. 37, ECF No. 29, 29-1). Having taken that position, Defendants cannot now claim that they instead relied on any supposed representation by Plaintiff. Their own conduct demonstrates that they were not ignorant of the relevant facts and did not rely on Plaintiff's conduct to their detriment.

In short, Defendants' implied license and equitable estoppel theories are not supported by the facts, are inconsistent with controlling Ninth Circuit authority, and were plainly manufactured to avoid liability. They do not come close to establishing a "reasonable possibility" of success and therefore cannot support Defendants' request for security.

### iv. Defendants' Fair Use Affirmative Defense Has No Reasonable Possibility of Prevailing

Defendants' fair use defense does not establish any reasonable possibility of success. Rather, the FAC alleges conduct that falls outside the protections of fair use, and Defendants have deprived the Court of the very evidence needed to evaluate that defense by failing to produce a single video in the four months since discovery began. (Newman Decl. ¶ 30). Fair use is an intensely fact-dependent inquiry; absent the videos themselves, there is no evidentiary record from which the Court could reasonably find that Defendants are likely to prevail. Worse still, because that absence stems from Defendants' own spoliation, Plaintiff may be entitled to severe Rule 37(e) sanctions, including adverse inferences that the destroyed videos infringed Plaintiff's copyrighted works and were not fair use.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

Even taking the FAC's allegations alone, the statutory factors weigh decisively against Defendants. (FAC ¶¶ 46-54). Their use is not transformative. A use is transformative only where it "adds something new, with a further purpose or different character." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). Here, Defendants' videos are built around extended, often uninterrupted segments of Plaintiff's footage, with only intermittent commentary. *See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023) (use is not transformative where it supplants the original). Defendants' content preserves the original expressive work as the primary draw, wrapped in minimal commentary and monetized as "reaction" videos.

That commercial exploitation reinforces the point. Defendants operate a monetized channel and profit from the use of Plaintiff's works. While not dispositive, commercial use "tends to weigh against a finding of fair use." *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985).

The remaining factors point the same direction. Plaintiff's works are creative audiovisual content at the core of copyright protection. Defendants copied substantial portions of those works, including extended segments that capture their expressive core. Copying even less than an entire work can weigh against fair use where what is taken is qualitatively significant. *Id.* at 564–66.

Most importantly, Defendants' use functions as a substitute for the originals. The FAC alleges that viewers can consume the core expressive content on Defendants' channel without ever visiting Plaintiff's. (FAC ¶¶ 72-76). That is classic market usurpation. *See Harper & Row*, 471 U.S. at 566 (market harm is "undoubtedly the single most important element of fair use").

Labeling the videos as "commentary" or "reaction" does not change the analysis. Fair use is unlikely where commentary is minimal and the original work remains the focus. *See L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 939 (9th Cir. 2002). That is exactly what the FAC alleges here.

Defendants offer a fact-dependent defense while withholding the facts. On the

21

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

allegations before the Court, and in the absence of any produced videos, there is no reasonable basis to conclude that Defendants are likely to succeed on fair use. Their request for security should therefore be denied.

### C.    Conduct of Parties and Plaintiff's Ability to Post Bond

Defendants' request for security is further undermined by their own conduct. As the record reflects, Defendants deleted substantial evidence central to Plaintiff's claims, including videos and related materials directly at issue in this case. (Newman Decl.). This raises a serious spoliation issue under Federal Rule of Civil Procedure 37(e), which authorizes sanctions where a party fails to preserve relevant electronically stored information, including adverse inferences. *See* Fed. R. Civ. P. 37(e); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 386 (9th Cir. 2010).

At a minimum, the existence of a significant and unresolved spoliation issue renders any prediction of Defendants' success speculative. A party cannot credibly claim a "reasonable possibility" of prevailing while simultaneously depriving Plaintiff and the Court of the evidence necessary to adjudicate the claims. That alone weighs strongly against imposing a bond.

