March 30, 2026

**VIA ELECTRONIC FILING**

The Honorable Virginia K. DeMarchi
Magistrate Judge
U.S. District Court of the Northern District of California

**Re:**   *Cordova v. Huneault*, Case No. 25-cv-04685-VKD
Joint Discovery Letter – Plaintiff's List of Sixty-Eight Video Titles

Dear Judge DeMarchi:

Plaintiff, Christopher J. Cordova ("**Plaintiff**") and Defendants, Jonathan Hudon-Huneault, Nneka Ohiri, and 14693663 CANADA INC. ("**Defendant(s)**") (collectively the "**Parties**") submit this Joint Discovery Letter pursuant to the Court's Standing Order for Civil Cases, Paragraph 4.

## I.   Joint Statement of Disputed Issue

This dispute concerns Defendants' response to Plaintiff's Request for Production No. 6, which seeks videos uploaded to Defendants' YouTube channels that Plaintiff alleges contain footage from Plaintiff's works. On March 16, 2026, Plaintiff identified sixty-eight video titles allegedly incorporating Plaintiff's works.

The parties dispute whether the identified videos are relevant to Plaintiff's claims and Defendants' defenses, whether Plaintiff has sufficiently identified the works at issue, and whether Defendants have adequately responded to RFP No. 6, including by producing responsive materials or stating their existence and status.

## II.   Plaintiff's Position and Proposed Resolution

RFP No. 6 seeks "[a]ll copies, original, edited, or downloaded, of any video You uploaded to the Frauditor Troll Channel or any other YouTube channel within Your control between January 4, 2022 and the present that contains footage from the DMA Channel, including all drafts and source files."

In response to RFP No. 6, Huneault stated: "Files were routinely deleted. No documents exist following a reasonable search of Defendants' computers and

1

records. No other documents are believed to have existed or been deleted, and no documents are being withheld."

A copy of Defendants' RFP Responses is attached hereto as Exhibit "A".

Plaintiff identified sixty-eight videos that were publicly available on Defendants' YouTube channel at the time this action was commenced. Those videos are no longer publicly accessible. Defendants have not stated whether those videos remain in private or unlisted form, exist locally, or were deleted, nor have Defendants provided any information regarding when or how they were removed. This failure to provide a clear answer renders Defendants' response incomplete.

## 1. Relevance

Defendants object to production of the sixty-eight videos on relevance grounds, but that objection improperly conflates pleading requirements with the scope of discovery. Discovery is not limited to specifically pleaded examples; it extends to any nonprivileged matter relevant to a party's claims or defenses.

Plaintiff's § 1201 claim concerns Defendants' circumvention of technological measures to obtain Plaintiff's works. Defendants' own uploaded videos containing Plaintiff's footage are directly relevant because they show which works were obtained, the extent of copying, and the pattern and method of Defendants' conduct.

The sixty-eight identified videos are also independently relevant to Defendants' fair use defense, including the issue of market substitution, as well as to Plaintiff's § 512(f) claims, which turn in part on whether Defendants misrepresented the nature and extent of their use in the nine counter-notices submitted to YouTube.

The sixty-eight identified videos represent only those works Plaintiff has been able to identify based on publicly available information prior to their removal. The underlying archive by a third-party reflects the state of Defendants' channel as of May 1, 2023, and therefore does not capture additional videos published between that date and the commencement of this action. Plaintiff does not contend that this list is exhaustive and believes that Defendants used additional Plaintiff videos that cannot presently be identified due to Defendants' deletion and failure to preserve responsive materials.

Plaintiff would be able to identify the full scope of Defendants' use, including titles, upload dates, and corresponding source videos, but for Defendants' removal of the underlying content. Defendants cannot rely on the resulting evidentiary gap to oppose discovery.

Defendant's argument that the requested videos are not "pleaded" is irrelevant. Plaintiff does not seek to add new claims through this request, but rather to obtain evidence of the scope and nature of Defendants' use of Plaintiff's works.

