UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHRISTOPHER J. CORDOVA, <br><br> Plaintiff, <br><br> v. <br><br> JONATHAN HUNEAULT, et al., <br><br> Defendants. | Case No.  25-cv-04685-VKD <br><br> **ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS WITH LEAVE TO AMEND** <br><br> Re: Dkt. No. 64 |

Plaintiff Christopher Cordova moves to dismiss defendants' first and second counterclaims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Dkt. No. 64. Defendants oppose the motion.  Dkt. No. 79.  The Court finds this motion suitable for determination without oral argument.  *See* Civil L.R. 7-1(b).

Upon consideration of the moving and responding papers, the Court grants the motion to dismiss, with leave to amend.

I.    **BACKGROUND**

On January 6, 2026, defendants[1] filed an answer to the operative complaint and a counterclaim asserting three counterclaims against Mr. Cordova.  Dkt. Nos. 57, 58.  In support of their counterclaims, defendants allege that they operate the "Frauditor Troll" YouTube channel which is focused on "news reporting, commentary, criticism, and analysis of publicly available online videos and matters of public interest."  Dkt. No. 58 ¶ 4.  Defendants allege that Mr. Cordova "publishes videos on YouTube . . . consisting of recordings of interactions with law

---

[1] For convenience, in this order the Court refers to defendants and counterclaimants as "defendants," and refers to plaintiff and counterclaim defendant as "Mr. Cordova."

United States District Court
Northern District of California

enforcement and public officials in public spaces." *Id.* ¶ 5. Among other things, defendants say they have published "videos" that are "a parody of [Mr. Cordova's] videos." *Id.* ¶ 8.

Defendants allege that "[i]n or around early 2022," Mr. Cordova became aware of the Frauditor Troll channel and defendants' coverage of Mr. Cordova's videos. *Id.* ¶ 10. According to defendants, Mr. Cordova expressly and implicitly indicated to defendants that Mr. Cordova did not object to defendants' use of his videos, even going so far as to affirmatively encourage defendants' use his videos in defendants' "livestream" programming. *See id.* ¶¶ 11-18.

According to defendants, at some point, Mr. Cordova "abruptly submitted" multiple Digital Millennium Copyright Act (DMCA) takedown notices to YouTube requesting removal of defendants' videos. *Id.* ¶¶ 21-26. Thereafter, defendants say they "faced the imminent termination" of the Frauditor Troll channel under YouTube's copyright enforcement policies. *Id.* ¶ 26. Defendants allege that to prevent permanent loss of the Frauditor Troll channel, they were "compelled" to submit DMCA counter-notices to YouTube, which constituted the only available mechanism to restore their videos and avoid termination. *Id.* ¶ 27. Defendants claim that as a direct and proximate result of Mr. Cordova's actions, defendants suffered immediate and substantial financial harm. *Id.* ¶ 31. Specifically, defendants claim they experienced "a documented loss of advertising revenue exceeding $9,000 in the immediate aftermath of the copyright strikes." *Id.* ¶ 32. Defendants further allege that the Frauditor Troll channel has suffered "algorithmic suppression, delayed recovery, and prolonged revenue loss over subsequent months as a result of the strikes," and that Mr. Cordova's actions have disrupted defendants' sponsorship and business relationships and damaged defendants' reputation, goodwill, and business expectancy. *Id.* ¶¶ 33-35.

Defendants assert three counterclaims against Mr. Cordova: (1) bad faith misrepresentation in DMCA takedown notices in violation of 17 U.S.C. § 512(f), (2) declaratory judgment of non-infringement of copyright, and (3) tortious interference with prospective economic advantage. Dkt. No. 58. Defendants have since withdrawn the third counterclaim. *See* Dkt. No. 62. Mr. Cordova moves to dismiss the first and second counterclaims for lack of standing (second counterclaim) and for failure to state a claim (first and second counterclaims). Dkt. No. 64; *see*

2

*also* Dkt. No. 111. Defendants oppose the motion and ask the Court to consider several documents outside the pleadings. Dkt. Nos. 79, 80. In addition, defendants have filed a separate "objection to reply evidence." Dkt. No. 86.