Defendants' request is further premised on speculative and inflated estimates of recoverable costs. Their projections are driven largely by anticipated attorneys' fees, which are discretionary under the Copyright Act. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). Courts consider factors such as objective reasonableness and the need for deterrence, and often decline to award fees where, as here, the claims are non-frivolous and raise legitimate issues. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016).

Because any potential fee award is uncertain, Defendants' reliance on projected fees to justify a substantial bond is unwarranted. Finally, to the extent Plaintiff's financial condition is relevant, § 1030 is not a mechanism to impose a prohibitive barrier to suit. A bond that effectively conditions access to federal court on the ability to post substantial security is improper, particularly where, as here, the request rests on speculation rather than evidence. *Simulnet East Assoc. v. Ramada Hotel Operating Co.,* 37 F.3d 573, 575-76 (9th

22

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

Cir. 1994)

**D.    Plaintiff's Financial Status Should Not Deprive Him of Access to This Court**

Defendants attempt to justify their request by asserting that Plaintiff lacks the ability to pay costs. Their "evidence" consists largely of inadmissible statements taken from online videos and commentary. More fundamentally, the Ninth Circuit has cautioned that requiring a cost bond must not be used to deny access to courts based on financial status. "[i]n requiring a bond for defendant's costs, care must be taken not to deprive a plaintiff of access to the federal courts. To do so has serious constitutional implications." *Id.*

Courts therefore "studiously avoid limitation of access to the court because of a party's impecunious circumstance." *Id.* Here, Defendants' request would do precisely that. Plaintiff brings claims arising from Defendants' unauthorized use and exploitation of his works, conduct that, as alleged, was undertaken for Defendants' financial gain. Having profited from that conduct, Defendants now seek to impose a financial barrier that would prevent Plaintiff from pursuing those claims on the merits.

A cost bond is not a mechanism for terminating claims brought by individuals of limited means. Where, as here, the requested bond would function as a barrier to adjudication rather than a reasonable safeguard, it should not be imposed.

**E.    Plaintiff Has Pending Motion for Anti-SLAPP Fees That Offsets Any Claimed Need for Security**

On January 13, 2026, Plaintiff filed a Motion to Strike Count Three of Defendants' counterclaims. (ECF No. 61). In response, Defendants voluntarily dismissed Count Three the same day (ECF No. 62). Plaintiff's motion remains pending and seeks recovery of fees incurred in preparation of that motion.

As a matter of California law, voluntary dismissal, whether with or without prejudice, does not eliminate a moving party's entitlement to attorney's fees where the moving party achieved its litigation objective through the filing of an anti-SLAPP motion. *See Rutherford v. Palo Verde Health Care District*, 13-cv-1247-JAK (SPx), 2014 WL

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

12634510, at *5–6 (C.D. Cal. May 13, 2014). Indeed, when the non-moving party dismisses a challenged cause of action a presumption arises that the moving party is the prevailing party. *Id.* (citations omitted).

Any award of fees in Plaintiff's favor would offset, in whole or in part, any potential cost recovery Defendants claim to seek through a bond. In these circumstances, requiring Plaintiff to post security based on speculative future costs, while a fee award in Plaintiff's favor remains pending, would be inequitable and unnecessary.

Courts evaluating requests for security consider the practical realities of the litigation, including potential offsets and the parties' respective exposure. Here, Defendants' request ignores the fact that they may themselves be liable for a substantial fee award to Plaintiff. That alone counsels strongly against imposing a bond.

## VI.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss on *forum non conveniens* grounds, and their alternative request for security under California Code of Civil Procedure § 1030, should be denied in their entirety.

Dated:  March 24, 2026

/s/ Randall S. Newman
Randall S. Newman, Esq. (SBN 190547)
Address for Service:
99 Wall Street, Suite 3727
New York, NY 10005
(212) 797-3735
rsn@randallnewman.net

*Attorney for Plaintiff,*
*Christopher J. Cordova*

24

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**