Defendants' removal of these videos has prevented Plaintiff from independently identifying the corresponding source works, leaving Defendants as the only party with access to that information.

### 2.    Defendants' Control Over "Private Videos"

Defendants' assertion that "no documents exist" is demonstrably incorrect. Plaintiff has confirmed that at least two of the specifically identified videos, *Frauditors Ejected from Federal Courthouse (NEW)* (https://www.youtube.com/watch?v=eVe4eoOzPvc) and *Frauditor is Interfering With a Crime Scene* (https://www.youtube.com/watch?v=rhBUMSk_3Iw), remain on Defendant's YouTube channel in "private" status".

To the extent Defendants contend that these two videos were produced in native format, Plaintiff has been unable to locate these videos within Defendants' recent voluminous PDF production, and Defendants do not identify them in their portion of this letter.

### 3.    Defendants' Failure to Produce the Identified Responsive Videos

At the time Defendants provided their portion of the joint discovery letter, they produced approximately 840 PDF files and various video files. Plaintiff is continuing to review that production. However, based on Plaintiff's review to date, Defendants have not identified or clearly produced the sixty-eight videos identified by Plaintiff.

### 4.    Defendants' Reliance on a Specific Responsive Video Confirms Its Existence and Control

In addition to the two videos currently set to private, Defendants have expressly relied on at least one additional responsive video during this litigation.

Specifically, Defendants identified and provided a link to the video titled *Frauditor DMA Gets Confronted by Angry Citizen (Hilarious)* in a sworn declaration submitted to this Court on October 13, 2025. (ECF No. 29-1, ¶ 10).

Despite this, Defendants have not produced the source video. Instead, Defendants produced a screen-recorded version of this video from Archive.org, rather than the original file from Defendants' YouTube channel.

Plaintiff requests that Defendants produce the source video as it existed on Defendants' channel at the time this action was commenced, or state clearly whether the video was deleted and, if so, identify the date of deletion.

### 5.     Defendants' Claim that Video Files Were "Routinely Deleted"

Defendants' claim that files were "routinely deleted" is both legally insufficient and factually unsupported. The duty to preserve responsive evidence was triggered no later than the commencement of this action on June 3, 2025. At that time, all sixty-eight videos identified by Plaintiff were live and viewable on Defendants' YouTube channel.

Despite the pending litigation and the clear relevance of these videos, Defendants removed this content. This is not "routine maintenance"; it is the destruction of the primary evidence in this case. Under Fed. R. Civ. P. 37(e), Defendants were obligated to preserve this ESI.

Defendants' position is also internally inconsistent. In their written responses, Defendants stated that files were "routinely deleted," yet in this dispute refuses to identify which responsive videos existed, which were deleted, or whether any remain in private, unlisted, or local form. This ambiguity underscores the deficiency of Defendants' response.

### 6.     Plaintiff's Identification of Sixty-Eight Responsive Videos

Plaintiff has identified sixty-eight specific videos, by title, that contained Plaintiff's footage and were publicly available at the time this action was filed. These videos are directly responsive to RFP No. 6 and central to Plaintiff's claims and Defendants' asserted defenses.

Plaintiff does not have access to the URLs or unique identifiers for these videos. As a result, Plaintiff cannot independently determine whether the videos

remain available in "private" or "unlisted" status, or whether they have been deleted. That information is uniquely within Defendants' possession, custody, or control.

Plaintiff identified these videos by their exact published titles as they appeared on Defendants' YouTube channel. Defendants created, uploaded, and controlled these videos and are uniquely positioned to identify and locate them. To the extent Defendants contend that titles alone are insufficient, Plaintiff's ability to provide additional information has been compromised by Defendants' removal of the videos after this action was commenced.

Accordingly, Defendant must identify which responsive videos exist and whether they remain within Defendants' possession, custody, or control.