## II.    LEGAL STANDARD

Counterclaims are governed by the same pleading standards that apply to complaints, and likewise, a motion to dismiss a counterclaim is judged according to the standards that apply to a motion to dismiss a claim in a complaint. *Strojnik v. Ensemble Hotel Partners, LLC*, No. 19-cv-01844-VKD, 2019 WL 5595169, at *2 (N.D. Cal. Oct. 30, 2019).

### A.    Rule 12(b)(1)

A challenge based on lack of Article III standing is a challenge to a court's subject matter jurisdiction, and is properly brought under Rule 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). To establish standing, a plaintiff must plausibly allege (1) an "injury in fact," (2) that is fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation marks omitted). To be particularized, an injury "must affect the plaintiff in a personal and individual way," and to be concrete, the injury must be real and not abstract. *Id.* at 339-40 (internal quotation marks omitted).

A plaintiff has the burden to establish standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. "[S]hould a plaintiff fail to meet his standing burden, the lawsuit must be dismissed under Rule 12(b)(1)." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1033 (N.D. Cal. 2019).

### B.    Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to

support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id.*

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Moreover, the Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Prager Univ. v. Google LLC*, No. 17-cv-06064-LHK, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)). Nor does the Court accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if the facts pled permit the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

## III.    DISCUSSION

The Court first addresses defendants' request that the Court consider several documents outside the pleadings, as well as their objections to Mr. Cordova's reply evidence, before addressing the parties' arguments regarding the first and second counterclaims.

### A.    Defendants' Request for Consideration of Documents Outside the Pleadings

Defendants ask the Court to consider the following materials in resolving Mr. Cordova's motion to dismiss: (1) YouTube's terms of service; (2) YouTube's DMCA takedown notice form;

and (3) YouTube's DMCA counter-notice form. *See* Dkt. Nos. 79-1, 80. Mr. Cordova did not respond to defendants' request and presumably does not oppose it.

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Id.*

### 1.    Incorporation-by-Reference Doctrine

"Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom— their claims." *Id.* "[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *see also Khoja*, 899 F.3d at 1002 (same). However, documents may be incorporated into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja*, 899 F.3d at 1002 (citation modified; citation omitted).

Defendants argue that the Court properly may consider YouTube's DMCA takedown notice form and counter-notice form under the incorporation-by-reference doctrine. Dkt. No. 80 at 2-3 (referring to Exhibits B and C). However, defendants do not identify any specific takedown notices or counter-notices in their counterclaims. Similarly, the counterclaims do not refer to the terms of any specific notices or counter-notices, or even to the "standard" terms of YouTube's forms. For these reasons, the Court concludes that defendants have not shown that the Court properly may consider YouTube's standard DMCA takedown notice form or counter-notice form as incorporated by reference. Accordingly, the Court denies defendants' request for consideration of these form notices under the incorporation-by-reference doctrine.

### 2.    Judicial Notice

Federal Rule of Evidence 201 permits the Court to take judicial notice of "a fact that is not

5

subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *see also Khoja*, 899 F.3d at 999 (same). Accordingly, a court may take judicial notice of matters of public record.  *Khoja*, 899 F.3d at 999. "But a court cannot take judicial notice of disputed facts contained in such public records."  *Id.*

Defendants argue, in the alternative, that the Court properly may take judicial notice of YouTube's standard DMCA takedown notice form and counter-notice form, and may also take judicial notice of YouTube's terms of service.  Dkt. No. 80 at 2-3 (referring to Exhibits A, B, and C).  As noted above, defendants' counterclaims do not refer to or rely on the "standard" terms of YouTube's DMCA notices or counter-notices.  Thus, there is no reason for the Court to take judicial notice of these documents in order to resolve the motion to dismiss.  With respect to YouTube's terms of service, while defendants correctly observe that, in appropriate circumstances, terms of service such as these may be the subject of judicial notice, there is no reason for the Court to take judicial notice here, where the counterclaims do not rely on YouTube's terms of service. Accordingly, the Court denies defendants' request for judicial notice of the terms of service or the form notices.