### 7. Defendants' Failure to Clarify the Status of the Missing Videos

Defendants have refused to state clearly what videos: (1) remain in their possession, custody or control; or (2) were permanently deleted after this litigation was commenced.

This failure to provide a clear answer renders Defendants' responses incomplete.

### 8. Defendants' Obligations Under Rules 26(g) and 34

Under Federal Rule of Civil Procedure 34, a party must produce documents and electronically stored information within its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). A party's obligation extends not only to materials in its physical possession, but also to materials it has the legal right or practical ability to obtain.

Rule 26(g) further requires that discovery responses be complete and correct to the best of the responding party's knowledge after a reasonable inquiry. Fed. R. Civ. P. 26(g)(1). A party may not satisfy its obligations by providing incomplete responses or by refusing to clarify whether responsive materials exist or are within its control.

Where a requesting party identifies specific responsive materials, the responding party must either produce those materials or state clearly that they are not within its possession, custody, or control.

### 9.    Relief Requested

Plaintiff seeks an order compelling Defendants to:

(1) produce the two videos currently set to "private" status on YouTube in native format (to the extent not already produced in a clearly identifiable form);

(2) produce the video Defendants relied on in Huneault's Declaration dated October 13, 2025 (ECF No. 29-1, ¶ 10) in native format as it existed on their YouTube channel at the time this action was commenced; and

(3) serve a verified supplemental response for each of the identified videos stating: (a) whether the video currently exists in any format (private, unlisted, or local storage); and (b) if deleted, the approximate date of deletion and the circumstances of deletion.

## III.    <u>Defendant's Position and Proposed Resolution</u>

Counts 1-2 are two registered videos. Count 3 was dismissed. Count 4 (TPM circumvention) relates to allegedly improper download of <u>Plaintiff's works</u>. **However,** RFP No. 6 requests Defendants' videos, not Plaintiff's works. This is a fishing expedition to expand this case multi-fold *after* deadline to amend passed. Plaintiff abandoned his motion for adding another video (ECF No.89).

The timing of Plaintiff's dispute is concerning. This was raised three hours after Defendants filed their motion for *forum non conveniens*, or security for costs ("**Defendants' Motion**"). Plaintiff's key opposition argument are discovery allegations, including recycling the spoliation assertion.

This Court already addressed Plaintiff's assertion of spoliation in an *ex parte* application for a protective order denied on June 23, 2025 (ECF No. 10). Circumstances have not changed. This Court noted the irony of Plaintiff's position:

> "[Plaintiff] *has shown only that Mr. Huneault took down the allegedly infringing content* **(and other content not at issue)** *from Mr. Huneault's YouTube channel after receiving notice of this action, an outcome Mr. Cordova* <u>specifically requested</u> *via a "takedown notice" he submitted to YouTube ...*"

6

### A. Plaintiff Misdirecting the Court on What He Was/Is Claiming.

Plaintiff omitted the critical fact that his Complaint was amended twice, each amendment is crucial to understanding Plaintiff's bald assertions:

**Original Complaint** (06/03/2025): Plaintiff pleaded **one** of Defendant's video infringed **one** of Plaintiff's work (¶32,38). Defendant promptly took down the video, as Plaintiff requested. A copy of it was preserved, and Plaintiff was provided a link.[1] Unrelated content were also taken down from YouTube as Plaintiff's counsel was improperly soliciting clients for new lawsuits against Defendants and other YouTubers.[2]

**Amended Complaint** (08/30/2025): Plaintiff adds **two** additional works he claims was infringed in **two** of Defendants' videos (¶35-42). Plaintiff added a new misrepresentation claim under 17 U.S.C. 512(f). **Notably**, this amendment was two months *after* the *ex parte* application was denied, after Plaintiff knew that videos not at issue were also taken down.

**First Amended Complaint** (11/03/2025): Plaintiff **adds a new count** for TPM circumvention under § 1201. RFP No.6 solely relates to the new allegation in paragraph 118 where Plaintiff claims that Defendants downloaded Plaintiff's works using "ripping software."