### B.    Objections to Reply Evidence

After Mr. Cordova filed a reply, Dkt. No. 84, defendants filed an "objection to reply evidence."  Dkt. No. 86.  This objection is not well-taken.  Civil Local Rule 7-3(d)(1) provides: "If new evidence has been submitted in the reply, the opposing party may file and serve an Objection to Reply Evidence . . . stating its objections to the new evidence, which may not include further argument on the motion."  Civil L.R. 7-3(d)(1).  Here, Mr. Cordova did not submit any new evidence with his reply, but only responded to arguments and theories *defendants* raised in their opposition for the first time.  *See* Dkt. Nos. 79, 84.

As defendants did not obtain leave of Court to file what effectively constitutes a "sur-reply" in opposition to Mr. Cordova's motion, the Court does not consider defendants' arguments in their "objection to reply evidence."

United States District Court
Northern District of California

United States District Court
Northern District of California

## C.    First Counterclaim

Defendants assert a counterclaim under 17 U.S.C. § 512(f)(1), alleging that Mr. Cordova made knowing and material misrepresentations in the DMCA takedown notices that he filed against defendants' videos.  Dkt. No. 58 ¶¶ 36-49.  Specifically, defendants allege that Mr. Cordova's takedown notices falsely asserted that defendants' videos infringed his copyrights because Mr. Cordova "knew that [defendants'] videos were 'mockery' and parody commentary and reaction videos incorporating only necessary portions of [Mr. Cordova's] content for purposes of criticism, discussion, and public commentary of matters involving the First Amendment."  *Id.* ¶ 39.  In addition, defendants allege that Mr. Cordova "knew that [he] had expressly authorized, encouraged, and consented to" defendants' use of his videos.  *Id.* ¶ 41.

Section 512(f) contemplates liability for abuse of the notice and takedown procedures in the DMCA.  17 U.S.C. § 512(f); *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151 (9th Cir. 2016).  Section 512(f)(1) applies when a copyright holder knowingly misrepresents in a takedown notice that the accused material is infringing.  *See Lenz,* 815 F.3d at 1151.  To state a claim for misrepresentation under 17 U.S.C. § 512(f)(1), a plaintiff must plead facts plausibly showing (1) that the defendant knowingly and materially misrepresented that copyright infringement has occurred; (2) the internet service provider relied on the misrepresentation in removing the accused material; and (3) the plaintiff was injured as a result.  *See Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1026 (N.D. Cal. 2015).  Whether a misrepresentation was made "knowingly" is assessed against a subjective standard.  *See Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004-05 (9th Cir. 2004).  "A copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake."  *Id.* at 1005. "Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner" in submitting the takedown notice.  *Id.*

Mr. Cordova moves to dismiss the first counterclaim on several grounds.  *First*, he argues that defendants fail to plead any material misrepresentations on which YouTube (the service provider) relied.  Dkt. No. 64 at 9-10.  Defendants respond that the misrepresentations are contained in 12 DMCA takedown notices alleging copyright infringement with respect to three of

7

Mr. Cordova's videos—*Courthouse Fail*, *Another Chad*, and *Belmar Library*. Dkt. No. 79 at 2. Defendants argue that the misrepresentations in each takedown notice are identical and consist of "representing that [Mr. Cordova] has a good faith belief that the use of the material is not authorized by the copyright owner or the law." *Id.* at 6. According to defendants, such representations are false because (1) defendants were "expressly licensed" under YouTube's terms of service "to prepare derivative works" of Mr. Cordova's videos, (2) defendants enjoyed an "implied license" authorizing them to use Mr. Cordova's videos, and (3) defendants' use of Mr. Cordova's videos constituted "fair use." *Id.* at 6-8.