### B. Plaintiff Never Pleaded What Works was Improperly Downloaded

Count 4 solely focusses on <u>Plaintiff's works, **not** Defendants' videos</u> (i.e., allegation is improper downloading Plaintiff's works). This Court stated **repeatedly** that plaintiffs claiming circumvention must properly identify their standing for the claim,[3] clearly pleading and proving <u>plaintiff's copyright work in question</u> **and** <u>plaintiff's ownership</u> of those identified works.

---

[1] Plaintiff acknowledged receiving the link months ago. However, he wants a computer file instead, which has been produced. Plaintiff previously submitted that a URL link suffices (ECF #23-1, ¶7).

[2] Defendants will provide evidence of solicitations at a hearing with social media posts/videos.

[3] *Viral DRM LLC v. Fadilah*, No.3:23-cv-05594-JSC, 2025 WL 822688, *3 (N.D.Cal., Mar.14,2025); *Viral DRM LLC v. Lietucheva*, No.3:23-cv-04300-JSC, 2025 WL 822689 at *4 (N.D.Cal., Mar.14,2025); *Viral DRM LLC v. Seven West Media Limited*, 768 F.Supp.3d 1025, 1031 (N.D.Cal., Feb.28,2025).

Besides failure to identify works allegedly downloaded improperly, this is further propounded by Plaintiff's **unclear** ownership with assignment(s) (ECF No. 39, ¶18). Defendants raised this concern that Plaintiff only has a "bare right to sue" (ECF #81, pages 4-6). Plaintiff's failure to identify his works allegedly downloaded conveniently avoids scrutiny of his standing.

**Moreover**, Plaintiff is taking contradictory positions (ECF #89). Plaintiff accepted that if a video is no longer on YouTube, it would not be part of this case.

## C. Plaintiff Failed to Identify Which Defendants' Works Are Disputed.

For the TPM circumvention count, it is crucial to plead the plaintiff's works in question. Plaintiff failed to do so. On March 16, 2026, Plaintiff purports to provide a list of 68 Defendants' videos he claims is infringing Plaintiff's works but are not in his Complaint, despite acknowledging his information was from May 2023.

Without a proper pleading of what Plaintiff's works and Defendants' videos in question, this claim would be **infinitely open-ended** with Plaintiff deriving any list imaginable. **Plaintiff is bypassing** the requirement to identify his copyright works, given his uncertain status as to ownership.

Defendant's position is that there is no discovery dispute. There is no merit when Plaintiff failed to even identify what works, if any, he claims was downloaded Rather, Plaintiff is seeking to distract from Defendants' Motion. The RFPs were responded to in January. Plaintiff waited until hours after Defendants' Motion was served to raise concerns. Plaintiff provided his list of 68 videos a week later, without any YouTube links or context, and commenced this discovery dispute (attached as Exhibit B, dated 03/16/2026).

To the extent Plaintiff has questions about Defendants' video retention practices, it can be asked at the deposition.

Below, Defendants respond to each heading in Plaintiff's section.

### 1. Relevance

None of 68 items in Exhibit B are relevant. They could not be relevant to the § 1201 claim at all as Plaintiff has not pleaded a single work of his for that claim.

For the fair use defense on the two specific videos in Count 1 (infringement), it is unclear how countless *other videos* inform whether there is fair use for the two pleaded videos. The "market substitution" is comparison between each of Plaintiff's two videos with the two corresponding Defendants' videos.

For § 512(f), Plaintiff makes no effort to establish how the 68 items in Exhibit B can be relevant for a misrepresentation claim. The First Amended Complaint only asserts misrepresentation based on a "fictious address" and a "boilerplate paragraph." It is unclear how *other videos* are relevant.

Plaintiff is well aware that many videos were taken offline after the action was initially filed. Plaintiff avoids addressing the fact that his initial claim only involved **one video**, and nothing more. Plaintiff is abusing the "relation back" theory to retroactively manufacture a spoliation argument that was already rejected. The duty to preserve documents in June 3, 2025 attached to claims pleaded then, specifically that one video, not unrelated content added later.