The Court agrees that the first counterclaim fails to adequately allege any material misrepresentation by Mr. Cordova. Among other defects, defendants' pleading fails to identify which of Mr. Cordova's copyrighted works are at issue, which of defendants' videos are at issue, and what allegedly false statements were made in which takedown notices. *See Sosa v. AT&T*, No. 25-cv-01310-WHO, 2025 WL 3719229, at *5 (N.D. Cal. Dec. 23, 2025) (dismissing DMCA claim where "[n]either side addresse[d] what copyrighted material the DMCA Notice identified as being infringed by [plaintiff's] video" because "what was represented on that Notice is critical to the question of whether there was a knowing misrepresentation under section 512(f)"). To the extent defendants contend they were expressly or impliedly licensed to use all of Mr. Cordova's copyrighted works, or even the three videos they identify in their opposition, they fail to plead facts plausibly supporting such a contention. Similarly, to the extent defendants contend that Mr. Cordova's takedown notices falsely asserted defendants' videos infringed, when they were instead protected by the "fair use" doctrine, defendants do not plausibly allege, as to any specific video, that such video is entitled to fair use protection as a matter of law, or any other facts suggesting Mr. Cordova conceded such protection applied. As the Court stated in a prior order:

> To the extent defendants ask the Court to find as a matter of law that defendants' use of content from Mr. Cordova's videos in their own videos posted on the Frauditor Troll Channel constitutes "fair use" of that content, *see* Dkt. No. 43-1 at 2-3, the Court denies the motion on this point, as such a determination would require the Court to resolve disputed questions of fact. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 549, 560 (1985) (fair use is "a mixed question of law and fact" that "requires a case-by-case

8

determination whether a particular use is fair"); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012) (fair use is "a mixed question of law and fact"); *Stebbins v. Polano*, No. 21-cv-04184-JSC, 2021 WL 2682339, at *3 (N.D. Cal. June 30, 2021) (quoting *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 530 (9th Cir. 2008)) (fair use is "[t]ypically considered at the summary judgment stage" and may only be considered on a motion to dismiss "where no material facts are in dispute").

Dkt. No. 65 at 8. In short, the mere fact that defendants believe their use of Mr. Cordova's videos constitutes non-infringing fair use does not, without more, make Mr. Cordova's statement of his contrary belief a "misrepresentation" for purposes of § 512(f). Defendants have not pled the "more" necessary to plausibly allege a misrepresentation here, and they may not attempt to cure the defects in their pleading by relying on assertions made in their opposition. *E.g.*, *Barnes v. Campbell Soup Co.*, No. 12-cv-05185 JSW, 2013 WL 5530017, at *2 (N.D. Cal. July 25, 2013) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (citing *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003)).

*Second*, Mr. Cordova argues that defendants fail to plead facts showing Mr. Cordova had actual knowledge of the falsity of representations in takedown notices he submitted to YouTube. Dkt. No. 64 at 7-9. Defendants respond that they have adequately pled facts from which the Court may plausibly infer that Mr. Cordova made misrepresentations in subjective bad faith. Dkt. No. 79 at 5-8. It is not clear which allegations in the counterclaim defendants believe satisfy this element. They point only to allegations that the Court has already concluded do not sufficiently identify the representations at issue or why they are false. The only other counterclaim allegations regarding Mr. Cordova's subjective bad faith are entirely conclusory. *See* Dkt. No. 58 ¶¶ 25, 46. In these circumstances, no plausible inference of subjective bad faith can be drawn from defendants' pleading.

*Third*, Mr. Cordova argues that defendants fail to plead facts plausibly showing that defendants were injured as a result of Mr. Cordova's alleged misrepresentations in DMCA takedown notices. Dkt. No. 64 at 10-12. Defendants argue that they have alleged loss of revenue and other harm as a result of actions YouTube took to suspend or terminate their Frauditor Troll

9

channel in response to multiple takedown notices Mr. Cordova submitted. Dkt. No. 79 at 8. The Court agrees with Mr. Cordova. While defendants have alleged that they suffered harm as a result of "the copyright strikes," *see, e.g.,* Dkt. No. 58 ¶ 32, they have not plausibly alleged any connection between that harm and any specific misrepresentation by Mr. Cordova.

For these reasons, the Court concludes that defendants' first counterclaim fails to state a claim for violation of 17 U.S.C. § 512(f)(1).