### 2. Defendant's Control Over "Private Videos"

Both YouTube links are not pleaded in Complaint. First link was the video Plaintiff abandoned in ECF No. 89. Second link was raised only when this draft letter was circulated.

The fundamental problem with Plaintiff's rolling lists is that they are not relevant. The Plaintiff is putting the cart before the horse. **Without pleading which of his works was downloaded, he cannot claim standing for circumvention of TPMs of unidentified works.**

### 3. Defendants' Failure to Produce the Identified Responsive Videos

Plaintiff's 68 items in Exhibit B was not requested in a Request for Production. Plaintiff claims his information was from May 2023 but no explanation why he did not plead it, nor why he did not include it in a Request for Production. He only raises it when the Defendants' Motion was filed.

### 4. Defendants' Reliance on a Specific Responsive Video Confirms Its Existence and Control

Plaintiff is conflating different videos. The relevant videos were produced.

### 5.    *Defendants' Claim that Video Files Were "Routinely Deleted"*

Plaintiff is not being forthright with the Court on what he is claiming and <u>when</u>. The original Complaint pleaded <u>one</u> Plaintiff's video infringed by <u>one</u> Defendant's video, which was preserved.

Routine deletion of large video files is typical. Plaintiff can depose Defendants on their retention practices.

### 6.    *Plaintiff's Identification of Sixty-Eight Responsive Videos*

Plaintiff failed to identify what <u>Plaintiff's work</u> was improperly downloaded. Nor was the Plaintiff's ownership in these unidentified works ever pleaded.

### 7.    *Defendant's Failure to Clarify the Status of the Missing Videos*

Plaintiff is not engaging in discovery for merits of the case but rather engaging in a game of "gotcha" to confuse the Court. Plaintiff is aware that "*content not at issue*"[4] were taken offline, and he is trying to go around this Court's finding by relying on counts that he *later* added to Complaint.

In any event, Plaintiff can question the Defendants at a deposition.

### 8.    *Defendant's Obligations Under Rules 26(g) and 34*

Defendants fully complied with their obligations. Plaintiff's list in Exhibit B were **never** made in a Request for Production, without any opportunity to respond under the rules. Plaintiff is trying to bypass Rule 34.

### 9.    *Relief Requested*

It is <u>premature</u> to grant Plaintiff relief. Plaintiff should bring a motion to amend their complaint to identify Plaintiff's works he claims was illegally downloaded, and his alleged ownership thereof. Without a proper Complaint, this case would evolve into a massive fishing expedition of new allegations and videos.

---

[4] ECF#10, p. 2, line 19.

## IV.    **Plaintiff's View on a Hearing**

Plaintiff believes a hearing would assist the Court in resolving this dispute and respectfully requests that any hearing be conducted via Zoom. Plaintiff's counsel is currently located outside the United States and unavailable to travel on or about April 14, 2026.

A remote hearing is appropriate because this dispute concerns ESI and does not require in-person presentation of evidence. Defendants' request for an in-person hearing would impose unnecessary travel burden and expense without any corresponding benefit.

A remote hearing would allow the Court to address Defendants' failure to produce usable videos and to clarify the status of the identified materials.

## V.    **Defendant's View on a Hearing**

Defendants agree a hearing would assist. Defendants request the hearing be convened **in-person on April 14, 2026**, alongside the Defendants' Motion. Plaintiff raised this discovery dispute within hours of the Defendants' Motion being filed and is  relying on this in opposition to Defendants' Motion. It would be most expedient to address all issues together.

An in-person hearing would allow Defendants to display media files that were produced, illustrating how they are irrelevant. Defendants also intend to present evidence that this discovery dispute was not raised in good faith, and the Plaintiff's claim resembles a claim from a copyright troll.