### D.    Second Counterclaim

Defendants assert a counterclaim under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., for declaratory judgment of non-infringement of copyright. Dkt. No. 58 ¶¶ 50-61. Specifically, defendants seek "a declaration that [their] videos do not infringe [Mr. Cordova's] copyrights, that such videos constitute fair use under the Copyright Act, and that [Mr. Cordova] granted [defendants] a nonexclusive license, express or implied, to use the content at issue." *Id.* ¶ 60. Mr. Cordova moves to dismiss this counterclaim for lack of Article III standing under Rule 12(b)(1), arguing that because defendants fail to identify any specific videos or copyrighted works for which declaratory relief is sought, defendants fail to establish the existence of any actual case or controversy. Dkt. No. 64 at 12-13. Mr. Cordova also moves to dismiss on the ground that defendants fail to state a claim with respect to the existence of a non-exclusive license authorizing them to copy or use any and all of Mr. Cordova's copyright works. *Id.* at 13-16. Finally, Mr. Cordova contends that, to the extent defendants' declaratory judgment claim merely "repackages" defendants' affirmative defenses to Mr. Cordova's claims, the claim is duplicative of issues already before the Court and should be dismissed on that basis. *Id.* at 2, 17.

#### 1.    Defendants' Failure to Allege Standing and Failure to State a Claim

Mr. Cordova's Rule 12(b)(1) and Rule 12(b)(6) arguments are based on the same objections: the counterclaim fails to identify the specific Frauditor Troll videos or copyrighted works at issue and fails to plausibly plead facts supporting the elements of an express or implied license. *See* Dkt. No. 64 at 12-16. Essentially, Mr. Cordova argues that the existence of a "case or controversy" has not been adequately pled for the same reasons defendants' fair use and license claims have not been adequately pled—i.e., the second counterclaim does not state facts sufficient

10

to identify the videos or copyrighted works at issue and terms of any license. Defendants respond that the "relevant videos are known to the plaintiff" and that the counterclaim adequately pleads the elements of an express and implied license. Dkt. No. 79 at 9-10. The Court agrees with Mr. Cordova.

As explained above with respect to the first counterclaim, defendants do not adequately allege the nature and extent of the controversy between the parties. The second counterclaim generally describes the type of videos that the parties create, alleges that Mr. Cordova owns unspecified copyrights, and asserts that Mr. Cordova submitted "multiple copyright takedown notices against Counterclaimant[s]." *See* Dkt. No. 58 ¶¶ 4, 5, 8, 21. From these general allegations, defendants purport to seek a declaratory judgment that they are not liable for infringing *any* of Mr. Cordova's copyrights, that *all* of their videos constitute fair use of Mr. Cordova's videos, and that Mr. Cordova granted defendants a non-exclusive license to use *all* of his content. *Id.* ¶ 60. In their opposition, defendants argue that "it is apparent" that the copyrighted works at issue are the three videos referenced in Mr. Cordova's complaint. Dkt. No. 79 at 9 (citing Dkt. No. 39 ¶¶ 46-54). But the counterclaim itself is not at all clear on this point.

The Court also is not persuaded by defendants' argument that they have adequately pled the terms of an express or implied license. In their opposition, defendants argue that YouTube's terms of service contain an express license that authorized their use of Mr. Cordova's videos. Dkt. No. 79 at 6, 9. In addition, defendants argue that the "totality of the parties' conduct" gave rise to an implied license. *Id.* at 10. Defendants did not plead any license theory based on YouTube's terms of service and the Court will not consider it here. *See, e.g.*, *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010) ("It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." (citation omitted)). In any event, the second counterclaim does not plausibly allege the existence of an implied license based on the "totality of the parties' conduct." *See* Dkt. No. 79 at 7 (citing Dkt. No. 58 ¶¶ 41-45). Defendants' implied license theory is based solely on allegations that Mr. Cordova made conciliatory remarks to defendant Mr. Huneault during an interview that referenced no specific copyrighted works, sent other videos (not the copyrighted works at issue) to defendants, and participated in defendants'

11

"livestream" programming. Such allegations do not plausibly support defendants' claim that they enjoyed an implied license to use all of Mr. Cordova's copyright works or any specific copyright work or that Mr. Cordova intended to provide such a license. *See, e.g., Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754-57 (9th Cir. 2008) (discussing elements of implied license).