## VI.    **Discovery Cut-Off Dates**

Fact discovery cut-off date: June 30, 2026
Expert discovery cut-off date: August 31, 2026

## VII.    **Compliance with Meet and Confer Requirement**

The parties met and conferred on this dispute on March 23, 2026 via Zoom, but were unable to resolve this dispute.

Dated: March 30, 2026

Respectfully submitted,                        Respectfully submitted,

By: s/ Randall S. Newman                       By: s/       Simon Lin
Randall S. Newman, Esq. (190547)               Simon Lin – State Bar No. 313661
270 Madison Ave., 10th Floor        4388 Still Creek Drive, Suite 237
New York, NY 10016                             Burnaby, B.C., Canada V5C 6C6
(212) 797-3735                                 T : 604-620-2666; F : 778-805-9830
rsn@randallnewman.net                          E : simonlin@evolinklaw.com

*Attorney for Plaintiff,*                       *Attorney for Defendants Jonathan*
*Christopher J. Cordova*                         *Hudon-Huneault, Nneka Ohiri, and*
                                                *14693663 Canada Inc.*

12

Steven C. Vondran, [SBN 232337]
**THE LAW OFFICES OF STEVEN C. VONDRAN, PC**
One Sansome Street, Sansome St #3500,
San Francisco, California 94104
Telephone: (877) 276-5084
steve@vondranlegal.com

Attorney for Defendants and Counterclaimants: JONATHAN HUDON-HUNEAULT, NNEKA OHIRI, and 14693663 CANADA INC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| CHRISTOPHER J CORDOVA, an individual<br><br>         Plaintiff,<br><br>    vs.<br><br>JONATHAN HUDON-HUNEAULT, NNEKA OHIRI, and 14693663 CANADA INC.<br><br>         Defendants. | No. 5:25-cv-04685-VKD<br><br>Judge: Honorable Virginia K. DeMarchi<br><br>**DEFENDANT JONATHAN HUDON-HUNEAULT'S RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION – SET ONE** |

**[DEFENDANT JONATHAN HUNEAULT RESPONSE TO REQUEST FOR DOCUMENTS, SET ONE]**

## A. GENERAL OBJECTIONS

Defendant, by and through undersigned counsel, hereby responds to Plaintiff's Requests for Production of Documents ("Requests") pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure. These Responses are made subject to the following

[**Summary of pleading**]Doc ID: 71babd34e727885186b4d662d18299586872e163

EXHIBIT A - Page 1 of 2

**REQUEST FOR PRODUCTION NO. 3:**

All agreements between You and YouTube regarding the monetization of the Frauditor Troll Channel.

**RESPONSE**

Will produce the standard agreement between content creator and YouTube

**REQUEST FOR PRODUCTION NO. 4:**

All agreements between You and Ohiri regarding the ownership of the Frauditor Troll Channel.

**RESPONSE**

No documents exist following a reasonable search of Defendants computers and records. No other documents are believed to have existed or been deleted, and no documents are being withheld.

**REQUEST FOR PRODUCTION NO. 5:**

All videos, video files, or recordings downloaded, copied, captured, or otherwise obtained from the DMA Channel from January 4, 2022 to the present.

**RESPONSE**

No documents exist following a reasonable search of Defendants computers and records. No other documents are believed to have existed or been deleted, and no documents are being withheld.

**REQUEST FOR PRODUCTION NO. 6:**

All copies, original, edited, or downloaded, of any video You uploaded to the Frauditor Troll Channel or any other YouTube channel within Your control between January 4, 2022 and the present that contains footage from the DMA Channel, including all drafts and source files.

**RESPONSE**

Files were routinely deleted. No documents exist following a reasonable search of Defendants computers and records. No other documents are believed to have existed or been deleted, and no documents are being withheld.

JONATHAN HUNEAULT RESPONSE TO REQUEST FOR PRODUCTION SET ONE       4

Doc ID: 71babd34e727885186b4d662d18299586872e163

EXHIBIT A - Page 2 of 2