For these reasons, the Court concludes that defendants' second counterclaim fails to plead the existence of a "case or controversy" as to any specific works or videos, and fails to state a claim for declaratory judgment.

### 2.     Appropriateness of Declaratory Judgment Claim

Mr. Cordova argues that defendants' declaratory judgment claim merely "repackages" defendants' affirmative defenses to Mr. Cordova's claims and is, therefore, duplicative of issues already before the Court and should be dismissed on that basis. Dkt. No. 64 at 2, 17.

Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy," the Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). While "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate," Fed. R. Civ. P. 57, a claim for declaratory relief may be "unnecessary where an adequate remedy exists under some other cause of action," *Reyes v. Nationstar Mortg. LLC*, No. 15-cv-01109-LHK, 2015 WL 4554377, at *7 (N.D. Cal. July 28, 2015) (quoting *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009)). Ultimately, a critical question is whether the declaratory relief "will serve a useful purpose in clarifying and settling the legal relations in issue." *McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966).

The Declaratory Judgment Act gives the Court the authority to declare the rights and legal relations of interested parties, but not a duty to do so. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 533 (9th Cir. 2008) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)). "Where the counterclaim is identical to the affirmative defense, a district court, within its sound discretion, may dismiss the counterclaim." *Berger v. Seyfarth Shaw, LLP*, No. 07-cv-05279-JSW, 2008 WL 2468478, at *2 (N.D. Cal. June 17, 2008) (citing *Stickrath v. Globalstar, Inc.*, No. 07-

cv-1941-THE, 2008 WL 2050990, at \*5-7 (N.D. Cal. May 13, 2008)); *see also Backgrid USA, Inc. v. Twitter, Inc.*, No. 22-cv-9462-DMG (ADSx), 2024 WL 6847409, at \*8 (C.D. Cal. June 7, 2024) ("In general, courts tend to decline declaratory judgment jurisdiction as a matter of discretion where a plaintiff attempts to 'us[e] the Declaratory Judgment Act to anticipate an affirmative defense.'" (quoting *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1271 (S.D. Cal. 2007))). However, "[i]t is not always appropriate to dismiss declaratory judgment counterclaims simply because they concern the same subject matter or arise from the same transaction as the complaint or affirmative defenses." *Berger*, 2008 WL 2468478, at \*2. The Court should dismiss or strike a redundant counterclaim only when it is clear that there is a "'complete identity of factual and legal issues' between the affirmative defenses and the counterclaim, and that, under its only permissible construction, the counterclaim services no 'useful purpose.'" *Id.* (citing *Stickrath*, 2008 WL 2050990, at \*5).

As the Court grants the motion to dismiss the second counterclaim on other grounds, the Court does not reach Mr. Cordova's argument that a declaratory judgment claim is duplicative of defendants' affirmative defenses and should be dismissed for that reason. If defendants choose to re-plead the second counterclaim, Mr. Cordova may raise this argument at that time.

## IV. LEAVE TO AMEND

Rule 15(a) provides that leave to amend "'should [be] freely give[n] . . . when justice so requires,' because the purpose of the rule is 'to facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (citation omitted). "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court," which may deny leave to amend if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment has acted in bad faith. *Leadsinger*, 512 F.3d at 532 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

As defendants may be able to amend their first and second counterclaims to address some or all of the deficiencies described above, the Court gives defendants leave to amend these two counterclaims. Defendants may not add new claims or new parties, absent leave of the Court.

United States District Court
Northern District of California

## V.    CONCLUSION

For the reasons provided, the Court grants the motion to dismiss the first and second counterclaims.  If defendants wish to amend these counterclaims, an amended pleading must be filed no later than **April 22, 2026**.

**IT IS SO ORDERED.**

Dated: April 8, 2026

Virginia K. DeMarchi
United States Magistrate Judge

14